**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  95-cv-0777-ZLW-OES

In re:  THE RECEIVERSHIP ESTATE OF INDIAN MOTORCYCLE MANUFACTURING, INC.

---

## MOTION TO SUBMIT DISPUTE TO MAGISTRATE JUDGE, AS REQUIRED BY SETTLEMENT AGREEMENT

---

COMES NOW Credit Managers Association of California, dba Business Credit Services ("CMA") as Assignee, pursuant to a California Assignment for the Benefit of Creditors and General Assignments dated May 12, 2004, by Indian Motorcycle Company ("Indian"), IMCOA Licensing America, Inc. ("IMCOA Licensing"), and IMCOA Holdings America, Inc. ("IMCOA Holdings")[1] (collectively, Indian, IMCOA Licensing, and IMCOA Holdings are referred to herein as the "Indian Entities"), and moves for an order submitting the dispute identified by CMA in its Submission of Notice Of Dispute And Request For Resolution Of Dispute By Magistrate Judge to a magistrate judge.   As grounds, CMA states as follows:

1.      The undersigned represents that counsel for Sterling Consulting Corporation in its capacity as receiver in this action, and counsel for Sterling Consulting Corporation in its individual capacity, were contacted regarding the relief requested in this motion pursuant to D.C.Colo.L.Civ.R. 7.1.  Undersigned counsel could not get a definitive response from respective counsel for Sterling regarding the requested relief.

---

[1] CMA is a California based third party fiduciary acting as an assignee for the benefit of creditors under California's assignment for benefit of creditors law.  As such, it is appearing in this action in such capacity and no other. All references to CMA herein are as Assignee of the Indian Entities only.

2.     On or about August 31, 2000, Sterling Consulting Corporation, in its capacity as receiver in this action *and in its individual capacity* (collectively, "Sterling"), entered into a Settlement Agreement and an Indemnification Agreement (the "Agreements") with the Indian Entities. The Agreements, attached hereto as Exhibits A and B, respectively, were approved by this Court.

3.     The Settlement Agreement has an extensive section entitled "FORMAL DISPUTE RESOLUTION PROCESS," *see* Settlement Agreement, Exhibit A, § 4, pages 8-11 (submitted under seal), which applies to any "dispute regarding this Settlement Agreement, the Indemnification Agreement . . . or any related document . . ." Specifically, if a dispute arises

> 4.1   . . . **prior** to the discharge of the Receiver, **both parties consent to final resolution of the dispute by a Magistrate Judge pursuant to 28 U.S.C. § 636** who is not one of the Magistrate Judges who have previously entered Orders in the Receivership Action or any related action in which the Receiver was a party.

*See* Exhibit A, § 4.1, pages 8-9 (emphasis added).

4.     On May 12, 2004, approximately 3½ years after the Agreements were negotiated and executed, the three Indian Entities assigned all of their respective property to CMA pursuant to three California Assignments for the Benefit of Creditors ("Assignments"). Pursuant to the Assignments, CMA is authorized to "receive the said property [and] conduct the said business" of the Indian Entities, pay "the creditors of [the Indian Entities]," and incur and be reimbursed for expenses relating to "the operation, management, preservation or administration of the property of the Assignment." Assignments, pp. 1-2, attached as Exhibit C.

5.     In resolving the possibility of contingent liabilities arising after execution of the Settlement Agreement, Sterling and the Indian Entities established a Cash Fund "to ensure the prompt payment of all Claims Losses" asserted by any indemnified party under the

Indemnification Agreement. *See* Exhibit B, §§ 5.12-5.14 (submitted under seal). The amount of the Cash Fund is $50,000.00. Section 5.13 of the Indemnification Agreement provides:

> **If** Indian shall be in default of its obligations to Indemnify an Indemnified Person hereunder **with respect to** Receiver's Fees, Receiver's Expenses, Receiver's Legal Fees, Sterling's Fees, Sterling's Expenses or Sterling's Legal Fees **in respect of any Claim**, the Indemnified Person may, at its option, give notice in writing to the Fund Agent **specifying the amount due and payable** and the Fund Agent shall promptly pay the **said amount** demanded from the funds available in the Cash Fund.

