


FAIRFIELD AND WOODS, P.C.

# Equitable Receivership as an Alternative to Bankruptcy
By John M. Tanner

### I. Overview.

When a company gets into trouble, the immediate reaction of many creditors and investors is to seek bankruptcy protection. While this approach sometimes works, often it makes matters worse. A creditor of, or investor in, a troubled company should consider all avenues available to it--not just the commonly-used ones. Often, an examination of the situation by one knowledgeable of the options will result in a receivership being the better course of action.

There are two primary advantages to the creditors of an equitable receivership over a bankruptcy. First, a receivership immediately replaces management (with the receiver), whereas a Chapter 11 bankruptcy proceeding tends to entrench management and give it even greater authority. Where the company would be sound but for management, a receiver is often the better solution. Stated differently, if money is really the problem, bankruptcy may be a good course of action. If money is just a symptom, however, and the problem is really management, a receiver may be a far superior approach for creditors and investors.

Second, there are virtually no statutes that control a receivership in the manner that the Bankruptcy Code and Bankruptcy Rules control a bankruptcy. Therefore, a receivership has considerably greater flexibility than does a bankruptcy. There is no panel or pool from which receivers are selected, allowing a party seeking the appointment of a receiver to select the individual or company best suited to serve as receiver. A receivership judge, in the appointing or subsequent orders, can set out virtually any procedures, rules, mechanisms, etc. that are appropriate under the circumstances. This allows the receivership to be tailored to the circumstances of the case to a much finer degree than a bankruptcy.

### II. Bases for Appointment of an Equitable Receiver.

The test for appointment is simply that, considering all the factors a court sitting in equity should consider, the appointment of a receiver is appropriate to preserve the



EXHIBIT A

12/02/05 2:49 PM

assets of the estate. *Savageau v. J. & R. A. Savageau, Inc.,* 285 P.2d 810 (Colo. 1955). The appointment of a receiver is reviewable only upon an abuse-of-discretion standard. *Jouflas v. Wyatt,* 646 P.2d 946 (Colo.App. 1983).

The circumstances in which a receiver might be a good idea are limitless. There are, however, some recurring situations where an equity receiver is appointed with some regularity. They include:

A. Impotent management of a business. This situation occurs where management is not being effective and the usual methods of replacement do not work. For example:

> 1. Deadlocked shareholders or partners. In many privately owned companies, the stock (or equity) is owned equally by a small number of people. When this number is even, there is the chance (some would say the certainty) that the shareholders or partners will cease seeing eye-to-eye on how to run the business at some point. Two fifty-per cent shareholders or partners whose failure to agree is causing the company injury is an excellent scenario for the appointment of a receiver.
>
> 2. Bad management. At times a controlling shareholder may not be doing what is best for the company, yet is not really susceptible to a shareholder derivative suit. Perhaps he is judgment proof, perhaps he has abandoned his role, or perhaps the suit will take too long and damage to the company is imminent. The appointment of a receiver may solve these problems.
>
> 3. Mistrusted management/limited receivership. A receiver may be appointed for a limited function when there is concern about who really is management. In the notorious *Yellow Cab* receivership case, the receiver was appointed to supervise the election of management where there was a concern about fraud in the very election of management. The idea was that the receiver would make sure the election was fair, and it was only after that that the parties would know who management was.

B. Trusts. As with a business, a trust may give rise to circumstances where the appointment of a receiver is useful. For example:

> 1. Intra-beneficiary dispute. Where a trustee desires to make a distribution, but there is a dispute among the potential beneficiaries, the appointment of a receiver may allow the trustee to satisfy its duty to distribute. It may be preferable to an interpleader

action, as the distribution can be invested rather than simply placed in the registry of the Court.

2. <u>Beneficiary/Trustee dispute</u>. Where there is a dispute between the beneficiaries and the trustee of a trust, the appointment of a receiver may be in the interest of the beneficiaries, as the trustee often uses the trust corpus to fund the litigation. Even if the beneficiaries prevail, the corpus may have been adversely affected in the meantime.

