**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 95-cv-00777-ZLW-OES

In re:

**Receivership Estate of INDIAN MOTORCYCLE MANUFACTURING, INC.,**
a New Mexico Corporation

_____

**UNITED STATES' LIMITED REPLY TO OBJECTIONS OF**
**(1) MILLER, McGINN & CLARK (DI# 1983) AND**
**(2) MICHAEL PAYNE (DI# 1995) TO RECEIVER'S**
**MOTION FOR RESTITUTION (DI# 1940)**
_____

While the United States maintains that, under its settlement agreement with the Receiver, it is the Receiver's primary task to prosecute its motion for restitution, the United States has reserved the right to reply to defenses asserted by distributees where those defenses directly implicate the interests of the United States. The United States submits this limited reply to the Objections filed by Miller, McGinn & Clark, S.C. (DI# 1983) and Michael Payne (DI# 1995).[1]

**Reply to Miller, McGinn & Clark ["Miller"]**

1. Miller asserts (¶ 3) that the Receiver is personally liable for the unpaid taxes under 31 U.S.C. § 3713(b). Under the settlement agreement with the Receiver, this issue is reserved, in the event it is not mooted, for later litigation which would be triggered by the IRS's issuance of a notice of fiduciary liability according the Receiver a right to petition the United States Tax Court for judicial review (or if the Receiver defaults, by the filing of a refund claim or a separate government collection suit). See ¶¶ 6(c), 15 of Settlement Agreement. This Court lacks jurisdiction to issue a declaratory judgment with respect to Sterling's potential liability or make

---

[1] Since this is in reply to arguments made by Miller and/or Payne, the United States does not believe it should be necessary to serve all 400 claimants and is therefore limiting service of this to those who receive service electronically.

any subsidiary findings in respect thereto that could bind the United States.[2]  The United States maintains that whether or not Sterling is liable to it under § 3713(b) is not material to whether disgorgement should be granted.  If the Court nevertheless concludes that it must resolve this issue in order to adjudicate the Receiver's motion for restitution, it should include in any order containing such a finding an acknowledgment that the United States will not be bound by any finding of non-liability, so that the United States is not forced to take an appeal to the Tenth Circuit in order to establish that it would not be bound.

2.  Miller argues (¶ 5) that the government's rights to assert transferee liability against any distributee are time-barred and therefore the Receiver's subrogation rights are irrelevant.  Miller is correct that a § 6901 *assessment* is time-barred, but its statement goes too far.  As indicated in our Statement in response to the restitution motion, "[t]he The United States does not contend that the IRS may use 26 U.S.C. § 6901(a)(1)(a) to assess transferee liabilities against distributees and collect administratively"; "[i]t does not, however, waive any right it may have to assert and/or liability against and collect from distributees *judicially*, pursuant to 26 U.S.C. § 7402(a), if either this Court denies the Receiver's motion or distributees fail to pay."  It is well established that the expiration of the administrative remedy in § 6901 does not in any way affect the United States right to seek judicial remedies, including the imposition of transferee liability on persons who received property from an insolvent taxpayer.[3]

3.  Miller asserts (¶ 6) that bankruptcy law has no relevance because equitable receiverships are not governed by statutory priorities, relying upon an article published by the

---

[2] Cf. Sterling Consulting Corp. v. United States, 245 F.3d 1161 (10th Cir 2001) (no declaratory judgment jurisdiction regarding tax issues); S.E.C. v. Credit Bancorp, Ltd., 297 F.3d 127, 142 (2d Cir. 2002) (Declaratory Judgments Act barred receivership court from adjudicating receiver's potential fiduciary liability under 31 U.S.C. § 3713(b)).

[3] See United States v. Bushlow, 832 F.Supp. 574, 581 (E.D.N.Y. 1993) (and cases cited therein).

