UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-ZLW-OES

In re:

THE RECEIVERSHIP ESTATE OF INDIAN MOTORCYCLE MANUFACTURING, INC.

RECOMMENDATION THAT RECEIVER'S
MOTION FOR RECONSIDERATION BE GRANTED

ORDER ENTERED BY U.S. MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated:  December 14, 2005

## INTRODUCTION

The Receiver has filed a motion entitled "Motion to Reconsider Orders, Amend Orders, and Order Restitution With Incorporated Legal Authority." [Doc. 1940, filed November 18, 2005].  The Receiver is asking the court to re-visit and amend the orders that were entered by this court that resulted in the distribution of the assets of the receivership estate.

As the Receiver points out in its Motion, after the assets of the estate were distributed, the United States Internal Revenue Service filed an assessment for taxes against the estate.  The Receiver contested the assessment, and this case was transferred to the District Court for the District of Massachusetts for resolution of all issues surrounding the alleged tax liability.  After an extensive period of briefing and argument, that court ruled in favor of the United States, and against the Receiver.  As a result of the proceedings in that court, the estate was ordered to pay to the IRS taxes in the amount of $1.5 million, plus interest and penalties, which is the amount that was

sought by the IRS in its assessment. The receivership itself incurred large administrative fees and expenses in defending against the claims of the IRS. The tax assessment and receivership expenses together represented a burden to the estate of $4 million.

On May 17, 2005, the Receiver entered into a settlement agreement with the IRS and with the Trustee in Bankruptcy, which was administering claims that were companion to the receivership proceedings. That settlement was approved by the Massachusetts District Court on September 7, 2005. Under the terms of that settlement, the IRS agreed to limit the liability of the receivership estate for all taxes, interest and penalties to the sum of $1 million. The IRS also agreed that 37 percent of that $1 million could be recouped by the receivership for its past and future administrative expenses. The Receiver states in its motion that the effect of the settlement was to limit the exposure of the receivership to $1 million, instead of the $4 million for which it otherwise would be burdened. Following the resolution of the tax questions in the Massachusetts court, the case has been returned to this court.

The Receiver states in its motion that federal income taxes are an obligation of the receivership estate that is senior to the obligations of Claimants. The taxes that were assessed after distribution should have received absolute priority, and should have been paid before the general, unsecured claims of the Claimants. *Citing* Citibank, N.A. v. Baer, 651 F.2d 1341 (10th Cir. 1980). In short, the Claimants were overpaid, and, as a result, must be ordered to repay *pro rata* the amount represented by the tax liability. The Receiver has determined that to reimburse the estate for taxes and

expenses, each Claimant must return to the estate a sum that is represented by 24.35 percent of the amount that was received.

## DISCUSSION

I conducted a hearing on the Receiver's motion on December 13, 2005. The Receiver was present, represented by its counsel. Also present personally were counsel for Michael Payne, a Claimant, and counsel for Miller, McGinn & Clark, S.C. Present and participating by telephone were Burt Bondi, a Claimant appearing *pro se*, and counsel for the United States, Noreene Stehlik and Peter Sklarew.

At the outset of the hearing, I ruled that Payne's Motion to Continue the hearing of today's date would be denied. Approximately four hundred people were given notice of today's proceedings, and I am not persuaded that Payne's need for additional time outweighs the burdens that would be imposed in re-noticing all of the claimants that are affected by these proceedings.

After hearing arguments and comments from all parties and counsel who participated, I announced at the conclusion of the hearing that I would be submitting a recommendation to District Judge Zita L. Weinshienk that recommended that she grant the Receiver's Motion to Reconsider Orders. My reasons were stated briefly for the record, and I summarize them again here.

Contrary to the arguments of counsel, I conclude that the notice for today's proceedings was adequate, and that the proceedings are adequate to provide to the Claimants all the due process that is required. These proceedings do not constitute the commencement of a new lawsuit, but are, instead, a motion by the receiver to

3

reconsider and set aside the orders of distribution that were previously entered by this court. Parties are entitled to notice of the filing of the motion, and an opportunity to be heard. That has occurred.

