## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 95-CV-777

In re

THE RECEIVERSHIP ESTATE OF INDIAN
MOTORCYCLE MANUFACTURING, INC.,

---

## MICHAEL PAYNE'S OBJECTION TO MAGISTRATE
## JUDGE'S RECOMMENDATION THAT RECEIVER'S
## MOTION FOR RECONSIDERATION BE GRANTED

---

Pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), Michael Payne

("Mr. Payne") submits this Objection to Magistrate Judge Schlatter's December 14, 2005,

Recommendation (the "Recommendation"), which recommends approval of Motion to

Reconsider Orders, Amend Orders, and Order Restitution with Incorporated Legal Authority

[Docket #1940] (the "Motion").  In support of this Objection, Mr. Payne states as follows:

### Rule 7.1 Certification

Counsel for Mr. Payne certifies that he has conferred with counsel for Sterling Consulting

Corporation (the "Receiver"), who is opposed to the relief sought herein.

### A.  INTRODUCTION

If the Recommendation is accepted and the proposed order submitted therewith is

entered, judgment will be entered against Mr. Payne for $135,000, subject to later increase—all

after a 90 minute hearing on two weeks' notice, with no complaint or answer and no opportunity

to present evidence or obtain discovery.  Routine litigants in county court are afforded more due

process than afforded Mr. Payne.  The Receiver acknowledges that disgorgement to pay an

ancient tax claim is unprecedented.  It includes setting aside six-year-old distribution orders of

this Court in this receivership case upon which Mr. Payne and others have justifiably relied.  The

Magistrate's unnecessary haste and disregard for Mr. Payne's due process rights constitute error in their own right; and as the process is fatally flawed, so too is the substantive result flowing from it.

Not only did the Magistrate erroneously gloss over such basic issues as the applicable statute of limitations and the Receiver's lack of standing to bring the Motion at all, he denied Mr. Payne and other creditors the opportunity to develop the full facts surrounding the Receiver's serious failure manifest in the Motion. The Receiver finds itself in the present circumstance because of decisions of the Receiver in which creditors like Mr. Payne had little or no say, such as the decision to hold on to a risky stock for the benefit of parties other than Mr. Payne, instead of selling the stock and reserving for a tax liability. Now that the Receiver's investment has lost its value, Mr. Payne and other creditors are asked to pick up the tab in order to pay a six-year-old tax claim. Rather than allow Mr. Payne to investigate and litigate these issues, the proposed order would improperly foreclose all inquiry whether restitution is fair and equitable under such circumstances. This Court should reject the Recommendation and the proposed order in their entirety and instead enter orders consistent with the Federal Rules of Civil Procedure, due process, and applicable law so that Mr. Payne and the other creditors are allowed a proper defense.

## B.  BACKGROUND

In February 1999 the assets of Indian Motorcycle Manufacturing, Inc. ("IMMI") and affiliated entities in bankruptcy in the District of Massachusetts were sold to IMCOA Licensing America, Inc. ("IMCOA") for approximately $17 million cash and 2.25 million shares of IMCOA. The cash received by the Receiver was to be paid to administrative claimants and to

8616\9000\954471.4

unsecured creditors (the "Claimants"), while the IMCOA stock was to be distributed to shareholders of IMMI, including members of the Receiver's finance committee.

In 1999 and 2000, the Magistrate entered three orders dated July 23, 1999 [Docket #1181], September 30, 1999 [Docket #1217], and January 20, 2000 [Docket #1290] (collectively, the "Distribution Orders") instructing the Receiver to distribute proceeds of the receivership estate (the $17 million in cash, after payment to administrative and other preferred creditors) to Claimants.  The final Distribution Order instructed the Receiver to pay Claimants 100% of their claims.  Mr. Payne was a Claimant and was paid his entire claim of approximately $560,000 in 1999 and 2000.

The Receiver's receipt of IMCOA stock resulted in a capital gain to be charged to the receivership estate for tax year 1999.  In June 2000, the Internal Revenue Service (the "IRS") estimated that the receivership estate owed $4 million in income taxes for tax year 1999 based on this capital gain.  See United States v. Sterling Consulting Corp., 289 B.R. 269, 284-85 (B.A.P. 1st Cir. 2003).  The record is unclear as to when, or if, the IRS notified the Receiver of the estimated tax claim, but it appears that the IRS and the Receiver had, at a minimum, informal discussions concerning a possible tax claim for 1999 as early as June 2000.  Until 2005, the Receiver consistently argued that it had no tax liability to the IRS.

On April 25, 2002, the IRS sent a deficiency tax assessment to the Receiver and claimed $1,585,470 in income taxes owed and $389,094 in penalties (the "Tax Claim").  On July 19, 2002, this Court transferred the entire case to the District of Massachusetts (the "Massachusetts Court") to determine, in large part, the Tax Claim and because affiliated companies were in bankruptcy in that district.  On June 6, 2003, the Massachusetts Court entered judgment for the IRS on the Tax Claim.  See In re the Receivership of Indian Motorcycle Mfg., Inc., 299 B.R. 8,

24-33 (D. Mass. 2003) (the "Tax Order").  The Massachusetts Court did not address the issue of penalties.

On September 17, 2003, the IRS filed a proof of claim for the Tax Claim with the Receiver. After the Tax Order was entered, the IRS and the Receiver engaged in further extensive litigation and negotiation. The Receiver claims to have incurred $1.3 million in fees and costs in litigating the Tax Claim. These fees and costs remain unpaid.

As the Receiver resisted the Tax Claim, it also continued to hold the IMCOA stock at issue in the receivership estate.  This stock, at relevant times, had value and forms the basis of the tax liability in question here.  Indeed, the Receiver sold 400,000 shares to pay receivership expenses. Yet, the Receiver, for reasons unknown to Mr. Payne, chose not to sell the remaining shares.  Prudence would have suggested converting the IMCOA shares into cash and holding the cash in reserve pending determination of the Tax Claim.  The Receiver, however, held onto the IMCOA stock as it lost its value.  Mr. Payne, a creditor who was paid in full, would have received no benefit from any increase in value of the IMCOA shares, but now is being asked to shoulder the burden of the Receiver's risk-taking.

