SIDE AGREEMENT

Sterling Consulting Corporation, Fairfield and Woods, and the United States agree to the terms set forth below if the main settlement is approved by the Massachusetts District Court, regardless of whether that approval is upheld or reversed on appeal:

A. If the IRS receives at least $350,000 from the receivership estate, the United States will waive and release any claims to recover any tax liability (including penalties, interest, attorney fees, and costs) of IMMI or the bankruptcy debtors from Sterling or Fairfield and Woods, under any liability theory whatsoever, including, without limitation, 31 U.S.C. § 3713 and/or 26 U.S.C. § 6901 or by way of any claim for disgorgement of any part of the amounts previously received by them from the receivership estate as compensation or reimbursement of expenses, as well as the claim to recover about $93,000 in interest allegedly diverted from the bankruptcy estate funds while escrowed with the Receiver.

B. If the United States does not receive a minimum of $350,000 on or before a date that is two years after the transfer of venue to Colorado, it reserves any and all claims to seek disgorgement from Sterling and/or Fairfield & Woods and/or impose fiduciary liability on Sterling for the difference between $350,000 and the amount the United States does receive from the receivership estate (combined, but severally, so that each may be held liable for up to that amount). This is understood to extend the previously stipulated period of IRS forbearance from issuing a notice of fiduciary liability.

C. At such time (two years after the transfer of venue if $350,000 has not been distributed to the IRS), the United States may also re-file, as a separate complaint in any court of competent jurisdiction (unrestricted by paragraph 14 of the main settlement), its claim to recover up to $93,000 in interest allegedly diverted from the bankruptcy estate funds while escrowed with the Receiver, with such claim limited to no more than the difference between $350,000 and the amount it receives from the receivership estate. Sterling and Fairfield & Woods waive any argument that any statute of limitations bars such claim provided it is commenced within one year after the later of the expiration of the two-year forbearance or the cessation of distributions to the IRS under the main settlement for at least six consecutive months; provided, however, that Sterling may give written notice that it believes collections have ceased, and this shall constitute expiration of the forbearance period. Such notice shall not be effective unless sent, by certified mail, both to the IRS Area Counsel in Denver, Colorado, and to the Department of Justice, Tax Division, P.O. Box 55, Washington, D.C. 20044, enclosing a copy of this agreement and explicitly stating prominently in a cover letter that "this notice commences the one-year period under paragraph C of the enclosed agreement."

D. In the event of any litigation over the liability of Sterling and/or Fairfield & Woods for up to $350,000 as reserved under this agreement, they reserve all defenses except the following, which are barred and/or waived: (1) the determination of IMMI's tax for the year ended 9/30/99 as set forth in the Massachusetts District Court's 1/30/04 order shall be binding on Sterling and Fairfield & Woods, and all issues that could have been raised in defense to a judgment allowing such tax claim in the amount of $1,065,270 in tax, on the basis of the substantive rulings in the District Court's 6/6/03 order are barred by *res judicata* (unless such orders are reversed in an appeal, whereupon Sterling and Fairfield agree to be bound by any other final tax determination of the tax in the receivership case); (2) all issues that could have

**EXHIBIT A**

been raised in support of any right of the receivership estate to have recovered any sums from the bankruptcy estates are barred by *res judicata* (including but not limited to any claim that the tax settlement with the Trustee should not have been approved or was otherwise improper); (3) all claims that the IRS or Department of Justice or any employee of either committed any kind of misconduct in connection with the investigation or assessment of the taxes of the receivership entity or bankruptcy debtors, or in the litigation in the receivership and/or bankruptcy cases prior to the date of the approval of the main settlement agreement, are precluded and/or waived. (This does not preclude or affect any investigation by the Office of Professional Responsibility.)

    E. This side agreement shall not be affected by the reversal, on appeal, of an order approving the main settlement, or any other order associated with such approval (but this side agreement shall be void if the main settlement is not approved by the Massachusetts District Court). Further, once the main settlement agreement is approved by the Massachusetts District Court and the case transferred to Colorado, Sterling and Fairfield agree that, in the event of any reversal of the approval order on appeal, and the failure of the parties to reach a superseding settlement that is approved and not reversed on appeal, the United States shall be entitled to at least 63% of all monies disgorged by other claimants (but not including any costs or attorney fees allowed by the Colorado District Court against any claimant and awarded to the Receiver pursuant to paragraph 7(c) of the main settlement agreement), until the tax judgment, with interest is fully paid.

