UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-ZLW-OES

In re: Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

---

**RESPONSE TO MICHAEL PAYNE'S OBJECTION TO MAGISTRATE JUDGES RECOMMENDATION THAT RECEIVERS MOTION FOR RECONSIDERATION BE GRANTED**

---

Sterling Consulting Corporation, as receiver, by and through its attorneys, Fairfield and Woods, P.C., hereby files this Response to Michael Payne's Objection to Magistrate Judges Recommendation that Receiver's Motion for Reconsideration be granted ("the Objection").

**Introduction**

The Recommendation and proposed Order are not "plainly erroneous or contrary to law." As a result, they must be affirmed. Fed.R.Civ.P. 72. Indeed, the Recommendation and proposed Order go far beyond the Rule 72 standard and are correct and proper under the particular facts of this case. The Objection should be overruled.

**Factual Procedural Background**

The receiver incorporates by reference the United State's Response to Mr. Payne's Objection (the "United States' Response").

Mr. Payne's claim of lack of notice is completely without merit. Mr. Payne was ably represented by counsel the entire time this case was in Colorado. When the case was transferred to Massachusetts in 2002, Mr. Payne could have had his counsel, like

anyone else, enter an appearance in Massachusetts and keep track of the proceedings there. He elected not to do so.

On April 28, 2005, when the Settlement Agreement with the Trustee and the Government was tendered to the Massachusetts District Court, every single person in the entire estate was given notice, including Mr. Payne (through his counsel, Otten, Johnson). A copy of this notice is attached to the United States' Response.

When the case was transferred back to Colorado in September, 2005 one of the first parties undersigned counsel contacted was Mr. Payne's attorney of record. Mr. Schacht said he did not know if he would continue to represent Mr. Payne, because the representation had been based on the familial relation which had been changed. Regardless, the message that Mr. Payne needed to pay attention was conveyed as best it could by undersigned counsel.

The Court held two status conferences (September 29 and October 7, 2005) which totaled more than three hours between them. Mr. Payne participated *pro se* in each of the status conferences. Mr. Payne asked numerous questions at each status conference. The status conferences addressed the vast majority of the issue that Mr. Payne raises now.

The receiver then filed the formal Motion for Reconsideration which was granted. This Motion was not a surprise to anyone, least of all Mr. Payne. The reasons for the Motion and legal authorities behind the motion had already been reported to the Court and all claimants and multiple receiver reports were discussed in detail at the two status conferences. In fact, as Mr. Payne acknowledges in his Objection, when he received his payment he just quit paying attention. Obj. pp 5-6.

2

Further, Mr. Payne's description of the issues that gave rise to the tax which was determined to be due by the Massachusetts District Court are incorrect. The stock which he references has nothing to do with him at all. On this point the receiver incorporates the United States' Response.

## Standard Review

Contrary to the argument of Mr. Payne, the Recommendation entered by Magistrate Schlatter is not "dispositive." Rather, Magistrate Judge Schlatter entered a Recommendation rather than an Order himself because one of the three Distribution Orders being reconsidered had been entered by the District Court, and Judge Schlatter lacked authority to reconsider such an Order. As a result, this Court's review is limited to whether the Recommendation was "plainly erroneous or contrary to law." Fed.R.Civ.P. 72.

Even if this Recommendation is somehow considered dispositive, under *de novo* review it should still be affirmed. The Recommendation by Magistrate Judge Schlatter is correct.

## Argument

1. <u>Mr. Payne has had notice and opportunity to be heard and thus has had ample due process</u>.

Mr. Payne simply ignored all the proceedings as they went on until the last minute. He received notice after notice of the proceedings, including a notice from the receiver that the Massachusetts District Court had entered the tax Order against the receiver and that might subject Mr. Payne to disgorgement, and the motion to approve the settlement agreement which would precipitate the necessary restitution. He also

3

participated in two status conferences *pro se* and was represented by counsel on the motion for reconsideration that is the subject of this Objection.

Like many others before in case, Mr. Payne is incorrectly arguing that "due process" requires full-blown, complex commercial litigation procedures. This is not true; all due process requires in a notice and opportunity to be heard. The cases so holding are too many to list. *E.g. Rutter and Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180 (10th Cir. 2003) (affirming overruling of objections where objectors were not allowed to put on evidence and not allowed to present rebuttal affidavits; "The universal rule of due process is fairness; the trial court afforded all parties to the settlement, including [objector], such fairness.").

