number was reduced by a reallocation of taxes to the Bankruptcy Estates resulting in a tax liability of $3,660,384 (plus a penalty of $313,299). Had the receiver simply paid the taxes in the amount of for 1999 in the amount of $1,585,470, it would also have been compelled to pay the taxes for the Bankruptcy Estate (with the taxes and other claims of the Bankruptcy Estates capped at $3,500,000). When the receiver indicated it was refusing to pay the post-petition taxes of the Bankruptcy Estates, Mr. Block would threatened with incarceration for contempt by Judge Boroff.

Using approximately $6.5 million in unsecured claims paid by the receiver, at best, the charge to Mr. Payne's dividend to pay only the base taxes that were found due would have been would 24.37% of his claim according to the receiver's calculations, or the same amount that Mr. Payne is being asked to pay now. (If he pays earlier, he will get a discount to 20%, and actually experience a net savings). That is the best he could have done, and he could have done much worse, particularly if the receiver and its counsel had been paid for their work. In this instance, the receiver would have been in a position to close the estate and it and its counsel would have been paid for their work, which would have further reduced the dividend to Mr. Payne.

In addition, the receiver would have been in a position to close the estate and it and its counsel would be paid for their work, which would have further reduced the dividend to Mr. Payne.

But none of that happened. What happened was that Mr. Payne was paid in full ($585,000) in 1999, Mr. Payne has therefore had the $141,230 the receiver now seeks for six years, and the receiver and his counsel have litigated with the United States without being paid for the last five years. During that time, the amount Mr. Payne has

10

to pay toward the taxes of Motor has gone down from $315,000 to $141,230.  If Mr. Payne takes advantage of the receiver's proposed plan for prompt payment (as many other claimants have and will), he would pay only $116,000.  Thus, even ignoring the fact that Mr. Payne has essentially had an interest-free loan for six years, he still is comes out far ahead.  This underscores the fact that the receiver's chosen course (which was approved by this Court at every step of the way) was the correct one.

Finally in weighing the equities, the Court should consider what happens if Mr. Payne prevails and the prior error is not corrected.  The United States will seek the money from Sterling Consulting Corporation and Fairfield and Woods, P.C., in Tax Court (indeed, the United States previously assessed Sterling for the taxes).  Both Sterling and Fairfield and Woods will have very limited defenses to that claim.

Both are administrative creditors, whereas Mr. Payne is an unsecured (lower priority) creditor.  Further, both Sterling and Fairfield and Woods, despite their status, have already taken an underpayment of more than the %24.37 percent sought from Mr. Payne (due to the fact that they have worked without pay for the last 5 years).  And on top of this Mr. Payne wants to keep his 100% pay out, while higher-priority creditors have to pay back the less than 75% distribution they have received to date.  That would be entirely inequitable.

9.      The distribution orders were not final and thus can be reconsidered.

The Distribution Orders were not certified final under Fed.R.Civ.P. 54(b), and therefore were not final.  This makes them subject to reconsideration at any time.  Fed.R.Civ.P. 54(b).  Although 28 U.S.C. § 1292, cited by Mr. Payne, has express references to certain orders of receiverships being immediately appealable even without

11

certification, interim distributions (and even final distributions) are not found in that statute. Under the well-recognized statutory interpretation aid of *unius est exclusio alterius* ("to list some excludes others"), distribution orders from receiverships are not immediately appealable under 28 U.S.C. 1292.

The above numbered sections correspond to the same numbered sections in Mr. Payne's Objection. There are, however, two overriding points that do not correspond to a specific section of Mr. Payne's objection and a brief reply to the United States' response, as follows:

10.     Potential Hardship.

Mr. Payne indicates that restoring the money to the Receivership Estate might present a hardship for Mr. Payne that he cannot support. The receiver anticipated this, and has others with this same circumstance. In those instances, the receiver will ask the Court to approve payments over time (together with some interest), and the receiver will give the early payment incentive to any claimant stipulating timely to the payment and factually demonstrating the hardship. This would certainly be available to Mr. Payne upon request and compliance with the conditions.

