UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-ZLW-OES

In re:  Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

---

### RECEIVER'S REPLY IN SUPPORT OF ITS MOTION TO CONSOLIDATE

---

Sterling Consulting Corporation, as receiver, by and through its attorneys, Fairfield and Woods, P.C., hereby replies in support of its Motion to Consolidate this matter with the matter known as *Sterling Consulting Corporation v. CMA, United States District Court for the District of Colorado, No. 05-cv-01573-PSF-CB*S (the "Sterling Action") as follows:

Audax has done an able job of addressing the law concerning the basis for consolidation. Those very authorities, when applied to the facts of this case, indicate consolidation is proper. Sterling Consulting Corporation, in its individual corporate capacity, and Sterling Consulting Corporation, as receiver[1] have identified more than adequate common questions of fact or law to consolidate the two cases, and because consolidation is scalable (i.e., consolidation can be any variation and combination of parties, facts, and law), there is no good reason to keep the cases separate.

Further, Audax and CMA are in control of a considerable body of facts and documents that they have refused to produce to the receiver. CMA has admitted that, unlike receiverships and bankruptcies, California assignments for the benefit of creditors do not appear on the public record. In fact, the entire process has been conducted *sub rosa*.

---

[1] Sterling Consulting Corporation in its individual corporate capacity will be referred to herein as "Sterling," and Sterling Consulting Corporation, as receiver, will be referred to herein as the receiver.

In order to allow the receiver a reasonable opportunity to obtain the documents necessary to perfect the claims against CMA and Audax, Magistrate Judge Schlatter, in his Order dated December 14, 2005, Instructed the receiver as follows in connection with Audax and CMA:

> 5. One of the objectors to the Motion for reconsideration, Mr. Bondy, raised the issue of possible liability of Indian Motorcycle Company (the parent company), IMCOA Licensing America, Inc. (a subsidiary to Indian Motorcycle Company and the holding company for the Indian Motorcycle trademark), and IMCOA Holdings America, Inc. (another subsidiary to Indian Motorcycle Company and the company used as the licensing vehicle), Audax (an investor in Indian), and CMA (the assignee of Indian, in its California state law Assignment for the Benefit of Creditors) for the restitution the receiver is seeking from claimants. Mr. Bondy argues that: (a) it is Indian that should pay restitution because it was Indian that got the money from those who converted to stock, dealerships, and motorcycles; and (b) Indian knew the stock was worthless, or would become worthless, when it engaged in the transaction with the electing claimants, and that the dealership arrangements would not be honored when it granted them. The receiver, while preliminarily disagreeing with Mr. Bondy, has sought permission to conduct discovery on the subject.
>
> 6. On this issue, the Court Orders as follows:
>
> a. First, CMA is cautioned not to release any money from the Assignment for Benefit of Creditors until this issue is resolved.[2]

---

[2] In a surprising response from CMA, CMA has denied the applicability of this particular provision of the Order to CMA. In a letter email dated January 3, 2006, Mr. Pitts of CMA advised the receiver's counsel that CMA would likely disregard the Order. The email stated:

> Finally, with respect to the issue of service of the referenced December 14 Order, please note that in light of that Order and the circumstances giving rise to it (including the fact that it relates to a motion to which the Assignee was never even a party), the Assignee will continue to carry out its fiduciary duties and obligations in accordance with California law. The oft-repeated refrain of "in rem jurisdiction" is all well and good, but is irrelevant to the Assignee's administration of the Indian Entities' assignments under California law. Not only has there NOT been any showing that the Assignee is holding property of the receivership estate, there hasn't even been a cogent allegation that would give rise to a colorable claim that the Assignee is holding receivership property. Furthermore, if and when the Receiver makes such a cogent allegation in the proper forum, the Assignee will address it accordingly. Until then, please be advised that the Assignee will conduct its administration of the Indian Entities assignment in accordance with all applicable laws. (Footnote continues . . .)

b. Second, the receiver should attempt informal discovery and make a recommendation (if the facts are available due to cooperation by CMA and Audax) by December 20, 2005.

c. Third, if CMA and Audax do not cooperate, the receiver should use compulsory process (e.g., a subpoena or deposition) to obtain information, and make a Report to the Court by January 20, 2006.

