**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 95-cv-00777-REB-CBS

In re:

Receivership Estate of INDIAN MOTORCYCLE MANUFACTURING, INC., a New Mexico Corporation

_____

**UNITED STATES' RESPONSE TO PACELLI'S PROPOSED "JOINDER IN AND SUPPLEMENT TO MICHAEL PAYNE'S OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION" TO GRANT RECEIVER'S MOTION FOR RESTITUTION**
_____

The United States submits this in response to Edward Pacelli's proposed joinder in and supplement to the Rule 72 objection filed by Michael Payne to the Magistrate Judge's report and recommendation to grant the Receiver's motion for restitution, attached to his motion for leave to file it (DI# 2089), in the event that the Court grants him leave to file such joinder/supplement.[1] This response addresses only points in Pacelli's proposed joinder/supplement that add new arguments or elaborate on Payne's points in significant ways. (To the extent that Mr. Pacelli's arguments are duplicative of the Rule 72 objection filed by Mr. Payne, the United States incorporates its January 6, 2006 response (DI# 2067) to Payne's objection.)

**1. Dispute Over the Sum Pacelli Received**

Preliminarily, Pacelli's disagreement with the Receiver over the sum he received can be separately adjudicated and is not a basis upon which to reject the recommendation and report of the Magistrate Judge.

---

[1] The United States is insufficiently informed of what notices were received by Edward Pacelli, and therefore does not take a position on whether the Court should grant his motion for leave to file the joinder/supplement.

**2. Pacelli's Contentions Regarding Mr. Mandelman's Distribution**

Pacelli argues that the restitution motion does not treat all creditors equally because Michael Mandelman received $2 million and will not be pursued. Pacelli states that Mandelman "is, if anything, entitled to a lower priority than general unsecured creditors" because, according to Pacelli, he was a "sponsor of IMMI and implicated in fraudulent activity." By far, the bulk of Mandelman's distribution was paid to the IRS, and (as the Receiver's response to Pacelli already notes) the United States therefore strenuously resisted the Receiver's claims to recover the Mandelman distribution from him and the IRS.[2] Although Pacelli is too late to object to the settlement agreement (which was duly approved by the Massachusetts District Court after the Receiver sent notice of its motion for such approval to the last addresses of record of all claimants and parties), the United States believes it is nevertheless appropriate for it to dispel the mistaken inferences and facts regarding the Mandelman distribution that are contained in Pacelli's objection.

To the knowledge of the United States, Mandelman was never involved in the fraud alleged to have been committed by IMMI and its former principals. If he was so involved, no such

---

[2] The United States does not necessarily agree with all of the statements in the Receiver's response to Pacelli's proposed joinder/supplement but does not believe any disagreements are material to Payne's Rule 72 objection or Pacelli's would-be joinder/supplement. In one minor respect, however, we would notify the Court that the Receiver's response is clearly in error. The United States does not maintain that it can pursue Fairfield & Woods in Tax Court. Any claim against Fairfield & Woods to recover part of the compensation it received prior to 2001 would be based on a restitution theory quite similar to the Receiver's current motion for restitution against lower-priority creditors (*i.e.*, the United States maintains that its *administrative* tax claim is of least equal priority to the claims of receiver's counsel for compensation). Accordingly, such a claim would be brought against Fairfield & Woods only in this Court (and only if the United States is not paid at least $350,000, as spelled out in the settlement agreement with the Receiver and the related side agreement with Sterling and Fairfield & Woods). Similar statements disavowing any right to pursue Fairfield & Woods in Tax Court were made on the record while this case was in Massachusetts. Mr. Tanner has apparently forgotten them, or confused the issue with the fact that a proposed tax assessment against *Sterling* for fiduciary liability (not transferee liability) under § 6901 was withdrawn by the IRS without prejudice to re-issuing it (as confirmed in the side agreement to the tax settlement). We make this point solely because we would not have the Court include in any decision on the Rule 72 objection an erroneous statement that the government may pursue Fairfield & Woods in Tax Court.

- 2 -

accusation was ever indicated to the United States and in closely examining large portions of the record in this case in preparation for the tax litigation, counsel for the United States did not come across any such accusation.  Rather, Mandelman acquired stock in three corporations, unrelated to IMMI, that became the three Massachusetts bankruptcy debtors.  He acquired that stock from Philip Zanghi, against whom Mandelman had won his own judgment based on fraud allegedly committed by Zanghi.  As a result, Mandelman had control of any "equity" in the trademark rights of those three debtors – *i.e.*, to the extent their rights in the mark had value above the debts of those corporations.  After the bankruptcies began and after this receivership action began and after Sterling was appointed Receiver, the Receiver entered into a contract with Mandelman to purchase his stock.  Originally, the acquisition price was an installment note for $800,000 plus a 50% interest in a corporation to be formed to control the rights to the mark throughout Europe.  This Court approved of that contract in late 1995.  Disputes then arose over the contract's meaning, and both parties alleged breaches by the other (and the Receiver did not make the installment payments).  On November 24, 1997, a settlement and modification of the original contract was approved on the record, under which Mandelman relinquished all further claims to the mark, including in any entity formed to control the European rights, and was promised $2 million "in cash at the final closing on the sale" of the combined assets of the bankruptcy and receivership estates.

