UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re:  Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

---

## **REQUEST FOR STATUS CONFERENCE**

---

Sterling Consulting Corporation, as receiver, by and through its attorneys, Fairfield and Woods, P.C., hereby requests that the Court hold a status conference in this matter, and as grounds therefor states as follows:

1.      Other supervising Courts in this case (the "Receivership Action") have made it a practice to hold regular or frequent status conferences.  In the view of the receiver, this is a good practice, and given the status of the Receivership Action, a status conference would be particularly suitable at this time.  Typically, the last thing done at each status conference is to set the next one.  Unfortunately, undersigned counsel simply forgot to ask for this at the end of the status conference on January 30, 2006.  This is one of the catalysts for this request for a status conference.

2.      As *quasi in rem* actions, Receiverships proceed somewhat differently than standard *in personam* and *in rem* litigation, and at times need more supervision.

3.      Further, the January 30, 2006 status conference was held in conjunction with a status conference in the related case *Sterling v. CMA*, United States District Court for the District of Colorado, Case No. 05-cv-1573-PSF-CBS (the "05 Action"), and with reference to another related case *Sterling, as receiver v. Pahl &*

*Gosselin*, United States District Court for the District of Colorado, Case No. 06-cv-00076-LTB-PAC (the "06 Action").

      4.      At the January 30 2006 hearing, the Court indicated that it had not been assigned the 06 Action, and that indication is the other catalyst for this Request.

      5.      The January 30, 2006 status conference lasted about 1-1/2 hours, but was directed primarily to the issues in the 05 Action. Although not central to the course of the status conference, some core matters relating to the future of the Receivership Action were mentioned. Certain expressions of the Court indicated to the receiver that management of these core matters might be hindered by administrative and procedural issues that should be addressed in advance. Proper management of these core matters is critical to an efficient resolution of the Receivership Action.

      6.      It is typical with receiverships to find that all of the issues in the case relate to most, if not all, of the other issues; this case has never been an exception to that rule. That characteristic is amplified geometrically in this Receivership Action because the case is old, large, and cumbersome. To compound the situation, the receivership is temporarily insolvent (a fact that has a strong bearing on the case).

      7.      The receiver asks for a Status Conference for the purpose of addressing the major core issues perceived by the receiver, the most critical of which are discussed below.

Relationship of the Receiver to the Court.[1]

---

[1] This discussion is in no way directed to the Court's instruction not to contact its chambers via telephone. Although the receiver and its counsel were instructed by both Judge Weinshienk (at the hearings of July 7, 1995 and November 25, 1998 and perhaps other times) and by Magistrate Judge Schlatter (repeatedly) to contact their respective chambers regarding administrative matters, the receiver and counsel understand that this Court does not employ that procedure and will fully honor that determination.

8.    There is a common misconception that an equity receiver is something akin to a Bankruptcy Trustee or perhaps a statutory receiver. This reflects a fundamental misunderstanding of equity receiverships. A Bankruptcy Trustee is appointed pursuant to an executive branch (Article I of the United States Constitution) appointee, supervised by other Article I appointees, acting pursuant to powers granted it by Congress under Article II of the United States Constitution. A statutory receiver, such as the Resolution Trust Corporation, also functions pursuant to powers granted it by Congress. Thus there is a separation of powers limitation on the relationship between either of them and the Court.

9.    An equity receiver is fundamentally different—it exists pursuant to an appointment by a Judge, and thus is an Article III appointee. Appointing a receiver is an inherent power of a Court, which is why there are virtually no statutes that affect receivers. The receiver is not supervised by any Article I or II officers, but only its appointing, Article III Court. An equity receiver is more akin to a Special Master or a Judge's law clerk than to a Trustee or a statutory receiver.

10. Because of this relationship, it is important that the receiver be able to communicate with its supervisor—the Court. The receiver and its counsel probably have the best working knowledge of the history and travel of the Receivership Action (having been embedded since the beginning), but the volume of documents and information is so vast that no one could possibly remember everything.

