UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re: Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

**MOTION TO COMPEL DISCOVERY AGAINST AUDAX AND CMA**

Sterling Consulting Corporation, as receiver, by and through its attorneys, Fairfield and Woods, P.C., hereby moves this Court to compel discovery against Audax Private Equity Fund, LLP, Audax Co-Invest, L.P., Audax Special Purpose Co-Invest, L.P., Audax Trust Co-Invest, L.P, and the Audax Group (collectively "Audax"), and Credit Managers Association of California, D/B/A CMA Business Credit Services, a California nonprofit corporation ("CMA"), and as grounds therefor states as follows:

**Certification Pursuant to D.Colo.L.R. 7.1**

Audax

Undersigned counsel had made repeated efforts to confer with Mr. Sprague (local counsel for Audax) and Mr. Chodos regarding the subject of this motion. After indicating that either might respond, Mr. Sprague deferred all communications on the subject of production of documents by Audax to Mr. Chodos. Mr. Chodos has repeatedly stated he is willing to participate in a conference call with the receiver and undersigned counsel to narrow the issues of discovery, but after a month of trying, Mr. Chodos has refused to ever actually agree to a time for such a call. The receiver believes this is more of the stone wall that the receiver has been receiving from Audax

on all fronts, including discovery, as described to the Court previously and as further described below.

## CMA

The receiver has been getting a more polite stone wall from CMA, but it is nevertheless still getting a stone wall. First, Mr. Pitts[1] said he could accept process, but then reneged when the acceptance and waiver was sent to him. Then he was formally served and in response sent a "Rule 45" letter complaining about the form of the subpoena. This resulted in a conference call which did little to resolve the issues.

During the conference call, CMA limited explanation of its objections to "Rule 45" and never was more specific. This was confirmed with undersigned counsel's letter of March 9, 2006, attached as Exhibit 1. The receiver is not prone to rattling its saber in this Court, but if CMA tries to argue anything more specific than "read Rule 45" in its response to this Motion to Compel (the exact behavior it said it "could not" engage in during the conference call), then the receiver will likely move to strike and for sanctions, as it will make a mockery of Rule 7.1.

---

[1] For the record, the receiver has been advised by Mr. Pitts that he is California counsel to CMA and, contrary to the receiver's previous understanding, he is not a principal in CMA. Of course this should probably go without saying; CMA has no principals, *per se*, because CMA is a California non-profit corporation and California nonprofit corporations do not have owners. California nonprofit corporations do have members, however, and CMA has indicated that it has members. In addition, California nonprofit corporations have officers and directors. In order to give any substance whatsoever to Mr. Pitts' vigorous denial of being a principal for the purposes of service of process, it must then be assumed that Mr. Pitts is neither a member nor an officer or director, or his denial would be misleading. The receiver has submitted its BE – IRC Order Form to the California Secretary of State and will then know more about CMA than before.

CMA further stated that if even if CMA were served with another subpoena without any defects, it would not produce any documents referenced in the prior subpoena on the grounds of irrelevancy, except:

> Specification 10, which CMA conceded was relevant but for which it claims to have no responsive documents;
>
> Specification 12, which CMA conceded was relevant but for which CMA claims to have only five responsive documents (the five assignments), which have already been produced; and
>
> Specification 13, which CMA conceded was relevant and as to which CMA admitted it may or may not have a stray letter or memo referencing the Indian Trademark.

Later in the 7.1 conversation with CMA, undersigned counsel noted to CMA that the subpoena was issued in the main Receivership Action, pursuant to the Court's Order of December 14, 2005 approving the receiver's investigation, and thus was not bound by the limits of relevancy in the 05-cv-1573 Action. Despite this, CMA did not change its position that it would not respond to the vast bulk of the subpoena on the grounds of relevancy.

After the conference call, the receiver and counsel again reviewed Rule 45 and re-subpoenaed CMA, this time using a form found on the Southern District of California's webs site and through formal service at its office. The subpoena sought the same documents as the prior one. It resulted in a virtually identical "Rule 45" letter from Mr. Pitts, dated March 17, 2006, attached as Exhibit 2.

