UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(United States District Court for the District of Colorado)
In re: Indian Motorcycle Manufacturing, Inc.
Case Number: 95-CV-00777-REB-CBS

— 4410-2 pldg

I hereby certify and return that today, February 10, 2006, at 1:00 PM, I summoned the within named witness Audax Special Purpose Co-Invest L.P. to appear and give testimony (*or produce*) as within directed, by delivering in hand to Aileen Keaney, Authorized Agent in Charge, a true and attested copy of the within United States District Court Subpoena. Said service was effected at: Audax Special Purpose Co-Invest L.P., 101 Huntington Avenue, Boston, MA 02199.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing information is true and correct. Executed on February 10, 2006.

_____
**Francis Davis,** Constable, City of Boston
& Disinterested Person over Age 18.


Sworn to before me on February 10, 2006

_____
JOSEPH P. BUTLER
Notary Public
Commonwealth of Massachusetts
My Commission Expires
April 9, 2010

Service: $45.00


**Butler and Witten**
Boston, MA
(617) 325-6455 ,

EXHIBIT 7

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

United States District Court for the District of Colorado Civil Action No. 95-cv-00777-REB-CBS

In re: Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

## SUBPOENA

    SUBPOENA (PERSONAL)

X   SUBPOENA TO PRODUCE (SUBPOENA DUCES TECUM)

TO: Audax Special Purpose Co-Invest, L.P.,

You are hereby ordered to produce the documents and things set forth on Exhibit A attached hereto by February 14, 2006 at the offices of Roberto, Israel & Weiner P.C., 100 North Washington Street, Boston, MA 02114.

Dated this 8nd day of February, 2006.

_____
John M. Tanner, Esq.

FAIRFIELD AND WOODS, P.C.

## DEFINITIONS FOR USE IN THESE DOCUMENT REQUESTS

1. The term this "Discovery" shall mean this Subpoena, including the Definitions, the Instructions, and Exhibit A.

2. As used in this Discovery, the term "Document" shall be interpreted as broadly as it is in Rules 26 and 34 of the Federal Rules of Civil Procedure, and shall include the original and any and all non-identical copies of the following: all drafts, whether written, printed, produced by hand, or reproduced by any process; notes; correspondence; letters; written communications of any nature; telegrams; memoranda; notebooks of any character; calendars, records, notes, or summaries of telephone conversations or personal conversations; electromagnetic tape records, video recordings and transcripts of records of any nature; computer printouts or storage media, including disks and tapes of any kind; diaries or daily summaries; routing slips or memoranda; publications; invoices; minutes, records of interviews, and summaries of interviews; opinions of consultants and reports of consultants; studies; charts; photographs; drawings; forecasts; agreements; contracts, including all modifications and revisions to drafts, reports, and summaries of negotiations; checks; financial records; financial statements of any nature; brochures; pamphlets; trade letters and publications; press releases; advertisements; instructions; drafts of and translations of any documents; statements; interview notes; briefs; and any other written, printed, photocopied, or recorded material of any kind known to you or in your custody or control whether or not in your physical possession, including information stored electronically whether or not every printed to hard copy previously. Any Document bearing on any sheet or side thereof, any marks, including, by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or any notation of any character not part of the original text, or any reproduction thereof, is to be considered a separate Document.

3. As used in this Discovery, the term "Document Request" shall mean the requests set forth in Exhibit A – Document Requests.

4. As used in this Discovery, the word "Communication" shall mean every manner or means of disclosure, transfer or exchange, and every disclosure, transfer, or exchange of information whether orally or face-to-face or by telephone, mail, personal delivery, document or otherwise.

5. As used in this Discovery, the words "all" and "any" shall each mean "any and all."

6. As used in this Discovery, the word "including" shall mean "including, but not limited to."

7. As used in this Discovery, the word "and" shall mean "and" and "or."

8. As used in this Discovery, the words "person" or "persons" shall include all natural persons ("individual" or "individuals") and entities, including: corporation, companies, partnerships, limited liability companies, limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus, boards, or other form of legal entity unless the context clearly indicates otherwise.

9. As used in this Discovery, the word "Affiliate" shall mean the directors, officers, members, managers, agents, affiliates, consultants, independent contractors, attorneys, employees, subsidiaries, corporate parents, and partners of any person.

10. The term "Indian" is used in this Discovery to refer to Indian Motorcycle Company, a Delaware corporation and its Affiliates, but the term Indian shall exclude the Assignee. Except where the context requires otherwise, in this Discovery, the term "Indian" shall include Indian Motorcycle Company's subsidiaries Corporation, Holdings, Licensing, and Realty, as defined below. Indian, when referred to in this Discovery as "Indian Motorcycle Company" shall exclude Corporation, Holdings, Licensing, Realty, and shall exclude the Assignee.

