UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

**Civil Action No. 95-cv-00777-REB-CBS**

In re:

Receivership Estate of INDIAN MOTORCYCLE MANUFACTURING, INC.,
a New Mexico Corporation

---

**UNITED STATES' RESPONSE TO [DI# 2090] PACELLI'S JOINDER IN AND SUPPLEMENT TO MICHAEL PAYNE'S OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO GRANT RECEIVER'S MOTION FOR RESTITUTION**
(and U.S. Position on [DI# 2250] "Receiver's Response to Objection of Mr. Pacelli")

---

On April 18, 2006, Magistrate Judge Shaffer granted Edward Pacelli's motion (DI# 2089) to file a joinder in and supplement to Michael Payne's Rule 72 Objection to Magistrate Judge Schlatter's recommendation to grant the Receiver's motion for restitution, and allowed the Receiver and the United States to respond within 20 days of the Order (DI# 2232). Mr. Pacelli's joinder/supplement (DI# 2090) was filed at the time of his motion on January 23, 2006. The Receiver filed a response on April 25, 2006 (DI# 2250). The United States files this response mostly to restate (with minor adjustments) the points made in its tentative response (DI# 2108), lest they be overlooked, and to add its position on the Receiver's 4/25/06 response (which the United States does not join).[1] The United States notes further for the district judge that it has requested that the Court expedite resolution of the Rule 72 objections. (DI# 2217, filed 4/12/06.)

**Response to Pacelli's Arguments**

This response addresses only those points in Pacelli's joinder/supplement (DI# 2090) that add new arguments or elaborate on Payne's points in significant ways. (To the extent that Mr.

---

[1] In DI# 2108, the United States noted minor disagreement with the Receiver's response to the motion for leave by Mr. Pacelli (DI# 2092). The Receiver's 4/25/06 response (DI# 2250) is more extensive.

Pacelli's arguments are duplicative of the Rule 72 objection filed by Mr. Payne, the United States incorporates its January 6, 2006 response (DI# 2067) to Payne's objection.)

### 1.  Dispute Over the Sum Pacelli Received

Preliminarily, Pacelli's disagreement with the Receiver over the sum he received can be separately adjudicated and is not a basis upon which to reject the recommendation and report of the Magistrate Judge.

### 2.  Pacelli's Contentions Regarding Mr. Mandelman's Distribution

Pacelli argues that the restitution motion does not treat all creditors equally because Michael Mandelman received $2 million and will not be pursued.  Pacelli states that Mandelman "is, if anything, entitled to a lower priority than general unsecured creditors" because, according to Pacelli, he was a "sponsor of IMMI and implicated in fraudulent activity."  By far, the bulk of Mandelman's distribution was paid to the IRS, and (as the Receiver's response to Pacelli already notes) the United States therefore strenuously resisted the Receiver's claims to recover the Mandelman distribution from him and the IRS.  Although Pacelli is too late to object to the settlement agreement (which was duly approved by the Massachusetts District Court after the Receiver sent notice of its motion for such approval to the last addresses of record of all claimants and parties), the United States believes it is nevertheless appropriate for it to dispel the mistaken inferences and facts regarding the Mandelman distribution that are contained in Pacelli's objection.

To the knowledge of the United States, Mandelman was never involved in the fraud alleged to have been committed by IMMI and its former principals.  If he was so involved, no such accusation was ever indicated to the United States and in closely examining large portions of the record in this case in preparation for the tax litigation, counsel for the United States did not come across any such accusation.  Rather, Mandelman acquired stock in three corporations, unrelated to IMMI, that became the three Massachusetts bankruptcy debtors.  He acquired that stock from

Philip Zanghi, against whom Mandelman had won his own judgment in federal court in Massachusetts based on fraud allegedly committed by Zanghi. As a result, Mandelman had control of any "equity" in the trademark rights of those three debtors – *i.e.*, to the extent their rights in the mark had value above the debts of those corporations. After the bankruptcies began and after this receivership action began and after Sterling was appointed Receiver, the Receiver entered into a contract with Mandelman to purchase his stock. Originally, the acquisition price was an installment note for $800,000 plus a 50% interest in a corporation to be formed to control the rights to the mark throughout Europe. This Court approved of that contract in late 1995. (DI#s 76, 115.) Disputes then arose over the contract's meaning, and both parties alleged breaches by the other (and the Receiver did not make the installment payments). On November 24, 1997, a settlement and modification of the original contract was approved on the record, under which Mandelman relinquished all further claims to the mark, including in any entity formed to control the European rights, and was promised $2 million "in cash at the final closing on the sale" of the combined assets of the bankruptcy and receivership estates. (See transcript filed as DI# 546.)

