UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re: Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

## RECEIVER'S SUPPLEMENT TO MOTION TO COMPEL

Sterling Consulting Corporation, as receiver, by and through its attorneys, Fairfield and Woods, P.C., hereby supplements its previously filed Motion to Compel as follows:

1. In anticipation of the hearing on July 10, 2006, regarding its Motion to Compel, receiver hereby supplements previously filed papers with events that have transpired since the Motion to Compel was filed.[1]

## MOTION AGAINST AUDAX

2. Audax has acknowledged a responsibility to respond to the subpoena and produced some documents. Audax produced a photocopy paper box worth of documents that were divided into two different boxes. The vast majority of these documents were copies of offering prospectuses and correspondence with Sterling already in the possession of the receiver. Had Audax engaged in a reasonable Rule 7.1 conference, as the receiver requested, it would have saved a great deal of paper and bother. Only about

---

[1] This matter was scheduled as item 3 for the hearing by this Court in its Minute Order dated June 14, 2006. It might be helpful if this Court, as the discovery master, were to take time between now and then to have two telephone conferences: one with CMA and the receiver and one with Audax and the receiver, each with clients present. The receiver is confident that with such conferences, substantially all of the miscommunications between the parties will be resolved, and the receiver is hopeful that the remaining discovery disputes will be resolved.

10 – 15% of the documents produced were documents not already in the possession of the receiver, and a relatively small percentage of those were documents in which the receiver was interested.

3.  The documents produced provided some interesting information. For example, one document showed the agreement between the Indian Entities and CMA to improperly co-mingle the proceeds of the asset sales of the various Indian Entities. Although the receiver had surmised this, this was the first evidence to support such co-mingling occurred.

4.  This agreement is contrary to the rights of creditors of the solvent Indian Entities (including Sterling and the receiver). In fact, it was exactly this sort of behavior that resulted in the tax order against the receiver in seven figures. There was no authority to support an agreement between Audax and CMA to substantively consolidate two or more of the Indian Entities. This illegal agreement enabled CMA to use the assets of one company (IMCOA Licensing America, Inc.) to pay the debts of another company (Indian Motorcycle Corporation).

5.  Another document (or rather an unsigned draft of a document the receiver knows to exist by reference in other documents) shows that many aspects about the security interest held by Audax is inconsistent with the facts. These two documents lie near (but not at) the heart of the receiver's claims against Audax and CMA. The receiver believes Audax has more responsive documents and the receiver knows CMA does.

6.  What is more interesting, however, is what was not produced. It is impossible for the receiver to make an exhaustive list of what documents were not produced. First, lists of omitted documents is conceptually impossible to some degree

and otherwise difficult.  Second, Audax has refused to have a Rule 7.1 conference in which it explained what documents it had.  The receiver therefore does not know what documents Audax has.  The receiver is confident, however, that at least some of the following categories of documents exist, but were not produced:

      a.     <u>Correspondence (including e-mails) between executives at Audax and the various board members of Indian and the investors in Indian</u>.  With the exception of a handful of documents from one Audax executive, no correspondence from any other executive was produced.  For a company that lost over $100 million dollars running Indian out of business, this stretches the imagination well beyond the breaking point.

      b.     <u>Reports by CMA</u>.  For example, there was only one document produced that contained reports by CMA.  Among other line items, that document disclosed that $3.7 million in expenses in Indian Motorcycle Corp. were expended, but without an explanation as to where this money went.  There is no breakout or details.  The receiver is skeptical that Indian or Audax would have been satisfied with such a facially incomplete accounting and, therefore, believes there are additional documents.

      c.     <u>Communications between CMA and various bidders</u>.  The receiver understands Audax was completely informed about the bidding process, and there are a couple of references to bids in the documents produced, but nothing thorough or comprehensive.  If CMA spent so much time and money selling the assets of the Indian Entities, it certainly would have documented that for Audax.

7.     Unlike the problem with CMA, the receiver believes (but cannot definitively state) that the problem with Audax is that Audax is not taking the obligation to produce seriously.  Based on the foregoing, the receiver believes the Motion to Compel against Audax still must be heard, although it is no longer the "all or nothing" question that appeared to be at the time the Motion to Compel was filed.  It is now a matter of getting the attention of Audax and its executives.

