AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**SUBPOENA IN A CIVIL CASE**

In re: Indian Motorcycle Manufacturing Inc., a New Mexico Corporation

Case Number:[1] 95-cv-00077-REB-CBS
United States District Court
for the District of Colorado

TO: CREDIT MANAGERS ASSOCIATION OF CALIFORNIA, D/B/A CMA BUSINESS CREDIT SERVICES, a California nonprofit corporation.

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A

| PLACE | DATE AND TIME |
|---|---|
| Clark & Trevithick, 800 Wilshire Blvd., 12th Floor, Los Angeles, CA 90017 | June 5, 2006 at 9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Atty for Receiver | 05/24/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

John M. Tanner, Esq., Fairfield and Woods, P.C., 1700 Lincoln, Suite 2400, Denver, Colorado 80203, (303) 830-2400

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)



EXHIBIT 2

AO 88 (Rev.11/94) Subpoena in a Civil Case

## PROOF OF SERVICE

DATE    PLACE

**SERVED**

SERVED ON (PRINT NAME)    MANNER OF SERVICE

SERVED BY (PRINT NAME)    TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITIONS FOR USE IN THESE DOCUMENT REQUESTS

1. The term this "Discovery" shall mean this Subpoena, including the Definitions, the Instructions, and Exhibit A.

2. As used in this Discovery, the term "Document" shall be interpreted as broadly as it is in Rules 26 and 34 of the Federal Rules of Civil Procedure, and shall include the original and any and all non-identical copies of the following: all drafts, whether written, printed, produced by hand, or reproduced by any process; notes; correspondence; letters; written communications of any nature; telegrams; memoranda; notebooks of any character; calendars, records, notes, or summaries of telephone conversations or personal conversations; electromagnetic tape records, video recordings and transcripts of records of any nature; computer printouts or storage media, including disks and tapes of any kind; diaries or daily summaries; routing slips or memoranda; publications; invoices; minutes, records of interviews, and summaries of interviews; opinions of consultants and reports of consultants; studies; charts; photographs; drawings; forecasts; agreements; contracts, including all modifications and revisions to drafts, reports, and summaries of negotiations; checks; financial records; financial statements of any nature; brochures; pamphlets; trade letters and publications; press releases; advertisements; instructions; drafts of and translations of any documents; statements; interview notes; briefs; and any other written, printed, photocopied, or recorded material of any kind known to you or in your custody or control whether or not in your physical possession, including information stored electronically whether or not every printed to hard copy previously. Any Document bearing on any sheet or side thereof, any marks, including, by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or any notation of any character not part of the original text, or any reproduction thereof, is to be considered a separate Document.

3. As used in this Discovery, the term "Document Request" shall mean the requests set forth in Exhibit A – Document Requests.

4. As used in this Discovery, the word "Communication" shall mean every manner or means of disclosure, transfer or exchange, and every disclosure, transfer, or exchange of information whether orally or face-to-face or by telephone, mail, personal delivery, document or otherwise.

5. As used in this Discovery, the words "all" and "any" shall each mean "any and all."

6. As used in this Discovery, the word "including" shall mean "including, but not limited to."

7. As used in this Discovery, the word "and" shall mean "and" and "or."

8. As used in this Discovery, the words "person" or "persons" shall include all natural persons ("individual" or "individuals") and entities, including: corporation, companies, partnerships, limited liability companies, limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus, boards, or other form of legal entity unless the context clearly indicates otherwise.

9. As used in this Discovery, the word "Affiliate" shall mean the directors, officers, members, managers, agents, affiliates, consultants, independent contractors, attorneys, employees, subsidiaries, corporate parents, and partners of any person.

10. The term "Indian" is used in this Discovery to refer to Indian Motorcycle Company, a Delaware corporation and its Affiliates, but the term Indian shall exclude the Assignee. Except where the context requires otherwise, in this Discovery, the term "Indian" shall include Indian Motorcycle Company's subsidiaries Corporation, Holdings, Licensing, and Realty, as defined below. Indian, when referred to in this Discovery as "Indian Motorcycle Company" shall exclude Corporation, Holdings, Licensing, Realty, and shall exclude the Assignee.

11. The term "Corporation" is used in this Discovery to refer to Indian Motorcycle Corporation, including its Affiliates. Except where the context requires otherwise, the term "Corporation" shall exclude Company, Holdings, Licensing, and Realty, and shall exclude the Assignee.

