## SETTLEMENT AGREEMENT

Sterling Consulting Corporation, in its capacity as receiver appointed in the Receivership Action (the "Receiver"), Sterling Consulting Corporation, in its individual capacity and Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. (separately referred to as "IMC," "Licensing," and "Holdings," respectively and collectively referred to as "Indian") hereby enter into the following Settlement Agreement ("Settlement Agreement") as of the 31st day of August, 2000.

### CONTEXT OF THIS SETTLEMENT AGREEMENT

A.   The Receiver is the Court-appointed receiver in the matter styled *Indian Motorcycle Manufacturing, Inc. v. the United States*, United States District Court for the District of Colorado (the "District Court"), No. 95-Z-777 (the "Receivership Action") regarding the assets of IMMI and assets acquired by the Receiver after the appointment of the Receiver (the estate comprising such assets will be referred to as the "Receivership Estate").

B.   Stephen M. Rodolakis is the acting Chapter 7 Bankruptcy Trustee in the actions known as *In re Indian Motocycle Company, Inc*; *In re Indian Motocycle Manufacturing Company, Inc.*; and *In re Indian Motocycle Apparel and Accessories Company, Inc.*, Nos. 93-41354-HJB, 94-42288-HJB and 93-41955-HJB, respectively, in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Cases"). The Bankruptcy Cases and the Receivership Estate are collectively referred to as the "Combined Estates."

C.   The Receiver and a predecessor Trustee entered into a Joint Motion for Approval of Stipulation Regarding Coordinated Sale and Coordinated Administration, which was filed with, and approved by both the United States Bankruptcy Court for the District of Massachusetts and the United States District Court for the District of Colorado. The Joint Motions filed in both Courts, the Orders approving them from both Courts, and the efforts undertaken to conduct the sale of assets in the Combined Estates are referred to hereafter as the "Coordinated Sale."

D.   The Coordinated Sale was closed February 11, 1999. Indian is the contract purchaser of the assets of the Combined Estates pursuant to an Amended Purchase Agreement, which was approved by the District Court on December 7, 1998 and by the Bankruptcy Court on January 13, 1999 (the "Purchase Agreement").

1

EXHIBIT 1

E.  Pursuant to the Purchase Agreement, the Receiver transferred all of its right title and interest in the Purchased Assets as such term was defined in the Purchase Agreement to Indian on February 11, 1999.

F.  The Purchase Agreement required ongoing performance by both the Receiver and Indian.

G.  Disputes have arisen between the Receiver and Indian regarding their respective obligations under the Purchase Agreement and amendments and modifications thereto.

H.  The parties to this Settlement Agreement (the "Parties") wish to settle the disputes among them without further litigation and without any admission of liability or wrongdoing.

Now therefore in consideration of the foregoing recitals and the mutual covenants and promises contained herein, the Parties agree as follows:

1. DEFINED TERMS AND INTERPRETATION

1.1. **Defined Terms.** As used herein, the following words shall have the following definitions (in alphabetic order):

1.1.a. "Ancillary Action" shall mean all legal actions brought by the Receiver against third parties during the pendency of the receivership to and including December 31, 1999 that related to the Trademark.

1.1.b. "District Court" shall mean the United States District Court, District of Colorado, the Honorable Zita L. Weinshienk, Senior District Judge presiding and the Honorable O. Edward Schlatter, Magistrate Judge presiding, and their successors.

1.1.c. "Final Order" means, as the context requires, a final order or determination of a court of competent jurisdiction that is either not subject to an appeal, or with respect to which no appeal has been made within the time limited for appeal.

1.1.d. "Formal Resolution Process" means the dispute resolution process provided for in Part 4 hereof;

1.1.e. "Holdings" shall mean IMCOA Holdings America, Inc.

1.1.f. "IMC" shall mean Indian Motorcycle Company.

2

1.1.g. "Indian" shall mean IMC, Licensing, and Holdings, collectively, jointly, and severally, and shall include the successors to and assignees of Indian's rights in the Subject Matter.

