## TRUST AGREEMENT

This agreement, dated the 4th day of May, 2000, is entered into by and among IMCOA Licensing America, Inc., a Delaware corporation ("IMCOA"), Sterling Consulting Corporation, as receiver and not individually ("Receiver"), and Pahl & Gosselin, a Professional Corporation, a California law corporation ("Escrow Holder").

### RECITALS:

A. A Verified Complaint and Motion for Appointment of Temporary Receiver was filed on April 7, 1995 in the United States District Court for the District of Colorado ("District Court") commencing a case captioned *Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.*, Defendant, Civil Action No. 95-Z-777.

B. An Order Appointing Temporary Receiver was entered by the Honorable Zita L. Weinshienk, District Court Judge, on April 10, 1995. The Order appointing the Receiver was made permanent on April 19, 1995.

C. Stephen M. Rodolakis is the acting Chapter 7 Bankruptcy Trustee in the actions known as *In re Indian Motocycle Company, Inc., In re Indian Motocycle Manufacturing Company, Inc.*, and *In re Indian Motocycle Apparel Company, Inc.*, Case Nos. 93-41354-HJB, 94-42288-HJB and 93-41955-HJB ("Bankruptcy Estate") in the United States Bankruptcy Court for the District of Massachusetts. The Bankruptcy Estate and the receivership estate are collectively referred to as the "Combined Estates."

D. The Receiver and a predecessor Trustee entered into a Joint Motion for Approval of Stipulation Regarding Coordinated Sale and Coordinated Administration, which was filed with, and approved in the Bankruptcy Estate on January 19, 1996. On January 29, 1996, the District Court granted the Joint Motion. The Joint Motions filed in both Courts, the Orders approving them from both Courts, and the efforts undertaken to conduct the sale of assets in the Combined Estate are referred to hereafter as the "Coordinated Sale."

E. The Coordinated Sale was closed February 11, 1999. Licensing was the purchaser of the principal assets of the Combined Estate including certain trademark rights relating to the commercial use of the term "Indian" used in association with the manufacture and sale of motorcycles (the "Trademark"). IMCOA and its affiliates now manufacture and sell

**EXHIBIT 3**

Trust Agreement
Dated the 4th day of May, 2000
Page 2.

motorcycles under the Trademark (which motorcycle is referred to herein as a "New Indian Motorcycle").

F. Certain of the claims in the Receivership Estate relate to persons who paid deposits to Indian Motorcycle Manufacturing, Inc. (the "Depositor Claimants") for the purchase of a motorcycle to be manufactured and sold by that entity. The entity became insolvent before manufacturing and delivering the motorcycles or otherwise honoring the deposits paid.

G. These Depositor Claimants were given an election either to receive the cash value of their deposit from the Receiver or to apply their deposit against the purchase price of a New Indian Motorcycle. Certain of these deposit claimants (the "Electing Claimants") have elected to apply their deposit against the purchase price of a New Indian Motorcycle. The terms and conditions of the conversions granted to the Depositor Claimants are described in the Receiver's 28th Report, in particular, in the Depositor Conversion Letter attached to the Receiver's 28th Report.

H. The Receiver has prepared deposit vouchers ("Deposit Vouchers") that evidence the right of an Electing Claimant to convert. Electing Claimants electing Option 2 have received Deposit Vouchers which, upon presentation to IMCOA or its affiliated dealers entitle the Electing Claimant to a credit against the purchase price of a New Indian Motorcycle as specified in the Receiver's 28th Report. The Electing Claimants electing Option 3 or Option 4 have not yet received their Deposit Vouchers.

I. A schedule of the Electing Claimants who have not received a New Indian Motorcycle and the amount of their deposits is attached to this Agreement as Exhibit 1.

J. Escrow Holder has agreed to hold the deposited funds (the "Deposit Monies") and distribute them as instructed under this Agreement.

## AGREEMENT

In consideration of the Recitals set forth above and the mutual agreements and instructions set forth below, the parties to this Agreement hereby agree as follows:

Trust Agreement
Dated the 4th day of May, 2000
Page 3.

1. **Appointment of Escrow Holder.** Receiver and IMCOA hereby appoint Escrow Holder to hold the Deposit Monies in trust, to invest, and to disburse the said Deposit Monies as set forth in this Agreement.

2. **Acceptance by Escrow Holder.** Escrow Holder hereby accepts its appointment hereunder and agrees to see to the application of the trust herein set out and to pay the Deposit Monies only as herein provided.

3. **Payment of Deposit Monies to Escrow Holder.** Forthwith following the execution of this Agreement by all parties, the Receiver will pay the Deposit Monies to the Escrow Holder together with an schedule of Electing Claimants and an accounting of the money transferred.

