


**STERLING CONSULTING CORPORATION**

Office: 303-388-1300
Fax: 303-781-4311
email: rblock@sterlingcorp.com

New Address:
4101 E. Louisiana Avenue, Suite 300
Denver, Colorado 80246

October 8, 2003

President
Indian Motorcycle Company
200 East 10th Street
Gilroy California 95020

R. Douglas Kneebone, Esquire
Gowling, Lafleur, Henderson, LLP
Barristers & Solicitors
Suite 4900
Commerce Court West
Toronto, Ontario, Canada M5L1J3

J. Eric Elliff, Esquire
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638

Re: Settlement Agreement dated August 31, 2000 ("Settlement Agreement") between Sterling Consulting Corporation ("Sterling") and Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holding America, Inc. (collectively "Indian")

Ms. Lipscomb and Gentlemen:

Reference is made to the Settlement Agreement referenced above and the attachments thereto, including the Indemnification Agreement as defined thereunder. I have sent this letter to the individuals and the company listed pursuant to the notice provisions set forth therein, and email copies to Ms. Lipscomb and Mr. Joncich as a courtesy.

On August 31, 2003, Sterling sent invoices to Indian for work previously approved by Indian under the terms of the Settlement Agreement

EXHIBIT 7

October 8, 2003
Page 2.

and performed in connection with the Spokes litigation. That invoice has not been paid, and every inquiry Sterling has made of Indian to obtain payment has been met with no response. Subsequently, Sterling read the press release by Indian that it had closed its doors, and Sterling was informally advised that Indian is in the process of executing a formal assignment for the benefit of creditors under California law. Sterling was disappointed that its efforts to resolve the matter prior to the assignment was disregarded by Indian, however, given the circumstances, it is now necessary for Sterling to mitigate its losses under the Settlement Agreement.

Failure to timely pay under the Settlement Agreement and the Indemnification Agreement is a material default for which Sterling has numerous remedies, including self-help remedies set forth in the Settlement Agreement and the Indemnification Agreement. Sterling has already undertaken self-help remedies and hereby demands that Indian comply with the provisions in the Settlement Agreement and the Indemnification Agreement in the event of default. Some of those are discussed below.

Paragraph 4 of the Settlement Agreement (entitled Formal Dispute Resolution Process) governs this situation and reads as follows:

> 4.1. Resolution of Disputes Prior to Discharge of Receiver. If a dispute regarding this Settlement Agreement, the Indemnification Agreement, the Mutual Release, the Stock Option Agreement, or any related document should arise prior to the discharge of the Receiver, both parties consent to final resolution of the dispute by a Magistrate Judge pursuant to 28 U.S.C. § 636 who is not one of the Magistrate Judges who have previously entered Orders in the Receivership Action or any related action in which the Receiver was a party.

Paragraph 5.2. of the Settlement Agreement (Governing Law and Jurisdiction) reads as follows:

> This Settlement Agreement shall be governed by law of the United States and the State of Colorado, except for Colorado choice of law rules should they require the substantive law of a different jurisdiction control. By approving this Settlement Agreement, the District Court consents to the Formal Dispute Resolution Process in Part 4 hereof.

Please be advised that Sterling will be filing the appropriate pleadings in the Colorado District Court in order to, *inter alia*, define the damages

October 8, 2003
Page 3.

sustained by Sterling, and possibly to prevent or rescind the assignment for the benefit of creditors. As to the latter, paragraph 5.10 of the Settlement Agreement (Assignment), reads as follows:

> The Receiver and Sterling may not assign their obligations hereunder without the prior written consent of Indian. Indian may not assign its obligations hereunder without the written consent of the Receiver (unless discharged) and Sterling. This Settlement Agreement shall not, in any way, be construed as a limitation on Indian's right to assign a Purchased Asset, however, in the event of an assignment of all or substantially all of its Class 12 and/or all or substantially all of its Class 25 trademark rights in North America (comprised of the United States, Canada and Mexico, collectively), or the European Union (comprised of all member countries, collectively, as of the date of this Agreement), or all or substantially all of the Purchased Assets (whether in a single transaction or series of related transactions), Indian shall give the Indemnified Parties prior notice of the assignment and Indian shall require the assignee thereof to assume the obligations hereunder. An assumption of obligations by the assignee pursuant to this section 5.10 shall not, in any way, limit or diminish Indian's obligations. *Notwithstanding anything herein to the contrary, Indian shall not execute an assignment that defeats the intent of this Indemnification.*

[Emphasis added.]

