STERLING CONSULTING CORPORATION

4101 East Louisiana Avenue
Suite 300
Denver, Colorado 80246
Office: 303-388-1300
Fax: 303-781-4311
Email: rblock@sterlingcorp.com

Via email:
rpitts@winthropcouchot.com

October 14, 2003

Robert W. Pitts, Esquire
Winthrop Couchot Professional Corporation
660 Newport Center Drive
Fourth Floor
Newport Beach, California 92660

Re:   Indian Motorcycle and Sterling Consulting Corporation

Dear Mr. Pitts:

Reference is made to that certain Settlement Agreement dated August 31, 2000 (the "Settlement Agreement") between Sterling and Indian. A copy of the Settlement Agreement is attached to this letter for your convenience. The capitalized terms defined in the Settlement Agreement shall have the same meanings in this letter except as otherwise stated. Paragraph 2.8 of the Settlement Agreement reads as follows:

> 2.8.   Indemnification Agreement. Within forty-eight hours of the entry of the Approval Order, Indian, the Receiver, and Sterling shall execute an indemnification agreement in the form of the unexecuted agreement attached hereto as Exhibit 4 (the "Indemnification Agreement"). The Indemnification Agreement has been submitted to the District Court under seal with a request that the Indemnification Agreement be ordered confidential. The Parties shall maintain the Indemnification Agreement confidential until the District Court has entered its Approval Order, at which time the Approval Order shall govern as to whether or not the Indemnification Agreement shall continue to be confidential.



EXHIBIT 10

Robert W. Pitts, Esquire
October 14, 2003
Page 2.

The Indemnification Agreement was executed and attached to the Settlement Agreement, however, due to the prohibition described above, I have not attached a copy to this letter and one is not currently available for you to view. In the Approval Order entered January 19, 2001, the United States District Court for the District of Colorado (the "Colorado District Court") entered, among others, the following Orders:

1. The Settlement Agreement, and all Exhibits thereto, are approved and made an Order of this Court.

2. The Indemnification Agreement shall remain sealed absent further Order of this court.

As you can plainly see, the Indemnification Agreement is not only confidential, it is sealed. Accordingly, absent an Order of the Colorado District Court, neither Indian nor Sterling may disclose the Indemnification Agreement to third parties. This prohibition includes disclosure to CMA. Any such disclosure is a violation of the Approval Order and contempt of the Colorado District Court, and will be viewed as such by Sterling. Also attached to this letter, please find a copy of the Approval Order. This letter has been prepared to put CMA on notice of Sterling's rights in the event of an assignment of Purchased Assets.

By now, you are aware of Ms. Lipscomb's email response to Mr. Kutner concerning your telephone conversation with me (both October 13, 2003). As I had predicted, a representative of Audax and not Indian responded, and the response was a legal threat, not a business response to Sterling's invitation to negotiate. This has typified Audax's and Indian's preference in relationships since Audax invested in Indian. As a result, there are currently no negotiations pending concerning the Settlement Agreement.

This letter confirms below our understanding of the facts and circumstances that confront us at this time. Because our understanding is loosely assembled from bits and pieces of information gathered from third parties, it may not be quite accurate. As you will recall, we are unwilling to execute a confidentiality agreement in order to view the bid package (the "Package") produced by CMA Business Credit Services ("CMA"). If you have any questions, comments, or corrections regarding our restatement of the facts and circumstances, please let us know as soon as possible—it could

Robert W. Pitts, Esquire
October 14, 2003
Page 3.

have a bearing on our position. Following the restatement of our understanding of the facts circumstances, please find the summary of Sterling's position that you requested during our telephone conversation:

1. Indian Motorcycle Corporation ("Corporation") is the only entity that is assigning assets pursuant to the assignment for the benefit of creditors publicized by CMA and Indian (the "Assignment Assets" pursuant to the "Assignment").

2. Although we have no first-hand knowledge of the relationship between Indian and Corporation, it is our understanding that Corporation is a subsidiary of IMC and for that reason, the Assignment Assets are completely different than the Purchased Assets.

3. The Assignment does not affect Sterling's rights under the Settlement Agreement.

4. Indian is selling the Purchased Assets pursuant to a private sale (the "Private Sale") for which CMA will represent Indian.

5. CMA and Indian have agreed to bundle the Purchased Assets with the Assignment Assets and sell both in one package (the agreement to do so will be referred to as the "Bundling Agreement").