Indemnification Agreement, § 5.13 (emphasis added).

6.     Any amount in the Cash Fund not otherwise paid out pursuant to the provisions of § 5.13 of the Indemnification Agreement "shall be paid by the Fund Agent **on January 1, 2006** one half to Indian [currently CMA, as Assignee] and one half to Sterling." *See* Indemnification Agreement, § 5.14 (emphasis added). Thus, one half of the Cash Fund is clearly an asset of the Indian Entities, subject to CMA's protection, administration and disbursement to creditors. Further, one half of the Cash Fund (less any amount paid out on account of any "Claim") should be paid to CMA on **January 1, 2006**.

7.     There have been no unpaid Claims pursuant to the Indemnification Agreement submitted to either the Indian Entities or CMA to date. $50,000.00 remains in the Cash Fund as of the date of this Motion.

8.     Despite the complete absence of any "default of [Indian's] obligations to Indemnify an Indemnified Person hereunder . . . in respect of any Claim[,]" on October 13, 2005, Sterling sent a letter to the Fund Agent demanding that the Cash Fund be immediately turned over to Sterling in its entirety.[2]

---

[2] Again, no Claim has been presented to CMA or any of the Indian Entities for reimbursement since the presentment – and payment – of a reimbursement request in October/November of 2003. Despite numerous requests, neither Sterling nor the Fund Agent has notified CMA of any unreimbursed Claims and, to date, CMA is unaware of any outstanding or unpaid Claim(s).

9.     CMA objected to such demand by asserting, *inter alia*, that "Indian was not in default of its obligations to Indemnify" pursuant to the terms of the Indemnification Agreement, as no Claim had been received from Sterling that had not previously been paid.

10.     Nonetheless, Sterling continued to insist that the Fund Agent immediately disburse *all* of the Cash Fund to Sterling. The Fund Agent (who is current counsel for Sterling *as the Receiver*) stated that it would immediately disburse all funds to Sterling, absent CMA seeking court intervention. CMA was forced to file its Notice of Dispute in this action to prevent the Fund Agent from following through with its stated intention to comply with Sterling's demand.

11.     Clearly, a dispute exists regarding the appropriate disbursement of the Cash Fund as provided for in the Settlement Agreement (the "Cash Fund Dispute").

12.     Pursuant to Sterling and the Indian Entities' previous Settlement Agreement, any disputes regarding the Settlement Agreement arising "prior to the discharge of the Receiver" shall be heard "by a Magistrate Judge pursuant to 28 U.S.C. § 636 who is not one of the Magistrate Judges who have previously entered Orders in the Receivership Action or any related action in which the Receiver was a party." Exhibit A, § 4.1, pages 8-9.

13.     Referral to a magistrate judge of this matter is allowed by previous consent of the parties in the Settlement Agreement and pursuant to the express provisions of either 28 U.S.C. § 636(b)(2) ("A judge may designate a magistrate judge to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.") or § 636(b)(3) ("A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.")

14.     Pursuant to Fed. R.Civ. P. 53(a)(1)(A) (emphasis added), "a court may appoint a special master only to . . . perform duties *consented to by the parties*."

15.     In this case, the parties have previously consented to the resolution of all disputes regarding the Agreements by a magistrate judge.   Therefore, a magistrate may be appointed as a "special master" to resolve the Cash Fund Dispute, as required by the explicit and clear terms of the Settlement Agreement.

16.     This Court should be aware that, on or about August 17, 2005, Sterling Consulting Corporation, **solely in its individual corporate capacity**, filed an action captioned *Sterling Consulting Corporation v. Credit Managers Association of California, et al.*, 05-cv-01573-PSF-CBS (the "Sterling Action"), asserting various breaches of the Settlement Agreement.[3]   Sterling also asserted that several defendants who were not parties to the Settlement Agreement – or even involved in any "Indian" matter until well after the Agreements were executed – breached the Settlement Agreement.   Those parties in the Sterling Action have not consented, and indicate that they will not consent, to magistrate jurisdiction pursuant to 28 U.S.C. § 636 in the Sterling Action.