C. <u>After Judgment</u>. Rule 66(a)(3), C.R.C.P., expressly provides that a receiver may be appointed after judgment to dispose of the property subject to the judgment.

III. <u>Mechanics of Appointment of Equity Receiver</u>.

A. <u>The Complaint and Motion</u>. A receivership is commenced by the filing of a complaint seeking the appointment of a receiver. A federal receiver can be appointed if federal jurisdiction otherwise exists. Rule 66, C.R.C.P., was recently changed to allow the request that a receiver be appointed to be the only claim for relief in a complaint, overruling prior case law. The rules regarding notice pleading apply to a receivership complaint, but the greater the detail and specificity in setting out the grounds for a receiver, the better.

A verified motion is also usually filed to support the appointment. This brings the issue of whether a receiver should be appointed to the Court's attention immediately.

B. <u>Locating a Receiver</u>. The plaintiff must propose a specific receiver to the Court--there is no panel as there is for bankruptcy trustees. The plaintiff should bear in mind that once the receiver is appointed, the plaintiff has no control over the receiver's actions. The receiver is an officer of the Court with a fiduciary duty to the Court and to whomever the Court ultimately determines the proper beneficiaries (usually creditors and equity) are. *Application of Northwestern Mut. Life Ins. Co. v. First Interstate Bank of Denver*, 703 P.2d 1314 (Colo. App.1985). The receiver does not and cannot owe the plaintiff any more duty than it owes others.

This ability to select the receiver is one of the great aspects of receivership. If possible, the plaintiff should find a receiver who already knows the business--the receiver can always retain counsel to help with the legal aspects.

C. <u>The Order</u>. The Order appointing a receiver should be as broad and as detailed as possible. Unlike a bankruptcy, which is given structure by the Bankruptcy Code and the Rules of Bankruptcy Procedure, the statutes and rules

regarding receiverships are scant. This flexibility, while one of the greatest advantages of a receivership, comes with a price. As the Order Appointing Receiver sets out the power and measure of the receiver's authority, *Zeligman v. Juergens*, 762 P.2d 783 (Colo.App.1986), it requires careful thought and consideration.

An Order should contain at least the following:

1. Boilerplate. The following should be in every receivership Order

   a. A Finding regarding jurisdiction and venue;

   b. Findings of Fact which support the appointment of the receiver;

   c. A Conclusion of Law that a receiver should be appointed;

   d. An Order appointing the receiver, subject to the receiver filing an oath and posting bond;

   e. An Order that the receiver is directed and empowered to take into custody all assets that will be within the estate;

   f. An Order that the receiver is given those powers traditionally and customarily held by receivers (an "including but not limited to" list here is not a bad idea);

   g. An Order allowing the receiver to sell receiver's certificates to raise money;

   h. An Order fixing the receiver's compensation and setting the priority in which bills are to be paid (usually receiver's fees, receiver's out-of-pocket, then everybody else); and

   i. An Order allowing the receiver to hire professionals, staff, and other personnel as required to effectively manage the estate.

2. Language tailored to the suit: The plaintiff and the proposed receiver need to negotiate what other orders would be helpful. These will vary from case to case, but may include the following:

   a. If difficulty in collecting the assets is anticipated, an Order that the Sheriff or U.S. Marshall assist in the collection;

   b. If difficulty with the defendant (or its principals) is anticipated, an Order that the

defendant (and its principals) not hold itself out as the defendant, or take any action on behalf of the defendant;

c. How often reports should be filed (rarely more often than monthly);

d. An Order modifying the common law rule that the plaintiff is responsible for the receiver's fees if the estate is deficient (this may affect the quality of receiver the plaintiff can get, and should be the subject of negotiation between the plaintiff and the potential receiver); or

e. An Order naming parties who maliciously damaged the property going into the estate and making their claims contingent absent further Order. This may prevent an attempted end-run around the receivership to Bankruptcy Court.