Receiver's attorney, John M. Tanner.[4]  First, bankruptcy law and receivership law arise from a common ancestry, and the statutory rules in bankruptcy are largely (with exceptions) a codification of rules that have long applied in receiverships.  Second, there is a statutory priority accorded federal claims in equitable receivership cases, as reflected in 31 U.S.C. § 3713(a).  Therefore, even if the tax claim here was not an administrative priority claim, it would be entitled to statutory priority over all general unsecured claims.[5]

In this regard, the rule in § 502(j) of the bankruptcy court allowing a trustee "to recover from a creditor any excess payment" is not unique to bankruptcy law.  The provision's immediate predecessor was paragraph l (lower case L) of § 57 of the old Bankruptcy Act of 1898, which provided that the trustee may recover any dividend received on a claim that was subsequently disallowed and may also recover "any excess dividend paid to any creditor."  The two remedies were combined in the new Code into a single formulation referring to any excess payment.  Many states have similar statutory provisions governing receiverships in those states where such remedies have been codified.  For example, see Maryland Financial Institutions Code § 9-711(c)(ii), providing that a bank "conservator or receiver may recover any excess payment or transfer made to a creditor" – echoing the language of 11 U.S.C. § 502(j).[6]

---

[4] The United States does not endorse the views of Mr. Tanner in his article and in fact disagrees with many of them.  The disagreements, however, are academic for present purposes.

[5] The United States assumes, for purposes of this reply, that Miller's claim was a general unsecured claim.  If Miller's claim arose out of the administration of the receivership estate, then it may have defenses not available to ordinary claimants.

[6] Payne's objection, in making a similar argument that bankruptcy case law should be ignored, observes that 11 U.S.C. § 549 imposes a two-year period of limitations on recovery of postpetition transfers of property.  But § 549 applies to transfers that are *not* authorized by Court order.  The provision's limitation has no application to a motion to modify a court distribution order – especially one that is interlocutory.  The motion is one "to recover from a creditor any excess payment" within the last sentence of § 502(j).  See also Fed.R.Bankr.P. 9024 (clarifying that, even where a closed bankruptcy case must be opened under Fed.R.Civ.P. 60(b), motions to reconsider orders allowing claims are an exception to the one-year limit in that rule).

      4. Miller makes a number of equity arguments, including that too much time has passed with no notice from the Receiver, that its firm membership has changed (making disgorgement inequitable to new partners), and that equity shall not relieve a party of its own wrongdoing or negligence and that the receiver in this regard failed to maintain an adequate reserve.  As for time that has passed, that state law limitations periods apply to the Receiver, the distributions were made in Colorado and that state provides six-year period for "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action." C.R.S.A. § 13-80-103.5(1)(a).  Further, the United States observes that Miller does not state that it was not on notice of the dispute between the Receiver and the IRS that began shortly after the distributions.  Laches (also mentioned in Miller's objection), is certainly not available against the United States.[7]  Accordingly, regardless of whether the Receiver is correct in its advance subrogation arguments, it would not be appropriate to apply laches here where the Receiver is a fiduciary collecting a tax claim against persons whom the United States, if absolutely necessary, could pursue directly.  To the extent the Miller firm's membership has changed, law firms are fully aware that they may have incurred unknown liabilities and can take steps to retain rights against departing partners and shield new partners from unfair contributions.  In any event, the 24.35% restitution sought from Miller amounts to less than $23,000.

      The rule that equity will not relieve a person from his own wrongdoing is not automatically applicable where refusing relief would enable another party – even if innocent – to retain a windfall.[8]

---

[7] United States v. Summerlin, 310 U.S. 414, 416 (1940).

[8] As a related point, Miller suggests it is inequitable to permit the Receiver to receive 37% of disgorged funds for additional fees.  The Settlement Agreement attempted to ameliorate any inequity in that regard by limiting total disgorgement to less than the principal amount of the tax and assigning part of the recovery to the Receiver.  If the Court nevertheless ultimately agrees with Miller on this argument, it is not a reason to deny restitution to the extent necessary

- 4 -

**Reply to Michael Payne**

5. Payne argues (¶ 3) that the Receiver lacks standing to bring a motion that benefits the United States, and must not take sides in what is an inter-creditor dispute. To the contrary, the rule that an estate fiduciary does not take sides in an inter-creditor dispute refers to where the outcome does not directly implicate the duties of the fiduciary. For example, if one creditor moved to equitably subordinate the claim of an otherwise higher priority creditor, the fiduciary should not help the higher priority creditor defend (although a fiduciary can itself move for equitable subordination in appropriate circumstances).[9] But without equitable subordination, a fiduciary has a duty to assure distribution of an estate in the order of the priorities under governing law. Cf. 11 U.S.C. § 502(j).