I am not persuaded that the equities lean in favor of the Claimants. I recognize that some of the Claimants may face certain hardships if they are required to return a portion of the amounts that were distributed to them. Nevertheless, their circumstances are no different than persons who have received overpayments in their tax returns, social security benefits or welfare payments. In all such circumstances, such accidental beneficiaries are required to return the amount of any overpayment.

I do not agree that the passage of time should militate against the granting of the Receiver's motion. I recognize that the passage of time is one of the factors that may create a hardship for certain of the Claimants. However, as counsel for the Receiver and the Government pointed out in their remarks, Claimants have been able to realize the benefits of the time value of money by having in their possession the excess payments that were distributed several years ago. On the other side of this coin, the settlement between the Receiver and the IRS means that the Claimants have been provided an opportunity to pay the taxes due at the discounted rate that is reflected in the settlement agreement.

The claims of some of the Claimants that they may be compelled to pay more than their *pro rata* share of the reimbursement in the event that others are unable to pay any at all are claims that need not be resolved at this time. If that eventuality occurs, it may be addressed at that time.

I reject the argument that the Receiver should be responsible for all taxes and expenses because it was the Receiver's error that brought about the present circumstances. In my view, having supervised this receivership for ten years, any error on the part of the receiver in regard to taxes was an error that was made in good faith. The dispute between the Receiver and the IRS over the proper manner to assess taxes against the estate arose over an issue about which reasonable minds could dispute. That the Receiver lost the argument in the proceedings before the Massachusetts court does not lead to an inference that the Receiver must have committed malfeasance by not paying the taxes in the first instance.

## SUMMARY OF RECOMMENDATION

The Receiver has submitted a draft Order that contains the points and authorities that were presented by the Receiver in its Motion to Reconsider Orders, and a narration of the events that have brought the Receiver to the point where it is compelled to file its motion. The proposed Order is attached to this Recommendation.

I have read and considered the draft Order, and I conclude that it contains an accurate statement of the history of events, and an accurate statement of the legal principles that underlie this dispute. Thus, I recommend that Judge Weinshienk sign and enter the Order.

Counsel for the Receiver stated during the hearing of December 13, 2005, that some of the Claimants desired to pay their obligation before the expiration of 2005, in order to attempt to take advantage of the payment for their own personal tax purposes. However, in order to do so, they must make their payment as the result of an order that

has been issued from this court. For that reason, I recommend that Judge Weinshienk enter the attached order as soon as the ten-day period for the lodging of objections has expired.

## RECOMMENDATION

I RECOMMEND that Judge Weinshienk GRANT the Receiver's Motion to Reconsider Orders, Amend Orders, and Order Restitution with Incorporated Legal Authority [Doc. 1940, filed Nov. 18, 2005], and I FURTHER RECOMMEND that Judge Weinshienk sign and enter the attached order that has been proposed by the Receiver, or enter some similar order.

Dated in Denver, Colorado, this 14th day of December, 2005.

BY THE COURT:


   s/O. Edward Schlatter
UNITED STATES MAGISTRATE JUDGE

**Advisement to *pro se* parties.** Claimants who are not represented by counsel are advised that they are entitled to seek review or reconsideration of my recommendation by filing an "objection" within ten days. Such an objection should be filed pursuant to Rule 72 of the Federal Rules of Civil Procedure. Failure to file such an objection or appeal within ten days will result in the waiver by any parties of their rights to object to my recommendation, and may bar such parties from any further appeals from any orders by District Judge Weinshienk that approve my recommendation.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-ZLW-OES

In re:  Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

**ORDER RECONSIDERING AND AMENDING CERTAIN PRIOR ORDERS, AND ORDERING RESTITUTION**

      This matter comes before the Court upon the motion of Sterling Consulting Corporation, as receiver.  The receiver has asked this Court to reconsider and amend its prior Orders regarding payments to certain pre-appointment creditors, and for an Order for partial restitution to the Receivership Estate of a portion of the payments made under those Orders.  After reference to Magistrate Judge Schlatter, hearing was held on December 13, 2005.  Magistrate Judge Schlatter had recommended the Motion be granted.  For the following reasons, the motion is granted.