On May 17, 2005, the Receiver (as Receiver of IMMI and in its individual capacity), counsel for the Receiver, the IRS, and the bankruptcy trustee for IMMI's affiliates entered into a settlement agreement (the "Settlement Agreement") concerning the Tax Claim and related issues. The Settlement Agreement settled the Tax Claim for $1 million.  It also provided that any amounts the Receiver collects to pay the tax Claim will be distributed such 63% will be paid to the IRS and 37% will be paid for administrative expenses of the receivership estate, including attorney fees.

The source of payment for the Tax Claim and the distributions to the IRS and the Receiver is the predicate for the Receiver's request to this Court for restitution of payments to Claimants. The Settlement Agreement requires the Receiver to seek in this Court restitution from the Claimants of a minimum of 24.35% of their claims (subject to a slight discount if a Claimant were to immediately make payment to the Receiver) up to $1 million. If the Receiver is unable to obtain $1 million, it is required to seek further disgorgement from the Claimants.

Contemporaneously with the execution of the Settlement Agreement, the Receiver and Receiver's counsel, in their individual capacities, and the IRS also entered into a side agreement (the "Side Agreement," a copy of which is attached as Exhibit A). The Side Agreement provides that if the IRS receives at least $350,000 in payment of the Tax Claim within two years of transfer of this case to this district, the IRS will release the Receiver and its counsel from any liability for the tax claim and for a claim to recover up to $93,000 in interest allegedly diverted from the receivership estate. (The Settlement Agreement referred to the Side Agreement and stated that the parties would provide a copy to the Massachusetts Court, but neither Mr. Payne nor any other claimant was provided a copy until after the December 13, 2005 hearing on the Motion.)

On June 1, 2005, the Receiver filed a motion in the Massachusetts Court seeking approval of the Settlement Agreement, and on August 8, 2005, mailed Claimants notice of the Settlement Agreement and its material terms (the "Settlement Notice"). The Settlement Notice notified Claimants that they could object to the Settlement Agreement until August 27, 2005, and that the Receiver would seek disgorgement of 24.35% of the funds that each Claimant received. The Settlement Notice did not mention the Side Agreement. Mr. Payne did not personally

receive the Settlement Notice; instead it may have gone to his prior counsel who, five years after Mr. Payne was paid in full, ceased to be active in the matter.

In the motion filed with Massachusetts Court seeking approval of the Settlement Agreement, the Receiver stated: "[A]pproval of the Settlement Agreement by this Court would not operate to adjudicate the validity of the Receiver's claims for disgorgement, and thus not bar claimants' possible defenses to disgorgement." (Receiver's Motion to: (1) Enter Rule 54(b) Judgments; (2) Approve Form of Notice; and (3) Set Hearing to Approve Settlement Agreement [Docket #237] at ¶ 4). The Settlement Notice was the first communication to notify Claimants that they might be asked to disgorge previous payments to pay the Tax Claim.

On September 7, 2005, the Massachusetts Court approved the Settlement Agreement. The case was then transferred to this district. On November 18, 2005, the Receiver filed the Motion. The Magistrate entered an order requiring responses to the Motion to be filed on or before December 9, 2005. The Motion and notice of the hearing were mailed to Claimants and counsel who had previously entered an appearance. This court docket shows that a number of these mailings were returned as undeliverable.

The Motion requested that the Court enter an order requiring Claimants to disgorge 24.35% of their claims to the Receiver no later than December 15, 2005, and that a final judgment be entered against those Claimants who failed to disgorge by January 14, 2006. (Motion at ¶¶ 45-46). The Motion also sought joint and several liability against each and every Claimant for 24.35% of the total amount paid to the Claimants. (Motion at 11). After a brief hearing, no discovery, and no evidence (despite requests by Claimants at the hearing), the Magistrate made no findings of fact and indicated he would grant virtually all of the relief sought by the Receiver. The Magistrate filed the Recommendation and a draft Order Reconsidering and

Amending Certain Prior Orders, and Ordering Restitution proposed by the Receiver (the "Draft Restitution Order") the next day.  The Receiver submitted the Draft Restitution Order to the Magistrate (Recommendation at 6), apparently without review by any other party.

### The Draft Restitution Order

The Magistrate made the following proposed findings and recommended the following relief in the Draft Restitution Order:

#### *Proposed Findings*

a.      At the time the Distribution Orders were entered, the Receiver and the Magistrate believed that all expenses had been paid, other than certain administrative expenses that were the obligation of IMCOA.  After payments were made pursuant to the Distribution Orders, the IRS filed the Tax Claim, which the Receiver disputed.  (Draft Restitution Order at ¶ 3).

b.      In 2003, the Massachusetts Court entered judgment for the IRS on the Tax Claim for approximately $1.5 million; the judgment did not include penalties, which could add another $1 million in liabilities.  (Id. at ¶¶ 5-7).

c.      For the past six years, the estate incurred about $1.4 million in administrative expenses in defending against the IRS; these expenses remain unpaid due to lack of funds.  (Id. at ¶ 8).

d.      The Receiver entered into the Settlement Agreement, which was approved by the Massachusetts Court on September 7, 2005.  Under the terms of the Settlement Agreement, the Tax claim was settled at $1 million, 37% of which is carved out to pay a portion of administrative expenses, not including taxes.  (Id. at ¶ 9).

e.      The orders granting the Tax Claim and the Distribution Orders are inconsistent in that a portion of the money paid to Claimants should have been paid to administrative and priority creditors.  (Id. at ¶¶ 10, 12, and 14).

f.      The Court did not certify the Distribution Orders as final.  (Id. at ¶ 11).

g.      The current status of this case is that the IRS, the Receiver, its counsel, and accountants have been unpaid while the Claimants were paid in full.  The Court agreed with the Receiver's contention that it is the Receiver's responsibility to exhaust efforts to obtain and collect restitution.  (Id. at ¶ 13).

h.     The legal basis for restitution is found in Restatement (First) of Restitution § 74, and if a reversed judgment can result in restitution, so can a reversed interlocutory order. (Id. at ¶¶ 15-16).

i.     Had the Receiver and the Court known of the Tax Claim when Court ordered full payment to the Claimants, the Court would not have ordered payment in full. (Id. at ¶ 10).

j.     The Receiver and its professionals compromised claims in excess of $1.4 million to $370,000; the IRS compromised its claim in excess of $2.5 million to $630,000.  Under these circumstances. it is unfair and inequitable for junior, pre-appointment creditors to receive payment in full six years ago.  The Claimants have had the benefit of these payments for six years. (Id. at 18).

k.     The Court overruled objections by certain Claimants, including Mr. Payne, but noted that the objection of Burt Bondy was subject to reconsideration after the Receiver made a report. (Id. at 19).