STERLING CONSULTING CORPORATION

By: Richard A. Block, President

FAIRFIELD AND WOODS, P.C.

By: Thomas P. Kearns, President

THE UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE

By: John DiCicco
Chief, Review Section, Tax Division
U.S. Department of Justice

2

Service: **Get by LEXSEE®**
Citation: **2002 Bankr. LEXIS 1835**

*2002 Bankr. LEXIS 1835, \*; 93 A.F.T.R.2d (RIA) 909*

In Re: INDIAN MOTOCYCLE COMPANY, INC., Debtor, In Re: INDIAN MOTOCYCLE APPAREL AND ACCESSORIES CO., INC., Debtor; In Re: INDIAN MOTOCYCLE MANUFACTURING COMPANY, INC., Debtor

JOINTLY ADMINISTERED Chapter 7, Case No. 93-41954-HJB, Chapter 7, Case No. 93-41955-HJB, Chapter 11, Case No. 94-42288-HJB

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF MASSACHUSETTS

2002 Bankr. LEXIS 1835; 93 A.F.T.R.2d (RIA) 909

March 15, 2002, Decided
March 15, 2002, Entered on Docket

**PRIOR HISTORY:** In re Indian Motocycle Co., 2001 Bankr. LEXIS 1805 (Bankr. D. Mass., 2001)

**DISPOSITION:** Prior order clarified sua sponte.

## CASE SUMMARY

**PROCEDURAL POSTURE:** After a bankruptcy court enjoined a receiver from bringing certain actions in the United States District Court for the District of Colorado, the district court entered a declaratory order regarding the receiver's obligations which essentially instructed the receiver to disregard the bankruptcy court's order and suggested that the bankruptcy court withdraw or modify that order. The bankruptcy court responded by clarifying its order.

**OVERVIEW:** At issue were disputes between the trustee of jointly-administered Chapter 7 estates and the receiver in the district court action. The bankruptcy court held that money delivered to the receiver to satisfy claims in the bankruptcy estates was "property of the estate" under 11 U.S.C.S. § 541(a) and that the funds had to be returned to the trustee for disposition by the bankruptcy court. The receiver continued discovery in the district court, apparently trying to affect the determination of tax obligations against the bankruptcy estates. At the request of the U.S., as tax claimant, the bankruptcy court ordered the receiver to return the funds, account for the interest accrued, and terminate the discovery ongoing in the district court. After the receiver presented new theories to the district court, the U.S. sought and received an order from the bankruptcy court enjoining the receiver from bringing actions before the district court concerning an administrative tax claim, the receiver's claim against the estates, or the distribution of disputed funds. The bankruptcy court attempted to clarify what it felt were the district court's misconceptions about the nature of its order.

**OUTCOME:** The court clarified portions of its order that it believed the district court had misconstrued, stated that it acted in the only fashion permitted by law, and that its orders had to be followed unless stayed or reversed by an appellate court.

**CORE TERMS:** receiver, automatic stay, misinformed, receivership, accounting, respectfully, reversal, complementary, applicability, settlement, injunction, discovery, reserved, enjoin, tax claim, cooperation, comity, void, goes, concurrent jurisdiction, wholly different, interest accrued, applicable law, pending appeal, status quo, inappropriate, distributed, outstanding, referenced, appealing

## LexisNexis(R) Headnotes  Hide Headnotes

Bankruptcy Law > Practice & Proceedings > Jurisdiction

Bankruptcy Law > Automatic Stay

**EXHIBIT B**

HN1 Whether a district court has the jurisdiction to determine the applicability of the automatic stay is a wholly different question from whether the parties before the district court are violating the automatic stay by proceeding in that court, and a wholly different question from whether the bankruptcy court should make that determination. While a receiver is a functionary of the district court for many purposes, the receiver, in the course of performing its duties, is no more than any other party who brings matters to the district court for adjudication. And when the prosecution of those matters violates the automatic stay with respect to which a bankruptcy court has at least concurrent jurisdiction, the bankruptcy has the jurisdiction and duty to say so. More Like This Headnote

**COUNSEL:** [*1]  For Indian Motocycle Co., Inc., Debtor (93-41954): Indian Motocycle Co., Inc., Springfield, MA.

For Stephan M. Rodolakis, Trustee (93-41954): Mark S. Foss, MacCarthy, Pojani & Hurley, Worcester, MA.