Not only did Mr. Payne receive all that due process required, the abbreviated procedures used by the Court in this receivership have worked to his advantage. Mr. Payne received the benefits of the abbreviated proceedings when they resulted in the receiver's extraordinary success in this case. Aside from the IRS, Mr. Payne received the largest payment of any pre-appointment claimant by the receiver.[1] Absent those

---

[1] All though Mr. Payne refers to a proposed Order that he pay $135,000.00, this is incorrect. Mr. Payne received $580,000.000 in payments and thus 24.37% would be $141,230.00. The proposed Order contains a mechanism for resolving this dispute. In addition, if Mr. Payne had made restitution prior to December 27, 2005 he would have gotten the benefit of a discount from an early payment incentive program that Magistrate Judge Schlatter has already approved. This discount would have reduced Mr. Payne's restitution form $141,230 to $116,000, and it would have given Mr. Payne additional protection from further efforts of the receiver for more money. In fact, Mr. Payne may still be able to obtain the benefit of the discount (and protection from further restitution) if Magistrate Judge Schlatter extends the incentive program. As soon as certain events unfold, the receiver expects to Motion the Court to extend the incentive program on a modified basis for at least two weeks, and probably more. As both the United States and the receiver will support the extension, and it is unlikely that anyone will object, it is possible that the extension will be approved.

abbreviated procedures, the costs of litigation would have destroyed the receivership. Mr. Payne cannot complain now that those same abbreviated procedures are improper.

Further, of course, Mr. Payne has this review. Thus, Mr. Payne has had at least six months notice of the procedures (two years, counting the first notice of the Tax Order) and four hearings in which he could participate in and make his arguments. And participate and argue he did. He has had ample notice and an opportunity to be heard; due process has been satisfied.

2.  The receiver has standing.

The argument that the receiver should not take sides between creditors, in the abstract, is generally correct. What Mr. Payne fails to recognize, however, is that the receiver is allowed to determine priority of creditors, *i.e.*, whether some creditors are entitled to be paid prior to other creditors. This is routine receivership work and it happens in every receivership (and every bankruptcy, for that matter).

Further, this is not a dispute between two creditors, one of which is Mr. Payne and the other of which is the United States. The dispute was formerly between the United States and the receiver acting on behalf of the Receivership Estate (and has been resolved). The current dispute is between Mr. Payne and the receiver (because the receiver paid money to Mr. Payne that should have been paid to the United States).

As to any competition between Mr. Payne and the United States, the United States will prevail, and 31 USC § 3713 (the Debt Priority Statute) makes it the receiver's obligation to ensure that the United States prevails. In this case, the United States is an administrative claimant. Mr. Payne is a pre-appointment claimant. It is

certainly the receiver's job to enforce the Debt Priority Statute and manage the priority of claims.

3. <u>The statue of limitation is not applicable in this matter</u>.

There is no statue of limitations issue in this case. Mr. Payne was a claimant and received $585,000.00 under three interim Orders. Those orders were entered by mistake and are now being corrected. Mr. Payne is simply not entitled to keep the money which he received incorrectly.

4. <u>The proposed Order is proper for not including Finality language</u>.

Mr. Payne again is confused about the finality of the prior Orders and the recommended Order. None is final, and thus the lack of requisite findings for a certification of finality under Fed.R.Civ.P. 54(b) is not a defect, but rather proper. Because the matter is not final, there is no reason there should be factual findings which would form the basis of finality.

5. <u>The factual basis of the recommended Order is proper</u>.

The receiver has time and again explained its math in connection with its Motion to Reconsider. The United States obtained a tax judgment of $1.5 million dollars (including interest). Absent the Settlement Agreement, there would be approximately another $1 million in additional interest in penalties.[2] Additionally, the receivership

---

[2] Contrary to the United States' assertion that the receiver was not obligated to pay the $4 million the United States assessed in taxes against the Bankruptcy Estates, this Court may recall that the Massachusetts Bankruptcy Court threatened the receiver with incarceration for contempt for refusing to pay the administrative claims of the Bankruptcy Estates, including the assessed taxes. Although this $4 million may not have been a direct tax liability of the Receivership Estate, absent the settlement, it very likely could have been an administrative claim that would have cost Mr. Payne his entire dividend. In addition, there are a few other assertions directed to the receiver's actions in the United States' Response that may be critical of the receiver, but have

estate has incurred in excess of a million and a half dollars in receiver's fees and attorneys' fees operating the Receivership Estate, including litigating with the United States over these issues. That adds up to $4 million dollars, not including the liability to the Bankruptcy Estates.