11.     Indian Motorcycle Company Stock.

Mr. Payne, at page 4 of his Objection, states "Yet the Receiver, for reasons unknown to Mr. Payne, chose not to sell the remaining shares. Prudence would have suggested converting the [Indian Motorcycle Company] shares into cash and holding the cash in reserve pending determination of the Tax Claim. The Receiver, however, held onto the [Indian Motorcycle Company] stock as it lost its value."

The observation that the receiver did not sell enough stock presents an issue, but not one related to Mr. Payne's Objection. In fact, the receiver attempted to sell more stock, but was denied the ability to do so when Indian Motorcycle Company instructed its transfer agent to refuse to transfer the stock sold.

Mr. Bondy raised this issue in his Objection below in two ways. First, Mr. Bondy complained that he was similarly prevented from selling his stock. Second, the receiver's inability to sell the stock held by the Receivership Estate has resulted in a higher restitution payment by claimants. This argument has not been lost on the receiver. To the contrary, the receiver is in the process of attempting to obtain documents from CMA, Indian Motorcycle Company,[4] and Audax that not only confirm the Mr. Bondy's position, but also disclose that while the receiver and its claimants were denied the ability to sell stock, insiders were allowed to sell their stock.

Partially as a result of the receiver's difficulty selling Indian Motorcycle Company stock, the receiver instituted its Investigation into the sale of Indian Motorcycle Company stock (DI 1500, August 3, 2000). In this regard, Mr. Payne may have a valid complaint, but it is not good for the purposes for which Mr. Payne has attempted to use it. If the receiver is able to prove liability on the part of Indian, CMA, or Audax on this matter and a few others, and provided the receiver actually collects, much of this money could go to defray the ultimate restitution from Mr. Payne.

12.     <u>Reply to United State's Response Regarding Proposed Order</u>.

---

[4] As the Court may be aware, Indian Motorcycle Company and four of its subsidiaries executed assignments for the benefit of creditors and ceased operations. Although it is possible that Indian Motorcycle Company has assets, it is unlikely. More likely, CMA possesses those assets and Audax might be liable on an alter ego theory.

The receiver generally agrees with the response of the United States. Enforcing an Order to pay with costs of collection is preferable to entry of a final judgment at this time. Because of this, the receiver also agrees that 35% costs of collection should not be added automatically.

If Mr. Payne wants to take advantage of the prompt payment discount, he must pay promptly. It is disingenuous for him to litigate more than any other party and at the same time seek the same treatment as those who pay without struggle. Conversely, the receiver believes that Mr. Payne should not, in any way, be penalized for exercising his right to an opportunity to be heard. It is partially because Mr. Payne has filed his objection that the receiver intends to extend the early payment incentive program. This notion, however, has its limits. The receiver concurs with the United States' suggestion that Mr. Payne pay the money now, to be held by the receiver until the issues are resolved if he wants to take advantage of the prompt payment discount.

Regarding the concern that the receiver may collect more from some claimants and less than others, under the theory of joint and several liability, any claimant from whom too much was taken would be subrogated to the rights of the receiver to try to even out the collections. As stated above, the receiver intends to ask the Court to enable Mr. Payne, and other creditors similarly situated, to do that; as he himself has noted, the receiver should not be involved in disputes between claimants.

WHEREFORE, Sterling Consulting Corporation, as receiver, prays that the objections of Michael Payne be overruled and this court grant the receivership further relief as the court just and proper.

Respectfully submitted this 13th day of January, 2005.

14

By: *s/ John M. Tanner*
        Fairfield and Woods, P.C.
        1700 Lincoln Street, Suite 2400
        Denver, CO  80203-4524
        Phone:  (303) 830-2400
        Fax:  (303) 830-1033
        Email:  jtanner@fwlaw.com

15