The receiver was generally unsuccessful in its attempts at informal discovery as to CMA and completely unsuccessful as to Audax. The receiver is in the process of preparing formal discovery under F.R.C.P. 34 (if served after the entry of an Order of Consolidation) or F.R.C.P. 45 (if served in the absence of an Order of Consolidation). Although the receiver has adequate, confirmed facts and documents to easily support the criteria for consolidation, it believes that the facts and documents that will be discovered will expose considerably more facts and documents that corroborate the allegations against CMA and Audax.

The receiver suggests that this Court should not deny consolidation until the receiver has completed its discovery and until Sterling is permitted to file its Amended Complaint against Audax (the Court in 1573 has Stayed all proceedings, and that Stay has prohibited Sterling from amending its Complaint.) As an admitted transferee of money that clearly constitutes property of the Receivership Estate, Audax will probably remain in the Receivership Action through this Court's jurisdiction over property that is *in custodia legis*.

<u>Common Questions of Fact that Tie Audax and CMA to the Receivership and Therefore Support Consolidation</u>

There are eight historical situations that support the receiver's position that Audax was a principal player in Indian Motorcycle Company[3] (as opposed to a mere shareholder and lender),

---

In other words, if the cases are not consolidated so that the Order is binding on CMA, CMA will likely dispose of money that may well be property of the Receivership Estate.

[3] In the Indian Motorcycle family of companies, Indian Motorcycle Company was the parent company, and IMCOA Holdings America, Inc., IMCOA Licensing America, Inc., Indian

3

and that this Court has personal jurisdiction over Audax, and therefore that Audax has direct exposure to the claims of the receiver and Sterling. The weight of the evidence in each situation, and the reliability of the facts in each situation varies, so some arguments are stronger than others. Of course, it is the burden of the receiver and Sterling to prove liability and damages, but without the proper defendants in the various actions and claims, liability and damages have no meaning. At this stage, however, the receiver and Sterling do not have to prevail on the merits of these claims, however; they only have to show at least one common question of fact or law. The six situations are as follows:

First, Audax is the transferee of money that is clearly property of the Receivership Estate, and this Court has *in rem* jurisdiction over assets that are *in custodia legis*. Without having any basis for personal jurisdiction, this Court has the power to compel Audax to turnover those assets to the receiver. The receiver has recently filed its Complaint styled *Sterling Consulting Corporation, receiver v. Pahl & Gosselin et al*, Civil Action No. 2006-cv-00076, United States District Court, District of Colorado for breach of the Trust Agreement against the trustee of certain money that is the property of the Receivership Estate, and against CMA as the transferee of those funds (the "Trust Action").

The receiver is informed and believes that Audax was the transferee of the CMA, and therefore Audax must restore the property of the Receivership Estate to the Receivership Estate.

---

Motorcycle Corporation, and Indian Motorcycle Realty Services, Inc. were all horizontally aligned subsidiaries. Indian Motorcycle Company will be referred to herein as "Company," IMCOA Holdings America, Inc. will be referred to as "Holdings," IMCOA Licensing America, Inc. will be referred to as "Licensing," Indian Motorcycle Corporation will be referred to as "Corporation," and Indian Motorcycle Realty Services, Inc. will be referred to as "Realty." Collectively, Company, Holdings, Licensing, Corporation, and Realty will be referred to herein as the "Indian Entities" or "Indian," as required by context. As a result of the five assignments for the benefit of creditors of the Indian Entities, the assignment estates will be collectively referred to herein as the "Indian Assignment Estates," and each separate estate will be referred to herein as "Company Assignment Estate," "Holdings Assignment Estate," and so on.

Audax may refuse to do so, but the only basis for doing so is that Audax, and not the receiver, is the owner of the funds in question. In these circumstances, Audax is unlike a garden variety transferee: (a) Audax' manipulation of the Board of Directors of Indian (see the second issue below) precludes the argument based on ownership, and (b) Audax' arrangement with CMA (see third issue below) enabled what was effectively a fraudulent transfer of funds from CMA to Audax.