It follows from the foregoing that Mandeman was an *administrative* contract creditor.  He was not a pre-receivership claimant defrauded by IMMI or who caused IMMI to defraud other claimants.  In addition, the fact that the Receiver agreed to pay him cash *at the closing* on the sale of the combined mark assets reflects the recognition that the assets from the bankruptcy corporations (the stock in which was owned by Mandelman) was essential to the Receiver's plan to consolidate all of the competing rights in the mark and sell them together, on the theory (which

turned out to be quite true) that the whole was worth far more than the some of the competing parts. The "cash at the final closing" agreement, in the government's view, means that Mandelman had superpriority, in that his payment was a condition on the consummation of the sale. His claim thus had priority over even the tax liabilities of IMMI incurred in the sale.

It may also be noted that the Receiver asserted a claim to reform the contract with Mandelman and recover part of the $2 million. The Receiver alleged that Mandelman was supposed to assign to it a judgment against the three bankruptcy debtors and that Mandelman had misrepresented the value of the judgment. But the Massachusetts District Court rejected those claims in an extensive published opinion. In re Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 8, 41-42 (D. Mass. 2003) (reciting many of these facts). It later awarded Mandelman attorney's fees as an administrative claim (junior to the claims of the Receiver and its counsel for compensation), based on the clause in the contract that the winner of any dispute over the contract would be entitled to attorney's fees. See In re Indian Motorcycle Litigation, 307 B.R. 7 (D. Mass. 2004). That ruling plainly established the administrative nature (*i.e.*, post-Receiver's appointment) of the contract between the Receiver and Mandelman. In September 2005, the Massachusetts District Court converted its rulings on the Receiver's and Mandelman's contract claims into an appealable Rule 54(b) judgment, on which the appeal time has since run.[3]

So, while Pacelli is correct in stating that the restitution motion does not treat all creditors equally, that is only because all creditors are not equal. As a further example, the Receiver's restitution motion is directed at pre-receivership creditors, reserving the right, only if later necessary, to move for restitution from administrative creditors such as those who purchased

---

[3] The Receiver agreed, in a modification filed to the tax settlement agreement before it was approved, not to appeal the Rule 54(b) judgment on the Mandelman contract issues (and Mandelman thereafter elected not to appeal the ruling that his attorney's fee claim was junior to the Receiver's own expenses), which election not to appeal entitled him to certain third-party beneficiary rights under the tax settlement agreement.

- 4 -

Receiver's certificates and were repaid with 6% interest.  The tax settlement reserves the Receiver's right to seek restitution from Mandelman as an administrative creditor, and also reserves his defenses that he has superpriority over other administrative claims based on the "cash at the final closing" language of the settlement approved by this Court on the record on November 24, 1997.

### 3.  Pacelli's Accusations of Self-Dealing

Finally, Mr. Pacelli accuses the Receiver of having retained the purchase money stock to enrich himself, claiming that Mr. Block once said it would make him a millionaire.  The Receiver's response denies this.  It is not necessary for this Court to resolve that factual dispute.  It is immaterial to the restitution motion.  What is undisputed is that this Court, in 1999, approved the issuance of a "bonus" to the Receiver equal to a 5% interest in the purchase money stock in the new Indian Motorcycle Company that was received as part of the consideration for the sale of the combined assets, based upon what seemed at the time like a job extremely well done.  While, in hindsight, it may not have been a good idea to grant the Receiver an interest in the receivership estate in that fashion, the matter was proposed by others with an interest in the purchase money stock, on notice to all claimants, and none, including Mr. Pacelli, objected.  Whether Mr. Block thought at one time that the 5% interest would make him a millionaire is irrelevant.  What is also undisputed is that it was well known that the purchase money stock was in the receivership estate and not being sold, and that those who held the rights to the other 95% of the purchase money stock in the purchaser corporation (mostly the receivers certificate holders) would surely have objected most strenuously to any proposal to sell the stock at that time.  Certainly Mr. Pacelli made no such motion.  There were also restrictions on the saleability of the stock at the time, that had been imposed by the purchaser corporation in the purchase agreement.  A sale without the permission of the purchaser thus might have risked an administrative claim for breach of contract,

imposing administrative liability on the receivership estate.

## Conclusion

For the foregoing reasons, in addition to those in the United States' response to the objection of Mr. Payne, the Magistrate Judge's report and recommendation should be adopted and the proposed order should be entered after making the changes suggested in paragraphs 21-25 of the government's response to Payne's objection.

Dated this 27th day of January, 2006.

                                                Respectfully submitted,

                                                WILLIAM J. LEONE
                                                Acting United States Attorney
                                                District of Colorado

                                                */s Adam F. Hulbig*
                                                ADAM F. HULBIG
                                                Trial Attorney, Tax Division
                                                U.S. Department of Justice
                                                P.O. Box 683
                                                Washington, D.C.  20044
                                                Telephone: (202) 514-6061
                                                Facsimile: (202) 307-0054
                                                Email: adam.f.hulbig@usdoj.gov
                                                          western.taxcivil@usdoj.gov

## CERTIFICATE OF SERVICE

  IT IS HEREBY CERTIFIED that on this 27th day of January, 2006, I caused the foregoing **UNITED STATES' RESPONSE TO PACELLI'S PROPOSED "JOINDER IN AND SUPPLEMENT TO MICHAEL PAYNE'S OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION" TO GRANT RECEIVER'S MOTION FOR RESTITUTION** to be filed electronically using the CM/ECF system, which will serve all counsel registered for service by that means.

                */s Adam F. Hulbig*
                ADAM F. HULBIG
                Trial Attorney, Tax Division
                U.S. Department of Justice
                P.O. Box 683
                Washington, D.C.  20044