11. Because the knowledge of the receiver and its counsel is not shared but aggregated, it may become critical for the Court to communicate directly with the receiver. This can usually happen in three ways: First, the receiver can file Receiver's

3

Reports, second, the Court can communicate with the receiver at a Status Conference,

and third, the Court (provided the Court is a Magistrate Judge) can communicate with

the receiver at Settlement Conferences.

12. As a result of a provision in the Settlement Agreement between the

government and the receiver which was approved and made a Final Order of the Court

by Senior Judge Keeton of the District of Massachusetts, however, the receiver is no

longer able to prepare narrative Receiver's Reports. The Settlement Agreement reads in

pertinent part as follows:

> 13. Miscellaneous.
>
> ...
>
> (b) Receiver's Reports. During the pendency of the receivership and until such time as the United States is no longer a claimant or otherwise involved in the Receivership Action, the Receiver agrees that, henceforth, any Receiver's reports filed with the receivership court (in Massachusetts or Colorado), to the extent that they provide information on filings or events in judicial proceedings or related to anticipated judicial proceedings, will be limited to concise, neutral descriptions of filings or events and will omit any opinion of the Receiver as to the correctness of the positions of the parties involved or whether the positions are being advanced in good faith (or are otherwise improper). Further, any information provided with respect to the Receiver's future plans for proceeding in ongoing litigation or commencing new litigation shall be limited to very brief descriptions of the precise relief that will be sought by the Receiver and shall not elaborate on why the Receiver believes it is entitled to such relief. In this regard, allegations by the Receiver that a party's position is wrong or ill-motivated shall be confined to motions or responses to motions or similar pleadings. It is further agreed that, during the pendency of the receivership and until such time as the United States is no longer a claimant or otherwise involved in the Receivership Action, orders approving Receiver's periodic reports shall be construed only as confirming that the reports are adequately informative, and shall not constitute declaratory judgments adopting facts or legal positions stated in the reports unless the Court first issues a preliminary order or other notice, endorsed by a judge or magistrate judge, to be served on

4

any potentially affected party, that the Court is considering entering a declaratory judgment on a particular fact or legal conclusion contained in a report that the Court believes presents a ripe controversy requiring resolution by declaratory judgment, while setting a deadline for objections. During the pendency of the receivership and until such time as the United States is no longer a claimant or otherwise involved in the Receivership Action, the Receiver agrees not to submit proposed orders that contain language that might be construed as converting entire reports or large portions thereof into court orders (i.e., proposed orders will simply provide that the report is "hereby approved" and language that the report "is made the order of this Court" shall not be included). As regards previously submitted reports that have not yet been approved, the Receiver hereby withdraws all characterizations of positions of parties other than the Receiver that may be set forth in such reports, and the the United States withdraws all objections to their approval, and the Order approving this settlement shall be deemed to approve of said reports as so modified, without necessarily adopting as court rulings any stated positions of the Receiver.

13. Due to the confining language of the foregoing provision (confining for the Court as well as the receiver), and given the fact that the receiver has no intention of coming even close to violating a condition that has been set by the government in this case, the receiver has treated the utility of Receiver's Reports in the Receivership Action as vehicles for imparting financial information only. Thus information that the receiver desire to transmit to the Court must be transmitted via one of the other methods mentioned.

14. Pursuant to well-established law, including the law of this case, the receiver is an arm of the Court and holds a special position of responsibility towards to the Court. Some of the comments of the Court at the January 30, 2006 status conference suggested that the Court intended to treat the receiver like a regular party in standard adversary litigation, which would not be consistent with this special relationship.

15. Moreover, the receiver's experience has consistently been that treatment of a receiver like a regular party leads to very bad results for all concerned, including the

5

Court, the claimants, and the receiver. The receiver believes a frank discussion with the Court regarding the role of the receiver and its relationship with the Court would be in the best interest of all concerned.