## Motion to Compel

<u>Audax</u>

Consideration received by the receiver and the Receivership Estate at its sale to IMCOA Licensing America, Inc. in 1999 included cash (in excess of $20 million in the aggregate), stock in Indian Motorcycle Company, vouchers for motorcycles, and Indian Motorcycle dealerships to sell Indian Motorcycles. Except the cash, of course, the vast majority of all of the consideration turned out to be worthless.

In his Order of December 14, 2005, Magistrate Judge Schlatter directed the receiver to first commence an informal investigation regarding what happened to the Indian motorcycle company. Failing that, the receiver was instructed to conduct formal discovery.

In its Notice of Discovery dated December 29, 2005, the receiver reported that informal discovery against Audax and CMA had failed, and that the receiver would commence formal discovery. At the Status Conference on January 30, 2006, the receiver again reported that the informal discovery had made no progress whatsoever, due to the stonewall response of both Audax and CMA. This Court essentially reiterated Magistrate Judge Schlatter's instruction that the receiver proceed with subpoenas under Rule 45 in this case.

The receiver has done so, although it has not been effective (hence this Motion to Compel). The receiver was then put to the expense of formally serving Audax with the subpoenas. The subpoenas and the returns of service regarding the subpoenas are attached hereto as Exhibits 3 through 7. Audax' response letter dated February 6, 2006,

4

refusing to accept service and declining to produce any documents, is attached as Exhibit 8.

It is not completely clear from the February 6, 2006 letter whether Mr. Chodos reneged on his agreement to waive process and accept service, or whether he attempted to use a purported undefined, non-substantive, defect in the subpoena to waive process and accept service. The receiver believes that using a non-substantive defect to refuse to accept is without basis in the law, so the receiver has assumed that Mr. Chodos reneged on his commitment to waive process and accept service.

Mr. Chodos has refused to identify the alleged facial defect on the subpoena other than to say the subpoenas are "facially invalid and improper under FRCP 45." The receiver recognized that the form of subpoenas served on Audax lack of the "boilerplate" notice on their face, as required by Fed.R.Civ.P. 45(a)(1)(d). Obviously, however, Audax was aware of this information because this is exactly what Mr. Chodos relied on to send his letter which is Exhibit 8. As there is no prejudice to Audax from the lack of this boilerplate, its absence does not give Audax an excuse not to comply. *E.g., Elam v. Rydeo Auto Operations*, 179 F.R.D. 413 (W.D.N.Y. 1998) (absent showing of real prejudice arising from a party's failure to include text of F.R.C.P. 45(c) and (d) in subpoena as required by F.R.C.P. 45(a)(1)(d), such failure is not grounds for which a subpoena may be quashed.)

The receiver has never denied that the subpoenas, as prepared and served, were very broad and in need of refinement and narrowing in scope. For example, the receiver agrees that forty-eight hours was short notice, but the receiver has informally

been asking for these documents for months (and it has been months since the subpoena was served). This is precisely what should have been resolved in a Rule 7.1 telephone conference, but Mr. Chodos has refused to even set a date for one. Forty-eight hours was selected by the receiver because the receiver expected the stonewall, and thus moving this matter toward this Motion to Compel as quickly as possible seemed a good idea. Nevertheless, the receiver has always been willing to extend the forty-eight hour requirement at the time Mr. Chodos actually decided to cooperate in a Rule 7.1 telephone conference on the subject.[2]

Similarly, the receiver agrees that subpoenas are very broad. Again, this is because the receiver has been stonewalled regarding a description of what documents exist, and who is in possession of the documents. For example, the receiver has not been able to determine, with any degree of dependability, which party has which documents. Indian's pre-Assignment documents relating to the Trademark may be in CMA's possession, or may be in Stellican's possession. Conversely, it appears that the Indian Entities continued to operate post-Assignment through their Board of Directors, and corporate minutes and top-level correspondence may still be in the Indian Entities' possession, or more accurately, in Audax' possession. In other words, the receiver is no closer to determining which company has possession of which documents than the day

---

[2] It is interesting to note that when faced with the same problem, CMA finally agreed to a Rule 7.1 conference, but no meaningful progress was made. The careful orchestration between CMA and Audax has not been lost on the receiver, and the receiver has not pinned any hope of document production from either absent a direct Order of this Court (followed by the inevitable Motion to Reconsider). Until this Court becomes as weary of the stone wall as the receiver, infinite layers of law and motion will be the rule.

it started its efforts to gain access to the documents. The stone wall apparently has structural integrity.