11. The term "Corporation" is used in this Discovery to refer to Indian Motorcycle Corporation, including its Affiliates. Except where the context requires otherwise, the term "Corporation" shall exclude Company, Holdings, Licensing, and Realty, and shall exclude the Assignee.

12. The term "Licensing" is used in this Discovery to refer to IMCOA Licensing America, Inc., including its Affiliates, except where the context requires otherwise, the term "Licensing" shall exclude Company, Holdings, Corporation, and Realty, and shall exclude the Assignee.

13. The term "Holdings" is used in this Discovery to refer to IMCOA Holdings America, Inc., including its Affiliates, except where the context requires otherwise, the term "Holdings" shall exclude Company, Licensing, Corporation, and Realty, and shall exclude the Assignee. .

14. The term "Realty" is used in this Discovery to refer to Indian Motorcycle Realty Services, Inc., including its Affiliates, except where the

3.

context requires otherwise, the term "Realty" shall exclude Company, Licensing, Corporation, and Holdings, and shall exclude the Assignee. , but the term Realty shall not include the Assignee.

15. The term "CMA" is used in this Discovery to refer to Credit Managers Association of California, D/B/A CMA Business Credit Services in its individual corporate capacity, a California nonprofit corporation, and its Affiliates, but the term CMA shall not include CMA as Assignee.

16. The term "Assignee" is used in this Discovery to refer to Credit Managers Association of California, D/B/A CMA Business Credit Services as the assignee under the Assignments.

17. The term "Assignments" is used in this Discovery to refer to the Corporation Assignment, the Realty Assignment, the Company Assignment, the Holdings Assignment, and the Licensing Assignment, as those terms are defined below.

18. The term "Company Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Company in favor of CMA in 2003.

19. The term "Corporation Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Corporation on September 26, 2003The term "Holdings Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Holdings in favor of CMA in 2003.

20. The term "Licensing Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Licensing in favor of CMA in 2003. .

21. The term "Realty Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Realty in favor of CMA in 2003.

22. The term "Audax" is used in this Discovery to refer to Audax Group, Audax Management Company, LLC, Audax Co-Invest, L.P., Audax Special Purpose Co-Invest, L.P., and Audax Trust Co-Invest, L.P., and their directors, officers, members, managers, agents, affiliates, consultants, independent contractors, attorneys, employees, subsidiaries, corporate parents, and partners.

23. The term "Receiver" is used in this Discovery to refer to Sterling Consulting Corporation, as receiver in the Receivership Action, and not in its individual corporate capacity.

24. The term "Receivership Estate" is used in this Discovery to refer to the receivership estate in the Receivership Action.

25. The Term "Sterling" is used in this Discovery to refer to Sterling Consulting Corporation, in its individual corporate capacity, and not as the Receiver.

26. The term "Sterling Action" is used in this Discovery to refer to the civil action styled *Sterling Consulting Corporation v. CMA*, United States District Court for the District of Colorado, No. 05-cv-01573-PSF-CBS.

27. The term "Trust Action" is used in this Discovery to refer to the civil action styled *Sterling Consulting Corporation, receiver v. Pahl & Gosselin et al*, Civil Action No. 2006-cv-00076, United States District Court, District of Colorado.

28. The term "Trademark" is used in this Discovery to refer to all of the Indian Motorcycle trademarks (including trade dress trademarks) in any form or color, whether or not incorporating the word "motorcycle" or "motocycle," including the forms which could be confused by a member of the public with the Trademarks that were owned by Indian at the time of the Assignments, in any country, including trade dress Trademarks, opposition actions to the registration of similar trademarks, cancellation actions to the registration of similar trademarks, and all rights under any claim of prior infringement or misappropriation.

29. The term "Settlement Agreement" is used in this Discovery to refer to that certain settlement agreement between *inter alia* Sterling Consulting Corporation and Indian Motorcycle Company dated August 31, 2000 and approved by Order of the Colorado District Court. The term Settlement Agreement shall include the Indemnification Agreement and other attachments to the Settlement Agreement.

30. The term "Stellican" is used in this Discovery to refer to Stellican, Ltd. and any of its Affiliates involved in the purchase of the Trademark assets, including Indian Motorcycle International, LLC.

## INSTRUCTIONS

31. All Documents and Communications produced by you should be produced by providing a photocopy of each item to the attorney for the receiver, within forty-eight hours days of the service of this Request.

32. If you object to any of the following Document Requests on grounds that you do not understand the meaning of a word or phrase, then for each such Document Request, set forth your own good faith definition of the word or phrase in doubt, together with the source of your definition, and respond to such Document Request using your definition.

33. If any Document or Communication called for by any Document Request is available to you but is not produced for any reason, each such Document or Communication shall be identified in writing so as to indicate the nature of the Document or Communication, its date, its author, the person, if any, who received the original or any copy thereof, and the reason or reasons for withholding the Document or Communication from production. Additionally, any other information necessary for the Court and receiver's counsel to independently ascertain the legal sufficiency of any reason or reasons for withholding the Document or Communication should be disclosed in your written Response.