It follows from the foregoing that Mandeman was an *administrative* contract creditor. He was not a pre-receivership claimant defrauded by IMMI or who caused IMMI to defraud other claimants. In addition, the fact that the Receiver agreed to pay him cash *at the closing* on the sale of the combined mark assets reflects the recognition that the assets from the bankruptcy corporations (the stock in which was owned by Mandelman) was essential to the Receiver's plan to consolidate all of the competing rights in the mark and sell them together, on the theory (which turned out to be quite true) that the whole was worth far more than the some of the competing parts. The "cash at the final closing" agreement, in the government's view, means that Mandelman had superpriority, in that his payment was a condition on the consummation of the sale. His claim thus had priority over even the tax liabilities of IMMI incurred in the sale.

It may also be noted that the Receiver asserted a claim to reform the contract with Mandelman and recover part of the $2 million. The Receiver alleged that Mandelman was supposed to assign to it a judgment against the three bankruptcy debtors and that Mandelman had misrepresented the value of the judgment. But the Massachusetts District Court rejected those claims in an extensive published opinion. In re Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 8, 41-42 (D. Mass. 2003) (reciting many of these facts). It later awarded Mandelman attorney's fees as an administrative claim (junior to the claims of the Receiver and its counsel for compensation), based on the clause in the contract that the winner of any dispute over the contract would be entitled to attorney's fees.[2]  See In re Indian Motorcycle Litigation, 307 B.R. 7 (D. Mass. 2004). That ruling plainly established the administrative nature (*i.e.*, post-Receiver's appointment) of the contract between the Receiver and Mandelman. In September 2005, the Massachusetts District Court converted its rulings on the Receiver's and Mandelman's contract claims into an appealable Rule 54(b) judgment, on which the appeal time has since run.[3]

So, while Pacelli is correct in stating that the restitution motion does not treat all creditors equally, that is only because all creditors are not equal. As a further example, the Receiver's restitution motion is directed at pre-receivership creditors, reserving the right, only if later

---

[2]  Footnote 5 of the Receiver's response to Pacelli asserts that the government somehow "engineered" this judgment against the receivership estates for Mandelman's attorney fees. As the report of the decision cited in the text indicates, Mr. Mandelman was represented by a highly regarded Boston law firm (Goulston & Storrs), and it was that firm's bill that underlay the judgment, which was based on a provision in the Receiver/Mandelman contract that automatically awarded attorney's fees to the loser in any litigation over the contract. (The comment in footnote 5 of the Receiver's response regarding the ruling adverse to the Receiver being "in apparent consistency with Senior Judge Keeton's charge" is addressed *infra*.)

[3]  The Receiver agreed, in a modification filed to the tax settlement agreement before it was approved, not to appeal the Rule 54(b) judgment on the Mandelman contract issues. Mandelman thereafter elected not to appeal the ruling that his attorney's fee claim was junior to the Receiver's own expenses, which election not to appeal entitled Mandelman to certain third-party beneficiary rights under the tax settlement agreement. This also helped pave the way for the transfer of venue back to Colorado, to which Mandelman otherwise could have objected.

necessary, to move for restitution from administrative creditors such as those who purchased Receiver's certificates and were repaid with 6% interest. The tax settlement reserves the Receiver's right to seek restitution from Mandelman as an administrative creditor, and also reserves his defenses that he has superpriority over other administrative claims based on the "cash at the final closing" language of the settlement approved by this Court on the record on November 24, 1997.