## MOTION AGAINST CMA

A.  **CMA's Procedural Machinations**

8.  Unlike Audax, CMA has continued with its complete stonewall. In its response brief to the Motion to Compel, CMA complained that the original subpoena (on the receivership caption in Colorado) had not been properly served by sending it to Mr. Pitts even though Mr. Pitts had agreed to accept service. CMA also complained that the subpoena that was properly served had the Southern District of California caption on it, rather than the Central District of California caption on it.

9.  Although the receiver continues to be perplexed by such a litigating technique, it nevertheless formally served CMA with two more subpoenas. One was on the receivership caption, based upon the receiver's contention that it and this Court have nationwide jurisdiction. The other contained the Central District of California caption that CMA claims is required. A copy of the return of service and both subpoenas are attached hereto as Exhibits 1, 2 and 3.

10. Significantly, the specifications in the subpoena are exactly the same as all prior subpoenas served or sent to CMA. That is, the documents the receiver has been asking for have not changed in six months.

11. In response, CMA has stated that it will only produce documents responsive to the final three specifications in the subpoena and that none of the other documents requested are "relevant." In a prior conversation, however, Mr. Pitts stated that there were at most a handful of documents that fitted the final three specifications in the Subpoena and that they had already been produced. In other words, CMA is not going to produce any more documents absent an Order of this Court. .

12. As discussed more fully below, CMA is simply wrong in its relevancy argument—the receiver is conducting an investigation into all of the claims the receiver has against Indian, including what happened to Indian and why consideration the Receivership Estate received from Indian became valueless. Certainly part of this is what happened to Indian after it was transferred to CMA.

### B.   CMA's Refusal to Engage in Meaningful Rule 7.1 Conference

13. CMA has also refused to have a meaningful Rule 7.1 conference in this regard. One purported conference was held in March (prior to the filing of the Motion to Compel), but CMA refused to offer anything substantive in that conversation except: (i) the caption on the subpoena was wrong (as noted above, this has been corrected); (ii) the first fifteen specifications were "irrelevant" (as noted below, not only is this wrong, it is not for CMA to decide); and (iii) it had perhaps five pieces of paper responsive to the final three specifications, and they had already been produced.

14. CMA now refuses to participate in telephonic Rule 7.1 conference if Mr. Block participates. It has only offered the following cryptic explanation in an email from Mr. Pitts: "based on the actions of the Receiver in filing the Declaration of Richard Block dated March 23, 2006, I am not willing to participate on any call that includes the Receiver." The email string containing this is attached as Exhibit 4.

15. The receiver interpreted this to mean CMA's thought it was disadvantaged because it could not offer a counter-affidavit to Mr. Block's affidavit without disqualifying its own counsel. The receiver made a point to note that CMA's counsel was welcome to have a client participate in the conference, but CMA has refused.

16.     As shown in Exhibit 4, CMA's counsel at first stated he would engage in a written correspondence on the issue, but then recants on that position and states that there was really nothing to talk about because his position was intransient.  This does not constitute a good-faith effort to confer for two reasons.

17.     First, this does not comply with Rule 7.1.  *E.g, Hoelzel v. First Select Corp.*, 214 F.R.D. 634 (D.Colo. 2003) (per Boland, M.J.) (denying Motion to Compel for failing to comply with Rule 7.1: "The plaintiff did not initiate a conference in which the parties could discuss the propriety of the discovery requests or the defendant's asserted objections to them; the parties did not discuss precisely what information it is that the plaintiff needs or how the requests could be narrowed so as to avoid the defendant's objections; there was no deliberation, conversation, exchange of views, or consultation between the parties; nor was there any genuine attempt to resolve the dispute without judicial intervention.").  As a result, the receiver is not only unapologetic, but actually appalled, that it has been unable to narrow the issues in the Motion to Compel.

18.     Second, as a matter of law the receiver's counsel can only do what the receiver cannot.  *King v. Premo & King, Inc.*, 258 N.C. 701, 129 S.E.2d 493, 502 (1963) (collecting cases on this point).