12. The term "Licensing" is used in this Discovery to refer to IMCOA Licensing America, Inc., including its Affiliates, except where the context requires otherwise, the term "Licensing" shall exclude Company, Holdings, Corporation, and Realty, and shall exclude the Assignee.

13. The term "Holdings" is used in this Discovery to refer to IMCOA Holdings America, Inc., including its Affiliates, except where the context requires otherwise, the term "Holdings" shall exclude Company, Licensing, Corporation, and Realty, and shall exclude the Assignee. .

14. The term "Realty" is used in this Discovery to refer to Indian Motorcycle Realty Services, Inc., including its Affiliates, except where the context requires otherwise, the term "Realty" shall exclude Company, Licensing, Corporation, and Holdings, and shall exclude the Assignee. , but the term Realty shall not include the Assignee.

15. The term "CMA" is used in this Discovery to refer to Credit Managers Association of California, D/B/A CMA Business Credit Services in its individual corporate capacity, a California nonprofit corporation, and its Affiliates, but the term CMA shall not include CMA as Assignee.

16. The term "Assignee" is used in this Discovery to refer to Credit Managers Association of California, D/B/A CMA Business Credit Services as the assignee under the Assignments.

17. The term "Assignments" is used in this Discovery to refer to the Corporation Assignment, the Realty Assignment, the Company Assignment, the Holdings Assignment, and the Licensing Assignment, as those terms are defined below.

18. The term "Company Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Company in favor of CMA in 2003.

19. The term "Corporation Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Corporation on September 26, 2003 The term "Holdings Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Holdings in favor of CMA in 2003.

20. The term "Licensing Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Licensing in favor of CMA in 2003. .

21. The term "Realty Assignment" is used in this Discovery to refer to the General Assignment for the benefit of creditors executed by Realty in favor of CMA in 2003.

22. The term "Audax" is used in this Discovery to refer to Audax Group, Audax Management Company, LLC, Audax Co-Invest, L.P., Audax Special Purpose Co-Invest, L.P., and Audax Trust Co-Invest, L.P., and their directors, officers, members, managers, agents, affiliates, consultants, independent contractors, attorneys, employees, subsidiaries, corporate parents, and partners.

23. The term "Receiver" is used in this Discovery to refer to Sterling Consulting Corporation, as receiver in the Receivership Action, and not in its individual corporate capacity.

24. The term "Receivership Estate" is used in this Discovery to refer to the receivership estate in the Receivership Action.

25. The Term "Sterling" is used in this Discovery to refer to Sterling Consulting Corporation, in its individual corporate capacity, and not as the Receiver.

26. The term "Sterling Action" is used in this Discovery to refer to the civil action styled *Sterling Consulting Corporation v. CMA*, United States District Court for the District of Colorado, No. 05-cv-01573-PSF-CBS.

27. The term "Trust Action" is used in this Discovery to refer to the civil action styled *Sterling Consulting Corporation, receiver v. Pahl & Gosselin et al*, Civil Action No. 2006-cv-00076, United States District Court, District of Colorado.

28. The term "Trademark" is used in this Discovery to refer to all of the Indian Motorcycle trademarks (including trade dress trademarks) in any form or color, whether or not incorporating the word "motorcycle" or "motocycle," including the forms which could be confused by a member of the public with the Trademarks that were owned by Indian at the time of the Assignments, in any country, including trade dress Trademarks, opposition actions to the registration of similar trademarks, cancellation actions to the registration of similar trademarks, and all rights under any claim of prior infringement or misappropriation.

29. The term "Settlement Agreement" is used in this Discovery to refer to that certain settlement agreement between *inter alia* Sterling Consulting Corporation and Indian Motorcycle Company dated August 31, 2000 and approved by Order of the Colorado District Court. The term Settlement Agreement shall include the Indemnification Agreement and other attachments to the Settlement Agreement.

30. The term "Stellican" is used in this Discovery to refer to Stellican, Ltd. and any of its Affiliates involved in the purchase of the Trademark assets, including Indian Motorcycle International, LLC.

## INSTRUCTIONS

31. All Documents and Communications produced by you should be produced by providing a photocopy of each item to the attorney for the receiver, within forty-eight hours days of the service of this Request.

32. If you object to any of the following Document Requests on grounds that you do not understand the meaning of a word or phrase, then for each such Document Request, set forth your own good faith definition of the word or phrase in doubt, together with the source of your definition, and respond to such Document Request using your definition.