1.1.h. "Licensing" shall mean IMCOA Licensing America, Inc.

1.1.i. "Purchase Agreement" shall mean that certain Amended Purchase Agreement between Indian and the receiver dated October 16, 1998, as modified by the Joint Motion to Approve the Amended Purchase Agreement, the Joint Motion to Approve Termination of Eller Contract, Set Contractual Approval Procedure, and Approve Interim Funding of Receivership dated October 19, 1998, and various District Court Orders including the Order approving the Purchase Agreement.

1.1.j. "Purchased Assets" shall have the meaning as set forth in the Purchase Agreement.

1.1.k. "Receiver" shall mean Sterling Consulting Corporation in its capacity as receiver in the Receivership Action only, but not outside that capacity.

1.1.l. "Receivership Action" shall mean the civil action styled *Indian Motorcycle Manufacturing, Inc. v. United States of America*, 95-Z-777, United States District Court, District of Colorado, (formerly known as *Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.*, 95-Z-777, United States District Court, District of Colorado).

1.1.m. "Receivership Estate" shall mean the estate formed by the Order Appointing Receiver in the Receivership Action.

1.1.n. "Sterling" shall mean Sterling Consulting Corporation in its capacity as a private entity but not in its capacity as Receiver, and its officers, directors, employees, agents, and representatives.

1.1.o. "Subject Matter" shall mean the Trademark and all matters that relate to or are derived from (i) the Trademark, including without limitation the goodwill, domestic trademark rights, foreign trademark rights, licenses, agencies, and the sales of goods bearing the Trademark; (ii) the Purchased Assets as defined in the Purchase Agreement; and (iii) the Receivership, the Combined Estates, and the Coordinated Sale, including transfers of assets to Indian and distributions of the securities of Indian to the Receiver and by the Receiver.

3

1.1.p. "Trademark" shall have the meaning as set forth in the Purchase Agreement.

2. ACTIONS BY THE PARTIES

2.1. **Motion for Approval.** Promptly following their execution of this Settlement Agreement, Indian and the Receiver shall file a joint motion (the "Approval Motion") for an order of the District Court in the form of Exhibit 1 attached hereto dealing with certain matters (the "Approval Order"), including the following:

2.1.a. the approval of this Settlement Agreement;

2.1.b. the modification of the Stay Order;

2.1.c. the dismissal of Indian from the Receivership Action with prejudice; and

2.1.d. the termination of the Investigation (as that term is defined in paragraph 2.4, below).

2.2. **No Affirmative Action Pending Entry of Approval Order.** Pending grant of the Approval Order, Indian shall refrain from filing any motions in the Receivership Action or any actions involving the Subject Matter that require performance or a response of any kind by the Receiver except with the consent of the Receiver. Pending grant of the Approval Order, the Receiver shall refrain from filing any motions in the Receivership Action or any actions involving the Subject Matter that require performance or a response of any kind by Indian except with the consent of Indian. This paragraph shall not apply to the motions itemized in paragraph 2.3, below.

2.3. **Pending and Future Motions.** Promptly following their execution of this Settlement Agreement, the Parties shall co-operate in the filing and prosecution of the following motions:

2.3.a. the Approval Motion, which shall be a joint motion of Indian and the Receiver;

2.3.b. the motion requesting the modification of the Stay Order, which shall be incorporated in the Approval Motion;

2.3.c. the motion requesting dismissal of Indian with prejudice, which shall be incorporated in the Approval Motion;

4

2.3.d. the motion requesting permission for the permanent termination of the Investigation by the Receiver, which shall be incorporated in the Approval Motion;

2.3.e. the motion regarding certain issues relating to Trademark matters in Russia and Korea; and

2.3.f. the motion to dismiss the receiver, with prejudice from the matter known as *Sterling, as receiver, and Indian v. Sunrise et al.*

2.4.  **Termination of Investigation.** The Receiver filed its Motion Regarding Indian wherein the Receiver requested permission from the District Court to conduct an investigation into certain matters including dealer matters and common stock matters (the "Investigation"). The District Court approved the Investigation in part and the Receiver has commenced the Investigation. The Receiver hereby agrees to immediately discontinue the Investigation and the Receiver and Sterling shall maintain confidential any and all information obtained pursuant to that Investigation. Nothing contained herein shall operate to preclude the Receiver or Sterling from complying with compulsory process.