4. **Escrow Agent to Invest Deposit Monies Pending Disbursements.** Escrow Holder will hold and safeguard the Deposit Monies during the Escrow Period and will treat it as a trust fund in accordance with the terms of this Agreement. The Escrow Fund will be deposited in an interest-bearing account, which account shall be designated the "Indian Motorcycle Deposit Trust Account". The rules applicable to the investment of the Deposit Monies shall be as follows:

   a. The Escrow Holder shall make such deposit or investment of the Escrow Monies as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment.

   b. Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested:

   (i)   a bond in favor of the Escrow Holder;

   (ii)  secured by the undertaking of a corporate surety approved by the Receiver;

Trust Agreement
Dated the 4th day of May, 2000
Page 4.

   (iii) conditioned on a proper accounting for all money so deposited or invested and for any return on such money;

   (iv) prompt repayment of such money upon demand; and

   (v) faithful performance of duties as a depository

 5. <u>Distributions of Principal from Escrow</u>. The Deposit Monies shall distributed by the Escrow Holder subject to the following:

 a. The Escrow Agent shall from time to time pay to IMCOA, upon receipt of a written declaration, signed under penalty of perjury by the Chief Financial Officer of IMCOA, declaring that IMCOA has redeemed Deposit Vouchers, in an amount equal to the face value of the Deposit Vouchers redeemed as so declared.

 b. The Escrow Agent shall at any time prior to December 1, 20~~10~~ 05 [initialed] pay to the Receiver the residue of the Deposit Monies, should IMCOA and/or its affiliates cease to manufacture and offer for sale New Indian Motorcycles and lose the ability to honor Deposit Vouchers.

 c. ~~The Escrow Agent shall pay the Receiver the residue of the Deposit Monies on December 1, 2010.~~ [initialed]

 d. ~~Upon receipt of any payments as contemplated by paragraphs 5(b) or 5(c) hereof, the Receiver shall return all such funds received for the Electing Claimants who have not redeemed their Deposit Vouchers, or as directed by the District Court if the Electing Claimants cannot be found.~~ [initialed]

 e. ~~Should the Receiver have been discharged or should the Receiver otherwise direct, any payment to be made hereunder to the Receiver shall be paid instead to the registry of the District Court.~~ [initialed]

 f. If any dispute arises concerning the distribution of any of the Deposit Monies, the Escrow Holder shall act in accordance with the written instructions of the Receiver and IMCOA.

 c. [handwritten] If Deposit Vouchers are not redeemed by December 3, 2005 any residue of the Deposit Monies will be paid to IMCOA.

Trust Agreement
Dated the 4th day of May, 2000
Page 5.

      g. Should IMCOA and the Receiver fail to agree in their instructions to the Escrow Holder, the Escrow Holder shall be entitled to seek instructions from the District Court.

   6. Disposition of Interest. Any interest or other income earned on the Deposit Monies (the "Income") shall be spent subject to the following:

      a. Income shall be used first to pay the fees of the Escrow Holder.

      b. Income not used to pay the fees of the Escrow Holder shall be reserved by the Escrow Holder until the earlier of (i) December 1, 2010 or (ii) the date all Vouchers have been redeemed.

      c. If all of the Vouchers have been redeemed pursuant to the terms and conditions set forth in this agreement, and provided the fees of the Escrow Holder have been paid in full, the Escrow Holder shall pay the residual to IMCOA.

      d. If the Escrow Holder is obligated to pay any funds to the District Court on December 1, 2010, then those funds plus any accrued Income shall be paid to the District Court and the District Court shall determine the distribution of the residual.

   7. Inspection. Escrow Holder shall maintain complete and accurate books of account as to the Indian Motorcycle Deposit Trust Account and shall retain all declarations and other writings submitted to it in connection with the distribution of funds from the Deposit Monies. All such books and documents shall be available for inspection by the Receiver, IMCOA, and the District Court.

   8. Immunity for Escrow Holder. The Escrow Holder shall employ reasonable prudence and skill in the exercise of its duties hereunder, but shall be entitled to accept and rely upon instructions from IMCOA and the Receiver, and upon certificates and declarations from IMCOA that are in writing and given under penalty of perjury. The Escrow Holder shall have no liability for any such good faith reliance nor shall the Escrow Holder have any liability or other duty as a result of the fact that the Escrow Holder may

Trust Agreement
Dated the 4th day of May, 2000
Page 6.

from time to time act in its professional capacity for IMCOA or any of its affiliates.