For failing to pay the invoices that were submitted when due, Indian committed a material breach of the Settlement Agreement. For this breach, Sterling has taken the appropriate actions. By making an assignment for the benefit of creditors and for other breaches, Sterling specifically reserves its rights to any additional remedies available at law or in equity. Moreover, by ceasing operations and making the assignment for the benefit of creditors, Indian has committed an anticipatory breach of the Settlement Agreement.[1]

---

[1] "When a promisor expressly repudiates a contract by an unequivocal refusal to perform he is guilty of an anticipatory breach. Also, an anticipatory breach will result from an implied repudiation, where the promisor puts it beyond his power to perform." *Johnson v. Meyer*, 26 Cal.Rptr. 157, Cal.App., 1962, citing *Guerrieri v. Severini*, 51 Cal.2d 12, 330 P.2d 635; *Bomberger v. McKelvey*, 35 Cal.2d 607, 220 P.2d 729; *Zogarts v. Smith*, 86 Cal.App.2d 165, 194 P.2d 143; Restatement of Contracts, § 318(b) (c). In *Zogarts* (at page 148), the Court of Appeals said "And the principle is elementary, that if one voluntarily puts it out of his power to do what

October 8, 2003
Page 4.

It is hornbook law that because of the complete anticipatory breach, Sterling is no longer bound by the terms of the Settlement Agreement.[2] The only matters left for determination are the total amount of damages sustained by Sterling, the affirmative equitable defenses that Sterling possesses pursuant to the Settlement Agreement, and other rights not herein specified, but reserved.

It is important to note that Sterling's claims are against all three entities: Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holding America, Inc. As a result in combination with the fact that the assignment has made it impossible for Indian to perform, liability is joint and several with all three companies. In particular, IMCOA Licensing America, Inc., as the holder of the most important assets (the trademark rights), is liable to Sterling. For this reason, it is essential for the trustee under the assignment to properly allocate sale proceeds among the three companies. It may even be necessary to sell the assets in three separate

---

he has agreed, he breaks his contract, and is immediately liable to be sued therefor, without demand, even though the time specified for performance has not expired." See also *Bagley v. Cohen*, 121 Cal. 604, 53 P. 117; *Poirier v. Gravel*, 88 Cal. 79, 25 P. 962; *Carter v. Rhodes*, 135 Cal. 46, 66 P. 985; *Grant v. Warren*, 31 Cal.App. 453, 160 P. 847.

[2] In California, Civil Code § 1511 governs the situation by providing in pertinent part:

> The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:
>
> 1. When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse; however, the parties may expressly require in a contract that the party relying on the provisions of this paragraph give written notice to the other party or parties, within a reasonable time after the occurrence of the event excusing performance, of an intention to claim an extension of time or of an intention to bring suit or of any other similar or related intent, provided the requirement of such notice is reasonable and just;

Case law is consistent throughout the country.

October 8, 2003
Page 5.

sales.[3] On this subject, Sterling is interested in the trustee realizing the highest values for the trademark.

Very truly yours,

*Richard Block*

Richard A. Block

cc.  Sara D. Lipscomb, Esquire (via email: slipscomb@audaxgroup.com)
     Mr. Michael L. Joncich (via email: mjohcich@creditservices.org)

---

[3] In addition, 26 U.S.C. § 482 requires the proper allocations, and failure to properly allocate could render the trustee liable for unpaid federal income taxes under 31 U.S.C. § 3713.