6. The Private Sale and the Bundling Agreement affect Sterling's rights under the Settlement Agreement in that they, among other things, contemplate an assignment of the Purchased Assets.

7. CMA has prepared the Bid Package whereby CMA will sell the Assignment Assets and Purchased Assets by auction in one transaction. The Bid Package affects Sterling's rights under the Settlement Agreement.

8. CMA has refused to give Sterling a copy of the Bid Package because Sterling has refused to execute a confidentiality agreement. Sterling has refused to execute a confidentiality agreement because Sterling may feel compelled to resolve this dispute in the Colorado District Court as provided in the Settlement Agreement and the Indemnification Agreement, and will not agree in advance to be precluded from producing all documents in its possession (save and except the Indemnification Agreement, which is sealed and already before the Colorado District Court).

Robert W. Pitts, Esquire
October 14, 2003
Page 4.

9. In the Bundling Agreement, CMA and Indian have agreed, among other things, to allocate the sale price between the Purchased Assets and the Assignment Assets on a basis not disclosed to Sterling. Sterling has cautioned CMA about the risks inherent in allocating the sales price under 26 U.S.C. § 482 and 31 U.S.C. § 3713. Sterling further cautions CMA that bundling the Purchased Assets and the Assignment Assets generates a problem under California law that may have an adverse effect upon Sterling's rights under the Settlement Agreement.

10. Sterling or an affiliate of Sterling may agree to consult a party interested in submitting a bid under the Bid Package. Such representation is in every way consistent with the terms and conditions of the Settlement Agreement. In particular, such representation will not be considered in conflict with the provisions of Paragraph 3.4 of the Settlement Agreement. Sterling or an affiliate of Sterling will not commence any such representation until Thursday, October 16, 2003, provided however, if Indian or CMA believe such representation is in conflict with the Settlement Agreement and so notify Sterling on or before the close of business October 16, 2003, Sterling and its affiliates will refrain from such representation absent a determination by the Colorado District Court to the contrary. In that event, Indian and CMA may be liable for interference with Sterling's prospective advantage.

11. CMA has set the bid deadline under the Bidding Package as October 24, 2003. The extremely short period, coupled with the fact that Indian failed or refused to give Sterling "prior notice" of its intention to assign the Purchased Assets as required by paragraph 5.10 of the Settlement Agreement, have generated urgency in this matter that would not otherwise exist.

During our telephone conversation, you indicated that Sterling should elect between its alternatives and advise CMA of that determination. After having received a copy of Ms. Lipscomb's scathing email to Mr. Kutner (who, by the way, is Audax's lawyer, not Sterling's), suffice it to say that allowing Indian to buy out the Settlement Agreement is not currently one of the alternatives that Sterling is considering. Without intending to irrevocably elect between its alternatives, one to the exclusion of the other (which Sterling has no reason or obligation to do given the facts and circumstances), Sterling has preliminarily decided on the following course of action:

Robert W. Pitts, Esquire
October 14, 2003
Page 5.

1.  Paragraph 5.10 of the Settlement Agreement, which governs the assignment of the Purchased Assets by Indian, reads as follows:

> 5.10. Assignment. The Receiver and Sterling may not assign their obligations hereunder without the prior written consent of Indian. Indian may not assign its obligations hereunder without the written consent of the Receiver (unless discharged) and Sterling. This Settlement Agreement shall not, in any way, be construed as a limitation on Indian's right to assign a Purchased Asset, however, in the event of an assignment of all or substantially all of its Class 12 and/or all or substantially all of its Class 25 trademark rights in North America (comprised of the United States, Canada and Mexico, collectively), or the European Union (comprised of all member countries, collectively, as of the date of this Agreement), or all or substantially all of the Purchased Assets (whether in a single transaction or series of related transactions), Indian shall give the Indemnified Parties prior notice of the assignment and Indian shall require the assignee thereof to assume the obligations hereunder. An assumption of obligations by the assignee pursuant to this section 5.10 shall not, in any way, limit or diminish Indian's obligations. Notwithstanding anything herein to the contrary, Indian shall not execute an assignment that defeats the intent of this Indemnification.

2.  Sterling's course of action specifically contemplates the completion of the Private Sale and the Asset Assignment as planned.

3.  Sterling specifically refuses to waive its rights under the Settlement Agreement and the attachments thereto, including without limitation, its rights under paragraph 5.10 of the Settlement Agreement.