17.     The Cash Fund Dispute is a straightforward and discrete dispute between specific parties to the Agreements.   CMA respectfully asserts that the fact that the Sterling Action will

---

[3] In addition to the undisputed fact that there are no unreimbursed Claims presented by Sterling to date (either as the Receiver or in its individual corporate capacity), Sterling, *in its individual corporate capacity*, is not entitled to indemnification at this time.   "Sterling's" entitlement to indemnity in its individual corporate capacity under the Indemnification Agreement "is limited to Claims that . . . arise **after the termination of the Receivership**." *See* Indemnification Agreement, § 5.10 (emphasis added). Prior to termination of the Receivership, **only the Receiver** is entitled to indemnity. *Id.* Because the Receiver has not been discharged and the Receivership is, in fact, pending in this Court (albeit solely for the purpose of resolving certain tax issues, by order of the United States Bankruptcy Court for the District of Massachusetts in the currently pending Chapter 7 bankruptcy case), Sterling does not have the right to assert any claim for indemnity in its individual corporate capacity at this time.

not be referred for magistrate determination does not preclude the Cash Fund Dispute from being resolved by a magistrate pursuant to the express provisions of the Agreements, the parties' previous consent thereto, and the provisions of 28 U.S.C. § 636(b) and Fed. R. Civ. P. 53(a).[4]

WHEREFORE, CMA requests an order of this Court referring the Cash Fund Dispute to a magistrate "who is not one of the Magistrate Judges who have previously entered Orders in the Receivership Action or any related action in which the Receiver was a party," pursuant to the express provisions of the Settlement Agreement between Sterling and the Indian Entities, 28 U.S.C. § 636(b)(2) and (b)(3), and Fed. R. Civ. P. 53(a).

Respectfully submitted this 9th day of December, 2005.

BIEGING SHAPIRO & BURRUS LLP


By:   s/ Julie Trent
         Julie Trent, No. 17086
         4582 S. Ulster Street Pkwy., Suite 1650
         Denver, CO  80237
         Office:  (720) 488-0220
         Fax:  (720) 488-7711
         E-mail: jt@bsblawyers.com

         Robert Pitts
         LAW OFFICE OF ROBERT W. PITTS
         660 Newport Center Drive, Suite 400
         Newport Beach, California 92660
         T:  949-720-4125
         F:  949-720-4111
         E:  rpitts@lawrwp.com
         *Attorneys for CMA as Assignee of the Indian
         Entities*

---

[4] The Settlement Agreement also provides for binding arbitration of all disputes *after* discharge of the Receiver. *See* Exhibit A, Settlement Agreement, § 4.2, page 9. CMA is willing, in the alternative, to submit the Cash Fund Dispute to arbitration. Clearly, the parties to the Settlement Agreement agreed not to burden the Receivership with disputes between them regarding the Settlement Agreement and, instead, consented to submit all disputes – including the Cash Fund Dispute – to either (i) a magistrate or (ii) binding arbitration. CMA simply requests that the parties be held to the clear and concise dispute resolution terms previously agreed to by the parties with respect to the Cash Fund Dispute.

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Thomas F. Quinn, Esq.                    tquinn@tfqlaw.com

And by U.S. Mail, first class, postage prepaid and facsimile number to the following:

Michael E. Chodos, Esq.                  Fax:   310.791.1958
Michael E. Chodos, Attorney at Law
56 Malaga Cove Plaza
Palos Verdes Estates, CA 90274

Jack Tanner, Esq.                        Fax:   303.830.1033
Fairfield & Woods, PC
1700 Lincoln St., Suite 2400
Denver, CO  80203

                    s/ Julie Trent
                    **Julie Trent**, No. 17086
                    Bieging Shapiro & Burrus, LLP
                    4582 South Ulster Street Parkway, Suite 1650
                    Denver, Colorado 80237
                    Telephone:  (720) 488-0220
                    Fax: (720) 488-7711
                    E-mail: jt@bsblawyers.com