## IV. The Receivership.

A. **Effect** of Appointment--*In Custodia Legis*. As a matter of law, the appointment of a receiver puts all the property subject to the suit *in custodia legis*, that is, in the custody of the Court. *Eller Industries v. Indian Motorcycle Manufacturing, Inc.*, 929 F.Supp. 369 (D.Colo. 1995)(the author is lead counsel in the Indian receivership); *see also* R. Clark, *Clark on Receivers* § 36 (1959) (receiver is an arm or administering hand of the court) and § 332 (effect of appointment of receiver is to put property in custody of court). Although taking physical possession is helpful and should be done as soon as possible, it is not required. Whether it is the receiver or the Court that physically has possession is irrelevant--for these purposes, the receiver is the registry of the Court. *See Atlantic Trust Co. v. Chatman*, 208 U.S. 360, 372 (1908) (receiver is officer of court, and its property is *in custodia legis*); *Brunswick Corp. v. J & P Inc.*, 424 F.2d 100, 103 (10th Cir. 1970) (funds *in custodia legis* are the same as if actual possession is with an officer of the court). Any interference with the receiver's functions is punishable by contempt. *E.g. Clear Creek Power & Development Co. v. Cutler*, 245 P. 939, 79 Colo. 355 (1926).

A receiver, being an Article III appointee, is an officer of the Court that appoints it. *McClain v. Saranac Mach. Co.*, 94 Colo. 145, 28 P.2d 1009 (1934). The receiver has a fundamentally different relationship with the Court than a bankruptcy trustee. A receiver is not a party to the receivership action. As such, a receiver and its appointing judge can speak *ex parte*. (They may not want to, however--this is one of the many things that led to disaster in the *Yellow Cab* receivership.)

B. <u>Early Orders</u>. Unlike a bankruptcy, there is no automatic stay preventing the prosecution of suits against the company in receivership. There are a handful of routine orders that can be obtained early in the receivership that give the receivership nearly the same protection, though. These orders provide some of the structure and most of the protections that the Bankruptcy Code and Rules provide.

1. <u>Equitable Stay</u>. Allowing an action which works as an Order against the receiver to be entered by another judge in another case can create extreme problems. For example, if a receiver has control of assets it is holding for the benefit of all creditors, and a Court other than the one that appointed the receiver Orders it to turn the property over to a specific creditor, the receiver is faced with conflicting Orders. In order to prevent this, the appointing Court can enter an Order prohibiting anyone (including other Courts) from entering Orders which purport to order the receiver to do anything. This would include execution on a money judgment previously obtained, orders compelling discovery in an ongoing suit, and similar orders.

2. <u>Order to Present and File Claims/Bar Date</u>. A bar date is more important in receiverships than in a bankruptcy case. Under *Riehle v. Margolies*, 279 U.S. 218 (1929), a judgment obtained against a company in receivership <u>after</u> the appointment of a receiver (remember, there is no automatic stay) is binding on the receiver if filed as a claim. This means if a suit is ongoing at the time of appointment, the receiver may have to fight that suit in a foreign jurisdiction, which takes away one of the main reasons to have a receivership. The solution is to have an Order to Present and File Claims which has a quick bar date for parties with notice and requires a filing party to dismiss any other claims (such as pending litigation) before filing.

This type of order does not require dismissal of the pending suit *per se*. Unless trial is imminent, however, the plaintiff/potential claimant will realize if it prosecutes the case to judgment, it will miss the bar date. In the vast majority of instances, the pending suit is dropped. In the rare cases where it is not, the bar date is missed and the claim is disallowed. When this type of order is entered, it should immediately be sent to all potential claimants, especially those who already have litigation pending.

3. <u>Order Protecting Agents</u>. Receivers often retain other professionals to help them, and having those agents sued in other Courts can be problematic. An Order stating that all agents of the receiver have all

the protections of the receiver, including immunity from suit outside the Court appointing the receiver, solves this problem. The Order may provide a mechanism to list those agents, such as in the regular reports.

4. <u>Discovery</u>. If there is other litigation pending, or even if there is not, parties often want discovery from the receiver. This will interfere with the receiver's primary duties of protecting the assets and selling them or otherwise paying claimants. The Court should enter an Order which allows discovery but interferes as little as possible with the receiver's primary duties.