6. Payne notes (¶ 5) that the Receiver has not cited any case involving equitable disgorgement of an excess dividend in a receivership action. The United States therefore does. See Loughman v. Town of Pelham, 126 F.2d 714 (2d Cir. 1942) (affirming denial of recovery of proceeds of collateral for secured claim but reversing denial as to excessive dividend paid to claimant by receiver under a mistake of law).

7. Payne asserts (¶ 8) that the distribution orders were collateral orders and that collateral orders must be appealed immediately or the right to appeal is barred. Payne is incorrect. Putting aside whether a party can postpone appealing a collateral order until a final decree, the distribution orders were not appealable collateral orders. They did not determine any disputed question, as there was no dispute. The Receiver, having sought the orders, could not possibly have appealed

---

to pay the 67% allocated toward actual satisfaction of the tax liability.

[9] The Receiver in this case sought to have the tax claim be equitable subordinated and lost based on the lack of a statutory waiver of sovereign immunity for equitable subordination of government claims in receivership actions (in contrast to the explicit abrogation of sovereign immunity for such a proceeding in a bankruptcy case). See 6/6/03 Order of the Massachusetts District Court in this action.

them.  Nor did the orders themselves conceivably result in any irreparable harm.  They were interlocutory.

8.  Payne asserts (¶ 9) that the United States (and the Receiver) waited years to challenge the distribution orders.  The United States maintains it was not a party at the time of the distributions (having previously entered a stipulation with the Receiver in January of 1999 under which its intervention to enforce Mr. Mandelman's tax liens against any distribution to Michelle Lean was "withdrawn").  That having been the case, it could not have moved for restitution until it won the dispute over the tax claim.  The Rule 54(b) judgment fixing the tax claim was entered only two months ago.

9.  Finally, Payne asserts that, if many claimants are uncollectible, this will unfairly shift the burden to those who are collectible.  That concern is not without some force, but it is partly accommodated by the provisions of the Settlement Agreement discounting the tax claim substantially and limiting initial disgorgement to 24.35%.  Even a distribution of 24.35% would not fully satisfy the tax claim with interest (let alone the Receiver's fee claims on top of that).  Any

- 7 -

objection to the possibility of having to disgorge more than 24.35% is premature, as the Receiver's motion seeks only 24.35% back from each general creditor at this time.

Dated this 12th day of December, 2005.

                                            Respectfully submitted,

                                            WILLIAM J. LEONE
                                            Acting United States Attorney
                                            District of Colorado

                                            */s/ Jeffrey S. Swyers*
                                            JEFFREY S. SWYERS
                                            (standing in for ADAM F. HULBIG)
                                            Trial Attorney, Tax Division
                                            U.S. Department of Justice
                                            P.O. Box 683
                                            Washington, D.C.  20044
                                            Telephone: (202) 514-6061
                                            Facsimile: (202) 307-0054
                                            Email: adam.f.hulbig@usdoj.gov
                                                       western.taxcivil@usdoj.gov

## CERTIFICATE OF SERVICE

      IT IS HEREBY CERTIFIED that on this 12th day of December, 2005, a true and correct copy of the foregoing **UNITED STATES' LIMITED REPLY TO OBJECTIONS OF (1) MILLER, McGINN & CLARK (DI# 1983) AND (2) MICHAEL PAYNE (DI# 1995) TO RECEIVER'S MOTION FOR RESTITUTION (DI# 1940)** was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Jtanner@fwlaw.com
Attorney for Receiver

ahale@halefriesen.com
Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson

bschact@ottenjohnson.com
Attorney for Michael Payne

eramey@ir-law.com
spack@ir-law.com
Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Barbara Sandoval, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg

jcage@cagewilliams.com
Attorney for Carl D. Lucci/Albert R. Lucci

bell.steve@dorsey.com
Attorney for Eller Industries

nmiller@kennedy-christopher.com
Attorney for Benny Singer

rblock@xpn.com
Receiver

csasso@bakerlaw.com
Attorney for Michelle Lean

doug@tisdalelaw.com
Attorney for Michelle Lean

tblakely@sheridanross.com
Attorney for Stephen Rodolakis, Trustee

lmk@kutnerlaw.com
Attorneys for Charles and Lois Mathre

Glen.keller@dgslaw.com
Attorney for Cow Creek Band of Umpqua Tribe of Indians

gmoschetti@hmlegal.com
Attorney for Edward Leal

jelliff@mofo.com
Attorney for IMCOA

*/s/ Jeffrey S. Swyers*
JEFFREY S. SWYERS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044