      1.     This Court entered the following Orders in connection with its Instructions to the receiver to distribute money to pre-appointment, general unsecured claimants (the "Claimants"):  (a) the Order [Approving Claims] dated July 23, 1999; (b) the Order [Approving Distribution] dated September 30, 1999; and (c) the Order Clarifying Prior Order [dated September 30, 19999] and Giving Instructions dated January 20, 2000, *nunc pro tunc* January 19, 2000.  Collectively, the foregoing Orders are referred to herein as the "Distribution Orders."

      2.     In addition to the Distribution Orders, this Court entered numerous Orders in furtherance of the general plan of distribution of the assets of the Receivership Estate.  To the extent the additional Orders furthered the approval of payments to Claimants, such additional Order are included in the term "Distribution Orders."

      3.     At the time the Distribution Orders were made, the receiver and the Court believed that there were no other expenses to be paid in the case (except for some prospective administrative expenses that were the contractual obligation of IMCOA Licensing America, Inc., the purchaser of the receivership as set estates).  After the payments pursuant to the Distribution Orders were made, however, the United States of America, Internal Revenue Service (the "Government"), filed a claim for taxes, which the receiver disputed.

8

4. On July 19, 2002, the Colorado District Court transferred the Receivership Action to the Massachusetts District Court.

5. After full briefing and argument, the Massachusetts District Court entered its Memorandum in Explanation and Practice and Procedure Order, Order No. 5 on June 6, 2003 and its Memorandum in Explanation and Practice and Procedure Order, Order No. 6 on August 7, 2003. The foregoing Orders are referred to as the "Tax Orders."

6. In addition to the Tax Orders, the Massachusetts District Court entered numerous Orders in furtherance of the Tax Orders. To the extent the additional Orders furthered the Findings and Orders in the Tax Orders, such additional Orders are included in the term "Tax Orders."

7. Under the Tax Orders, the Massachusetts District Court determined that approximately $1.5 million in taxes were due for the 1999 tax year. That amount did not include interest or penalties, which could add another $1 million to the amount due.

8. For approximately the past six years, the Receivership Estate incurred about $1.4 million in administrative expenses in defending against the claims of the Government. The administrative expenses have been and remain unpaid due to lack of funds.

9. On May 17, 2005, the receiver entered into a settlement agreement with the Trustee and the Government (the "Tax Settlement Agreement"). On September 7, 2005, the Massachusetts District Court approved the Settlement Agreement (the "Tax Settlement Order"). Under the terms of the Tax Settlement Agreement, all taxes, interest, and penalties were settled at $1 million, 37% of which the Government carved out to pay a portion of the past and future administrative expenses of the Receivership Estate not including the taxes. Thus, the receiver settled administrative claims, taxes, interest, and penalties estimated in excess of $4 million against the Receivership Estate for $1 million.

10. The Tax Orders and the Tax Settlement Order entered by the Massachusetts District Court are inconsistent with the Distribution Orders in that a portion of the money paid to the Claimants under the Distribution Orders should have been paid to the administrative creditors and priority creditors of the Receivership Estate.

11. The Distribution Orders were never certified as final under Fed.R.Civ.P. 54(b) and are subject to reconsideration.

12. Federal income taxes are an obligation of the Receivership Estate that are senior to the obligations to Claimants. Therefore, under the absolute priority rule, the taxes should have been paid before the general, unsecured claims of the Claimants

were paid. *E.g., Citibank, N.A. v. Baer*, 651 F.2d 1341 (10th Cir. 1980) (absolute priority rule provides that claimants in higher-priority classes must be paid in full before any distribution to lower-priority classes). The Claimants were over paid, and should repay that money so it can go to the creditors with higher priority.