### *Proposed Relief*

The Magistrate proposed the following judgment be entered:

a.     As provided in ¶ 5(a) of the Settlement Agreement, any Claimant who makes restitution to the Receiver on or before December 27, 2005, may do so by paying only 20% of the respective Claimant's claim, rather than 24.35%.  In order to take advantage of the incentive program, a Claimant must withdraw any pending motion for an extension of time. (Id. at ¶ 21).

b.     All claimants must make restitution on or before January 31, 2006. (Id. at ¶ 22).

c.     The Receiver may request a judgment against a Claimant who does not make restitution on or before January 31, 2006, which judgment will include post-judgment interest and costs of collection up to a maximum of 35% of the face amount of the judgment. (Id. at ¶ 22).

The Magistrate declined to address the issue of joint and several liability and whether certain Claimants will be required to disgorge more than their pro rata share unless that scenario occurred.  (Recommendation at 4).

Mr. Payne objects to the Recommendation in its entirety, and requests that the Court reject the entire Draft Restitution Order and enter an order (or require the Magistrate enter an

8616\9000\954471.4

order) setting an appropriate discovery, briefing, and trial schedule to consider the Restitution Motion and any Claimant's defenses.

## C. STANDARD OF REVIEW

Rule 72(b) requires that an evidentiary record of all proceedings before a magistrate judge deciding a dispositive issue be made. The magistrate judge shall then provide a recommendation for disposition of the matter, including proposed findings of fact when appropriate. If an objection to the recommendation is properly made, the district judge must make a *de novo* determination to any portion of the recommendation to which an objection is made. Conducting a *de novo* review requires the district judge to "make an independent determination of the issues" and "not to give any special weight to the [prior] determination." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458,1464 (10th Cir. 1988) (quotation marks omitted). The district judge may follow the magistrate judge's order, "wholly ignore it," or conduct a review "in whole or in part anew," so long as the review is conducted by using the district judge's own independent judgment. Id. (quotation marks omitted).

The Magistrate has requested that this Court enter judgment immediately after the 10-day period in Fed. R. Civ. Pro. 72(b) terminates. (Recommendation at 5-6). Such a rush to judgment for the Receiver would call into question whether this Court properly performed a *de novo* review in such a short period of time. The Magistrate's suggestion in that regard should not be followed.

## D. NEITHER THE MAGISTRATE NOR RECEIVER CITED TO AUTHORITY FOR THE RECOMMENDATION OR PROPOSED ORDER

The Receiver candidly acknowledges that the relief sought in the Motion is virtually unprecedented. (See Motion at 3). The Receiver has cited to no case precedent from receivership law in which a receiver successfully sued the creditors it represents for return of

previously authorized distributions.  Indeed, the Receiver's request flies in the face of certain authority (discussed below) regarding the proper role of a receiver.  The IRS, which is the primary financial beneficiary of the proposed order, cited to precedent it claims supports the Recommendation and entry of the proposed order.   See Loughman v. Town of Pelham, 126 F.2d 714, 717-19 (2nd Cir. 1942).

Loughman, the only case the parties have so far been able to locate in which a receiver sought disgorgement of a prior distribution, merits close study.  It supports Mr. Payne's position here.  In Loughman, a distribution was made to a party claiming the rights of a secured creditor. The distribution order in Loughman expressly reserved the receiver's right to seek clawback from the receiving creditor.  Id. at 715-16.  That alone distinguishes Loughman from the Distribution Orders in this case, which are not remotely described as provisional or subject to clawback, and the second Distribution Order refers to "final" distribution.  Moreover, in Loughman, the creditor subject to disgorgement was accorded due process.  The receiver filed a complaint, the creditor answered, and trial occurred on stipulated facts.  Id. at 714-15.  Loughman stands in stark contrast to the rush to judgment reflected in the Recommendation.

The Loughman court denied the receiver relief for the bulk of the claim.  See id. at 717-19.  The reason again is instructive.  A claim for restitution is subject to statute of limitations for *assumpit*.  Because the limitations period for that type of claim had expired for all but approximately $2,000 of the claim, the receiver's recovery was limited to that amount.  Here, nearly six years have passed and the applicable statute of limitations (discussed below) has long passed.  Under Loughman, the closest precedent any party has cited, the Recommendation should not be followed and the Motion should be denied for the reasons discussed above.

### E.  SPECIFIC OBJECTIONS TO THE RECOMMENDATION

10

### 1. The Recommendation Denies Mr. Payne Due Process

The result from entry of the Draft Restitution Order, assuming that Mr. Payne does not simply pay, is entry of judgment against him for approximately $135,000. In failing to require a complaint and answer and allow discovery and evidence, the Magistrate ignored the due process protections provided to all litigants. The Receiver should have filed a complaint pursuant to Fed. R. Civ. Pro. 7 and 8 and permitted Claimants to file an answer and then litigate the Receiver's claims accordingly. The relief proposed in the Recommendation is more than merely reversal of a judgment. The Receiver seeks a money judgment. Such a request is identical to the relief commonly and properly sought in a complaint, and thus subject to all of the rights permitted civil litigants. Cf. Ag Servs. of Amer., Inc. v. Nielsen, 231 F.3d 726, 733 (10th Cir. 2000) (equitable claim decided at trial).

The Magistrate denied Mr. Payne's Motion to Continue Hearing and found that notice had been adequate. (Recommendation at 3-4.) Mr. Payne objects to that finding. The speed with which the Receiver sought, and the Magistrate recommended, judgment is simply stunning. The Motion identified the unprecedented nature of the relief requested, (Motion at ¶ 14), but the unique nature of that relief is not a reason to minimize due process, but to ensure that due process is granted. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of . . . property by adjudication be preceded by notice and an opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). By permitting restitution and allowing the Receiver judgment against those Claimants who refuse or fail to disgorge 24.35% of their claims in less time than is allowed to file an

answer to a complaint, the Magistrate did not meet even the minimum requirements of due process.