For Stephan M. Rodolakis, Trustee (93-41954): Paul D. Moore, Duane Morris LLP, Boston, MA.

For Indian Motorcycle Apparel and Accessories Company, Inc., Debtor (93-41955): Richard W. Rutherford, Anderson, Rutherford, Geil & Scherer, Raliegh, NC.

Stephan M. Rodolakis, Trustee (93-41955, 94-42288), MacCarthy, Pojani & Hurley, LLP, Worcester, MA.

For Indian Motocycle Manufacturing Co., Inc., Debtor (94-42288): Robert S. Adler, Seder & Chandler, Worcester, MA.

For Indian Motocycle Manufacturing Co., Inc., Debtor (94-42288): William G. Berggren, Smith Debnam Hibbert & Pahl, Raleigh, NC.

**JUDGES:** Henry J. Boroff, United States Bankruptcy Judge.

**OPINIONBY:** Henry J. Boroff

**OPINION: ORDER OF CLARIFICATION**

This Court is in receipt of an "Order Regarding Receiver's Obligations" (the "District Court Order"), dated February 28, 2002, and issued by United States District Court Judge Zita L. Weinshienk, Senior Judge of the United States District Court for the District of Colorado [*2]  ("the Colorado District Court"). The February 28 Order was issued in the case of *Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.*, 2002 U.S. Dist. LEXIS 8315, Civ. Action 95-Z-777 (D. Colo. Feb. 28, 2002) (the "Receivership Proceedings") pending in that court, presumably at the instance of Sterling Consulting Corporation, the Receiver in those proceedings (the "Receiver"). n1 The District Court Order is declaratory in nature, but appears to relate to an order issued by this Court on November 21, 2001 (the "November 21 Order"), enjoining certain actions by the Receiver. A copy of the November 21 Order is annexed hereto.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Order does not reference a motion or other request by the Receiver.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The District Court Order essentially instructs the Receiver to disregard this Court's November 21 Order and evinces significant frustration by the District Judge. Furthermore, Judge Weinshienk openly "suggests that [this Court] should withdraw or modify" its November 21 Order. Although the Colorado Court is not a party in these proceedings,  [*3]  comity and respect for the opinions of any other court

impels this Court to respond in order to clarify any misunderstandings that may have contributed to the Colorado Court's frustration and to the making of such a "suggestion." Indeed, the language of the District Court Order contains various facts which are incorrect as a matter of record. To the extent that the District Judge was misinformed, those facts may have affected the Colorado Court's specific views or general impressions. Accordingly, this Court deems this Order as one of clarification, initiated by this Court, *sua sponte*.

I. THE BACKGROUND

The facts and travel of the disputes between the Trustee in Bankruptcy (the "Trustee") of these jointly administered Chapter 7 estates (the "Bankruptcy Estates") and the Receiver were exhaustively set forth by this Court in its Orders and extensive Memorandum of Decision, dated August 3, 2001 (the "August 3 Orders"; "August 3 Memorandum"). See In re Indian Motocycle Co., 266 B.R. 243 (Bankr. D. Mass 2001). A copy of each of the August 3 Orders and the August Memorandum is annexed hereto. The purpose of that historical recitation was to explain why, consistent [*4] with its view of the facts and applicable law, this Court believed that a certain $ 1.2 million delivered to the Receiver in escrow in order to satisfy claims in these Bankruptcy Estates (including claims by the Receiver against the Bankruptcy Estates) was "property of the estate" under 11 U.S.C. § 541(a) and why the funds must be returned to the Trustee for further disposition by this Court and an accounting rendered.