Through the very wise settlement of the receiver, however, the estate only has to disgorge one million dollars of this amount. There are approximately $6.5 million in pre-appointment claims (the claimants with the lowest priority of payment), and that is how the 24.37% disgorgement number was achieved (when the approximately $6.5 million in claims was divided by the approximately $1.5 million in taxes, the result was the 24.37%). Furthermore, in the unlikely event there is any excess, it will be returned pro-rata to those who paid in, and in the likely event that some claimants will pay and others will not, the receiver will ask the Court to allow the paying claimants the right of subrogation against the non-paying claimants.

6.   The equities support disgorgement.

Mr. Payne is correct that this proceeding is an equitable receivership, not a bankruptcy. That does not mean that the case law from bankruptcies and other statutory schemes provide no guidance for the Court, however. Rather, they are persuasive authority that show the Court that recoupment from the lowest priority claimants to pay the claims of higher priority claimants is perfectly proper. The Debt Priority Statute, in particular, makes it law that the United States has a higher priority than Mr. Payne.[3]

---

no bearing on the Objection. Although the receiver disagrees with the assertions, because they do not relate to the Objection, the receiver will not address them here.

[3] The law is not so clear, to say the least, that the United States gets paid as a priority over the receiver, but that matter has been resolved for the purposes of this case and will be left for another day in another case.

Further, the Magistrate Judge's reference to the Internal Revenue Code was entirely proper. The Internal Revenue Code, as the receiver has learned painfully in this matter, tends to trump receivership law (at least that is the way Senior Judge Keeton and the Tenth Circuit looked at the matter). As a result, the Magistrate Judge's recognition that if he did not recommend restitution then certain consequences would occur as a result of the tax code is simply one of the factors he correctly weighed in deciding to enter the order he did. The United States' Response confirms this.

7.   <u>Mr. Payne had full opportunity to present his defenses</u>.

As noted above, Mr. Payne, perhaps more that any other single claimant, participated fully in this matter. He certainly could have presented testimony if had he chosen to do so at the December 13, 2005 hearing. He never offered to call any witnesses and never made an offer of proof as to what those witnesses would say. That being the case, there is no basis for him to claim now that he has been denied defenses.

8.   <u>The equities favor restitution</u>.

All of the rhetorical questions raised by Mr. Payne in this section of his brief are simply that—rhetorical questions. Virtually all of them have been raised at the status conferences or in the other matters before the Magistrate Judge.

Further, in this section Mr. Payne contradicts his own prior arguments. For example, he raises the rhetorical issue "the failure of the receiver to notify claimants of the potential disclosure for five years," after acknowledging earlier in his brief that once Mr. Payne received his money he simply quit paying attention. The receiver gave notice, after notice, after notice, after notice to anyone who would listen that there was

significant problem in this matter. The fact that Mr. Payne took the "head-in-the-sand" approach and pretended not to hear the notices is not an equity that weighs in his favor.

In considering the equities, the Court should do some simple math and realize that Mr. Payne is better off under the recommended Order than he would have been had the receiver gone down the path Mr. Payne now claims the receiver should have.

Mr. Payne essentially contends that the receiver erred in not paying the taxes when they were due. This ignores the facts that: (a) the amount initially claimed by the United States was greater than the amount ultimately awarded by the Massachusetts District Court (and much greater than the settlement amount); and (b) Mr. Payne and the other general, unsecured creditors would have had to pay it.

Specifically, the assessment filed by the United States stated (at p. 26), "Notwithstanding that the Court approved the Receiver's proposal to treat claims against Motor the same as claims payable by IMMI, there is no justification for allowing deductions for such Motor liabilities as ordinary and necessary business expenses of IMMI per IRC 162." This resulted in $3,579,252 in denied deductions. If the receiver had paid the taxes in 1999 under the United States' theory, the receiver would have done so out of money that otherwise would have gone to Mr. Payne and the other Motor claimants. If it is not ordinary and necessary for tax purposes, it would not be ordinary and necessary for any purposes. Mr. Payne's share of this would have been about $315,000, whereas now he is being required to repay $141,230.

$1,585,470 was the amount of the federal income tax the Massachusetts District Court determined was payable by the Receivership Estate (and this did not include the understatement penalty of $389,094 and the late payment penalties and taxes). This