Second, Audax is the de facto *alter ego* of the Indian Entities. At the time Audax had concluded that Indian was no longer economically viable, it replaced the Board of Directors of Company (and perhaps others), and directed the actions of Company in a way that was intended to, and did, improve Audax' financial position at the expense of other creditors of Company. As Sterling and the receiver were the only other creditors of Company, this manipulation of Company worked to defeat Sterling's and the receiver's claims against Company. The receiver has obtained a few key documents that support this allegation, but the receiver has not been able to obtain all of the documents relating to transaction because Audax would not comply with the informal discovery requests of the receiver.

Third, of the five Indian Assignment Estates, the receiver is informed and believes that only the Corporation Assignment Estate had liabilities in excess of its assets. The Company Assignment Estate, the Holdings Assignment Estate, the Licensing Assignment Estate, and the Realty Assignment Estate all had assets in excess of their liabilities. The assets of the Holdings Assignment Estate, the Licensing Assignment Estate, and the Realty Assignment Estate should have flowed to the Company Assignment Estate, where Sterling and the receiver were the only legitimate creditors.

Instead, the receiver is informed and believes that CMA and Audax entered into an arrangement whereby Audax was paid $5.5 million in cash, and in exchange for the improper payment to Audax, CMA was allowed to move assets from the Company Assignment Estate, the Holdings Assignment Estate, the Licensing Assignment Estate, and the Realty Assignment Estate into the Corporation Assignment Estate to pay liabilities in that company. Because this arrangement precipitated what was effectively a fraudulent transfer, CMA and Audax both have personal liability for the money so transferred. In addition, it is possible that CMA could be compelled to seek disgorgement of the money it improperly paid to creditors of Corporation.

Fourth, there is a situation about which the receiver and Sterling have little information, but have enough information to mention and pursue: There have been very credible rumors and palpable indications that Audax manipulated the sale of assets by the Assignee in such a way as to obtain a direct or indirect interest in the company that purchase the Indian Motorcycle trademark from CMA (that company has been variously referred to as: Indian Motorcycle, Indian Motorcycle Company, Indian Motorcycle International, LLC, and Stellican Private Equity Group, Ltd.; it is referred to herein as "Stellican Indian").[4]

Fifth, as a direct result of Michael Payne's allegation that the receiver did not sell its common stock in Company when it should have done so, the receiver has reopened its investigation into insider trading in the common stock of Company at the time Company refused

---

[4] In all fairness to Audax, it should be noted that Mr. Chodos, Audax' attorney of record, has denied any Audax involvement in Stellican Indian, but the credible rumors and circumstantial evidence nevertheless indicate that Audax may not have told Mr. Chodos that they have an involvement. A direct or indirect interest of any kind in Stellican Indian by Audax raises the irrefutable presumption that it holds its interests for the benefit of all of the other stockholders of Indian, and not for itself. It would also raise the spectre of a massive fraud on the part of everyone involved in the assignments for the benefit of creditors. As stated above, the receiver possesses no hard evidence of such an involvement by Audax in Stellican Indian, but the receiver will pursue this theory along with all others.

to allow the receiver to sell stock. If any of the insiders of Company were related to Audax, beyond its liability under an alter ego theory, Audax would have liability to the receiver for these trades. In addition to their liability to the receiver, Audax, Indian, and CMA will have liability to all stockholders of Indian for these insider sales. To compound this problem, there is a question as to when Audax became aware that the common stock of Indian was worthless. It is possible that this date predates the insider sales of stock in Indian, all of which were either tolerated or promoted by Audax.

Sixth, Burt Bondy has raised the issue as to whether Indian, and not the converting creditors, is responsible for restitution because Indian received the cash for the claims. The receiver has much of the documentation necessary to confirm or reject this allegation, but some key documents may be in the possession of Indian, CMA, or Audax. The Court has Instructed the receiver to investigate this allegation and the receiver is doing so. Audax could be liable for this, should it prove out, under any number of legal theories, all of which will be considered when a Complaint or Amended Complaint is filed against Indian, CMA, and Audax.

Seventh, some claimants have recently advised the receiver that they did not receive the benefit of their conversion. For example, many dealer claimants have advised the receiver that they were denied the territories they were promised. Similarly, many noteholder claimants have advised the receiver that Indian knew the common stock was worthless considerably in advance of when Indian admitted the common stock was valueless. Of course, many of the depositor claimants received neither their money nor their motorcycles (the subject matter of the Trust Action). The receiver is looking into all of these allegations.