16. In this regard, the receiver attaches Magistrate Judge Schlatter's Order of August 4, 1997 in this case. Although that Order was directed to a narrow issue (what a claimant should do with some stock certificates), the Order of Judge Schlatter gives insight into the relationship between the receiver and the Court:

> Mr. Mandelman states that he has signed the Replacement Certificates, and requests permission to deliver them to the Court, instead of the receiver, because "there exists a legitimate dispute as to whether Mr. Mandelman should be forced to disgorge his stock with a concomitant turn-over of stock from the receiver pursuant to a previous Court Order" (Motion, ¶ 7).
>
> Mr. Mandelman's motion evidences a fundamental misunderstanding of the nature of a receiver. In an equitable receivership proceeding such as this, the receiver acts as an officer of the court, and holds assets of the receivership in that capacity. *See Atlantic Trust Co. v. Catman*, 208 U.S. 360, 372 (1908) (the receiver is officer of court, and property in his hands is *in custodia legis*); *Brunswick Corp. v. J & P, Inc.*, 424 F.2d 100, 103 (10th Cir. 1970) (funds *in custodia legis* are the same as if actual possession is with an officer of the court); *In re Real Estate Mortgage Guaranty Co.*, 55. F.Supp. 749 (E.D.P.A. 1944) (possession of receiver is possession of court; court itself holds and administers estate, through receiver as its officer). *See also,* R. Clark, *Clark on Receivers*, § 36 (1959) (receiver is an arm or administrating hand of the courts); § 332 (effect of appointment of receiver is to put property in custody of court).
>
> In short, the receiver <u>is</u> the registry of the court. The receiver holds all property for the ultimate benefit of the receivership estate, subject to exclusive jurisdiction and control of this court. The motion seeks an artificial distinction between the court and the receiver when, for purposes of custody and distribution of property in question, none exists.

(Emphasis in original).

6

17. The Court's reference to *Clark on Receivers* is telling.  The first section cited

by Judge Schlatter, section 36 (and the preceding section 35) provide:

> Since receivers are officer of the court they are, therefore,
> representatives of the court and act for the court.  They are subject to
> the court's directions and orders in the discharge of their official
> duties and at all times are entitled to apply for the court for
> instructions. . . .  In explaining these cases [referring to a receiver as
> an "agent" of the court], it may be said generally that the word must
> have been used in the sense of the arm of the court or the
> administering hand of the court . . . .

18. In distinguishing the receiver from the parties to the litigation, Magistrate

Judge Schlatter did not focus on the precise nature of a receiver, but instead contrasted

a receiver from a party to the litigation.  It is important for the Court to focus on the

precise nature of a receiver in order to keep the receiver from becoming mired in the

vicissitudes of legal procedure, particularly the petty but expensive and time consuming

squabbles of the parties and their lawyers.  Magistrate Judge Schlatter cited *Atlantic

Trust Co. v. Catman*, 208 U.S. 360, 372 (1908), wherein the Supreme Court found it

necessary to describe the nature of a receiver with some precision:

> [The receiver] is agent and *executive officer* of the court which takes
> possession of the property which is the subject of dispute, and controls
> and operates it for the use and benefit, not of either party to the
> controversy, but of whomsoever in the end may be concerned in its
> disposition.  His acts and possession are the acts of the court and the
> parties to the litigation have no control over his actions nor any power
> to determine what liabilities he may incur.

(Emphasis added.)

19. Although it is fairly simple and straightforward, the foregoing paragraph

provides important insight into the nature of a receiver.  First, the emphasized words

"executive officer" must be distinguished from the word "officer" as it applies to

attorneys.  The receiver is in no way the same as an officer of the Court as it applies to

appearing attorneys.  The receiver is an administrative appointee of the appointing

Court, who works for the appointing Court.  In fact, the appointment is administrative.