It is unclear if Audax will contend that this Motion to Compel must be filed in Massachusetts; if so, it is incorrect. This is an area where receivership law is substantively different than standard *in personam*. A receiver, if it follows proper procedure, gives its Court nationwide jurisdiction, and this receiver followed that procedure.

Specifically, 28 U.S.C. § 754 provides that if a receiver files a notice of the receivership in another district within 10 days of appointment, then the receivership court has jurisdiction over property in that district. In this case, the receiver timely filed such notice in <u>every single district</u> in the United States. The same was reported to the Court in the receiver's "Certificate of Mailing and Delivery" filed in the Receivership Action on May 17, 1995. As a result, this Court has national jurisdiction over property of the receivership in every district in the United States.

Further, 28 U.S.C. § 1692 provides:

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district . . . .

The national jurisdiction contemplated in 28 U.S.C. § 754 and 28 U.S.C. § 1692 was considered by the Sixth Circuit Court of Appeals in *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 817 (6th Cir. 1981), *cert. denied sub nom. First Nat'l Bank v. Haile*, 455 U.S. 949 (1982).

> The sole question presented for review is whether the minimum contacts analysis of *International Shoe v. State of Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), and its progeny properly applies to <u>ancillary actions and</u>

7

> proceedings brought by a federal receiver appointed pursuant to Fed.R.Civ.P. 66 and 28 U.S.C. §§ 754 and 1692."
>
> The process authorized by § 1692 is not 'extra-territorial' but rather nationwide. The appointment court's process extends to any judicial district where receivership property is found. <u>As such, the minimum contacts analysis, as a limitation on state extra-territorial power, is simply inapposite</u>.
>
> The due process aspects of service of process in the instant case are to be examined under *Mullane v. Central Hanover Bank and Trust*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), and its progeny rather than under *International Shoe v. State of Washington, supra*. The issue is one of fairness and notice under the Fifth Amendment. That is, the question is whether the service was reasonably calculated to inform the defendants of the pendency of the proceedings against them in order that they might take advantage of the opportunity to be heard in their defense. *Mariash v. Morrill, supra*, 496 F.2d at 1142-1143, 1143 nn. 6-9; *Driver v. Helms, supra*, 74 F.R.D. at 389-391, 391.

*Haile* at page 826 (emphasis added).

It is true that the language in 28 U.S.C. § 1692 is not particularly clear for the purposes of heavy litigation, but that language has been interpreted and the interpretation is clear. The United States Court of Appeals in *Securities and Exchange Commission v. Bilzerian*, 378 F.3d 1100 (D.C. Cir. 2004) considered the words "process," "issue," and "execute" as they appear in section 1692. This analysis takes the national jurisdiction concept from *Haile* a number of steps forward, and eliminates all of the bases for objection to the process served on CMA and Audax by the receiver.

In other words, a subpoena issued by the receiver in this district is good <u>in any district</u>. The main argument made by CMA appears to be that the subpoenas were defective because they were not issued in California. Beyond that, the receiver does not know what was improper about the form of the subpoenas.

8

One thing that is not clear under the law above is whether the documents can be ordered produced in Denver. In an effort to be accommodating and take the high road, however, the receiver found cooperative local counsel and the subpoenas provide a place of production near the place of the subpoeana. In the case of Audax, it was less than 3 miles away.

If Audax had engaged in a meaningful discussion under Rule 7.1 as to what documents it has, the subpoena could have been more narrowly tailored. Alas, this is not the route Audax took. Audax instead gave the receiver no information about what documents it has that might be relevant to the receiver's investigation, and thus the receiver has had to ask for all documents available for fear of missing a crucial one.