34. Rick, first we are not in Colorado, so none of the Colorado Rules apply. Second, because this is a subpoena to a non-party under rule 45, and not a rule 34 request to a party, there is no "continuing duty" to do anything. CMA just has to produce the documents it has from the time the subpoena is served until it is answered. If it gets a truckload of documents the day after it responds, it has no duty to tell us about that. If it were a rule 34 request, it would.

## EXHIBIT A – DOCUMENT REQUESTS

### DOCUMENTS AND TANGIBLES TO BE PRODUCED:

1. All Documents and Communications that refer or relate to the management and control of Indian Motorcycle Company, including the following Documents and Communications:

Minutes of the Board of Directors of Indian Motorcycle Company;

Minutes of any committees appointed by the Board of Directors of Indian Motorcycle Company;

6.

Documents and Communications between and among members of the Board of Directors of Indian Motorcycle Company;

Documents and Communications between and among shareholders of Indian Motorcycle Company;

Documents and Communications between Audax and Albright II Venture Fund and its Affiliates, including J. L. Albright;

Documents and Communications between Audax and Indian Motorcycle Canada, Inc. and its Affiliates;

Documents and Communications between Audax and Katama Cycle, LLC and its Affiliates, including Summerfield Johnston, Jr., Gordon Burns, and Henry Schimberg;

Documents and Communications between Audax and 333 Ludlow, LLC and its Affiliates

Documents and Communications between Indian and Albright II Venture Fund and its Affiliates, including Mr. J. L. Albright;

Documents and Communications between Indian and Indian Motorcycle Canada, Inc. and its Affiliates;

Documents and Communications between Indian and Katama Cycle, LLC and its Affiliates, including Summerfield Johnston, Jr., Gordon Burns, and Henry Schimberg;

Documents and Communications between Indian and 333 Ludlow, LLC and its Affiliates;

Documents and Communications between Audax and any Audax employee or representative serving as a Board Member of any Indian entity; and

Documents and Communications between any Indian entity and any Audax employee or representative serving as a Board Member of any Indian entity.

    2.    Documents and Communications between Audax and Stellican, including Documents and Communications that refer or relate to the purchase of the Trademark assets by Stellican.

3. Documents and Communications that reflect any ownership interest by Audax, whether direct or indirect, in the current owner of the Trademark assets and its Affiliates.

4. Copies of all financial statements for Indian.

5. Documents and Communications that refer or relate to the sale of common stock in Indian Motorcycle Company, including the sale of common stock in Indian Motorcycle Company by insiders (as the term "insiders" is defined in some securities act).

6. All Documents and Communications that refer or relate in any way to the transfer of the assets from any Indian entity to the Assignee.

7. All Documents and Communications that refer or relate in any way to the sale of the assets of any Indian entity by the Assignee.

8. All Documents and Communications that refer or relate to the payment of claims against the Assignment estate of any Indian entity by the Assignee.

9. All Documents and Communications that refer or relate to the transfer of funds from any Assignment estate to any other Assignment estate.

10. All Documents and Communications that refer or relate to the payment of the claims of any Indian Assignment estate utilizing the proceeds from the sale of the assets of any other Indian Assignment estate by the Assignee.

11. All Documents and Communications that refer or relate to an equitable subordination of claims by Audax to any other claim against any of the assignment estates.

12. All Documents and Communications that refer or relate to the communications between and among Audax and CMA and the Assignee.

13. All Documents and Communications that refer or relate to the negotiations between the Assignee and Audax concerning the secured and unsecured claims of Audax against any of the Assignment estates.

14. All Documents and Communications that refer or relate to an agreement or other arrangement between the Assignee and Audax whereby the Assignee approved secured claims or unsecured claims of Audax, or both,

including Documents and Communication in exchange for the consent of Audax for the Assignee to pay claims against the assignment estate of Corporation utilizing proceeds from the sale of assets of any other assignment estate.

15. All Documents and Communications that refer or relate to the Settlement Agreement.

16. All Documents and Communications that refer or relate to the communications between Indian and CMA and/or the Assignee.

17. All documents and communications that refer or relate in any way to the Trademark assets.

18. All Documents and Communications that refer or relate to any offers to purchase any asset or assets transferred to the Assignee from any Indian entity.

19. Any Documents and Communications that refer or relate to any alleged "bundling arrangement" or similar arrangement whereby the Trademark was bundled for sale with the assets of Corporation.

20. Any and all financial statements for any Indian entity for 2002 and 2003, regardless of date, audit status, or status of completion.

21. Any and all board minutes for any Indian entity, regardless of date or status of completion.