### 3. Pacelli's Accusations of Self-Dealing

Finally, Mr. Pacelli accuses the Receiver of having retained the purchase money stock to enrich himself, claiming that Mr. Block once said it would make him a millionaire. The Receiver's response denies this. It is not necessary for this Court to resolve that factual dispute. It is immaterial to the restitution motion. What is undisputed is that this Court, in 1999, approved the issuance of a "bonus" to the Receiver equal to a 5% interest in the purchase money stock in the new Indian Motorcycle Company that was received as part of the consideration for the sale of the combined assets, based upon what seemed at the time like a job extremely well done. While, in hindsight, it may not have been a good idea to grant the Receiver an interest in the receivership estate in that fashion, the matter was proposed by others with an interest in the purchase money stock, on notice to all claimants, and none, including Mr. Pacelli, objected. Whether Mr. Block thought at one time that the 5% interest would make him a millionaire is irrelevant.

What is also undisputed is that it was well known that the purchase money stock was in the receivership estate and not being sold, and that those who held the rights to the other 95% of the purchase money stock in the purchaser corporation (mostly the receivers certificate holders) would surely have objected most strenuously to any proposal to sell the stock at that time. Certainly Mr. Pacelli did not make a motion to require sale of the stock. There were also restrictions on the sale-ability of the stock at the time, that had been imposed by the purchaser corporation in the purchase

agreement. A sale without the permission of the purchaser thus might have risked an administrative claim for breach of contract, imposing administrative liability on the receivership estate.

**Position on Receiver's Response (DI 2250)**

Preliminarily, the United States questions the point on page 5 of the Receiver's response to Pacelli that the restitution motion is "not dispositive" and thus subject to review only under Rule 72(a). The restitution motion seeks a determination that the claimants are substantively liable to contribute to restitution to enable satisfaction of the higher priority tax claim. Such a determination appears to be a dispositive determination and subject to review under Rule 72(b). Nonetheless, there is nothing in Mr. Pacelli's submission, nor anything in the submission of Mr. Payne which it joins, which calls for disturbing the essential thrust of Magistrate Judge Schlatter's report and recommendation, or which justifies considering additional evidence. All of the facts necessary to the motion for restitution occurred *on the record* in this civil action (whether here or when the case was in Massachusetts). Messrs. Payne and Pacelli could have asked this Court, in adjudicating their Rule 72 objections, to take judicial notice of any previous court filings or transcripts of hearings. They have implicitly done so to a limited extent by referring to past events on the record.

As noted above, Mr. Pacelli's personal accusations concerning the Receiver are irrelevant at this stage. Nevertheless, in light of the nature of the accusations, they apparently struck a nerve with the Receiver and its response is reactive. While that is understandable given Mr. Pacelli's personal attack, the Receiver's disrespect of the orders of the courts in Massachusetts is not appropriate. Its depiction of events there, moreover, is not fully accurate.

The Receiver suggests that a 2001 order of the bankruptcy judge requiring it to return funds to the Trustee on threat of contempt was in "obvious retaliation" for a 1995 order by Judge Weinshienk essentially disregarding a 1995 injunction entered by the bankruptcy court. In fact,

- 6 -

Judge Boroff's 2001 orders never threatened to hold the Receiver in contempt "because the receiver did not return the $450,000 to the Trustee." On August 3, 2001, the bankruptcy order ordered the Receiver to return the money (actually $1.2 million of which the Receiver claimed $450,000 was property of the receivership estate). That 8/3/01 order was in response to a motion by the United States to enforce an appellate ruling that had held that an order transferring the money to the Receiver over the government's objection in the first place was error and had to be reversed. The 8/3/01 order was essentially a restitution order. It was filed in the case under a notice by the Receiver. (DI# 1666.) On August 20, 2003, Magistrate Judge Schlatter entered and order instructing the Receiver to comply and it did.[4] (DI# 1681.)

The Receiver claims that if Judge Schlatter had not required it to return the money there would have been a much different result. To the contrary, the Bankruptcy Court's 8/3/01 decision was binding on the Receiver subject only to appeal in that jurisdiction and also had to be fully respected by this Court. *See Celotex Corp. v. Edwards*, 415 U.S. 300, 313 (1995) (district court required to respect bankruptcy court injunction and could not proceed in contravention of it).[5]

The Receiver next states that the results of the transfer to Massachusetts were "pre-

---

[4] The government and the Receiver objected to certain aspects of the 8/20/01 order but not to the direction that the Receiver return the funds to the Trustee.