19.     When it comes to understanding *what happened to Indian*, the receiver is not only competent, but far more qualified than undersigned counsel.  As a result, when it comes to what documents are needed to determine what happened to Indian, again, the receiver is not only competent, but far more qualified than undersigned counsel.  CMA's refusal to participate in a conference if the receiver is involved is simply continuing to

build onto the same stonewall it first erected last year. The receiver will not be able to breach this stonewall without this Court's help.

### C. Substance of the Requested Documents

20. As noted above, there are documents that were produced by Audax that confirmed what the receiver has said all along: that the excess from the sale of assets in IMCOA Licensing America, Inc. was used to pay debts of the insolvent sister company Indian Motorcycle Corporation. The law requires that the assets of IMCOA Licensing America, Inc. must be used to pay the creditors of that company, then any excess must flow up to the Indian Motorcycle Company (the parent company).

21. Both Sterling and the receiver are creditors of IMCOA Licensing American, Inc. and Indian Motorcycle Company; Sterling and the receiver are not aware of any claims they may have against Indian Motorcycle Corporation other than for return of the money improperly transferred. Therefore, all documents sought by the subpoenas are relevant to answering the question: What happened to Indian?

22. The manner in which Audax manipulated the operation of the Indian Entities for its own benefit has been partially demonstrated by at least one of the documents produced. The events that transpired during the sixty days between the end July of 2003 and the of September of 2003, pre-dating the Assignment for the Benefit of Creditors, is particularly important, and documents reflecting that period are solely within the custody and control of Audax and CMA. These documents support the receiver's contention that Audax disregarded the corporate distinctions of all of the Indian Entities, and therefore supports the receiver's alter ego claim against Audax

23. In addition, the receiver suspects that there were other irregularities in the manner in which CMA operated the Assignment Estates. When the documents showing these irregularities are produced, the receiver will be able to determine which, if any, were detrimental to the Receivership Estate.

24. The receiver's claim that the Settlement Agreement between certain Indian Entities and Sterling and the receiver was breached was clearly supported by one of the documents produced by Audax. This document indicated that CMA obtained an increased purchase price by breaching that Settlement Agreement. This confirms what Mr. Pitts said to Magistrate Judge Schlatter in open Court last year. The documents and communications between CMA and the various bidders, including the ultimate buyer, should further support this claim, but are among the category of documents and communications that CMA is refusing to produce.

25. As all of the foregoing are the subject of the receiver's Court-Ordered investigation in this receivership, CMA's belated and untimely claim that the first fifteen specifications are "irrelevant" is just plain wrong.

Respectfully submitted this 16th day of June, 2006.

By: *s/ John M. Tanner*
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203-4524
Phone: (303) 830-2400
Fax: (303) 830-1033
Email: jtanner@fwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO  80202
**Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
 Woods and Levy
633 17th St., Ste. 2200
Denver, CO  80202
**Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
 & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO  80202-1273
**Attorney for Carl D. Lucci/Albert R. Lucci**
jcage@cagewilliams.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO  80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, DC  20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO  80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO  80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO  80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA  91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI  53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA  92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL  34982

Robert W. Hallock, Esq.
202 S. Merrill St.
Park Ridge, IL  60068-4223

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C.  20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA  01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C.  20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA  70506

Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ  08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM  87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT  06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL  60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN  55311

Steve Halprin
1316 Penningtow Place
Concord, N.C.  28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa, IL  61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA  91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM  87501

Jeffrey M. Perkins
President
Western Design Engineering, Inc.
808 Airport Road
Jackson, MI  49202

John Inelli
17 Old Farmstead Rd.
Chester, NJ  07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO  80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO  80501

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO  80246
**Receiver**
rblock@xpn.com

**Courtesy Copies to:**
Julie Trent
jt@bsblawyers.com

Eugene Sprague
esprague@bw-legal.com

Michael Chodos
michael@chodos.com

Robert Pitts
rpitts@lawrwp.com


By:   s/ *John M. Tanner*
        Fairfield and Woods, P.C.
        1700 Lincoln St., #2400
        Denver, CO  80203
        Phone:  (303) 830-2400
        Fax:  (303) 830-1033
        Email:  jtanner@fwlaw.com