33. If any Document or Communication called for by any Document Request is available to you but is not produced for any reason, each such Document or Communication shall be identified in writing so as to indicate the nature of the Document or Communication, its date, its author, the person, if any, who received the original or any copy thereof, and the reason or reasons for withholding the Document or Communication from production. Additionally, any other information necessary for the Court and receiver's counsel to independently ascertain the legal sufficiency of any reason or reasons for withholding the Document or Communication should be disclosed in your written Response.

34. Rick, first we are not in Colorado, so none of the Colorado Rules apply. Second, because this is a subpoena to a non-party under rule 45, and not a rule 34 request to a party, there is no "continuing duty" to do anything. CMA just has to produce the documents it has from the time the subpoena is served until it is answered. If it gets a truckload of documents the day after it responds, it has no duty to tell us about that. If it were a rule 34 request, it would.

## EXHIBIT A – DOCUMENT REQUESTS

### DOCUMENTS AND TANGIBLES TO BE PRODUCED:

1. All Documents and Communications that refer or relate in any way to the transfer of the assets from any Indian entity to the Assignee.

2. All Documents and Communications that refer or relate in any way to the sale of the assets of any Indian entity by the Assignee.

3. All Documents and Communications that refer or relate to the payment of claims against the Assignment estate of any Indian entity by the Assignee.

4. All Documents and Communications that refer or relate to the transfer of funds from any Assignment estate to any other Assignment estate.

5. All Documents and Communications that refer or relate to the payment of the claims of any Indian Assignment estate utilizing the proceeds from the sale of the assets of any other Indian Assignment estate by the Assignee.

6. All Documents and Communications that refer or relate to an equitable subordination of claims by Audax to any other claim against any of the Assignment estates.

7. All Documents and Communications that refer or relate to the communications between and among Audax and CMA and the Assignee.

8. All Documents and Communications that refer or relate to the negotiations between the Assignee and Audax concerning the secured and unsecured claims of Audax against any of the Assignment estates.

9. All Documents and Communications that refer or relate to an agreement or other arrangement between the Assignee and Audax whereby the Assignee approved secured claims or unsecured claims of Audax, or both, including Documents and Communication in exchange for the consent of Audax for the Assignee to pay claims against the assignment estate of Corporation utilizing proceeds from the sale of assets of any other assignment estate.

10. All Documents and Communications that refer or relate to the Settlement Agreement.

11. All Documents and Communications that refer or relate to the communications between Indian and CMA and/or the Assignee.

12. All Documents and Communications that refer or relate to the power or authority of the Assignee to answer Discovery Requests of Indian or otherwise represent Indian (as opposed to its assets) in any legal proceeding.

13. All documents and communications that refer or relate in any way to the Trademark assets.

14. All Documents and Communications that refer or relate to any offers to purchase any asset or assets transferred to the Assignee from any Indian entity.

15. Any Documents and Communications that refer or relate to any alleged "bundling arrangement" or similar arrangement whereby the Trademark was bundled for sale with the assets of Corporation.

16. Any and all financial statements for any Indian entity for 2002 and 2003, regardless of date, audit status, or status of completion.

17. Any and all board minutes for any Indian entity, regardless of date or status of completion.

18. All Documents and Communications that refer or relate to the management and control of Indian Motorcycle Company, including the following Documents and Communications:

Minutes of the Board of Directors of Indian Motorcycle Company;

Minutes of any committees appointed by the Board of Directors of Indian Motorcycle Company;

Documents and Communications between and among members of the Board of Directors of Indian Motorcycle Company;

Documents and Communications between and among shareholders of Indian Motorcycle Company;

Documents and Communications between Audax and Albright II Venture Fund and its Affiliates, including J. L. Albright;

Documents and Communications between Audax and Indian Motorcycle Canada, Inc. and its Affiliates;

Documents and Communications between Audax and Katama Cycle, LLC and its Affiliates, including Summerfield Johnston, Jr., Gordon Burns, and Henry Schimberg;

Documents and Communications between Audax and 333 Ludlow, LLC and its Affiliates

Documents and Communications between Indian and Albright II Venture Fund and its Affiliates, including Mr. J. L. Albright;

Documents and Communications between Indian and Indian Motorcycle Canada, Inc. and its Affiliates;

Documents and Communications between Indian and Katama Cycle, LLC and its Affiliates, including Summerfield Johnston, Jr., Gordon Burns, and Henry Schimberg;

Documents and Communications between Indian and 333 Ludlow, LLC and its Affiliates;

Documents and Communications between Audax and any Audax employee or representative serving as a Board Member of any Indian entity; and

Documents and Communications between any Indian entity and any Audax employee or representative serving as a Board Member of any Indian entity.