2.5.  **Payment of Cash.** Contemporaneously with the execution of this Settlement Agreement, Indian shall pay the receiver $250,000 in cash or certified funds. $125,000 shall be paid directly to the Receiver and $125,000 shall be paid to Fairfield and Woods, P.C. to hold in escrow for the benefit of, and as property of, the receiver. Indian shall have no further property rights in the $125,000 held in escrow, save and except the right to claim reverter should this Settlement Agreement not be approved by the District Court. Within forty-eight hours of the entry of the Approval Order, this right to claim reverter shall expire and Fairfield and Woods, P.C. is authorized to pay the $125,000 to the Receiver. The Receiver hereby acknowledges prior receipt of $100,000. This $350,000 in payments, together with all other promises, obligations, and covenants in the Settlement Agreement and related documents, shall be in full satisfaction of:

2.5.a. All obligations to make any further payments or perform any further obligations in favor of the Combined Estates or the Receiver under or pursuant to the terms of the Amended Purchase Agreement;

2.5.b. The obligation of Indian to pay the Receiver's fees and expenses pursuant to the Order entered by Magistrate Judge Schlatter on July 19, 2000 and reduced to writing on July 20, 2000;

5

2.5.c. The obligation of Indian to pay the Receiver's fees and expenses or any other amount pursuant to the Wind-Down Protocol dated December 1, 1999, including the Addendum of Confidential Matters; and

2.5.d. Any and all other obligations past, present, or future to reimburse, compensate, bonus, gift or otherwise pay Sterling or the Receiver for any obligation, claim, reimbursement, debt, service, action, office, duty or status whether pursuant to any agreement, written or oral, or any order or any obligation arising at law or in equity whatsoever, except as specifically set forth in this Settlement Agreement, the Indemnification Agreement, and the Release Agreement.

2.6. **Tender of Options to Sterling.** Within forty-eight hours of the entry of the Approval Order, Indian shall comply with the Stock Option Agreement attached as Exhibit 2.

2.7. **Tender of Options to the Receiver.** Within forty-eight hours of the entry of the Approval Order, Indian shall comply with the Stock Option Agreement attached as Exhibit 3.

2.8. **Indemnification Agreement.** Within forty-eight hours of the entry of the Approval Order, Indian, the Receiver, and Sterling shall execute an indemnification agreement in the form of the unexecuted agreement attached hereto as Exhibit 4 (the "Indemnification Agreement"). The Indemnification Agreement has been submitted to the District Court under seal with a request that the Indemnification Agreement be ordered confidential. The Parties shall maintain the Indemnification Agreement confidential until the District Court has entered its Approval Order, at which time the Approval Order shall govern as to whether or not the Indemnification Agreement shall continue to be confidential.

2.9. **Mutual Releases.** Within forty-eight hours of the entry of the Approval Order, the Parties shall execute a mutual release agreement in the form of the unexecuted release attached as Exhibit 5 to this Settlement Agreement (the "Mutual Release Agreement").

3. CONFIRMATIONS AND ACKNOWLEDGEMENTS

3.1. **No Affirmative Action.** Indian and the Receiver understand that certain advantages that accrue from the Receivership Action shall be forever waived by entering into this Settlement Agreement. Indian and the Receiver nevertheless assume the risk of losing these advantages, whatever

6

their nature, known or unknown. Without limiting the generality of the foregoing, Indian agrees to forever refrain from filing any motions in the Receivership Action or any actions involving the Subject Matter that require performance of any kind by the Receiver or Sterling, or a response by the Receiver or Sterling. Similarly, the Receiver agrees to forever refrain from filing any motions in the Receivership Action or any actions involving the Subject Matter that require performance of any kind by Indian, or a response by Indian. If either party inadvertently files such a motion, the motion shall be promptly withdrawn by such party. Refusal to withdraw such a motion shall be deemed a dispute under the terms of this Settlement Agreement.