    9. Notices. Any notice, delivery of documents or other communication required or permitted under this Agreement shall be deemed properly made if delivered personally or if deposited in the United States Mail, certified postage prepaid, addressed as follows:

    If to IMCOA:
    Indian Motorcycle Company
    200 E. Tenth Street
    Gilroy, California 95020
    Attention: Chief Financial Officer

    If to Receiver:
    Richard A. Block
    Sterling Consulting Corporation, Receiver
    91 East Dartmouth Avenue
    Englewood, Colorado 80110

    If to Escrow Holder:
    Pahl & Gosselin, a Professional Corporation
    160 W. Santa Clara Street, 14th Floor
    San Jose, California 95113
    Attention: Stephen D. Pahl

    10.    Escrow Holder Compensation. Escrow Holder shall be paid its normal fees for services of its attorneys and legal assistants rendered in connection with this Agreement as full payment for its services and duties under this Agreement. If the interest and other income earned are not adequate to fully compensate the Escrow Holder, IMCOA shall pay the additional money needed. In no event shall the Escrow Holder pay itself from the corpus of the trust.

    11.    Successors and Assigns. This Agreement shall bind and inure to the benefit of the successors, assigns, personal representatives, heirs and legatees of the respective parties.

Trust Agreement
Dated the 4th day of May, 2000
Page 7.

12.   Counterparts.  This Agreement may be executed in counterparts each of which shall be deemed an original but all of which taken together shall constitute but one document.

13.   Amendments.  The provisions of this Agreement may be waived, altered, amended or repealed, in whole or in part, only upon the written consent of each of its parties.

In witness whereof, each of the parties has caused this Agreement to be executed on its behalf by its duly authorized officers, all as of the day and year first above written.

Receiver:

Sterling Consulting Corporation, a Colorado corporation as receiver,

By: _____

Title: _____President_____


IMCOA Licensing America, Inc., a Delaware corporation

By: _____

Title: _____VP - CFO_____


ESCROW HOLDER:
PAHL & GOSSELIN, a professional corporation

By: _____

Title: _____

## EXHIBIT 1 TO TRUST AGREEMENT DATED MAY 4, 2000

### DEPOSITORS ELECTING OPTION 2-NOT PAID

| Claimant Name: | Voucher # | Accepted |
|---|---|---|
| Brian Berg | 207 | $3,525.00 |
| Harry F. Carbough | 216 | $3,525.00 |
| Richard Clark | 218 | $3,525.00 |
| Mark D. Cooper | 219 | $3,525.00 |
| Charles G. Gardner | 224 | $3,525.00 |
| Edward F. Havlik | 229 | $3,525.00 |
| Arvil M. Houts | 231 | $3,525.00 |
| Sterling Corporation | 217 | $3,525.00 |
| Sterling Corporation | 225 | $3,525.00 |
| | | **$31,725.00** |

### DEPOSITORS ELECTING OPTION 3

| Claimant Name: | Voucher # | Accepted |
|---|---|---|
| J. William Adams, Jr. aka Bill Adams | 300 | $3,525.00 |
| Alfred De Masi | 301 | $3,525.00 |
| Ronald Gibbens | 302 | $3,525.00 |
| Jay Hebert | 303 | $3,525.00 |
| Frederick Hild | 304 | $3,525.00 |
| Jacobs Industries | 305 | $3,520.00 |
| J. Ed Martinez | 306 | $3,525.00 |
| Jeffrey L. McAdams | 307 | $3,525.00 |
| Bill Miller | 308 | $3,525.00 |
| Lucien Remillard | 309 | $3,525.00 |
| Paul Sherrill | 310 | $3,525.00 |
| Robert E. Tryber | 311 | $3,525.00 |
| | | **$42,295.00** |

## DEPOSITORS ELECTING OPTION 4

| Claimant Name | Voucher # | Accepted |
|---|---|---|
| Bruce & Carmen Anderson | 400 | $3,525.00 |
| Phil Ehart | 401 | $3,750.00 |
| Leonard Douglas Garrison II (Butch) | 402 | $3,525.00 |
| Frank R. Keefer | 403 | $3,525.00 |
| Eugene E. Kramer | 404 | $3,525.00 |
| Michael Kurpierz | 405 | $3,525.00 |
| David L. Marburger | 406 | $4,000.00 |
| Kenneth L. Rodgers | 407 | $3,525.00 |
| Nicholas A. Russo, Sr. | 408 | $3,525.00 |
| Robert G. Schadler II | 409 | $3,525.00 |
| Chris Sisney | 410 | $3,525.00 |
| Wiley J. Sword | 411 | $3,525.00 |
| Michael Thomas | 412 | $3,000.00 |
| David J. Waltz | 413 | $3,525.00 |
| | | **$49,525.00** |

Total                                                              **$123,545.00**