4.  If Indian intends to nevertheless assign the Purchased Assets, Indian shall require the assignee to assume the obligations of the Settlement Agreement, including the obligations under the Indemnification Agreement.

5.  Indian shall remain obligated to Sterling under the Settlement Agreement and the attachments thereto. As an agent of Indian, CMA shall be bound by Indian's obligation to require that any assignee of the Purchased Assets shall be bound by the terms of the Settlement Agreement, including

Robert W. Pitts, Esquire
October 14, 2003
Page 6.

without limitation, the attachments thereto (which includes the Indemnification Agreement).

6. Indian shall neither disclose the contents of the Indemnification Agreement to CMA nor to any other assignee without an Order of the Colorado District Court.

7. Sterling will consider joining Indian in a mutually satisfactory motion (the "Motion") in the action styled *IMCOA Holdings America, Inc., et al, v. Spokes, Inc.*, Civil Action No. 97-Z-1694, United States District Court, District of Colorado (the "Spokes Action"), subject to certain conditions, including without limitation, the following:

a. The Motion will be an emergency motion;

b. The Motion will provide that Indian forever waives the prohibition in paragraph 4.1 of the Settlement Agreement;

c. In the Motion, Indian will consent to allowing Magistrate Judge O. Edward Schlatter to hear the Motion notwithstanding the fact that he is a "[Magistrate Judge] who [has] previously entered Orders in the Receivership Action or any related action in which the Receiver was a party";

d. Indian consents to Magistrate Judge Schlatter mediating or hearing any issues that arise between Indian and Sterling as a result of the assignment of the Purchased Assets; and

e. Indian must pay all of Sterling's Fees, Sterling's Expenses, and Sterling's Legal Fees. For the purposes of this subparagraph 7e, Sterling's Fees shall be $25,000 or as calculated under the Settlement Agreement, whichever is greater, and Indian shall specifically acknowledge that $25,000 is a reasonable minimum fee under the circumstances. Indian shall pay a retainer to Sterling in the amount of $25,000, and to Sterling's legal counsel in an amount to be set by Sterling's legal counsel.

8. If Indian refuses to waive the prohibition in paragraph 4.1, it may, of course, file a new plenary action in the Colorado District Court and, following Sterling's answer and following an Order of Reference to a

Robert W. Pitts, Esquire
October 14, 2003
Page 7.

Magistrate Judge, Indian may motion the Colorado District Court for an Order unsealing the Indemnification Agreement. Sterling will review the plenary action and motion and, depending upon the contents thereof, Sterling may not object to a motion to unseal the Indemnification Agreement. Indian shall nevertheless remain obligated to reimburse Sterling's Fees, Sterling's Expenses, and Sterling's Legal Fees in connection with this plenary action.

For your information, and as you may have already gathered, there is no trust between Sterling and Indian. In particular, Sterling believes that Indian has consciously and consistently disregarded Sterling's rights and well-being in the past. For example, it cheated Sterling in the Settlement Agreement by offering partial consideration to Sterling in the form of stock options that Indian knew (and did not disclose to Sterling at that time) to be wholly without value. Similarly, in total disregard of the Settlement Agreement, Indian chose to not notify Sterling of its intention to assign Purchased Assets as required by paragraph 5.10 of the Settlement Agreement. As a result of past performance or lack thereof, Sterling has cause to be skeptical, if not suspicious, and particularly demanding. On this last point, you should take the time to review the Settlement Agreement knowing that it is clear on these issues, that Indian was represented by no less than three high-priced lawyers when it negotiated the Settlement Agreement, and that the Settlement Agreement was made an Order of the Colorado District Court.

Whether Ms. Lipscomb or Indian wish to acknowledge the plain meaning of the Settlement Agreement is probably unimportant to you and us; violation of a United States District Court Order by your client is a different matter. Unless you tell me differently, I will presume that you have provided your client with a copy of this letter and its attachments, together with some advice about how to proceed.

Please do not hesitate to write to me or send me an email if you have any questions or comments concerning this letter or the terms and conditions of the Settlement Agreement. Under the facts and circumstances, it is difficult for Sterling to do anything more to cooperate, but if there is anything you believe Sterling can do, please do not hesitate to ask.

Robert W. Pitts, Esquire
October 14, 2003
Page 8.

                                        Very truly yours,

                                        Richard A. Block

Enclosures