C. <u>Receiver's Reports</u>. The most effective way for a receiver to keep the Court and the estate informed, and to obtain Court Orders approving the receiver's actions, is to file regular reports with the Court and ask that those reports be made Orders of the Court. The reports serve at least three functions. First, they tell the Court and the estate what has already happened. This saves time as the receiver does not have to talk to beneficiaries of the estate or the Court *seriatim*.

Second, a Receiver's Report, if approved, protects the actions of the receiver from later attack. This is especially helpful because the receiver is operating a business, paying bills, paying itself, and so on. Not knowing for years after the fact that the Court approved of its actions would be a terrible burden.

Third, a Receiver's Report can suggest the direction a receiver is considering. This can flush out objections (from the Court or the estate) at an early point in time, before the receiver has too much time or too many resources invested along that path.

As a general rule, the Receiver's Reports should be ministerial and non-adversarial. If the receiver desires to do something to which a party or claimant will object, then it is probably best to put it in a separate motion. That way, the approval of the report (and approval of non-controversial matters contained therein) is not delayed while the disputed matter is resolved.

The report is submitted by the receiver itself, under oath, not by counsel. It must be sent to any party who has entered an appearance, and should be sent to all claimants and any other interested parties. If the estate is large, a receiver may set up a distribution tree to get reports to all the beneficiaries of the estate.

D. <u>Gathering and Protecting Assets</u>. The receiver's charge is to gather and protect assets. If the assets are tangible, it

may require a lot of leg work and the help of a Sheriff or Marshall. If the assets are intangible, "protecting" them becomes more esoteric. In the Indian Receivership, "protecting" the primary asset--claims to the Indian Motorcycle trademark--involved buying several companies, filing extensive litigation, hiring a licensing agent and entering into many licenses, and greatly expanding the business beyond its original parameters.

E. <u>Raising Money</u>. In order to pay itself, its lawyer, and other post-appointment creditors, the receiver usually sells receiver's certificates. These certificates act as a lien upon the assets of the estate. *Frank v. Bonnevie*, 20 Colo. App. 164, 77 P. 363 (1904). The certificate usually bears interest, and may contain some kind of "kicker" as well. In the Indian Receivership, the kicker was a certain percentage of the company that will emerge from the receivership.

F. <u>Paying Expenses</u>. When a receiver enters into any contract, it should be approved before the receiver makes payment. This can be done in the monthly Receiver's Reports or by separate motion. Once approved, the receiver need not get approval for each subsequent payment.

The general rule stated above also applies to the receiver itself and the receiver's counsel. Unlike a bankruptcy, a receiver's fees (and its counsel's fees) do not have to be put through an approval process for each payment. Assuming the Order Appointing Receiver provided the rate of compensation for the receiver (which every Order Appointing Receiver should) and once the motion to hire specific counsel is approved (which may be done by motion or in the receiver's first report), then each month the receiver simply pays itself and its lawyers from the estate. The receiver then reports to the Court in its next Receiver's Report what was paid. The Court's approval of these payments (by approving the next report or otherwise) can only be reversed for an abuse of discretion. *Bemis Co. v. Fimple*, 470 P.2d 88 (Colo.App.1970); *Welch v. Renshaw*, 14 Colo. App. 526, 59 P. 967 (1900).

In addition to the obvious expediency of this procedure, there is another advantage. As there is typically no detailed bill submitted to the Court, the company's competitors do not have a chance to peruse the bills of the receiver and its counsel to gather information to aid them in their competition with the company in receivership.

V. <u>Winding Up</u>

A. <u>Sale</u>. Once the assets are gathered, there is usually a sale. The sale can be on about any terms and conditions

the Court sets, and is only reviewable for the grossest abuse of discretion. *Rossi v. Colorado Pulp & Paper Co.*, 88 Colo. 461, 299 P. 19 (1931).