13. The current status of this Receivership Action is that the Government, and by carve-out, the receiver and its counsel and CPAs, have been unpaid as to more than $1.4 million while the general unsecured Claimants have been paid in full. Even if the receiver were to refuse to seek restitution of $1 million from the general unsecured Claimants, the Government maintains that it could do so itself pursuant to 26 U.S.C. 5 7402(a), if either this Court denies the Receiver's motion or distributees fail to pay. The United States further maintains that it is the receiver's responsibility in the first instance to exhaust efforts to obtain and collect restitution. This Court agrees that it is the receiver's responsibility.

14. Authorities who have considered this issue are in accord that administrative expenses are senior to pre-appointment claims. *E.g.,* Ralph Ewing Clark, *Clark on Receivers*, § 667 (3d Ed.); C.R.S. § 11-103-804 (liquidation by commissioner); C.R.S. §11-108-604 (liquidation by banking board); C.R.S. § 11-109-704 (liquidation by commissioner); C.R.S. § 10-3-541 (distribution of assets from an insurer's estate); 11 U.S.C. §§ 507 and 726 (United Bankruptcy Code, provides that administrative expenses are senior to pre-appointment creditors).

15. The basis for this Court to enter the Restitution Order may be found in the *Restatement of the Law, Restitution* § 74, which reads as follows:

> § 74 Judgments Subsequently Reversed--A person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

16. Certainly if a judgment being reversed can result in an order of restitution, a merely interlocutory order being reversed should have the same effect.

17. The receiver and the Court were mistaken as to the status when the Court ordered full payment to pre-appointment claimants. Had the receiver and the Court known of the taxes due at that time, the Court would not have ordered payment in full.

18. To get to this point, the receiver and its professionals have compromised claims in excess of $1.4 million to $370,000. The Government has compromised its claims in excess of $2.5 million to $630,000. Under these circumstances, it is unfair and inequitable for junior, pre-appointment creditors to have received 100 cents on the dollar six years ago. In addition to not being entitled to any distribution until

administrative claimants are paid in full, I further find that the pre-appointment creditors have had benefit of the use of the money for six years.

19. The Court observes that three parties filed objections to the receiver's motion-the law firm of Miller, McGinn & Clark S.C., Michael Payne (via counsel), and Burt Bondy (pro se). At the hearing, counsel appeared and objected on behalf of Albert Lucci. The objections made by Miller, McGinn & Clark S.C., Michael Payne are overruled; the objection of Mr. Bondy, if granted, would add other parties to those making restitution. It is overruled, but will be subject to reconsideration upon motion by Mr. Bondy or the receiver after the receiver, who has been instructed by Magistrate Judge Schlatter to conduct in investigation on the subject, makes a Report to the Court.

20. At the hearing conducted by Magistrate Judge Schlatter on December 13, 2005, the receiver asked the Court to consider certain additional issues, the resolution of which might be helpful to Claimants and to the receiver's efforts to collect restitution.

21. This Court grants the receiver's request to extend the incentive in paragraph 5(a) of the Tax Settlement Agreement, such that any Claimant who makes restitution to the receiver on or before December 27 2005 may do so by paying 20% rather than 24.35%. In addition, should the receiver require additional restitution, Claimants making their payments to the receiver on or before December 27 2005 will be given a credit in the amount of 28%, rather than 24.35%, however, if the receiver rebates any of its collections, the rebate will be calculated at the actual 20% rate, and not either of the two higher rates. In order to take advantage of the incentive program, Claimants must also withdraw their pending motions for extension of time.

22. In its Motion, the receiver also asked for the ability to obtain Judgments against Claimants who do not timely pay. This Court grants the receiver's request and Orders that all Claimants must make restitution on or before January 31, 2006. The receiver may request a Judgment against any Claimant who does not make its restitution on or before January 31, 2006, and that Judgment will include post-Judgment interest from and after January 31, 2006, plus all costs of collection up to a maximum of 35% of the face amount of the Judgment.

Dated this ___ day of December, 2005.

_____

Zita L. Weinshienk, Senior Judge

United States District Court