The Claimants received payment six years ago and have had no reason or incentive to follow developments in this case since then. The Receiver has likely known of the Tax Claim since 2000 and has litigated the issue since 2002. The IRS was granted judgment in June 2003, but only now, in late 2005, and just before the Thanksgiving holiday, with little notice or substance, and at the eleventh hour, the Receiver informed Claimants that it seeks restitution of 24% of their claims, with the real possibility that their entire claims are at stake. After only 90 minutes of argument, no discovery, no evidence, and a complete dismissal of possible defenses, the Magistrate has recommended judgment against the Claimants without even minimal due process protections.

Despite the extraordinary relief sought by the Receiver, Claimants were given only 21 days to respond an 11-page single-spaced motion and were expected to appear at a half-day hearing four days later. The Receiver provided only the selective and self-serving information contained in the Motion, notice of the settlement agreement among the United States, the Receiver, and its counsel, and a link to the Receiver's web site to obtain the Settlement Agreement. "One of the purposes of the Federal Rules of Civil Procedure was to take the sporting element out of litigation, partly by affording each party full access to evidence in the control of his opponent." Martin v. Reynolds Metals Corp., 297 F.2d 49, 56 (9th Cir. 1961). Without any real discovery and an opportunity to investigate and consider properly the Receiver's requested relief, Mr. Payne and the other claimants were permitted only to make argument to a Magistrate who appeared to have predetermined the outcome.

8616\9000\954471.4

The Magistrate incorrectly found that notice of the Motion by mail to claimants and their counsel (for those who have counsel) was sufficient despite the fact that judgment could be entered.  See Fed. R. Civ. Pro. 4(a).  The Magistrate concluded that Mr. Payne's request to continue the hearing could not be accommodated because hundreds of other creditors would need to be re-noticed.  (Recommendation at 3).  Mr. Payne, however, is concerned only with his rights and the judgment entered against him, and may not even have standing as to the other Claimants.  In any case, the Magistrate's observation only begs the question why the hearing was set on barely two weeks' notice in the first place.  Moreover, no apparent regard is shown to other counsel who sought continuance because they could not locate their clients on such short notice, (see [Docket #2037]), or to the creditors who evidently received no notice of the hearing, as shown by the numerous undeliverable mail notices appearing on the docket.

With respect to the dozens of claimants whom the Receiver could not contact (as evidenced by the large number of docket entries showing returned mail), the Receiver will be able to obtain numerous default judgments supported merely on the fact that it was unable to contact a number of Claimants based on addresses that are six years old.

Previous actions by the Receiver should give this Court pause as to any relief it seeks. The Massachusetts courts have been particularly critical of the actions of the Receiver and its counsel (as well as the IRS): "The parties have all taken positions that were inappropriate for parties seeking to help the court understand the issues and make decisions promptly.  The record should reflect this."  In re the Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 36, 51 (D. Mass. 2003).  "No ruling by this Court has ever held the Receiver in contempt, although the basis for such a ruling may, from time to time, have been present.  In re Indian Motocycle Co., 2002 Bankr. LEXIS 1835 at *13 (Bankr. D. Mass. March 15, 2002) (attached as Exhibit B).

8616\9000\954471.4

Here, Mr. Payne has only begun the process of determining factual issues which might be necessary to properly determine whether the Receiver is entitled to restitution.  Considering the stakes raised in the Motion, Mr. Payne and the other Claimants are entitled to an appropriate discovery process and the procedural rights provided under the Federal Rules of Civil Procedure and allowed the claimant in <u>Loughman</u>.  <u>See</u> Fed. R. Civ. Pro. 66; 12 Wright, Miller & Marcus, <u>Federal Practice & Procedure</u> § 2962 at 18 (1997) (actions brought by or against receiver commenced and prosecuted in accordance with the rules of civil procedure).

Mr. Payne could not be present at the December 13, 2005 hearing and no evidence was taken in any event.  Given the opportunity, Mr. Payne would testify to the hardships that entry of judgment would cause him.  He relied upon the distributions in reaching a settlement with IMMI's principal, Michael Mandelman (Mr. Payne's damages against Mr. Mandelman were limited due to 100% payout in this case); he distributed monies attributable to this receivership in a divorce settlement; and has made certain failed business investments that he may not have had he not received the funds now sought to be disgorged.  Nor has Mr. Payne  been given opportunity to explore equitable defenses arising from the Receiver's or the IRS's own acts or omissions.  For instance, why did the Receiver retain the IMCOA stock long after payment to creditors while the stock lost its value?  For whose benefit was the Receiver acting?  And why, in equity, should the consequences of the Receiver's acts or omissions in that regarded be foisted upon Mr. Payne?  Mr. Payne has not been provided an opportunity to make that case.

As the Magistrate pointed out in his oral findings, due process can be a flexible concept.  But here there are no circumstances requiring due process to be bent or cut short.   The only grounds cited were the difficulty of renoticing the hearing and the alleged desire of some other (unidentified) creditors to make a payment before December 31, 2005.  On their face, those

reasons are wholly inadequate to deny Mr. Payne basic procedural rights while facing a six-figure judgment.

### 2.  The Receiver Lacks Standing To Bring The Motion

This Court noted early on in this matter that the Receiver "is a fiduciary of this Court and of all claimants or persons interested in the estate." Eller Indus. v. Indian Motorcycle Mfg., Inc., 929 F.Supp. 369, 372 (D. Colo. 1995).  The purpose of this receivership, this Court added, is "to marshal and protect company assets for the benefit of *all* creditors." Id. at 373 (emphasis added).  Thus, as a representative of this Court, the Receiver must be a neutral participant between creditors.  But by seeking restitution from the Claimants in order to benefit the IRS and mitigate the potential tax liability of the Receiver and its counsel, the Receiver has ignored its impartiality and fiduciary standing that are crucial to its position because, at bottom, the Motion presents a dispute between an IRS that delayed prosecuting its claim and Claimants who received court-approved distributions almost six years ago.