Originally, of course, this Court and the Colorado Court had planned otherwise. By complementary orders issued by the two courts, this Court attempted to cede jurisdiction over outstanding administrative tax claims against the Bankruptcy Estates to the District Court, and the District Court attempted to accept that jurisdiction. See United States v. Sterling Consulting Corp. (In re Indian Motocycle, Co.), 259 B.R. 458 (2001), *vacated and superseded* by Sterling Consulting Corp. v. United States, 261 B.R. 800 (BAP 1st Cir. 2001) and by Sterling Consulting Corp. v. United States, 245 F.3d 1161 (10th Cir. 2001), cert. denied, 534 U.S. 1114, 122 S. Ct. 921, 151 L. Ed. 2d 885 (2002). [*5] That effort failed. Upon appeal by the United States, the Bankruptcy Appellate Panel for the First Circuit and the Tenth Circuit Court of Appeals issued their respective reversals. Sterling Consulting Corp. v. United States, 261 B.R. 800 (BAP 1st Cir. 2001); Sterling Consulting Corp. v. United States, 245 F.3d 1161 (10th Cir. 2001), cert. denied, 534 U.S. 1114, 122 S. Ct. 921, 151 L. Ed. 2d 885(2002). Following those reversals, this Court, again at the insistence of the United States, sought to return matters to the *status quo ante*. Despite these efforts, return and accounting of the funds transferred to the Receiver and the interest earned thereon was not forthcoming. Moreover, the Receiver continued litigation and/or discovery in the District Court, with the apparent purpose of affecting the determination of tax obligations against the Bankruptcy Estates (which determination had been reserved to this Court alone by both the First Circuit BAP and the Tenth Circuit Court of Appeals). The United States, the affected tax claimant, sought injunctive and other relief against the Receiver, claiming a violation by the Receiver of the [*6] automatic stay provisions of the Bankruptcy Code. This Court repeatedly encouraged settlement, but without success. Finally, this Court was required to rule, in light of the automatic stay under 11 U.S.C. § 362(a) and the exclusive jurisdiction over estate property conferred by 28 U.S.C. § 1334(a) on the United States District Court for the District of Massachusetts (of which this Court is a unit), that the Receiver must return the funds delivered to him in escrow, account for the interest accrued and terminate the discovery ongoing in the Colorado District Court. The Receiver appealed to the United States District Court for the District of Massachusetts, but sought no stay from that court pending appeal.

On August 20, 2001, the Magistrate Judge to whom the Receivership proceedings had been referred, issued his decision in response to the Receiver's request for instructions. The Magistrate Judge disagreed with this Court's view of the applicable law, but he instructed the Receiver to return the $ 1.2 Million to this Court, to provide an accounting of interest in some form, and to defer the outstanding discovery. The moneys were subsequently [*7] returned and are now held by the Trustee, subject to further order of this Court. However, the accounting was repeatedly delayed. n2 In the interim, the Receiver presented new theories to the Colorado District Court supporting its power to distribute the $ 1.2 million now held by the Trustee and/or affect the determination of the administrative tax claim, if any, owed by the bankruptcy estates to the United States.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Notwithstanding the August 3 Order, the Receiver simply ignored the deadline set forth in that Order for providing the accounting on accrued interest. Extensions were sought from and granted by the Colorado Magistrate Judge.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The United States responded by seeking renewed injunctions against the Receiver in this Court. Again, in light of 11 U.S.C. § 362(a) and 28 U.S.C. § 1334(a), this Court had no option. In a carefully worded Order dated November 21, 2001, this Court crafted an injunction tailored to enjoin the Receiver from bringing any actions before **[*8]** the District Court which would (i) affect the administrative tax claim, (ii) determine the Receiver's claim against the Bankruptcy Estates, or (iii) determine the distribution of the funds which this Court had already held were property of the Bankruptcy Estates and which both Courts had previously ruled were to be distributed by the Trustee. Once more, the Receiver appealed this Court's Order to the United States District Court for the District of Massachusetts, but sought no stay from that court pending appeal.