Eighth, Sterling has agreed to dedicate its claims for breach of the Settlement Agreement to the payment of the taxes of the Receivership Estate. Although the commitment is firm, the

terms and conditions of this commitment have not been resolved. Issues that are present are (a) the possibility of a phantom income tax for this; (b) limitation of the commitment to the $350,000 personal liability cap in the Side Agreement; (c) repayment of any money paid if the receiver pays the government more than $350,000 personal liability cap; and (d) other issue not yet identified. Because it would be procedurally irregular for the receiver to intervene in the 1573 action (thereby subjecting the receiver and the Receivership Estate to the Orders of a Court that is foreign to the Receivership Estate, this fact alone is adequate to support, at a minimum, an administrative consolidation, if not a substantive consolidation, of the 1573 Action with the Receivership Action.

Legal Issues that Support Consolidation

First, as mentioned in the original Motion to Consolidate, Sterling has a claim against CMA for breach of contract, and it has assigned that claim to the receiver (at least until the cap on collections is reached). Thus both the claim of breach and the calculation of damages are common to both cases.

Second, in connection with the Motion to Reconsider in this case, Mr. Bondy has asserted the claim that Audax got the money that would have gone to those who elected stock. If correct, Audax would also be subject to Order of repayment of 24.37%.

Third, it is noted that several dealer claimants never received their dealership. Those dealers might have the same argument, *i.e.*, that Audax, not them, received the money.

Conclusion

The receiver has gone far beyond the minimum needed to show a "common question of fact or law" needed under Rule 42. The receiver has done so for two reasons: to ensure that the Court is completely comfortable that consolidation is proper, and also to give the Court

8

information regarding where the receiver sees the case going next. The Motion to Consolidate should be granted. As a threshold matter, the receiver suggests that the Court start with an administrative consolidation, and amplify the consolidation with a substantive consolidation if the facts warrant it. At the request of the Court, the receiver will prepare a proposed Order of Consolidation, discuss the proposed Order with Audax and CMA, and submit a proposed Order that reflects the receiver's best understanding of the circumstances.

Respectfully submitted this 20th day of January, 2006.

By: *s/ John M. Tanner*
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203-4524
Phone: (303) 830-2400
Fax: (303) 830-1033
Email: jtanner@fwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO 80202
**Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
 Woods and Levy
633 17th St., Ste. 2200
Denver, CO 80202
**Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Barbara Sandoval, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
 & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO 80202-1273
**Attorney for Carl D. Lucci/Albert R. Lucci**
jcage@cagewilliams.com

Glen E. Keller, Jr.
Davis Graham & Stubbs, LLP
1550 17th Street, Ste. 500
Denver, CO 80202
**Attorney for Cow Creek Band of Umpqua Tribe of Indians**
Glen.keller@dgslaw.com

Todd Blakely, Esq.
Sheridan Ross
The Denver Post Tower
1560 Broadway, Ste. 1200
Denver, CO 80202
**Attorney for Steven Rodolakis, Trustee**
tblakely@sheridanross.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO 80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
Po Box 683
Ben Franklin Station
Washington, DC 20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO 80246
**Receiver**
rblock@xpn.com

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO 80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO 80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Douglas M. Tisdale, Esq.
Tisdale & Associates, LLC
Colorado State Bank Building
1600 Broadway, Ste. 2600
Denver, CO 80202-4989
**Attorney for Michelle Lean**
doug@tisdalelaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO 80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA 91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI 53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA 92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL 34982

Robert W. Hallock, Esq.
202 S. Merrill St.
Park Ridge, IL 60068-4223

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C. 20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA 01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C. 20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA 70506

Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ 08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM 87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT 06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL 60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN 55311

Steve Halprin
1316 Penningtow Place
Concord, N.C. 28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa, IL 61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA 91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM 87501

Jeffrey M. Perkins
President
Western Design Engineering, Inc.
808 Airport Road
Jackson, MI 49202

John Inelli
17 Old Farmstead Rd.
Chester, NJ 07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO 80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO 80501

By:  *s/ John M. Tanner*
    Fairfield and Woods, P.C.
    1700 Lincoln St., #2400
    Denver, CO 80203
    Phone: (303) 830-2400
    Fax: (303) 830-1033
    Email: jtanner@fwlaw.com