In fact, the receiver is a not even a party to the Receivership Action.[2]

20.  There is other evidence that a receiver is not a party to the Receivership

Action.  For example, with one notable exception that did not exist at the time the case

was decided,[3] the Supreme Court, in *McNulta v. Lochridge*, 141 U.S. 327, 12 S. Ct. 11,

35 L. Ed. 796 (1891), made it clear that law suits against receivers within the

Receivership Action, even for negligence, do not attach to the person acting as receiver:

> Actions against the receiver are in law actions against the receivership,
> or the funds in the hands of the receiver, and his contracts,
> misfeasances, negligences and liabilities are official and not personal,
> and judgments against him as receiver are payable only from the funds
> in his hands.  As the right given by the statute to sue for the acts and
> transactions of the receivership is unlimited, we cannot say that it
> should be restricted to causes of action arising from the conduct of the
> receiver against whom the suit is brought, or his agents.

21. The receiver believes that, in the proper setting, a direct communication

between it and its appointing court regarding the relationship between the receiver and

Court will save time, effort, and resources, and avoid misunderstandings in the future.

Relationship of the Court, the Receiver, and the Receiver's Counsel

22. The relationship in a receivership that is the most critical is the relationship

between the Court and the receiver.  That relationship would be the only relationship of

---

[2] Although this may appear to be radical, it is not.  The *in rem* aspect of a receivership action
relegates many participants to a status below the status of a true party.  For example, claimants
in the Receivership Estate are not parties.  Claimants may intervene and thereby become
parties to the action, but until they do intervene, they simply are not parties.

[3] The exception referred to is 31 U.S.C. § 3713 (the Federal Debt Priority Statute), which is the
statute that the government has used to attach personal liability to this receiver for the unpaid
income taxes of the Receivership Estate.  Although the receiver has never conceded liability
under § 3713, the entire weight of the Tax Division of the United States Department of Justice
has a way of making even the best argument puny by comparison.

consequence but for the fact that a corporate receiver (such as Sterling Consulting Corporation) cannot represent itself in federal court. As a result, some of the receiver's functions must be performed by the receiver's counsel.

23. The general rule, however, is that the receiver must perform all functions that it is capable of performing, and delegate only those that it is required to delegate because it cannot perform them itself. In this receivership, the receiver participates directly in the preparation of all pleadings in the case, and gives whatever assistance it can for its counsel's presentations. For that reason, the receiver is almost completely aware of its communications to the Court.

24. The same cannot be said for the receiver's counsel's knowledge of the day-to-day operations of the receivership, nor can it be said of the receiver's counsel's knowledge of all but the broadest plans and objectives of the receiver. That knowledge and information is unique to the receiver, and there is no good reason to attempt to impart that level of detail or understanding to the receiver's counsel. As a result, a question by the Court of the receiver's counsel might get a good answer given the limited knowledge of the receiver's counsel, but it might not get the best answer. It definitely will not get a projection, prediction, sequencing, or timing of the receiver future actions.

25. As mentioned above, a receiver must perform the work it is capable of performing and may not delegate that work to an attorney. In fact, the converse is true—the receiver's counsel cannot be paid for performing work that could be performed by the receiver, itself. In the case of *King v. Premo & King, Inc.,* 258 N.C. 701,

9

129 S.E.2d 493, 502 (1963) the North Carolina Supreme Court assembled considerable authority

for this proposition:

> The contacting of purchasers, the showing of property for sale, the sales and
> resales of property, and the accounting and bookkeeping in respect to the
> administration of the receivership required no legal knowledge and skill, and
> are the performance of ordinary duties, which may and should be performed
> by the receiver himself, and are not the subject of an allowance of counsel
> fees. *Henry v. Henry,* 103 Ala. 582, 15 So. 916; *Saulsbury v. Lady Ensley
> Coal, Iron & Railroad Co.,* 110 Ala. 585, 20 So. 72, where the Court held a
> receiver is not entitled to allowance for the services of an attorney in hunting
> up and taking into possession the property belonging to the estate, since it is
> the personal duty of the receiver to look after such matters; *Deputy v. Delmar
> Lumber Mfg. Co.*, 10 Del. Ch. 101, 85 A. 669; *Olson v. State Bank,* 72 Minn.
> 320, 75 N.W. 378; *Conover v. West Jersey Mortgage Co.,* 96 N.J. Eq. 441,
> 126 A. 855; *Society for Relief of Destitute Children v. McDaniel,* 148 N.Y.S.
> 951; *Elsesser v. Pfleging*, 254 App. Div. 753, 4 N.Y.S. 2d 275; *Wilkinson v.
> Washington Trust Co.,* 102 F. 28; 75 C.J.S., Receivers, sec. 383, Counsel
> Fees, b, page 1048. The receiver states accounting and bookkeeping in
> respect to the receivership was most involved, and recommended, and Judge
> Olive confirmed, a payment to Lee Houston, an accountant, of $ 615.00 for
> his services rendered to the receivership.

In *Conover v. West Jersey Mortgage Co.,* [96 N.J. Eq. 441, 126 A. 855], the
Court said: "And while a receiver should be allowed reasonable counsel fees
for legal services rendered necessary in the discharge of his duties, he will not
be allowed fees paid to counsel for services which are the ordinary duties he is
presumed to know how to perform." In *Olson v. State Bank* [72 Minn. 320, 75
N.W. 378] the Court said: "And, when employing counsel, the receiver must
also remember that it is his duty to perform such duties as any ordinarily
competent businessman is presumed to be capable of performing. These are
his duties, and he is paid therefor. It is only for services requiring special legal
skill that he will be allowed counsel fees."

In *Wilkinson v. Washington Trust Co.,* [102 F. 28], the Court said:

"There was no error in the order of the court striking out the $ 750 paid by the
appellant for the services of attorneys in preparing and presenting his reports
as receiver and master. It is one of the indispensable personal duties of a
receiver and of a master to make a report of his acts, and of his receipts and
disbursements, to the court which appoints him. If he is incapable of keeping
accounts and of reporting his receipts and disbursements, he ought not to
accept the appointment. But if he does accept it, and his reports, like those in
hand, involve nothing more than a simple narrative of his acts, and an account
of his receipts and disbursements, he cannot be permitted to receive
compensation for the discharge of these, his personal duties as receiver, and to

charge the trust with moneys expended by him to hire others to discharge them for him. Such allowances would pay twice for the same services. In ordinary cases the making and presentation to the court of reports of the acts, receipts, and disbursements of receivers and masters is one of their indispensable duties. The compensation allowed them as receivers or masters pays them for this service, and they cannot be allowed disbursements which they may have made to hire attorneys or others to discharge these duties for them, because such allowances would effect two payments for the same service, and because cestuis que trustent are always entitled to a report of the doings of their trustee, with out expense or charge to them."

26. As with the receiver, the counsel to receiver is not a party to the action.

*Clark on Recivers* provides (emphasis added):

§ 115 Appointment of attorney and counsel for receiver

Although receiver is an officer of the court and subject to its directions and orders, and entitled at all times to apply to the court for instruction and advice, he is also permitted to obtain counsel for himself as receiver. <u>Counsel for receiver is not a party to the suit</u>. [footnote citing *Stuart v. Boulware*, 133 U.S. 78, 10 S. Ct. 242, 33 L. Ed. 568, (1890)] The court will give instructions to the receiver, if the matter is properly brought before it, but even in such case it is ordinarily necessary to have a lawyer present the matter to the court, adequately to investigate the law and present authorities.

27. The fact that neither the receiver nor the receiver's counsel is a true party to the Receivership Action is for a reason and carries with it an alternative. The reason is fairly simple: The receiver and its counsel work for the Court. The receiver, unlike a party, has sworn an oath to the Court that greatly restricts the nature and scope of actions and reactions of the receiver. Whereas a party to the action may advocate positions that are good for the party, the receiver to that which is in the best interests of the Receivership Estate. This undertaking by the receiver is balanced by the fact that the receiver has special powers and immunities.

<u>Workload of the Receiver and its Counsel</u>.