The receiver maintains that the stone wall erected by Audax in response to the receiver's efforts to obtain documents from Audax has reached the stage that sanctions are appropriate. Under Fed.R.Civ.P. 37, failure to cooperate in response to document requests is sanctionable, and the sanctions imposed may take many forms. In this instance, the more severe sanctions are inapplicable. Dismissing complaints and excluding evidence are examples of sanctions that are not considered too severe for failure to cooperate. *See Altschuler v Samsonite Corp.*, 109 F.R.D. 353 (E.D.N.Y. 1986) (defendant's third-party complaint dismissed with prejudice for failure to cooperate); *Bass v Jostens, Inc.* 71 F. 3d 237 (6th Cir. 1995) (dismissal for repeated and willful refusals to cooperate in discovery); *and Western Reserve Oil & Gas Co. v Key Oil, Inc.*, 626 F. Supp 948 (S.D.W.Va. 1986) (evidence excluded as sanction). As documents are finally produced, and if Audax ever files a complaint against the receiver, these sanctions should be revisited.

Currently, however, the proper procedure under Rule 37, where a party asserts that its adversary has failed to cooperate, is to apply to the Court for an Order compelling production of documents. *Perlov v G.D. Searle & Co,.* 621 F. Supp 1146 (D. Md.). In addition, the Court should find that Audax has deliberately refused to comply with the receiver's discovery requests, and the Court should award monetary sanctions. *Perkinson v Houlihan's/D.C., Inc.* 108 F.R.D. 667 (D.Colo. 1985); *Black Horse Lane Assoc., L.P. v Dow Chem. Corp.*, 228 F3d 275 (3rd Cir. 2000); *Murphy v Williams* 145 F.R.D. 76 (E.D. Mich. 1992, ED Mich).

CMA

The return of serviced with attached subpoena to CMA is attached as Exhibit 9. The receiver incorporates the same arguments as regard Audax, which covers all the arguments made by CMA except one—relevancy of the documents sought to the 05-cv-1573 Action.[3]

First, "relevancy" is not the test for discovery—rather, it is whether the document is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26.

Second, the documents sought are relevant to the receiver's investigation, as ordered by the Court, regarding what happened to Indian and the value the Receivership Estate was to receive from its buyer. Whether or not these documents will have a material affect in the 05-cv-1573 action is beside the point.

---

[3] As with Audax, the receiver found cooperative local counsel who would agree to act as a place of production for the CMA subpoena. The place of production was 12 away from CMA's offices.

10

As the Court is aware, neither the receiver nor its counsel is being paid. They are not going on a "fishing expedition" for no purpose. The documents sought will help the receiver determine what happened to Indian and the value the Receivership Estate was to receive from its buyer, but only if the documents are produced.

WHEREFORE, Sterling Consulting Corporation, as receiver, prays that this Court enter an order compelling Audax to produce the documents covered by the subpoena, order it to pay the receiver's fees and attorney's fees incurred in connection with this motion, and grant it such other and further relief as the court deems just and proper.

Respectfully submitted this 23rd day of March, 2006.

By: *s/ John M. Tanner*
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203-4524
Phone: (303) 830-2400
Fax: (303) 830-1033
Email: jtanner@fwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO  80202
**Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
  Woods and Levy
633 17th St., Ste. 2200
Denver, CO  80202
**Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
  & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO  80202-1273
**Attorney for Carl D. Lucci/Albert R. Lucci**
jcage@cagewilliams.com

Glen E. Keller, Jr.
Davis Graham & Stubbs, LLP
1550 17th Street, Ste. 500
Denver, CO  80202
**Attorney for Cow Creek Band of Umpqua Tribe of Indians**
Glen.keller@dgslaw.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO  80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
Po Box 683
Ben Franklin Station
Washington, DC  20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO  80246
**Receiver**
rblock@xpn.com

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO  80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO  80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO  80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA  91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI 53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA  92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL  34982
Robert W. Hallock, Esq.
202 S. Merrill St.
Park Ridge, IL  60068-4223

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C.  20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA  01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C.  20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA  70506

Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ  08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM  87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT  06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL  60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN  55311

Steve Halprin
1316 Penningtow Place
Concord, N.C. 28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa, IL 61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA 91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM 87501

Jeffrey M. Perkins
President
Western Design Engineering, Inc.
808 Airport Road
Jackson, MI 49202

John Inelli
17 Old Farmstead Rd.
Chester, NJ 07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO 80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO 80501


By:   *s/ John M. Tanner*
      Fairfield and Woods, P.C.
      1700 Lincoln St., #2400
      Denver, CO 80203
      Phone: (303) 830-2400
      Fax: (303) 830-1033
      Email: jtanner@fwlaw.com