[5] In response to a motion by the Receiver in this Court to "quiet title" to $450,000 of the $1.2 million after it was returned to the Trustee, the United States moved the bankruptcy court to find and declare that the quiet title motion (and a limited number of related papers) violated the automatic bankruptcy stay (11 U.S.C. § 362) and to enjoin the Receiver to cease prosecuting that motion or filing similar ones. The Bankruptcy Court granted that motion on November 21, 2001. *In re Indian Motocycle Co.*, 2001 WL 1673643 (Bankr. Mass. 2001). Judge Weinshienk later entered an order (DI# 1775) suggesting that the bankruptcy court's injunction was a nullity (and criticizing the bankruptcy judge's entry of it, based partly on a misreading of the bankruptcy court's order). The bankruptcy judge then issued an "Order of Clarification," responding to Judge Weinshienk's criticism (a copy is Exhibit B to Payne's Rule 72 objection, DI# 2050). The United States, after initially attempting an appeal that the Tenth Circuit indicated was interlocutory and thus premature, filed a motion that Judge Weinshienk reconsider, citing *Celotex*. (DI# 1839.) That motion was still under submission when the case was transferred to Massachusetts.

ordained" "although there is no hard evidence" and suggests there were *ex parte* "instructions" to District Judge Keeton as to how the cases should come out, based on a statement he made during a hearing at which he rejected a suggestion by the Receiver's counsel to transfer part of the case back to Colorado as being inconsistent with the instructions he was given when the case was assigned to him. Judge Keeton fully explained this at the time – he indicated that when the bankruptcy cases were withdrawn from the bankruptcy court to the district court and the Colorado receivership action arrived at the district court, Chief Judge Young assigned the cases to Judge Keeton and instructed him to fully resolve the merits of all of the disputes. Judge Keeton felt it would be inconsistent to send back to Colorado any of the disputes that were consolidated before him in order to avoid any more jurisdictional conflicts and that if part of the case was re-transferred to Colorado, the jurisdictional disputes would resurface. That is also why the United States would only support re-transfer of venue (as part of a settlement agreement) if *all* of the disputes among the Receiver, the government, the Trustee, and Mandelman were resolved with finality first. The Receiver is also fully aware that, at the initial hearings in the Massachusetts District Court, Judge Keeton was quite unfavorable towards the positions taken by the United States. It was only after full briefing of issues that Judge Keeton came to understand that the government's legal arguments vis-a-vis the Receiver were for the most part correct.

   The Receiver next asserts that Judge Keeton even upheld part of the tax assessment "that the government did not believe it could sustain." We do not know to what this refers but the Massachusetts District Court did no such thing. We suspect this refers to a unilateral concession made by the United States that reduced the IRS's tax assessment before the court ruled on it. The Court's ruling was consistent with the *reduced* assessment, not with the original one.

   The Receiver also argues that the fact that its loss to the United States was "preordained the moment the Receivership Action was transferred to the Massachusetts District Court" is further

- 8 -

revealed by the fact that Judge Keeton treated as "inconsequential" the fact that the receivership corporation was dismissed from this action prior to the transfer to Massachusetts and yet the IRS made the assessment against that corporation. But that fact *was* inconsequential. A corporate tax liability does not become a nullity because the corporation is dismissed from a lawsuit. The fact remained that the tax was incurred by a corporation in receivership while under the control of a court-appointed fiduciary. The tax was incurred in 1999 and the estate was then liable for the tax. The receivership estate remained liable for the tax notwithstanding the subsequent dismissal of the corporation as a party.

More importantly for present purposes, the distributees of the proceeds of the corporate assets from the receivership estate remain liable for restitution to the extent that they received funds that should instead have been retained and paid to the IRS in satisfaction of the tax liability.

The Receiver suggests that counsel for Mr. Pacelli, (Mr. Pankow), has a conflict of interest because of his representation of Mr. Payne, because Mr. Payne was a creditor of IMMI while Mr. Pacelli was a creditor of Motor. The Receiver derives this theory from its view that it "is in Mr. Pacelli's best interest to argue that only the creditors of Motor should pay the tax because it was the payment to the Motor creditors that generated it." The argument is flawed and barred. The tax settlement agreement explicitly bars this argument, and that agreement was court-approved after notice to all claimants of a right to object. More fundamentally, the argument would be wrong anyway (and this partly serves to explain why the United States insisted that the agreement preclude the Receiver from discriminating against Motor claimants in seeking restitution). The Receiver is disgruntled because IMMI's taxable income was not reduced by Motor's expenses. In this regard, it is inaccurate for the Receiver to say that "[t]he Massachusetts District Court held that the money that was paid to the Motor creditors was not a necessary and ordinary business expense of the receiver, notwithstanding the fact that the payment was ordered by the Colorado District