3.2. **Accord and Satisfaction; No Admission of Liability.** It is expressly understood and agreed that the acceptance of the consideration and releases herein is in full accord and satisfaction of disputed claims and that the exchange of the consideration and releases herein is not to be construed in any way as an admission of liability on the part of Indian, the Receiver, or Sterling, but, on the contrary, Indian, the Receiver, and Sterling specifically deny any liability as to any matters related or incident thereto, or otherwise, and it is further expressly understood and agreed that all agreements and understandings between Indian, on the one hand, and the Receiver and Sterling on the other, are embodied and expressed herein.

3.3. **Competition.** Indian understands that Sterling and its affiliates intend to pursue opportunities in the motorcycle industry and that these opportunities will, by their nature, be directly or indirectly competitive with Indian. In particular, Indian understands that Sterling, or one or more of its officers and directors, is involved in the ownership and management of American Motorcycle Company. Indian acknowledges that, subject to the provisions of this section 3.3 and section 3.4 hereof and the provisions of the Mutual Release and the Indemnification Agreement, Sterling and such officers and directors are without restriction as a result of the Receivership Action in pursuing these opportunities, including pursuit of the American Motorcycle Company opportunity. Without limiting the generality of the foregoing, Indian further acknowledges that Sterling has no conflict of interests in pursuing these opportunities, including the American Motorcycle Company opportunity.

3.4. **Confidential Information.** Indian has advised the Receiver that the Receiver and Sterling have knowledge of information concerning Indian that is proprietary and confidential to Indian. The Receiver and Sterling acknowledge that they have confidential information that relates to the assets sold by the Receiver to Indian but are unaware of any proprietary information in its possession. Sterling and the Receiver shall maintain the

7

confidential information as confidential, and shall not intentionally disclose such information to any third party including, without limitation, American Motorcycle Company, and to the extent that Sterling or the Receiver has proprietary information, the Receiver and Sterling shall maintain the proprietary information as confidential and shall not intentionally disclose such information to any third party including, without limitation, American Motorcycle Company. The Receiver and, Sterling hereby agree to:

3.4.a. forever refrain from attacking the trademark rights of Indian which are based upon the rights conveyed by the Receiver pursuant to the Purchase Agreement; and

3.4.b. forever refrain from consulting, voluntarily cooperating with, or otherwise assisting any person, firm, or corporation, including, without limitation, American Motorcycle Company, from attacking the trademark rights of Indian.

3.4.c. Paragraph 3.4.b. shall not apply if Indian brings a trademark action against American Motorcycle Company which is unrelated to the protection of the trademark rights of Indian.

3.5. **Indian Trademark.** The Receiver and Sterling acknowledge that they are fully familiar with the Indian Motorcycle trademarks (except for certain facts and issues relating to the Indian Motorcycle trademark that occurred after February 11, 1999 and except for certain facts and issues that relate to the Indian Motorcycle trademark rights claimed through Indian affiliates, including without limitation Indian Motorcycle Canada, Inc.). Neither the Receiver nor Sterling is aware of any facts that would lead them to conclude that the Indian Motorcycle trademarks are not the property of Indian and valid and enforceable.

3.6. **Attorney-Client and Work-Product Privileges.** All attorney-client privileges and work-product privileges raised by the Receiver shall be deemed valid and Indian agrees to forever refrain from attacking those privileges. The Receiver agrees not to waive the confidentiality of any communication, whether attorney-client privilege, work product, or otherwise, designated as confidential under the Confidentiality Order of March 19, 1999.

4. FORMAL DISPUTE RESOLUTION PROCESS

4.1. **Resolution of Disputes Prior to Discharge of Receiver.** If a dispute regarding this Settlement.Agreement, the Indemnification Agreement, the Mutual Release, the Stock Option Agreement, or any related

8

document should arise prior to the discharge of the Receiver, both parties consent to final resolution of the dispute by a Magistrate Judge pursuant to 28 U.S.C. § 636 who is not one of the Magistrate Judges who have previously entered Orders in the Receivership Action or any related action in which the Receiver was a party.