The most frustrating aspect of the sale is buyers who want warranties and representations from the receiver. This is both misguided and foolish. It is misguided because a receiver really can't warrant or represent much regarding the assets--generally they pre-existed the receiver's tenure. It is foolish because a warranty or representation from a receiver is useless once the assets have been distributed. The receiver is not individually liable for receivership obligations. *Bayles v. Kansas Pac. R. Co.*, 13 Colo. 181, 22 P. 341 (1889). Note: there is an exception for tax problems--the receiver can be individually liable for post-appointment taxes.

What the receiver can do is deliver title, pursuant to Court order, free and clear from all claims, liens, and encumbrances of parties with notice of the receivership, assuming the claims have been paid (unlike a bankruptcy, a receivership does not discharge a debt). *See, generally*, 2 R.Clark *Clark on Receivers* § 500. This has a practical effect comparable to a Bankruptcy Court Sale Order under 11 U.S.C. § 363.

B. <u>Distribution of Assets</u>.

    1. <u>Determination of Claims</u>. Receivers should try to establish the most expedited process reasonable to determine claims. Often, in an attempt to leverage a greater payment, a claimant tries to initiate full-blown complex litigation under the Rules of Civil Procedure to establish its claim. It is well established, however, that as long as the claimant has notice and an opportunity to be heard (which may be on the papers without hearing), then due process is satisfied. *S.E.C. v. American Capital Investment, Inc.*, 98 F.3d 1133 (9th Cir. 1996). Generally, a receiver should not spend its efforts litigating with its own estate if it can be reasonably avoided.

    2. <u>Payment of Claims</u>. Once the sale is completed, the receiver distributes the assets pursuant to a formula approved by the Court to whoever the Court determines should receive the them *Application of Northwester Mut. Life Ins. Co. v. First Interstate Bank of Denver*, 703 P.2d 1314 (Colo. App.1985). (Note--sometimes there is no sale and the distribution of assets is in kind. The following comments apply equally to in-kind distribution). Usually, the receiver is paid first (to the extent he has not already been paid), the receiver's administrative creditors are paid second (to the extent they have not already been

paid), post-appointment creditors (receivership certificate holders) third, and everybody else after that.

Pre-appointment creditors tend to fall into classes as they do in bankruptcy, but the classes are not rigid and statutorily imposed. There is no presumption, as there is with bankruptcy classes, as to the order in which creditors should be paid. The payment scheme is entirely up to the Court, usually upon the advice of the receiver.

For example, a claimant may have a secured claim, but if that claimant is a bad actor the Court may put that claimant at the back of the line. This is because a receivership is a _entirely_ _equitable_ proceeding. Although equitable subordination under § 510 of the Bankruptcy Code can reach the same result, there is a difference in presumptions and burdens of proof. In a receivership, whatever the receiver proposes to the Court as fair is the starting point, and an objecting creditor has the burden to overcome that. In bankruptcy, the Code sets the presumptive distribution and the trustee has the burden to alter that scheme.

C. Discharge. Once the sale is complete and the creditors are paid, the receiver is discharged. This ends the estate and creditors with knowledge of the receivership can not pursue either the receiver or the company for debts which existed prior to the closure of the estate.

## VI. Conclusion

Although a receivership needs to be pursued with great care, the results can make the extra work worthwhile. Receiverships offer greater flexibility than bankruptcies, particularly in the all-important area of selecting the receiver. A receivership immediately eliminates bad management and puts the company under the supervision of the Court. The receiver can be especially chosen for his or her knowledge of the troubled company. In the proper case, a receivership can be a far more effective process for investors or creditors of a troubled company.

---

_This Article is published for general information, not to provide specific legal advice. The application of any matter discussed in this article to anyone's particular situation requires knowledge and analysis of the specific facts involved._

Copyright © 1998, 2005 Fairfield and Woods, P.C.,
ALL RIGHTS RESERVED.

Comments or inquiries may be directed to:
John M. Tanner.

*Full Service Solutions for Rocky Mountain Businesses*

Home | The Firm | Practice Areas | Attorneys | Articles | Clients
Colorado Links | Legal Links | Recruiting | Contact Us | Search