A receiver may not question any order of the court distributing assets of the estate, but must remain indifferent between the parties making claims to the estate *corpus*, Bosworth v. St. Louis Term. RR. Ass'n, 174 U.S. 182, 186-89 (1899), and cannot, for example, take sides in an intercreditor dispute.  See Kidder v. Fidelity Ins., Trust & Safe-Dep. Co., 105 F. 821, 824 (7th Cir. 1901).  Indeed, the Receiver "is an indifferent person between parties, appointed by the Court . . . .  He is appointed in behalf of all parties, and not one of the complainant or the defendant only. . . .  It is the court itself which has the care of the property in dispute." Booth v. Clark, 58 U.S. 322, 331 (1854).

The only case that permitted a receiver to seek disgorgement from a creditor involved a distribution order that involved a mutual mistake of law and explicitly provided for restitution if

the sole claimant was not so entitled.  See Loughman, 126 F.2d at 715-16.  In that case, the receiver protected the entire estate from the (purportedly secured) claim of one.  In contrast here, the Receiver has turned on the general unsecured creditors as a body, for the benefit of one creditor (the IRS), and for its personal interest.

Here, the Receiver has repeatedly acted as no other party could.  It has had numerous *ex parte* contacts with the Court, for instance, which would be wholly improper were the receiver just another litigant.  (For instance, bankruptcy trustees cannot have *ex parte* contacts with the Bankruptcy Court).  Now, however, the Receiver has explicitly and wrongfully taken sides in an intercreditor dispute without any authority to seek restitution and where there has been no mistake of law.  The Magistrate and the Receiver were not "mistaken" as to the Tax Claim; they decided to litigate it without communicating the risk of disgorgement to the Claimants until a few months ago.  As noted below, the Distribution Orders were final orders subject to appeal and contained no qualifying language as to restitution, disgorgement or the like.  Moreover, the Receiver specifically contracted, pursuant to the Settlement Agreement and the Side Agreement, to take the side of the IRS.  For reasons that are currently known only to the IRS, the IRS has declined to seek disgorgement.  Nevertheless, no authority exists to permit the Receiver to collect on behalf of the IRS and take a percentage of that collection.

Despite the issue having been raised by Mr. Payne before the Magistrate, the Recommendation fails entirely to consider the Receiver's lack of standing.

### 3. The Statute of Limitation Bars Restitution

The Magistrate, following the Receiver's arguments, described the attempt to take back a portion of the distributions to the Claimants as "restitution."  This is, instead, akin to a claim in *assumpsit* or for money had and received.  See Loughman, 126 F.2d at 717-19.  Such a claim is

16

subject to Colorado's two-year statute of limitation.  See, e.g., Atlantic Coast Line RR. Co., 295 U.S. at 309 ("A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function.").  The IRS recognized the nature of the Receiver's claim by arguing that the six-year statute of limitations to collect a debt found in § 13-80-103.5(1)(a), C.R.S. applies.  (See United States' Limited Reply to Objections of (1) Miller, McGinn & Clark (DI#1983) and (2) Michael Payne (DI#1995) to Receiver's Motion for Restitution (DI#1940) at ¶ 4).

*Assumpsit* is an equitable claim, similar to restitution or unjust enrichment.  "[A] party will not be allowed to keep money which in equity and good conscience should be returned to another."  Mullens v. Hansel-Henderson, 65 P.3d 992, 999 (Colo. 2002); accord Ryan v. Spaniol, 193 F.2d 551, 553 (10th Cir. 1951).  Two divisions of the Colorado Court of Appeals have held, contrary to the IRS's contention, that the six-year statute of limitation found in § 13-80-103.5 applies only to actions to collect a debt based upon a contract.  Pound v. Fletter, 39 P.3d 1241, 1243 (Colo. App. 2001); Curtis v. Counce, 32 P.3d 585, 588-89 (Colo. App. 2001).  Because there is no specific statute of limitations to collect a debt *not* based on a breach of contract, see § 13-80-101(1)(a), C.R.S. (three-year statute of limitations for breach of contract actions), Colorado's two-year "catch-all" statute of limitations is applicable.  See § 13-80-102(1)(i), C.R.S.

Accordingly, any action to seek restitution against Mr. Payne is barred by the statute of limitations.  The Receiver's improper attempt to obtain relief by motion does not change the statute of limitations.

**4.      The Draft Restitution Order Is Facially Defective**

17

The Draft Restitution Order (submitted by the Receiver *ex parte*) is defective in purporting to grant final judgment against the Claimants. First, the draft order does not state that it is a final judgment under Fed. R. Civ. Pro. 54(b), even though the Magistrate has submitted a recommendation pursuant to Rule 72(b). The order leaves open the possibility that the Receiver may be awarded additional amounts without further hearing as the Receiver requested joint and several liability (up to $ 4 million) for each Claimant. The draft order says nothing about Rule 54(b) certification or a reservation of rights by the Claimants, nor does it provide any procedure for the Claimants to oppose an additional judgment.

The Draft Restitution Order is simply inadequate to carry out the Magistrate's proposed relief. Claimants should not be left in limbo as to the nature and amount of a judgment entered against them. Moreover, Rule 54(b) does not authorize successive judgments on *the same claim*. The Receiver, however, attempts just that by allegedly preserving the right to seek joint and several liability from each creditor.

### 5.  Factual Basis is Lacking.

There is also no basis in the record for much of the relief proposed in the Draft Restitution Order. First, the math simply does not add up. Approximately $17 million was paid to Claimants. Yet, the Receiver seeks restitution of 24.35% of that amount, approximately $4 million, to pay a $1 million Tax Claim. Any restitution order must provide a rational explanation to disgorge 24.35% of the payments to Claimants when a lower percentage is almost certainly sufficient.

Second, the Receiver still owns IMCOA stock, which is apparently now worthless, but there has been no determination concerning the value of those shares or that the receivership estate was insolvent at the time the Distribution Orders were entered. Nor did the Magistrate

18

consider why the Claimants, rather than any other party, should bear the risk as to such a risky investment, given that the IMCOA stock was apparently to benefit IMMI stockholders and the Receiver's finance committee.

Nor has Magistrate or the Receiver provided an explanation about why Claimants might pay up $4 million to satisfy a $1 million claim of the IRS. The Receiver explained that if there were overpayments, Claimants would be paid their pro rata share of overpayments, but that issue is not covered in the Draft Restitution Order. Nor is there any limitation on the Receiver collecting from some Claimants, and not others, so long as the Tax Claim is paid. The Magistrate failed to consider this issue or address it in his Recommendation, and there is no basis in the record to permit it.