II. THE DISTRICT COURT ORDER

The District Court Order begins by noting that "on or about November 9, 2001, Bankruptcy Judge Henry J. Boroff entered an Order Enforcing Stay and Injunction (Bankruptcy Order) which appeared to enjoin and restrain the Receiver for this Court, Sterling Consulting Corporation, from filing any motions or papers with this Court." (Dist. Ct. Order at 1.) The District Court is misinformed. This Court's Order was dated *November 21, 2001*, not November 9, 2001. Further, it did not have the title referenced in the District Court Order. This Court's Order was simply titled "Order." And this Court's November 21 Order did not enjoin the Receiver **[*9]** from filing "any motions or papers" with the District Court. Rather, the November 21 Order, as specifically set forth above, was tailored to restrain certain kinds of requests which this Court deemed inconsistent with holdings of the Tenth Circuit Court of Appeals, the First Circuit BAP and with § 362(a) of Title 11 and § 1334(a) of Title 28 of the United States Code. (November 21 Order at P 2.)

The District Court Order proceeds to recite that this Court's November 21 Order referred specifically to certain requests by the Receiver and claims to quote a finding in Paragraph 1 of this Court's November 21 Order stating that the Receiver's requests to the District Court would have the effect of "impeding the IRS's ability to claim administrative taxes against the bankruptcy debtor, Indian Moto[r]cycle Company." (Dist. Ct. Order at 1.) The District Court is misinformed. The November 21 Order does not contain that quoted language.

The District Court Order then states that the November 21 Order reflected this Court's determination that the Receiver had violated §§ 362(a)(1), 362(a)(4) and 362(a)(3). Id. Again, the District Court is misinformed. The November Order reflected this **[*10]** Court's determination that the Receiver had violated §§ 362(a)(1), 362(a)(3) and 362(a)(6). (November 21 Order at P 1(b).)

The District Court Order further claims to quote a ruling by this Court in Paragraph 1 of the November 21 Order to the effect that the "[Receiver's pleadings to the District Court] are void and any ruling of the Colorado Court granting such relief shall be void." (Dist. Ct. Order at 1.) The District Court is misinformed. The November 21 Order does not contain the quoted language. Indeed, this Court made no determination as to the voidability of rulings of the District Court and specifically denied a request of the United States to make such a determination with respect to future District Court rulings. n3 (November 21 Order at P 3.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Granted, this Court did, in a footnote, cite First and Tenth Circuit Court of Appeal cases holding acts in violation of the automatic stay to be void. (November 21 Order, n.4.) This Court, however, did nothing more.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The District Court Order goes on to state **[*11]** that this Court

> referred to parts of various motions that had been filed with [the District Court] as illustrative of the pleadings and motions that [it] was banning the Receiver from filing, including the Receiver's Motion To Reconsider Order of August 20, 2001, and the Receiver's Response to IRS's Motion for Partial Reconsideration by Magistrate Judge Schlatter of August 20, 2001 Order Regarding Pending Motions.

(Dist. Ct. Order at 1.) The District Court is misinformed. Although this Court did refer to a motion filed by the Receiver with the District Court, pursuant to 28 U.S.C. § 2410, this Court referred to no other pleadings filed by the Receiver with the District Court.