11

28. In the ordinary receivership, the receiver and its counsel are always <u>eager</u> to perform the work delegated by the Court at the pace set by the Court. In this receivership, the receiver and its counsel are always <u>willing</u> to perform the work delegated by the Court at the pace set by the Court, and will do that work. This is a special case that the receiver and its counsel would prefer that the Court take into consideration one factor, particularly when scheduling matters: the receiver and its counsel have not been paid in years and it is very unlikely they will be paid for any of the work to be performed in the future.   If everything goes very well, the receiver and its counsel may receive reimbursement for the considerable out-of-pocket costs that they have advanced the Receivership Estate in the past five years.

29. The law supports the receiver and its counsel in this request, but by corollary—"Since a receiver is an officer of the court the court is bound to see that he is paid." 2 *Clark on Receivers*, at p. 641. Judge Weinshienk recognized this obligation, and when she sent this case to Massachusetts in 2002, she requested that the Massachusetts Court try to get the receiver and its counsel paid. *See* Order of July 19, 2002 (attached for the Court's convenience).[4]

30. This financial situation has never been allowed to work to the disadvantage of the Receivership Estate, and that will not change. The receiver and its counsel have always aggressively pursued the interests of the Receivership Estate, and that will not change. The receiver only asks that the Court consider the fact that the Sterling

---

[4] Unfortunately, the Massachusetts Court treated the receiver as a party and disregarded this request. That treatment was one of the things that led to the peculiar situation the Receivership Finds itself in now, wherein the receiver and its counsel (the senior creditors of the estate) are working for free whereas junior creditors have been paid in full.

Consulting Corporation and Fairfield and Woods must perform work other than that related to the Indian Motorcycle receivership in order to stay in business.[5]

31. There is no good to come from an examination of cause,[6] but the Court's consideration of the pace that the receiver requests would be helpful. In this regard, pressing the schedules of the 05 Action (or the 06 Action) before Judge Blackburn has entered an Order in furtherance of Magistrate Judge Schlatter's Recommendation (or contrary to that Recommendation) demonstrates how scheduling can be burdensome on the receiver and its counsel. In that regard, the receiver's contemporaneous request for an extension of time to file its First Amended Complaint in the 05 Action should be considered in the context of this Request.

Issues Regarding Consolidation.

32. At the hearing at the status conference on January 30, 2006, the Court made a comment, the significance of which escaped the receiver and receiver's counsel at the time. The receiver and the receiver's counsel apologize for this oversight. The Court stated that the 06 Action is not before it. While that statement is true in the narrowest sense of the term "before it," the motion to consolidate 06 Action with the Receivership Action is before this Court, pursuant to Local Rule 42.1 (the Court with the lower case number rules on motions to consolidate). Pursuant to prior Order of Judge Weinshienk in this action, the 06 Action should be promptly consolidated with the Receivership

---

[5] Judge Blackburn's Order of January 31, 2006, whereby the receiver was instructed to update the Clerk of Court's mailing list in this case, is one small indication of the relationship of the receiver to the Court. The receiver is being instructed by its appointing Court to do work which would typically not be done by a party, but by the Court's staff.

[6] Regardless of whether the receiver wishes to examine cause, the subject appeared on the horizon when, in the January 30, 2006 hearing, counsel for Mr. Payne and Mr. Pacelli suggested that he was about to take actions that would bring this subject into issue.

Action, and that consolidation should be a substantive consolidation whereby the law of the case in the Receivership Action is law of the case in the 06 Action.

33. By way of background on this point, when the receiver was first appointed in 1995, the receiver brought a Declaratory Judgment Action against the Bankruptcy Trustee in the Massachusetts Bankruptcy Court. The claim was an adversarial action and, as such, was ancillary to the Receivership Action. Although the complaint had a separate caption, it used the 95-Z-777 case number. This was pursuant tohundreds of years of receivership law that stated that an action in a receivership to recover receivership property is brought as a separate, or adversary, matter in the same case as the receivership.