Court." The Massachusetts District Court never said that. The tax deduction was disallowed because the two corporations – Motor and IMMI – were not one and the same. This Court's order that Motor's creditors be paid from the sale proceeds of the assets reflected the fact that the Receiver for IMMI, by contract, agreed to pay those claims when it acquired Motor's stock from Mr. Mandelman. For the same reason, the cost of that promise was a capital expense (that of a stock acquisition) and not an expense deductible to IMMI. But the expenses of the Motor claims payment was deductible to Motor. And that, in part, is why Motor was not charged with any tax. The government, in the settlement, would not allow the Receiver to discriminate against Motor's creditors in seeking disgorgement because the mere fact that an expense is not deductible on a particular corporate income tax return does not mean that the expense did not have to be paid. The Receiver's theory that merely because the Motor claims expense tax deduction on IMMI's return was disallowed by the IRS, that renders this Court's order to pay Motor's creditors an error, is a *non-sequitur*. In any event, in light of the tax settlement's preclusion of discrimination against Motor claimants, Mr. Pacelli's and Mr. Payne's interests do not appear to be in conflict (at least not as described by the Receiver).

  Finally, the Receiver implies (footnote 9) that if some claimants did not get notice of the settlement agreement, they may yet be able to object to it. The Receiver is wrong, as revealed by a decision adverse to the United States in bankruptcy court in the related case, and which was then upheld in a government appeal. In 2000, the United States filed a motion to reconsider the September 1999 Trustee/Receiver settlement, arguing, among other things, that it improperly allowed a $550,000 superpriority claim to the Receiver against the bankruptcy estates. Procedurally, the government argued that it was not a creditor yet at the time that the notice of the settlement was served (since the bankruptcy tax accrued at the end of the 1999 calendar year). The bankruptcy court (Judge Boroff – the same whom the Receiver accuses of always ruling in favor of

- 10 -

the government) denied the government's motion.  The government appealed.  On appeal, the BAP agreed with the Receiver's own argument that the Trustee was a fiduciary for the United States when he entered his settlement with the Receiver and thus the government was bound even though it had no opportunity to object.   *In re Indian Motocycle Co.*, 289 B.R. 269 (1st Cir. BAP 2003).

Notwithstanding the errors in the Receiver's response to Pacelli, Mr. Pacelli's objections should be overruled.

## Conclusion

For the foregoing reasons, in addition to those in the United States' response to the objection of Mr. Payne, the Magistrate Judge's report and recommendation should be adopted and the proposed order should be entered after making the changes suggested in paragraphs 21-25 of the government's response to Payne's objection.

Dated this 2nd  day of May, 2006.

                                                      Respectfully submitted,

                                                      WILLIAM J. LEONE
                                                    Acting United States Attorney
                                                    District of Colorado

                                                    */s/ Adam F. Hulbig*
                                                    ADAM F. HULBIG
                                                    Trial Attorney, Tax Division
                                                    U.S. Department of Justice
                                                    P.O. Box 683
                                                    Washington, D.C.  20044
                                                    Telephone: (202) 514-6061
                                                    Facsimile: (202) 307-0054
                                                    Email: adam.f.hulbig@usdoj.gov
                                                                 western.taxcivil@usdoj.gov

### CERTIFICATE OF SERVICE

      IT IS HEREBY CERTIFIED that on this 2nd day of May, 2006, I caused the foregoing **UNITED STATES' RESPONSE TO [DI# 2090] PACELLI'S JOINDER IN AND SUPPLEMENT TO MICHAEL PAYNE'S OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO GRANT RECEIVER'S MOTION FOR RESTITUTION (and U.S. Position on [DI# 2250] "Receiver's Response to Objection of Mr. Pacelli")** to be filed electronically using the CM/ECF system, which will serve all counsel registered for service by that means.

                                    */s/ Adam F. Hulbig*
                                      ADAM F. HULBIG
                                      Trial Attorney, Tax Division
                                      U.S. Department of Justice
                                      P.O. Box 683
                                      Washington, D.C.  20044