4.2. **After Discharge of Receiver--Binding Arbitration.** Following discharge of the Receiver and upon the written request of any of the Parties to this Settlement Agreement to the other party or parties, any dispute or controversy (collectively referred to as a "Dispute") in this Settlement Agreement, the Mutual Release, or the Indemnification Agreement arising between or among the parties shall be resolved by mandatory and binding arbitration (an "Arbitration") in accordance with the terms of this Part 4.

4.3. **Governing Rules.** Any Dispute between the parties shall be resolved by mandatory and binding arbitration administered by the Judicial Arbiter Group ("JAG") pursuant to this Part 4.0 and the Federal Arbitration Act (Title 9 of the United States Code) and subject to the rules of the American Arbitration Association ("AAA"). To the extent that any inconsistency exists between this Part 4.0 and such statutes or rules of JAG or the AAA, this Part 4.0 shall control.

4.4. **Selection of Arbiters.** Notwithstanding the reference herein to utilization of the rules of the AAA, that organization shall not conduct the arbitration. Within ten (10) days after delivery of written notice of the existence and nature of a Dispute, the parties shall jointly seek appointment of an arbitrator through JAG. If the parties to the dispute cannot agree on an arbitrator, JAG shall provide them with a list of five (5) available arbiters. Each party may strike two, and the remaining name shall be the sole arbiter. If both parties strike the same arbiter so that there is more than one arbiter remaining unstricken, then the Judicial Arbiter Group shall select the sole arbiter from among those remaining. In the event that any party to a dispute fails to cooperate in selecting an arbiter, the other may select the sole arbiter from those available at JAG in its sole discretion.

4.5. **Arbitration Proceeding.** All statutes of limitation that would otherwise be applicable shall apply to any arbitration proceeding. Any attorney-client privilege and other protection against disclosure of confidential information, including without limitation any protection afforded the work-product of any attorney, that could otherwise be claimed by any party shall be available to and may be claimed by any such party in any arbitration proceeding. No party waives any attorney-client privilege or

any other protection against disclosure of confidential information by reason of anything contained in or done pursuant to or in connection with this Part 4. Any arbitration proceeding shall be conducted in City of Denver, Colorado.

The parties shall file with the Arbiter, and exchange among counsel two (2) weeks before the arbitration trial date, opening briefs and proposed witness lists (including brief statements of the purposes for which each document will be offered). At the same time, the parties shall provide the Arbiter with a joint statement of the relevant facts upon which they are able to agree (or a joint statement that there are no relevant facts upon which they are able to agree). No witness or documents may be used at trial, except as disclosed in such lists, exhibits, and statements, and only then to the extent not inconsistent with any applicable discovery responses. One (1) week before the arbitration trial date, the parties shall file with the Arbiter and exchange among counsel response briefs (or a written statement that no response brief is being filed by any particular party).

The Arbiter shall have the power to alter any deadlines set out herein, and may otherwise set deadlines, allow discovery, and resolve discovery and other disputes. There shall be no pre-trial motions save those related to discovery. The Arbiter shall have the power to enter a default award should one party refuse to participate in Arbitration proceedings.

4.6. **Rules of Evidence Applied.** At the Arbitration, the Federal Rules of Evidence shall be applied. The substantive law of the United States, or the State of Colorado where there is no federal law, shall be applied. No failure to apply the rules of evidence shall serve as a basis to challenge the award.

4.7. **Decision of Arbiter.** The Arbiter shall utilize his or her utmost skill and shall apply himself or herself diligently so as to hear and decide the outcome and resolution of any dispute submitted to the Arbiter as promptly as possible, but in any event on or before the expiration of sixty (60) days after the appointment of the Arbiter. In any event, the Arbiter shall issue a written decision within ten (10) days after the completion of the hearing. Any other provision of this Settlement Agreement notwithstanding, the Arbiter shall not have jurisdiction to change the deadline contained in the preceding sentence.