Moreover, the "incentive" plan offered by the Receiver and approved by the Magistrate is unfair, inequitable, and arbitrary. (See Draft Restitution Order at ¶ 21). Normally, creditors in the same class are treated equally. By offering the incentive plan, the Magistrate is treating Claimants unequally. Merely by asserting equitable defenses, valid or not, a claimant must disgorge a greater amount of its claim than a Claimant who does not assert a defense. The magistrate provided no authority (and Mr. Payne is unaware of any) that would permit such inequitable treatment of creditors.

Further, there is no basis (and no request was made by the Receiver) to charge resisting Claimants to pay collection costs of up to 35% of the face amount of a judgment against such Claimant. Claimants were never put on notice of such a request, and there is no basis to allow such costs.

### 6. This Case Is An Equitable Receivership Proceeding, Not A Tax or Bankruptcy Proceeding; the Internal Revenue Code and Other Statutory Schemes Have No Relevance And Provide No Authority For The Court to Require Disgorgement

19

A critical subtext of the Recommendation, the Motion, and the IRS's briefs with respect to restitution from the Claimants is that the Receiver is merely seeking restitution to pay a tax liability for which the creditors themselves would be liable under 26 U.S.C. § 6901. Whatever the merits of that argument, this case is not a tax proceeding in the Tax Court. This is and always has been an equitable receivership action, and the Tax Claim, whether it must be paid or not, is merely a claim like that of the Claimants; the only difference is that the Tax Claim might have preference over other claims. Whether that claim has preference in these circumstances, however, is a question of equity and is subject to equitable defenses when the Receiver seeks restitution from the Claimants in order to pay another claim.

Despite the equitable nature of this proceeding, the Magistrate incorrectly relied on the notion that the IRS would be able to collect the Tax Claim from the Claimants under 26 U.S.C. § 7402(a) (court may fashion any remedy to collect a tax under the Internal Revenue Code). (Draft Restitution Order at ¶ 13). The Claimants, as creditors, not shareholders or transferees, of IMMI are not liable for the taxes of the company or the receivership. See Southern Ariz. Bank and Trust Co. v. United States, 386 F.2d 1002, 1005 (Cl. Ct. 1967). It is the receivership and the Receiver and its counsel in their individual capacities that are liable for the Tax Claim, as evidenced by the Side Agreement, which limits the Receiver's liability to the IRS. See 31 U.S.C. § 3713(b). Prior to settlement, the IRS sought to collect the Tax Claim from the Receiver. (Motion at ¶ 28 n.1).

In an equitable proceeding, it is improper to rely on the substantive provisions of a stand-alone statutory scheme. Judge Matsch emphasized this point in rejecting the applicability of the Bankruptcy Code to a receivership action:

> The plaintiff argues that an equity receiver has the powers of a bankruptcy trustee. That adage has some utility, but it does not mean that the substantive provisions of the

bankruptcy code are available for use in a non-bankruptcy receivership. The Bankruptcy Code is sui generis. Its specific provisions function within the context of an intricate legislative system of laws designed carefully to meet the policy objectives of the Congress. For example, § 548 of the Bankruptcy Code is a strict liability provision that permits a trustee to avoid transfers made for less than equivalent value within one year preceding the filing of bankruptcy. That power is exercised for the benefit of the creditors of the bankruptcy estate whose claims are filed and allowed according to other statutory requirements. To extract this authority from the Bankruptcy Act, and apply it to recover payments made from three to twelve years earlier for the benefit of any persons to whom distribution may ultimately be ordered in the receivership, would be such an expansion of the law as to be judicial legislation beyond the authority of this court.

Johnson v. Studholme, 619 F.Supp. 1347, 1348-49 (D. Colo. 1985), aff'd sub nom. Johnson v. Hendricks, 833 F.2d 908 (10th Cir. 1987).

Here, similarly, the provisions of the Internal Revenue Code should not be used to impute some sort of powers to the IRS that are available only in a tax proceeding. The IRS may have a claim upon the estate, but that begs the question as to whether the Court may equitably require disgorgement from the Claimants to pay for a claim that the Receiver chose unsuccessfully to disallow. Nor may the Magistrate properly rely on Colorado statutes and the Bankruptcy Code concerning payment of administrative expenses. (See Draft Restitution Order at ¶ 14). As a general matter, tax claims are granted priority status, but because equitable principles also apply, the fact that the Tax Claim would normally be given priority should be insufficient to allow preferential treatment to the IRS.

### 7. Mr. Payne Has Equitable Defenses That He Should Be Permitted to Develop

Given the dubious circumstances associated with the Receiver's litigation of the Tax Claim and the self-interested provisions of the Settlement Agreement and the Side Agreement and Mr. Payne's reliance on the Distribution Orders which were entered nearly six years ago, Mr. Payne should be permitted to develop equitable defenses in what is an equitable proceeding. In June 2000 the IRS estimated the Tax Claim. In April 2002 the IRS sent a tax assessment to

the Receiver.  The Massachusetts Court in June 2003 entered judgment for the IRS on the Tax

Claim.  In August 2003, the Massachusetts Court noted:  "The Receiver has litigated all of its

claims."  In re the Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 36, 51 (D.

Mass. 2003).

     In May 2005 the IRS, the Receiver, and its counsel entered into the Settlement

Agreement and the Side Agreement.  Yet, the Receiver waited until August 2005, five years after

final distributions were made to Claimants, to notify Claimants that the Tax Claim was valid and

that Claimants would be forced to disgorge a portion of their distributions.  The Receiver's

procrastination in notifying Claimants of the status of the Tax Claim and disgorgement is nothing

short of gross negligence and, perhaps, worse.  Given the passage of time and the lack of

ambiguity in the Distribution Orders, it was incumbent of the Receiver to keep Claimants

updated, particularly since Claimants would have no incentive to monitor an estate that had paid

their entire claims.  These facts clearly implicate the defenses of laches and estoppel.

     In Colorado, laches apply when a plaintiff so neglects to assert a right to file suit for such

a length of time that it has caused substantial prejudice to a defendant.  Brooks v. Bank of

Boulder, 891 F.Supp. 1469, 1482 (D. Colo. 1995).  Similarly, estoppel applies as an equitable

defense where the plaintiff has full knowledge of the facts and unreasonably delays in asserting

an available remedy, and there is intervening reliance by and prejudice to the defendant.  Manor

Vail Condominium Ass'n v. Town of Vail, 604 P.2d 1168, 1170 (Colo. 1980).