In many respects, the most troubling part of the District Court Order is its assertion that "in the past, [the District Court] has made efforts to coordinate its activities and rulings with those of the Bankruptcy Court. Unhappily, Judge Boroff's Order of November 9, 2001, evidences a lack of reciprocal efforts to coordinate the rulings of the two courts." Id. at 2. The August 3 Memorandum details the history of this Court's cooperation. Notwithstanding the competing **[*12]** claims by the Receiver and Trustee to the valuable "Indian" trademarks, this Court cooperated with the sale process with respect to which the Receiver and the District Court took a leading role, issued complementary rulings with respect thereto, and ultimately approved various settlements of disputes between the Receiver and the Trustee. n4 Indeed, and somewhat ironically, the current difficulties grow out this Court's most recent cooperative effort, i.e., this Court's ceding of its jurisdiction to the Colorado District Court to enable it to determine the administrative tax claims against the Bankruptcy Estates. This Court shares the disappointment that accompanies the reversal of those complementary rulings by the First Circuit BAP and the Tenth Circuit Court of Appeals, but this Court's attempts to return to the *status quo ante* ought not to be viewed as acts lacking in comity or reciprocity. They are rulings which this Court felt obligated to issue on account of rulings of appellate courts, and were requested by the United States after the Receiver and Trustee failed to seek a stay pending appeal of those appellate rulings.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 Granted, this Court did protest to the Receiver and threatened to withdraw its cooperation when the Receiver attempted, during and after the sale process, to limit payments to the bankruptcy creditors. The Receiver had assured this Court that its cooperation with a sale to be conducted through the auspices of the Colorado Court would result in all bankruptcy and receivership creditors being paid in full. After this Court's orders granting leave to go forward with a combined sale process, the Receiver adopted a different view. However, even those disputes appeared to be "settled," when moneys represented by the Trustee to be sufficient to pay those creditors were reserved therefor by the Receiver and the Trustee, and this Court approved even that settlement. Notably, the $ 1.2 million which is, in part, the subject of the current dispute is the residue of those reserved funds. Moreover, while the Receiver has reportedly paid all of the Receivership creditors in full, the prospects for paying all bankruptcy creditors in full grows dimmer with the passage of time.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*13]**

The District Court goes on to associate this situation with the case of Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 140 B.R. 969 (N.D. Ill. 1992), in which Judge Frank H. Easterbrook, Court of Appeals Judge for the Seventh Circuit, sitting by designation as a district judge, authored some surprisingly harsh criticism toward a bankruptcy judge who issued a somewhat similar order. (Dist. Ct. Order at 2-3.) The District Court cites cases which hold that "not only the Bankruptcy Court, but also the court in which other litigation exists, may construe the automatic stay." Id. at 3. The District Court goes on to remind this Court that the Receiver is an arm of the District Court, and describes this Court's implied threat "to hold the Receiver in contempt of [this] Court for doing nothing more than to fulfill its obligations as receiver" as "inappropriate and intemperate." Id.

No ruling by this Court has ever held the Receiver in contempt, although the basis for such a ruling may, from time to time, have been present. Further, the Receiver has repeatedly reminded this Court of a string of cases which would (seemingly with justification) [*14] preclude such a finding made with respect to a person subject to conflicting court orders.

This Court does respectfully disagree with the view that the District Court should construe the automatic stay with respect to the matters now in dispute, i.e., pleadings which impact the administrative tax claims against the Bankruptcy Estates, and the distribution (even to the Receiver) of the $ 1.2 Million which this Court has held to be "property of the estate" and the interest accrued on those moneys. The decisions cited in the District Court Order do hold that both the bankruptcy court and the district court have concurrent jurisdiction to determine the applicability of the stay under the circumstances set forth in those cases. However, Mahurkar is the only cited case where a district court sought to exercise jurisdiction after a bankruptcy court ruled on the applicability of the automatic stay. Furthermore, in none of those cases had the exclusivity of the bankruptcy court's jurisdiction (as here with respect to the determination of the administrative tax claim) already been determined by appellate courts. Indeed, in the case of In re Baldwin-United Corp. Litigation, 765 F.2d 343, 347-48 (2nd Cir. 1985), [*15] cited by the District Court, the Second Circuit Court of Appeals reversed the district court's order enjoining the debtor from seeking the bankruptcy court's enforcement of the automatic stay against the defendant in an action before the district court.

Accordingly, HN1 whether a district court has the jurisdiction to determine the applicability of the automatic stay is a wholly different question from whether the parties before the district court are violating the automatic stay by proceeding in that court, and a wholly different question from whether the bankruptcy court should make that determination. Id. at 346-49 (stating that the equities favor construction by the bankruptcy court of its own stay over a district court determination). See also, Fidelity Mortg. Investors v. Camelia Builders, Inc., 550 F.2d 47, 57 (2nd Cir. 1976), cert. denied, 429 U.S. 1093, 51 L. Ed. 2d 540, 97 S. Ct. 1107 (1977). While this Court recognizes that the Receiver is a functionary of the District Court for many purposes, the Receiver, in the course of performing its duties, is no more than any other party who brings matters to the [*16] District Court for adjudication. And when the prosecution of those matters violates the automatic stay with respect to which this Court has at least concurrent jurisdiction, this Court respectfully submits that it has the jurisdiction and duty to say so.