34. Upon filing this complaint, the Clerk of the United States District Court indicated to Judge Weinshienk that the computerized docketing system in the courthouse could not accommodate two different captions with the same case number.

35. Judge Weinshienk then entered an Order from the bench that the receiver should file all claims in which it seeks to gather assets for the receivership estate as separate matters, but that they would be immediately "substantively consolidated" with the main receivership action.

36. As a result of this Order and the fact that at the time the "related case memorandum" practice was being used by the district court (which would allow the plaintiff, when filing a case, to indicate if it was related to a pending case), the dozens of ancillary actions that the receiver filed were automatically assigned to Judge Weinshienk and Judge Schlatter and substantively consolidated without the formality of a motion to consolidate.

14

37. Because the "related case memoranda" process is no longer used by the United States District Courts, the 06 Action was randomly assigned to Chief Judge Babcock and Magistrate Judge Coan. This is contrary to Judge Weinshienk's prior Order in this case. Certainly, an administrative problem with a computerized docketing system should not be elevated to a procedural problem that affects the substance of the case, and this was Judge Weinshienk's concern when she entered her Order that all ancillary actions brought by the receiver would be substantively consolidated with the Receivership Action without further order.

38. The significance of this issue is not limited to the 06 Action. The receiver expects that it will have to initiate multiple collection matters against various claimants who do not repay the money as recommended by Judge Schlatter if the Order is affirmed by Judge Blackburn. It would be best for all if the Court set a procedure now for such consolidations so that when the future complaints for collection are filed, they will not have to go through the cumbersome motion to consolidate procedure.

WHEREFORE, Sterling Consulting Corporation, as receiver, prays that this Court enter a status conference in this main receivership action, which status conference should be directed to issues that regard to the receivership generally, and not the relatively small issues of the two related cases now pending.

Respectfully submitted this 9th day of February, 2006.

By: *s/ John M. Tanner*
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203-4524
Phone: (303) 830-2400
Fax: (303) 830-1033
Email: jtanner@fwlaw.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO 80202
**Attorney for Richard Basciani, N.
Rooke Everill, Pres./Everill Bros.,
Inc., John H. Nicholson or Virginia A.
Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
  Woods and Levy
633 17th St., Ste. 2200
Denver, CO 80202
**Attorneys for William R. Childs, Scott
McCormick, Jr., Douglas Walliser,
Ronald Schiff, Edward Pacelli,
Barbara Sandoval, Morty Lempel,
A.B. Goldberg, First Entertainment,
Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
  & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO 80202-1273
**Attorney for Carl D. Lucci/Albert R.
Lucci**
jcage@cagewilliams.com

Glen E. Keller, Jr.
Davis Graham & Stubbs, LLP
1550 17th Street, Ste. 500
Denver, CO 80202
**Attorney for Cow Creek Band of
Umpqua Tribe of Indians**
Glen.keller@dgslaw.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO 80203
**Attorney for IMCOA**
jellliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
Po Box 683
Ben Franklin Station
Washington, DC 20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO 80246
**Receiver**
rblock@xpn.com

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO 80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO 80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO 80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA 91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI 53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA 92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL 34982
Robert W. Hallock, Esq.
202 S. Merrill St.
Park Ridge, IL 60068-4223

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C. 20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA 01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C. 20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA 70506

Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ 08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM 87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT 06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL 60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN 55311

Steve Halprin
1316 Penningtow Place
Concord, N.C. 28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa,IL  61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA  91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM  87501

Jeffrey M. Perkins
President
Western Design Engineering, Inc.
808 Airport Road
Jackson, MI  49202

John Inelli
17 Old Farmstead Rd.
Chester, NJ  07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO  80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO  80501


By:   _s/ John M. Tanner_
            Fairfield and Woods, P.C.
            1700 Lincoln St., #2400
            Denver, CO  80203
            Phone:  (303) 830-2400
            Fax:  (303) 830-1033
            Email:  jtanner@fwlaw.com