4.8. **Award Final and Binding.** The decisions of the Arbiter shall be final and binding and may not be appealed except upon claim of fraud, corruption, or a flagrant disregard of the provisions of this Part 4 or

10

applicable substantive law on the part of the Arbiter; provided, however, that implementation of such decisions shall in no way be delayed or otherwise impaired pending the outcome of any such appeal. The parties hereto agree to promptly comply with any award issued.

4.9. **Legal Fees and Costs.** The non-prevailing party does hereby covenant and agree to promptly pay, and the Arbiter shall be obliged to award to the prevailing party, one hundred (100%) percent of all such legal fees and costs incurred by the prevailing party. In addition, the non-prevailing party shall be required to pay one hundred (100%) percent of the fees and costs of the Arbiter. Legal counsel for the prevailing party shall certify in writing to the Arbiter (i) the total dollar amount of legal fees and costs, (ii) that such legal fees and costs were incurred in good faith and in keeping with the fee arrangements between the prevailing party and such counsel, and (iii) that the payment of such legal fees and costs in full by the prevailing party was and is in no way contingent upon the outcome of the arbitration proceedings hereunder. Such certification shall be accompanied by a reasonably detailed itemization of the services rendered, the identity of the lawyer or lawyers who renders such services and the hourly rate or rates charged for such services (and/or any other basis employed to arrive at such legal fees and costs). The Arbiter shall decide whether there is a prevailing party, and if so, the identity of the prevailing party. Such fees shall not exceed the following:

4.9.a. for any action undertaken in 2000, $150 per hour;

4.9.b. for any action undertaken in 2001, $155 per hour;

4.9.c. for any action undertaken in 2002, $160 per hour;

4.9.d. for any action undertaken in 2003, $165 per hour;

4.9.e. for any action undertaken in 2004, $170 per hour; and

4.9.f. for any action undertaken in 2005 or thereafter, $175 per hour.

5. **GENERAL CONTRACT PROVISIONS**

5.1. **District Court Approval.** This Settlement Agreement shall not become effective until approved by the District Court pursuant to the Approval Order. After such approval and prior to the termination of the Receivership, it may only be modified upon the agreement of the Parties and the further approval of the District Court. After such approval and after the

termination of the Receivership, this Settlement Agreement may only be modified upon the agreement of the parties other than the Receiver.

5.2. **Governing Law and Jurisdiction.** This Settlement Agreement shall be governed by law of the United States and the State of Colorado, except for Colorado choice of law rules should they require the substantive law of a different jurisdiction control. By approving this Settlement Agreement, the District Court consents to the Formal Dispute Resolution Process in Part 4 hereof.

5.3. **Remedies.** Any forbearance or failure or delay in exercising any remedy hereunder shall not be deemed to be a waiver of any other remedy a party may be entitled to under this Settlement Agreement.

5.4. **Third-Party Beneficiaries.** This Settlement Agreement is intended to confer upon the parties hereto all rights and remedies hereunder. This Settlement Agreement shall not confer upon any non-party any rights or remedies hereunder.

5.5. **Headings and Captions.** All headings and captions used in this Settlement Agreement are for convenience only, and shall not be construed to either limit or broaden the language of this Settlement Agreement or any particular section of this Settlement Agreement.

5.6. **Agreements Integrated.** This Settlement Agreement, including any Exhibits attached hereto, together with the agreements and other documents to be delivered pursuant hereto and thereto, constitute the entire agreement between the parties pertaining to the subject matter hereof. This Settlement Agreement supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the parties. There are no warranties, representations, or other agreements between the parties in connection with the subject matter hereof except as specifically set forth in this Settlement Agreement and the Exhibits attached hereto.

5.7. **Counterparts.** This Settlement Agreement may be executed in counterparts.