     Here, the facts already available to the Magistrate create a *prima facie* affirmative

defense of estoppel or laches.[1]  Indeed, the Massachusetts Bankruptcy Court, upheld by the

Bankruptcy Appellate Panel for the First Circuit, considered and rejected a motion by the IRS

---

[1] This is not to say that Claimants might have other equitable defenses.  No Claimant has been given the opportunity
to investigate other defenses, and Mr. Payne reserves the right to raise other defenses if appropriate.

under Fed. R. Civ. Pro. 60(b) in 2003 to reopen the 1999 settlement between the Trustee and the Receiver even though the IRS had estimated in 2000 that the Tax Claim was $4 million. See United States v. Sterling Consulting Corp., 289 B.R. 269, 284-85 (B.A.P. 1st Cir. 2003).   The Receiver has known of the Tax Claim since at least 2002, and more likely as early as June 2000. The Receiver failed to notify Claimants of the possibility of disgorgement until August 2005 despite the fact that the IRS obtained a judgment in 2003.  As for reliance and prejudice to a Claimant, each individual Claimant, including Mr. Payne, should be permitted to assert and develop this fact-intensive issue. See Superior Constr. Co. v. Bentley, 104 P.3d 331, 334 (Colo. App. 2004) (defense of laches is a factual question).  The Magistrate's failure to consider these equitable defenses has no basis and should lead this Court to remand the case to consider properly the relief sought in the Restitution Motion.

## 8. The Equities Favor a Denial of Restitution

To the extent the Magistrate considered equity, the Recommendation inadequately considered the equities of forcing restitution, equities which, contrary to the Magistrate's statements, favor the Claimants.  (See Recommendation at 5; Draft Restitution Order at ¶ 15-18; Hearing Transcript at 64-65).  As noted above, the Magistrate failed to permit any discovery, evidence, or additional briefing concerning a number of factual and legal disputes, including whether the equities favor restitution. Indeed, the Magistrate was so dismissive of any equities that might favor the Claimants that it is questionable whether he applied equitable principles at all.

The Magistrate appears to believe that restitution is mandated by the circumstances, but this completely ignores that restitution is an equitable remedy.  "Restitution is not of mere right. It is *ex gratia*, resting in the exercise of a sound discretion, and the court will not order it where

the justice of the case does not call for it, nor where the process is set aside for a mere slip."

Atlantic Coast Line RR. Co. v. Florida, 295 U.S. 301, 310 (1935) (quotation marks omitted).

Thus, restitution is not granted merely because a defendant should restore to the plaintiff what

has been received, but where restoration is *equitable*.  See id.

The Restatement of Restitution upon which the Magistrate relies, applies this same

limitation:

> A person who has conferred a benefit upon another in compliance with a judgment, or
> whose property has been taken thereunder, is entitled to restitution if the judgment is
> reversed or set aside, *unless restitution would be inequitable* or the parties contract that
> payment is to be final; if the judgment is modified, there is a right to restitution of the
> excess.

Restatement (First) of Restitution § 74 (1937) (emphasis added).  In the Recommendation and

the Draft Restitution Order, the Magistrate all but ignored the qualifier that restitution is an

equitable claim.

The Magistrate noted that Claimants may face hardships and that there has been a

passage of time since distributions were made to Claimants, (Recommendation at 4), but he was

completely dismissive of these factors and failed to recognize other possible equities that might

favor Claimants.  Moreover, the Magistrate failed to account for the fact that equitable factors

might differ from Claimant to Claimant.  In particular, the Magistrate failed to account for the

following equitable factors that might require denial of restitution, many of which require further

investigation and discovery:

    a.      Equitable defenses such as laches and estoppel;

    b.      The Receiver's personal stake in the settlement of the Tax Claim;

    c.      The failure of the Receiver to notify Claimants of the potential for disgorgement for five years;

    d.      Was the Receiver's failure to notify Claimants excusable?

24

   e. Do the Claimants have tax liability if restitution is not made, as asserted by the IRS and by the Receiver?

   f. Is it equitable for some Claimants to disgorge, while others do not?

The Magistrate also improperly referenced circumstances involving overpayment of tax refunds, social security benefits, or welfare payments. (Recommendation at 4). Each of these statutory schemes is *sui generis*, and the federal government may recoup overpayments only pursuant to specific statutory criteria.[2]  In any event, as noted above, reliance on an unrelated statutory provision or scheme to determine equitable claims is improper.  Studholme, 619 F.Supp. at 1348-49.

With respect to equitable considerations adverse to the Receiver, as noted above the Magistrate failed to consider the extensive delays and failure to communicate with Claimants about the possibility of disgorgement.  In 1999 and 2000, this Court entered the Distribution Orders.  The IRS's only objection to the Distribution Orders concerned payments by the Bankruptcy Trustee to the Receiver, and that objection was resolved pursuant to this Court's January 20, 2000, Order Clarifying Prior Order and Giving Instructions; the United States did not appeal that order, even though it estimated in June 2000 that the Tax Claim was over $4 million. See Sterling Consulting Corp., 289 B.R. at 284-85.

Restitution is an equitable proceeding.  The Magistrate's refusal to take evidence, or permit discovery, on the Receiver's or the IRS's actions in creating the unhappy state of affairs described in the Motion ignores the equities.  The Receiver's own fault, or unclean hands, is relevant.  The Magistrate may not take judicial notice of the Receiver's good faith (see Recommendation at 5, finding without evidence the Receiver's good faith).  Moreover, it is not

---

[2] The Magistrate's reliance on overpayment of social security benefits is ironic as the Social Security Administration (and reviewing courts) may not require recoupment of overpayments where the beneficiary was without fault and repayment "would be against equity and good conscience." 42 U.S.C. § 404(b).

just the Receiver's actions or omissions in challenging the Tax Claim at issue here; it is also the Receiver's failure to convert the IMCOA stock to cash when that option was available.