Further, this Court respectfully declines to view the Receiver as an alter ego of the District Court. And for another good reason. This Court declines to impute to the District Court the tone and language which the Receiver has used in referring to this Court in pleadings filed with the District Court and generally distributed. Many of those pleadings contain statements which are untrue, out of context or disrespectful to bankruptcy courts and to this Court in particular. n5 This Court has repeatedly complained about pleadings or positions taken by the Receiver, but has noted these and other provocative statements with the resignation that judges often feel when there is no adequate remedy to deal with a party's inappropriate or disrespectful remarks out of court. This Court has also been reticent to exacerbate an already difficult matter.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 In only recent examples, this Court would note a pleading filed with the District Court seeking reconsideration of the Colorado Magistrate Judge's August 20, 2001 order. In that pleading, the Receiver sought to explain to the Magistrate Judge why it chose to appeal this Court's August 3 Order to the United States District Court for the District of Massachusetts rather than to the First Circuit BAP. Referring to its disappointment following the reversal by the First Circuit BAP of this Court's December 30, 1999 order, the Receiver quips in a footnote: "Although late, the Receiver has figured out that appealing a receivership issue to the BAP is nothing more than appealing a receivership issue to three bankruptcy judges who are therefore three times more likely to get it wrong than one bankruptcy judge." (Receivership Proceedings, Receiver's Resp. to the IRS's Motion for Partial Reconsideration by Magistrate Judge Schlatter of August 20, 2001 Order Regarding Pending Motions, n.14.) And in the Receiver's recent Motion to the Judicial Panel on MultiDistrict Litigation for Consolidated Proceedings Pursuant to 28 U.S.C. § 1407, the Receiver described two orders of this Court as "unseemly." (Receiver's Motion for Transfer of Actions for Consolidated Pretrial Pursuant to 28 U.S.C. 1407, at 6, P 43.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*17]**

This Court hopes that on a more intensive review of the pleadings and the background to the statements of the Receiver, the District Court will conclude that, notwithstanding any difference of views between the District Court and this Court on jurisdictional issues, this Court's approach toward the District Court has steadfastly been one of respect and comity; and that this Court's passivity in the face of substantial provocations by the Receiver has been an exercise in judicial restraint and temperance.

IIII. CONCLUSION

This Court respectfully believes that the District Court's February 28, 2002 order is premised on misinformation. The language cited by the District Court is not contained in this Court's November 21 Order. This Court regrets the current differences in the views between this Court and the District Court. However, this Court believes that it has acted in the only fashion permitted by law.

If this Court's rulings are incorrect, those rulings should be reversed by the appropriate appellate bodies. If appropriate grounds appear therefor, those appellate bodies should be requested to issue a stay pending appeal. But, until and unless stayed or reversed, this **[*18]** Court's rulings are entitled to the respect of all parties who appear before this Court. This Court believes that the District Court would agree with that premise.

The Clerk of this Court is ordered to serve this Order, by mail, on counsel for the Receiver, the Trustee, counsel for the United States n6, the United States trustee, and all of those entities served by the Receiver with the District Court Order referenced above, and to forward an additional copy to the attention of the Honorable Zita L. Weinshienk, Senior District Judge of the United States District Court for the District of Colorado.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 A copy of this Order, but without the exhibits, shall also be transmitted to counsel for the United States by facsimile transmission.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

DATED: March 15, 2002

Henry J. Boroff

United States Bankruptcy Judge

Service: **Get by LEXSEE®**
Citation: **2002 Bankr. LEXIS 1835**
View: Full
Date/Time: Wednesday, December 28, 2005 - 5:10 PM EST

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- Q - Questioned: Validity questioned by citing refs
- ▲ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- A - Citing Refs. With Analysis Available
- I - Citation information available

* Click on any Shepard's signal to Shepardize® that case.