5.8. **Costs of Preparation.** Indian shall pay its own costs and expenses, including fees of attorneys, accountants, and financial advisors, necessary in the preparation of this Settlement Agreement, and such other agreements, instruments and documents required to be executed in connection herewith, and the consummation of the transactions contemplated herein and therein. The Receiver shall pay its own costs and expenses and

the costs and expenses of Sterling, including fees of attorneys, accountants, and financial advisors, necessary in the preparation of this Settlement Agreement, and such other agreements, instruments and documents required to be executed in connection herewith, and the consummation of the transactions contemplated herein and therein.

5.9. **Inurement.** This Settlement Agreement is to the benefit of each party hereto, and shall inure to the benefit of the affiliates and subsidiaries of each such party and to the benefit of the principals, employees, owners, attorneys, and agents of each party and each such affiliate and subsidiary.

5.10. **Assignment.** The Receiver and Sterling may not assign their obligations hereunder without the prior written consent of Indian. Indian may not assign its obligations hereunder without the written consent of the Receiver (unless discharged) and Sterling. This Settlement Agreement shall not, in any way, be construed as a limitation on Indian's right to assign a Purchased Asset, however, in the event of an assignment of all or substantially all of its Class 12 and/or all or substantially all of its Class 25 trademark rights in North America (comprised of the United States, Canada and Mexico, collectively), or the European Union (comprised of all member countries, collectively, as of the date of this Agreement), or all or substantially all of the Purchased Assets (whether in a single transaction or series of related transactions), Indian shall give the Indemnified Parties prior notice of the assignment and Indian shall require the assignee thereof to assume the obligations hereunder. An assumption of obligations by the assignee pursuant to this section 5.10 shall not, in any way, limit or diminish Indian's obligations. Notwithstanding anything herein to the contrary, Indian shall not execute an assignment that defeats the intent of this Indemnification.

5.11. **Notices.** Any notice or other communication required or permitted hereunder shall be deemed sufficiently given if sent by registered or certified mail, or overnight courier (such as Federal Express), return receipt requested, or hand delivered, and addressed as follows (the address for any party may be changed by giving notice thereof to the other parties):

If to Indian:

President
Indian Motorcycle Company
200 East 10th Street
Gilroy California    95020

13

With a copy to:

R. Douglas Kneebone, Esquire
Gowling, Lafleur, Henderson, LLP
Barristers & Solicitors
Suite 4900
Commerce Court West
Toronto, Ontario, Canada    M5L1J3

and

J. Eric Elliff, Esquire
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, Colorado   80202-5638

If to the Receiver or Sterling:

Richard A. Block, President
Sterling Consulting Corporation
91 East Dartmouth Avenue
Englewood, Colorado     80110

With a copy, in the case of the Receiver, to:

John M. Tanner, Esquire
Fairfield and Woods
1700 Lincoln #2400
Denver, CO 80203-4524

With a copy, in the case of Sterling, to:

Marcus L. Squarrell, Esquire
Irizarry, McCall & Squarrell, P.C.
Suite 4704
1700 Lincoln Street
Denver, Colorado     80203

5.12. **Authority and Advice of Counsel.** The undersigned signatories to this Settlement Agreement have carefully read the above and foregoing and know the contents thereof, have the authority to execute this Settlement Agreement, in the case of corporations are in good standing in

14

the state wherein they are incorporated, and have signed the same as their own free and voluntary act and after having the same explained to them by counsel.

Agreed and Accepted:

Sterling Consulting Corporation, as Receiver

By: _____
Richard A. Block, President

Sterling Consulting Corporation, Individually

By: _____
Richard A. Block, President

Indian Motorcycle Company

By: _____
James J. Kelly, CFO

IMCOA Licensing America, Inc.

By: _____
James J. Kelly, CFO

IMCOA Holdings America, Inc.

By: _____
James J. Kelly, CFO

15

| | |
|---|---|
| Exhibit 1 | Motion For Approval Order |
| Exhibit 2 | Stock Option Agreement (Sterling) |
| Exhibit 3 | Stock Option Agreement (Receiver) |
| Exhibit 4 | Indemnification Agreement |
| Exhibit 5 | Mutual Release Agreement |
| Exhibit 6 | Inducement Letter by Richard and Andrea Block |