### 9. The Distribution Orders Are Final, Non-Appealable Orders

The Magistrate's recommendation treats the Distribution Orders—upon which Mr. Payne and hundreds of the other Claimants relied for six years—as having virtually no meaning. (See Recommendation at ¶ 11). The Distribution Orders were unambiguous in their grant of authority. The Magistrate's statement that the Distribution Orders are subject to reconsideration after six years ignores the preclusive effect of a collateral order in this receivership action and the importance of the parties' reliance upon those orders.

Under 28 U.S.C. § 1291, a small class of decisions not certified final under Rule 54(b) are, in fact, final for purposes of appeal. A collateral order is one that settles rights, makes no reservation as to its effect, and is designed to be operative irrespective of a final decree in the main litigation. Kashiske v. Baker, 144 F.2d 384, 386 (10th Cir. 1944); see Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1988) (district court decision is appealable if it a) conclusively determines the disputed question; b) resolves an important issue separate from the merits of the action; and c) is effectively unreviewable on appeal from a final judgment). A party must appeal a collateral order or be precluded from questioning the order's effect. See Kashiske. 144 F.2d at 386 (collateral order fixed parties rights to property); City of Eau Claire v. Payson, 107 F. 552, 556-57 (7th Cir. 1901) (order requiring payment to receiver that made no provision for safe-keeping or return was a final, appealable order); see also Trustees v. Greenough, 105 U.S. 527, 531 (1882) (payment of fees and costs to bondholder of company in receivership was final appealable order).

Here, the Distribution Orders are collateral orders that the Receiver (with permission from the Court) or the IRS could have appealed, but they failed to do so. Now that six years have passed, the Receiver cannot seek to modify an order fixing the Claimants' rights to Receivership property. See Rector v. United States, 20 F.2d 845, 872-73 (8th Cir. 1927) (orders authorizing receiver, inter alia, to disburse sale proceeds for final appealable orders). An order "is deemed to have conclusively determined the disputed question if the order is made with the expectation that it will be the final word on the subject addressed." Marc Dev., Inc. v. Keith-Marc Props., Ltd., 992 F.2d 1503, 1505, vacated on other grounds, 12 F.3d 948 (10th Cir. 1993); see Childress v. Aurora Nat'l Bank (In re Childress), 851 F.2d 926, 929 (7th Cir. 1988) ("[O]utside of bankruptcy, a conclusive disposition of claims to assets would be a final decision in a stand-alone suit; therefore it is an appealable order.") (quotation marks omitted). In this regard, the Loughman case is instructive as the order permitting the initial distribution in that case was explicitly subject to clawback by the receiver if circumstances changed. See Loughman, 126 F.2d at 715-16.

There can be no question but that the parties expected that the Distribution Orders conclusively established rights to property of the estate and that this Court was not likely to have the opportunity to reconsider the Disbursement Orders. The Claimants expected to be paid, and were paid, their entire claims. The Receiver and the IRS, despite the full knowledge since 2002 that the Tax Claim would be asserted once allowed by the Court, waited years to challenge those orders. The Distribution Orders simply authorized payments to creditors whose claims had either not been challenged or had been resolved. The collateral order concept confirms the common sense notion that the Distribution Orders are reliable, have meaning and, if incorrect, could and should have been challenged long ago.

## F.  CONCLUSION

For the forgoing reasons, Mr. Payne requests that this Court reject the Recommendation and require the Magistrate to set an appropriate discovery, briefing, and trial schedule with respect to the relief requested in the Restitution Motion.

8616\9000\954471.4

Respectfully submitted this 29th day of December, 2005.

**BROWNSTEIN HYATT & FARBER, P.C.**

By: _____ /s Daniel J. Garfield _____

Michael Pankow, #21212
Daniel J. Garfield, #26054
410 Seventeenth Street, 22nd Floor
Denver, CO  80202
Ph:  303.223.1100
Fax:  303.223.1111
Email: mpankow@bhf-law.com
          dgarfield@bhf-law.com

ATTORNEYS FOR MICHAEL PAYNE

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale, Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO 80202
**Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson**
ahale@halefriesen.com

Brad W. Schacht, Esq.
Otten Johnson Robinson
  Neff & Ragonetti, P.C.
950 17th St., Ste. 1600
Denver, CO 802020-2827
**Attorney for Michael Payne**
bschacht@ottenjohnson.com

Stephen D. Bell, Esq.
Dorsey & Whitney, LLP
370 17th St., Ste. 4700
Denver, CO 80202-5687
**Attorney for Eller Industries**
bell.steve@Dorsey.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum Woods and Levy
633 17th St., Ste. 2200
Denver, CO 80202
**Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Barbara Sandoval, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO 80202-1273
**Attorney for Carl D. Lucci/Albert R. Lucci**
jcage@cagewilliams.com

Glen E. Keller, Jr.
Davis Graham & Stubbs, LLP
1550 17th Street, Ste. 500
Denver, CO 80202
**Attorney for Cow Creek Band of Umpqua Tribe of Indians**
Glen.keller@dgslaw.com

Todd Blakely, Esq.
Sheridan Ross
The Denver Post Tower
1560 Broadway, Ste. 1200
Denver, CO 80202
**Attorney for Steven Rodolakis, Trustee**
tblakely@sheridanross.com

Lee M. Kutner, Esq.
Kutner Miller Kearns, P.C.
303 E. 17th Ave., #500
Denver, CO 80203
**Attorneys for Lois Mathre**
lmk@kutnerlaw.com

8616\9000\954471.4

J. Eric Elliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison Foerster, LLP
370 17th St., Ste. 3550
Denver, CO 80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Ben Franklin Station
Washington, DC  20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

**VIA E-MAIL:**
Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO 80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Douglas M. Tisdale, Esq.
Tisdale & Associates, LLC
Colorado State Bank Building
1600 Broadway, Ste. 2600
Denver, CO 80202-4989
**Attorney for Michelle Lean**
doug@tisdalelaw.com

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO 80246
**Receiver**
rblock@xpn.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO 80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

**BROWNSTEIN HYATT & FARBER, P.C.**


_____/s/ Daniel J. Garfield___
Michael J. Pankow, #21212
Daniel J. Garfield, #26054
410 17th Street, Suite 2222
Denver, CO 80202-4437
Telephone: 303-223-1100
Facsimile:  303-223-1111
mpankow@bhf-law.com
dgarfield@bhf-law.com

Attorneys for Michael Payne