## INDEMNIFICATION AGREEMENT

Sterling Consulting Corporation, as receiver, Sterling Consulting Corporation, individually, on the one hand, and Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc., on the other, hereby enter into this Indemnification Agreement (this "Indemnification Agreement") as of the 31st day of August, 2000.

## RECITALS

A.     A Verified Complaint and Motion for Appointment of Temporary Receiver was filed on April 7, 1995 in the District Court commencing the Receivership Action.

B.     As part of that case, an Order Appointing Sterling Consulting Corporation as Temporary Receiver was entered by the Honorable Zita L. Weinshienk on April 10, 1995. The Order appointing Sterling Consulting Corporation, as Receiver was made permanent on April 19, 1995.

C.     Stephen M. Rodolakis is the acting Chapter 7 Bankruptcy Trustee in the actions known as *In re Indian Motocycle Company, Inc*; *In re Indian Motocycle Manufacturing Company, Inc.*; and *In re Indian Motocycle Apparel and Accessories Company, Inc.*, Nos. 93-41354-HJB, 94-42288-HJB and 93-41955-HJB, respectively, in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Cases"). The Bankruptcy Cases and the Receivership Estate are collectively referred to as the "Combined Estates."

D.     The Receiver and a predecessor Trustee entered into a Joint Motion for Approval of Stipulation Regarding Coordinated Sale and Coordinated Administration, which was filed with, and approved by, both the United States Bankruptcy Court for the District of Massachusetts and the United States District Court for the District of Colorado. The Joint Motions filed in both Courts, the Orders approving them from both Courts, and the efforts undertaken to conduct the sale of assets in the Combined Estates are referred to hereafter as the "Coordinated Sale."

E.     The Coordinated Sale was closed on February 11, 1999. Licensing was the purchaser of the principal assets of the Combined Estates. The sale to Licensing was approved by the District Court and the Bankruptcy Court. The assets sold to Licensing by the Combined Estates included all of the Combined Estate's right, title, and interest in the Purchased Assets, including the Trademark.

F.     The Receiver has raised certain concerns regarding its possible continuing participation in certain ongoing litigation involving Indian which



EXHIBIT
B

the parties hereto expect may continue past the closing of the Receivership and also regarding future claims that may be brought against Indian, the Receiver, related parties, or some or all of them.

G.   In an effort to resolve these concerns, expedite the dismissal of Indian from the Receivership Action, and expedite the termination of the Receivership Action, the parties hereto enter into this Indemnification Agreement.

H.   The Court has previously Ordered indemnification in the matters known as *Spokes v. Sterling, as Receiver and IMCOA*, United States District Court for the District of Colorado No. 97-Z-1694 (the "*Spokes* Action") *Sterling, as Receiver v. Comanche*, United States District Court for the District of Colorado No. 97-Z-2171 (the "*Comanche* Action") and *Sterling, as Receiver v. Tomas*, United States District Court for the District of Colorado No. 97-Z-2178 the "*Tomas* Action").

I.   As of the date of the execution of this Indemnification Agreement, both Indian and the receiver believe the Trademark is the sole and exclusive property of Indian.  Neither Indian nor the Receiver has knowledge of any fact that would lead either to believe to the contrary.

## AGREEMENT

Now, therefore, in consideration of the foregoing and the mutual promises contained herein, the parties agree as follows:

## 1. DEFINED TERMS

1.1.   **Defined Terms**.  As used herein, the following words shall have the following definitions:

1.1.a. "Ancillary Action" shall mean all legal actions brought by the Receiver against third parties during the pendency of the receivership to and including December 31, 1999 that related to the Trademark.

1.1.b. "Claim" shall mean (i) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.

1.1.c. "Claim Loss" shall mean a Loss without limitation except as set forth in the following five sub-paragraphs:

1.1.c.i.     Losses shall be net of any insurance proceeds received by the Indemnified Party with respect to a Loss. Nothing in this subparagraph 1.1.c.ii shall preclude an insurer from subrogation.

1.1.c.ii.     Losses shall be limited to Losses arising from the Subject Matter and shall not include any Losses relating to any action taken by the Receiver or Sterling to pursue claims against First Entertainment or any other action commenced by the Receiver or Sterling as plaintiff relating to the Subject Matter after the date hereof.

1.1.c.iii.     Losses shall not include punitive damages that may be imposed on or against an Indemnified Party.

1.1.c.iv.     Losses relating to any Claim by the Internal Revenue Service against any party for unpaid taxes, interest, or penalties.

1.1.c.v.     Losses shall not include anything that would otherwise be a Loss but for a Final Order that the Loss was directly attributable to an act of the Receiver that was fraudulent, in bad faith, outside the scope of the Receiver's authority, or not authorized by the District Court. In this regard, as of the date of this Indemnification Agreement, neither Indian nor the Receiver is aware of any acts of the Receiver that would be subject to the provisions of this exclusion.

1.1.d. "Cow Creek Action" shall mean that matter captioned *The Cow Creek Band of the* Umpqua *Tribe of Indians v. Sterling, as receiver, and IMCOA,* United States District Court for the District of Colorado No. 99-Z-453, or any other action brought by the Cow Creek Band of the Umpqua Tribe of Indians against any Indemnified Party, in its individual capacity, regarding any events allegedly arising out of the Receivership Action.

1.1.e. "Demand" shall mean any demand, notice, subpoena, summons, or other process made against an Indemnified Party that is required by operation of law and that could result in a Loss, but shall not include a Request.

3.

1.1.f. "Demand Loss" shall mean a Loss incurred in complying with a Demand, and shall be limited to Receiver's Fees, Receiver's Expenses, Sterling's Fees, and Sterling's Expenses. Demand Loss shall not include Receiver's Legal Fees nor shall it include Sterling's Legal Fees.

1.1.g. "District Court" shall mean the United States District Court, District of Colorado.

1.1.h. "Final Order" means, as the context requires, a final order or determination of a court of competent jurisdiction that is either not subject to an appeal, or with respect to which no appeal has been made within the time limited for appeal.

1.1.i. "Formal Resolution Process" shall have the meaning ascribed to that term in the Settlement Agreement.

1.1.j. "Holdings" shall mean IMCOA Holdings America, Inc.

1.1.k. "Indemnify" shall mean to defend, indemnify, and hold harmless, regardless of theory or origin of the Claim, Demand, or Request.

1.1.l. "Indemnified Parties" shall mean Sterling and the Receiver and "Indemnified Party" means either of them as the context shall require.

1.1.m.    "IMC" shall mean Indian Motorcycle Company.

1.1.n. "Indian" shall mean IMC, Licensing, and Holdings, collectively, jointly, and severally, and shall include the successors to and assignees of Indian's rights in the Subject Matter.

1.1.o. "Licensing" shall mean IMCOA Licensing America, Inc.

1.1.p. "Loss" shall mean any liability, loss, damage, assessment, obligation, settlement payment, award, fine, penalty, judgment, cost, or expense, suffered by an Indemnified Party hereto, subject to the following:

1.1.q. "Maximum Rate" shall mean:

      1.1.q.i.      for any action undertaken in 2000, $150 per hour;

      1.1.q.ii.      for any action undertaken in 2001, $155 per hour;

      1.1.q.iii.      for any action undertaken in 2002, $160 per hour;

4.

1.1.q.iv.   for any action undertaken in 2003, $165 per hour;

1.1.q.v.   for any action undertaken in 2004, $170 per hour; and

1.1.q.vi.   for any action undertaken in 2005 or thereafter, $175 per hour.

1.1.r. "Purchase Agreement" shall mean that certain Amended Purchase Agreement between Indian and the receiver dated October 16, 1998, as modified by the Joint Motion to Approve the Amended Purchase Agreement, the Joint Motion to Approve Termination of Eller Contract, Set Contractual Approval Procedure, and Approve Interim Funding of Receivership dated October 19, 1998, and various District Court Orders including the Order approving the Purchase Agreement.

1.1.s. "Purchased Assets" shall have the meaning as set forth in the Purchase Agreement.

1.1.t. "Receiver" shall mean Sterling Consulting Corporation in its capacity as receiver in the Receivership Action only, but not outside that capacity. Indemnification of the Receiver shall mean Indemnification of Sterling and its officers, employees, directors, agents, and representatives unless otherwise stated.

1.1.u.   "Receivership Action" shall mean the civil action styled *Indian Motorcycle Manufacturing, Inc. v. United States of America*, 95-Z-777, United States District Court, District of Colorado, (formerly known as *Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.*, 95-Z-777, United States District Court, District of Colorado).

1.1.v. "Receivership Estate" shall mean the estate formed by the Order Appointing Receiver in the Receivership Action.

1.1.w. "Receiver's Expenses" shall mean all costs and expenses incurred by the Receiver in connection with the time charges of the Receiver's agents and representatives and the Receiver's reasonable out-of-pocket expenses, arising from or out of the Subject Matter, and arising before the termination of the Receivership Action, but not including Receiver's Fees and not including Receiver's Legal Fees.

1.1.x. "Receiver's Fees" shall mean all compensation payable to the Receiver in connection with the time charges of the Receiver's officers, employees, and directors, all calculated at Standard Hourly Rates,

5.

arising from or out of the Subject Matter, and arising before the termination of the Receivership Action, but not including the Receiver's Expenses. In the event of a Request by Indian of an Indemnified Party in the form of a Demand, however, "Receiver's Fees" shall be 200% of the Maximum Rate.

1.1.y. "Receiver's Legal Fees" shall mean reasonable attorneys fees actually incurred by the Receiver.

1.1.z. "Request" shall mean any request made of the Receiver or Sterling by a third party or by Indian that is not a Demand or a Claim.

1.1.aa.   "Settlement Agreement" means a certain agreement made as of August 31st, 2000 between Sterling Consulting Corporation, as Receiver, Sterling Consulting Corporation, in its individual capacity and Indian Motorcycle Company, IMCOA Holdings America, Inc. and IMCOA Licensing America, Inc.

1.1.bb.   "Standard Hourly Rates" shall mean the hourly rates previously approved by the District Court for the Receiver's officers, employees and directors or such other hourly rates as may from time to time be approved by the District Court for fees charged by the Receiver to the Receiver's Estate and not compensated or reimbursed by Indian, but in no event greater than the Maximum Rate.

1.1.cc.   "Sterling" shall mean Sterling Consulting Corporation in its capacity as a private entity but not in its capacity as Receiver, and its officers, directors, employees, agents, and representatives. Indemnification of Sterling shall mean Indemnification of Sterling and its officers, employees, directors, agents, and representatives unless otherwise stated.

1.1.dd.   "Sterling's Expenses" shall mean all costs and expenses incurred by Sterling in connection with the time charges of Sterling's agents and representatives (other than Sterling's officers, employees and directors) and Sterling's reasonable out-of-pocket expenses, arising from or out of the Subject Matter after the termination of the Receivership Action, but not including Sterling's Fees and not including Sterling's Legal Fees.

1.1.ee.   "Sterling's Fees" shall mean all compensation payable to Sterling in connection with the time charges of Sterling's officers, employees, and directors, all calculated at Standard Hourly rates, arising from or out of the Subject Matter after the termination of the

6.

Receivership Action, but not including the Sterling Expenses. In the event of a Request by Indian of an Indemnified Party in the form of a Demand, however, "Sterling's Receiver's Fees" shall be 200% of the Maximum Rate.

1.1.ff. "Sterling's Legal Fees" shall mean reasonable attorneys fees actually incurred by Sterling.

1.1.gg. "Subject Matter" shall mean the Trademark and all matters that relate to or are derived from (i) the Trademark, including without limitation the goodwill, domestic trademark rights, foreign trademark rights, licenses, agencies, and the sales of goods bearing the Trademark; (ii) the Purchased Assets as defined in the Purchase Agreement; and (iii) the Receivership, the Combined Estates, and the Coordinated Sale, including transfers of assets to Indian and distributions of the securities of Indian to the Receiver and by the Receiver.

1.1.hh. "Trademark" shall have the meaning as set forth in the Purchase Agreement.

## 2. TERM OF OBLIGATIONS

2.1. **Term and Survival of Obligations.** This Indemnification Agreement shall survive the termination of the Receivership Action or the discharge of Sterling Consulting Corporation from its duties as receiver. The obligations of Indian under this Indemnification Agreement shall not terminate for Claims: (a) which arose out of an action brought by Indian against any party; (b) which arose out of an attempt by any party to determine that the Trademark is in the public domain or is otherwise invalid; or (c) which arose out of an action brought by a party to one of the Ancillary Actions. Indian's obligations under this Indemnification Agreement shall not extend to any Claim, Demand, or Request made after December 31, 2005 except for any obligation arising from a Claim for Indemnification made before that time and arising from specific facts and circumstances arising before that time.

## 3. DEMAND LOSS INDEMNIFICATION

3.1. **Procedure On Receipt of a Demand.** Upon receipt or notification of any Demand, the party seeking indemnification shall:

3.1.a. Prompt Notice: Give Indian prompt written notice and full particulars of the Demand; provided that the party seeking

7.

indemnification shall have no obligation to provide such notice if Indian was otherwise served with the Demand or received a copy thereof.

3.1.b. <u>Provide Opportunity to Refuse or Dispute Demand</u>: Provided that Indian acknowledges its obligation to Indemnify the party seeking Indemnification for the Demand, such party shall cooperate fully with any tactics or proceedings which Indian shall request to lawfully refuse, limit, resist or dispute any such Demand on such reasonable legal grounds as may be available.

3.1.c. <u>Efforts to Mitigate</u>:  In complying with Demands, the party seeking indemnification shall use its best efforts to keep Demand Losses to the minimum amount reasonably necessary to lawfully comply with the Demand; provided however, the said party shall attend and prepare for deposition, hearing, and trial, make available relevant and discoverable records, assist in procuring and providing evidence, and obtain the attendance of witnesses as required under the law.

3.1.d. <u>Provide Copies to Indian</u>: At the request (and with disbursements necessarily incurred at the expense of Indian) of Indian provide Indian with copies of demands for discovery and disclosure relating to any Demand and copies of all evidence and records produced by the party seeking indemnification and shall provide Indian with copies of all transcripts of evidence given or otherwise provide summaries of all information provided to third parties pursuant to any Demand.

3.1.e. <u>Legal Counsel</u>:  If the Demand is limited to formal or informal discovery in a matter in which there is no reasonable likelihood that any Indemnified Party shall later be made a party to that matter, Indian shall have the right to select counsel to represent the party seeking indemnification, subject to that party's consent, which consent shall not be unreasonably delayed or refused.  Indian shall have the right to control the defense of the party seeking indemnification in connection with any Demand, except where the exercise of such control would be contrary to the legal or ethical obligations of Indian or the Indemnified Party.

3.1.f. <u>No Voluntary Co-Operation</u>: The party seeking indemnification shall not, and shall ensure that no Indemnified Party shall, independently or voluntarily cooperate with or assist in any way any

8.

party adverse to Indian in connection with the Subject Matter without the prior written consent of Indian having been first obtained.

3.1.g. Demands Treated as Claims in Certain Circumstances: If the party seeking indemnification believes that the Demand exposes or may tend to expose that party to a Loss in excess of the Receiver's Expenses or Sterling's Expenses, the party shall notify Indian in writing providing reasonable particulars of the reasons that the party apprehends such risk (the "Risk of Claim Notice"). Subject to subsection 3.6 hereof, the said Demand shall thereafter be treated as a Claim hereunder.

3.2.   **Receiver's Demand Loss Indemnification.**  Subject to the Receiver's compliance with the provisions of this Part 3 and provided that the Receiver shall not otherwise be in material breach of this Indemnification Agreement, the Settlement Agreement, or the Mutual Release, Indian shall Indemnify the Receiver from any Demand Loss incurred or suffered by the Receiver.

3.3.   **Sterling's Demand Loss Indemnification.**  Subject to Sterling's compliance with the provisions of this Part 3, and provided that Sterling shall not otherwise be in material breach of this Indemnification Agreement, , the Settlement Agreement, or the Mutual Release, Indian shall Indemnify Sterling from any Demand Loss incurred or suffered by Sterling.

3.4.   **Reimbursement of Demand Losses.**  The obligation of Indian to Indemnify the Receiver or Sterling for any Demand Loss shall be subject to the following:

3.4.a. Itemized Reimbursement Request: Any requests for reimbursement ("Reimbursement Request") must specifically itemize the activities for which reimbursement is sought, contain a detailed description of each itemized activity on a day-to-day basis.  For greater certainty, the form and level of detail of the Receiver's invoices as the same have been previously submitted to Indian prior to the date hereof shall be satisfactory, unless a Notice of Dispute shall be delivered, in which case the party claiming indemnification shall provide such further information, including copies of original receipts for individual matters of more than $100 as may reasonably be requested or as may be required by the Arbitrator in the Formal Resolution Process;

3.4.b. Timely Requests: A Reimbursement Request shall be submitted monthly and within 45 days of incurring the expense for which

9.

reimbursement is sought, unless the party seeking indemnification can demonstrate that it did not have access to evidence of the expense item for which it seeks indemnification within such 45 day period in which event the party seeking indemnification may submit a late claim but in no event shall a late claim be made more than 90 days following the date that the expense was incurred;

3.4.c. <u>Interest on Unpaid Amounts</u>: If any amount requested to be reimbursed as herein contemplated shall not be paid as contemplated by section 3.5 or shall be the subject matter of a Notice of Dispute and shall subsequently determined to have been a matter properly payable by Indian hereunder, Indian shall pay interest on the said amount from the date of the Reimbursement Request until the date of payment at the rate of 1% per month for each whole or part month having elapsed; and

3.4.d. <u>Rules for Claims Relating to Out-of-Pocket Expenses</u>:  If a party claiming indemnification is required by any Demand to incur out-of-pocket expenses that are anticipated to exceed $250, the party claiming indemnification shall notify Indian before any expense is incurred. Any claim item for out-of-pocket expenses shall be deemed reasonable if they are within the expense reimbursement policy generally applicable to Indian's executive officers in like circumstances. Upon request, Indian will advise the party seeking indemnification of its current expense reimbursement policy for executives to facilitate compliance with this provision.

3.5.   **Payment of Demand Loss Indemnification Claims.** Indian shall pay each claim for Demand Loss indemnification submitted in accordance with section 3.4 hereof within 30 days of its receipt of the itemized reimbursement request contemplated by subsection 3.4.a unless Indian shall deliver a Notice of Dispute with respect to the whole or any part of such claim as provided for in section 3.6. If Indian has delivered a Notice of Dispute as aforesaid, Indian shall, upon delivery of such Notice of Dispute, pay those items that are not disputed.

3.6.   **Notice of Dispute.**

3.6.a. If Indian shall dispute or question any Risk of Claim Notice, Indian shall, within 15 days of receiving a Risk of Claim Notice, provide the party seeking indemnification with a written notice setting out the basis upon which Indian shall dispute or question the Risk of Claim Notice (a "Notice of Dispute").

10.

3.6.b. If Indian shall dispute or question any claim or item constituting part of a claim for reimbursement of a Demand Loss, Indian shall, within 30 days of receiving the itemized reimbursement request contemplated by subsection 3.4.a, provide the party seeking indemnification with a written Notice of Dispute setting out the basis upon which Indian shall dispute or question any claim or item constituting part of the claim for reimbursement.

3.7.   **Resolution of Matters in Dispute.** If the parties interested in the subject matter of a Notice of Dispute shall be unable to resolve their dispute, either party may refer the matter to the Formal Resolution Process.

3.8.   **Counsel to Receiver or Sterling Re: Demand.** If an Indemnified Party believes that in complying with a Demand it is necessary or desirable to engage the assistance of an attorney, the Indemnified Party may notify Indian. If Indian, in its sole discretion, determines that an attorney is necessary or desirable, Indian shall provide the Indemnified Party with an attorney, the attorney shall be selected by Indian, and the cost of such attorney will be paid by Indian. If Indian, in its sole discretion, believes that an attorney is not needed, the Indemnified Party shall either comply with the Demand without legal representation, or shall bear the cost of such representation.

## 4. REQUEST LOSS INDEMNIFICATION

4.1.   **Requests.** Nothing contained in this Indemnification Agreement shall be construed to require voluntary compliance by the Receiver or Sterling with a Request, however, nothing herein shall prohibit Indian from making such a request. Notwithstanding section 4.2 hereof, the Receiver or Sterling may deny the request for good reason, bad reason, or no reason, and Indian shall have no recourse in connection with the denial. An Indemnified Party's election not to file such a Motion for Protective Order or Motion to Quash shall not be a waiver of the Indemnified Party's right to receive compensation under the applicable Loss provision of this Indemnification Agreement, including, without limitation, the higher rate for the principal of an Indemnified Party in the event Indian makes a Demand of that principal.

4.2.   **Request Made in the Form of a Demand.** Should Indian serve upon any Indemnified Party a subpoena or any other process to compel the evidence or cooperation of an Indemnified Party, then, such Indemnified Party shall comply with such subpoena and process and a Request made in such form by Indian shall be treated for all purposes hereunder as a Demand.

11.

**4.3.  No Voluntary Assistance with Respect to a Request.** The Indemnified Parties shall not assist any third party with respect to a Request without the prior written consent of Indian, which consent may be refused for good reason, bad reason, or no reason.

## 5. CLAIMS LOSS INDEMNIFICATION

**5.1.  Procedure On Receipt of a Claim - Actions by Party Seeking Indemnification.** Upon receipt or notification of any Claim, the party seeking indemnification shall:

5.1.a. Prompt Notice: Give Indian prompt written notice and full particulars of the Claim; provided that the party seeking indemnification shall have no obligation to provide such notice if Indian was otherwise served with the Claim or received a copy thereof.

5.1.b. Indian to Defend: Subject to subsection 5.1.c hereof, provided that Indian acknowledges its obligation to Indemnify the party seeking Indemnification for the Claim, such person shall cooperate fully with any tactics or proceedings which Indian shall request to lawfully refuse, limit, resist, defend or dispute any such Claim in any and all legal proceedings upon such reasonable legal grounds as may be available.

5.1.c. Indian May Elect to Require Indemnified Party to Defend: If, for tactical or other reasons, Indian shall elect not to undertake the defense of the Claim on behalf of the party claiming indemnification, provided that Indian shall acknowledge its obligation to Indemnify the party seeking Indemnification, the said party shall promptly undertake such defense and diligently prosecute the same.  In such event, Indian shall Indemnify the Indemnified Party from all Losses relating to the subject matter of the Claim including Legal Fees and such obligation shall not be subject to the limitation in section 5.11 hereof.

5.1.d. Provide Copies to Indian: At the request (and with the disbursements necessarily incurred at the expense of Indian) of Indian provide Indian with copies of demands for discovery and disclosure relating to any Claim and copies of all evidence and records produced by the party seeking indemnification and shall provide Indian with copies of all transcripts of evidence given or otherwise provide summaries of all information provided to third parties pursuant to any discovery procedure relating to any Claim.

12.

5.1.e. <u>No Voluntary Co-Operation</u>: The party seeking indemnification shall not, and shall ensure that no Indemnified Party shall, independently or voluntarily cooperate with or assist in any way any party adverse to Indian in connection with the Subject Matter without the prior written consent of Indian having been first obtained.

5.2.   **Procedure On Receipt of a Notice of Claim - Actions by Indian.**  Upon Indian receiving notification of a Claim from any Indemnified Party:

5.2.a. <u>Positive Obligation to Defend</u>: Indian shall promptly undertake and diligently prosecute the defense of the party claiming indemnification.

5.2.b. <u>Enforce Jurisdiction of District Court</u>: If the Claim is brought in a foreign jurisdiction, Indian shall promptly move to:

5.2.b.i.      enforce the Order Staying All Equitable Actions Against the Estate of July 13, 1995, together with any amendments to that Order (including the amendments sought in the Motion to approve this Indemnification Agreement); and

5.2.b.ii.      remove and, where necessary, transfer the Claim to the District Court.

5.2.b.iii.      Indian acknowledges that its undertakings under subparagraphs (a) and (b) of this paragraph are of the essence of this Indemnification Agreement, must be pursued simultaneously, and that the undertakings may not be pursued in the alternative.

5.3.   **Receiver's Claim Loss Indemnification.**  Subject to the Receiver's compliance with the provisions of this Part 5, and the limitations provided for in sections 5.9 and 5.11 hereof and further provided that the Receiver shall not otherwise be in material breach of this Indemnification Agreement the Settlement Agreement, or the Mutual Release, Indian shall Indemnify the Receiver from any Claim Loss incurred or suffered by the Receiver.

5.4.   **Sterling's Claim Loss Indemnification.**  Subject to Sterling's compliance with the provisions of this Part 5, and the limitations provided for in sections 5.10 and 5.11 hereof and further provided that Sterling shall not otherwise be in material breach of this Indemnification Agreement, the

13.

Settlement Agreement, or the Mutual Release, Indian shall Indemnify Sterling from any Claim Loss incurred or suffered by Sterling.

5.5. **Reimbursement of Claim Losses.** The obligation of Indian to Indemnify an Indemnified Party for any Claim Loss shall be subject to the following:

5.5.a. Itemized Reimbursement Request: Any requests for reimbursement ("Reimbursement Request") must specifically itemize the activities for which reimbursement is sought, contain a detailed description of each itemized activity on a day-to-day basis. For greater certainty, the form and level of detail of the Receiver's invoices as the same have been previously submitted to Indian prior to the date hereof shall be satisfactory, unless a Notice of Dispute shall be delivered, in which case the party claiming indemnification shall provide such further information, including copies of original receipts for individual matters of more than $100 as may reasonably be requested or as may be required by the Arbitrator in the Formal Resolution Process;

5.5.b. Timely Requests: A Reimbursement Request shall be submitted monthly and within 45 days of incurring the expense for which reimbursement is sought, unless the party seeking indemnification can demonstrate that it did not have access to evidence of the expense item for which it seeks indemnification within such 45 day period in which event the party seeking indemnification may submit a late claim but in no event shall a late claim be made more than 90 days following the date that the expense was incurred;

5.5.c. Interest on Unpaid Amounts: If any amount requested to be reimbursed as herein contemplated shall not be paid as contemplated by section 3.5 or shall be the subject matter of a Notice of Dispute and shall subsequently determined to have been a matter properly payable by Indian hereunder, Indian shall pay interest on the said amount from the date of the Reimbursement Request until the date of payment at the rate of 1% per month for each whole or part month having elapsed; and

5.5.d. Rules for Claims Relating to Out-of-Pocket Expenses: If a party claiming indemnification is required by any Demand to incur out-of-pocket expenses that are anticipated to exceed $250, the party claiming indemnification shall notify Indian before any expense is incurred. Any claim item for out-of-pocket expenses shall be deemed reasonable if they are within the expense reimbursement policy generally

14.

applicable to Indian's executive officers in like circumstances. Upon request, Indian will advise the party seeking indemnification of its current expense reimbursement policy for executives to facilitate compliance with this provision.

**5.6.   Payment of Claim Loss Indemnification Claims.**

5.6.a. General Rule:  Indian shall pay each claim for Claim Loss indemnification submitted in accordance with section 5.5 hereof within 30 days of its receipt of the itemized reimbursement request contemplated by subsection 5.5.a unless Indian shall deliver a Notice of Dispute with respect to the whole or any part of such claim as provided for in section 5.7. If Indian has delivered a Notice of Dispute as aforesaid, Indian shall, upon delivery of such Notice of Dispute, pay those items that are not disputed.

5.6.b. Final Determination of Damages:  Notwithstanding subsection 5.6.a hereof, Indian shall pay to the Indemnified Party the amount of any Claim Loss comprising an award of damages or costs which is subject to indemnification by Indian promptly upon such Claim Loss being determined either by a Final Determination of a Court of Competent Jurisdiction or as otherwise agreed between Indian and the Indemnified Party and in all events prior to any attachment of the assets of the Indemnified Party in payment of any such award.

5.6.c. Posting Bonds and Sureties for Appeals:  If any monetary bond or surety shall be required in order to perfect or pursue any appeal of any order or judgment given against an Indemnified Party, Indian shall post such bond or surety at its sole expense.

**5.7.   Notice of Dispute.**  If Indian shall dispute or question any claim or item constituting part of a claim for reimbursement of a Claim Loss, Indian shall, within 30 days of receiving the itemized reimbursement request contemplated by subsection 5.5.a, provide the party seeking indemnification with a written Notice of Dispute setting out the basis upon which Indian shall dispute or question any claim or item constituting part of the claim for reimbursement.

**5.8.   Resolution of Matters in Dispute.**  If the parties interested in the subject matter of a Notice of Dispute shall be unable to resolve their dispute, either party may refer the matter to the Formal Dispute Resolution Process as set forth in the Settlement Agreement.

15.

5.9.   **Receiver's Claim Loss Indemnification; Limitations**.  The
obligations of Indian to Indemnify the Receiver from any and all Claims
Losses incurred or suffered by the Receiver are subject to the following
limitations:

5.9.a. Claim Arising After the Termination of the Receivership: The
indemnification obligation shall be limited to Claims that arose or
arise before the termination of Receivership.

5.9.b. Limited to Specified Actions:  The indemnification obligation
shall be limited to Claims Losses arising from or out of the Ancillary
Actions, the Spokes Action, and the Cow Creek Action.

5.9.c. Spokes Action:  Indian shall promptly file the document it is
withholding  regarding the Spokes Indemnification and that
indemnification shall control and this Indemnification Agreement shall
not.

5.9.d. Cow Creek Action:  The indemnification obligation with respect
to the Cow Creek Action shall not extend to any claim based upon the
legal theory that:

5.9.d.i.      the Receiver acted without judicial consent or
approval;

5.9.d.ii.     the Receivership is bound by or liable for the
Trademark Facilitation Agreement regardless of the fact that the
said agreement was never approved by the District Court; or

5.9.d.iii.    the actions of the District Court in approving the
actions of the Receiver were *ultra vires* the authority and
jurisdiction of the District Court.

Indian shall not agree to a settlement in the Cow Creek Action if such
settlement is based upon any legal theory contemplated in paragraphs
5.9.d.i, 5.9.d.ii, or 5.9.d.iii, above without the written consent of the Receiver
and Sterling, which consent may be refused for good reason, bad reason, or
no reason.

5.10.  **Sterling's Claim Loss Indemnification; Limitation**.  The
obligations of Indian to Indemnify Sterling from any and all Claims Losses
incurred or suffered by Sterling is limited to Claims that arose or arise after
the termination of Receivership.

16.

5.11. **Monetary Limit.** Notwithstanding any other provision to the contrary except subsections 5.9.c and 5.9.d, the obligation of Indian to Indemnify:

>    5.11.a.   the Receiver with respect to Receiver's Fees, Receiver's Expenses, and Receiver's Legal Fees with respect to any Claim; and

>    5.11.b.   Sterling with respect to Sterling's Fees, Sterling's Expenses and Sterling's Legal Fees with respect to any Claim,

shall be limited to a single aggregate maximum of $50,000. For greater certainty, if Indian has paid on account of fees, expenses, or legal fees referred to in subsections 5.11.a and 5.11.b of this section 5.11 with respect to one or more Claims in aggregate the sum of $50,000, Indian shall have no further obligation to Indemnify either the Receiver or Sterling further with respect to Receiver's Fees, Receiver's Expenses, Receiver's Legal Fees, Sterling's Fees, Sterling's Expenses or Sterling's Legal Fees in respect of any Claim. This cap shall not apply to actions that arose as a result of Ancillary Actions, the Cow Creek Action, or the Spokes Action.

5.12. **Funding Arrangements.** Upon the execution of this Indemnification Agreement, Indian agrees to transfer $50,000 to Fairfield and Woods, P.C. (the "Fund Agent") to ensure the prompt payment of all Claims Losses (the "Cash Fund").

5.13. **Resort to Cash Fund.** If Indian shall be in default of its obligations to Indemnify an Indemnified Person hereunder with respect to Receiver's Fees, Receiver's Expenses, Receiver's Legal Fees, Sterling's Fees, Sterling's Expenses, or Sterling's Legal Fees in respect of any Claim, the Indemnified Person may, at its option, give notice in writing to the Fund Agent specifying the amount due and payable and the Fund Agent shall promptly pay the said amount demanded from the funds available in the Cash Fund. For the purposes of this paragraph 5.13, Indian shall be deemed to be in default if a Claim has been made in any court and Indian is not aggressively prosecuting all of its obligations under paragraph 5.2. Indian understands and agrees that the $50,000 cap on its obligations as set forth in this paragraph 5 is dependent upon Indian aggressively prosecuting its obligations under paragraph 5.2.

5.14. **Residue of Cash Fund.** Any amount not otherwise paid to an Indemnified Party from the Cash Fund, shall be paid by the Fund Agent on January 1, 2006 one half to Indian and one half to Sterling.

5.15. **Legal Counsel to Indemnified Party.** In situations where the Indemnified Party is represented by counsel and the fees of such counsel constitute the Receiver's Legal Fees or Sterling's Legal Fees which Indian shall be obligated to pay under the terms of the Agreement, the payment of such fees shall not create an attorney-client relationship between the attorney and Indian, and the bills as submitted for reimbursement may be redacted as appropriate under applicable law so as to preserve the attorney-client privilege between counsel and the Indemnified Party.

5.16. **No Position Adverse.** An Indemnified Party shall not take any position adverse to Indian in connection with any matter indemnified herein, provided that this obligation shall not be interpreted to limit, constrain, or affect the testimony of the Indemnified Party in any proceeding.

5.17. **No Voluntary Assistance.** An Indemnified Party shall not independently or voluntarily cooperate with or assist in any way any party adverse to Indian in connection with the Subject Matter without the prior written consent of Indian, which consent may be refused for good reason, bad reason, or no reason.

## 6. GENERAL PROVISIONS

6.1. **District Court Approval, Agreement Sealed.** This Indemnification Agreement shall not become effective until approved by the District Court. After such approval and prior to the termination of the Receivership, it may only be modified upon the mutual agreement of the parties and further approval of the District Court. After such approval and after the termination of the Receivership, this Indemnification Agreement may only be modified upon the agreement of the parties. This Indemnification Agreement shall be submitted to the District Court under seal, and the District Court shall be asked to approve and maintain this Indemnification Agreement under seal. Indian and the Indemnified Parties shall hold and keep this Indemnification Agreement confidential, and shall not disclose this Indemnification Agreement or the contents hereof to any person or entity except as specifically provided herein or as required by law.

6.2. **Governing Law and Jurisdiction.** This Indemnification Agreement shall be governed by law of the United States and the State of Colorado, except for Colorado choice of law rules should they require that the substantive law of a different jurisdiction control.

6.3. **Venue, Dispute Resolution.** The parties agree that any dispute with respect to this Indemnification Agreement shall be resolved

18.

exclusively through the Formal Resolution Process as set forth in the Settlement Agreement.

6.4.   **Remedies.**  Any forbearance or failure or delay in exercising any remedy hereunder shall not be deemed to be a waiver of any other remedy a party may be entitled to under this Indemnification Agreement.

6.5.   **Third-Party Beneficiaries.**  This Indemnification Agreement is intended to confer upon the Indemnified Parties all rights and remedies hereunder.  Except for the Indemnified Parties, this Indemnification Agreement shall not confer upon any non-party any rights or remedies hereunder.

6.6.   **Conjunctive, Disjunctive.**  The use of the conjunctive shall not be read to exclude the disjunctive and the use of the disjunctive shall not be read to exclude the conjunctive except where the context so requires.

6.7.   **Headings and Captions.**  All headings and captions used in this Indemnification Agreement are for convenience only, and shall not be construed to either limit or broaden the language of this Indemnification Agreement or any particular section of this Indemnification Agreement.

6.8.   **Agreement Integrated.**  This Indemnification Agreement is an exhibit to a Settlement Agreement, and is meant to be read in conjunction with that Settlement Agreement and all the other exhibits thereto.  When read with that Settlement Agreement (including the other exhibits thereto), those documents constitute the entire agreement between the parties pertaining to the Subject Matter.  This Indemnification Agreement supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the parties except the indemnification in the *Spokes Action* which is the subject of a District Court Order .  There are no warranties, representations, or other agreements between the parties in connection with the subject matter hereof except as specifically set forth in this Indemnification Agreement, the Settlement Agreement and the other exhibits attached thereto.

6.9.   **Counterparts.**  This Indemnification Agreement may be executed in counterparts.

6.10.  **Costs of Preparation.**  Indian shall pay its own costs and expenses, including fees of attorneys, accountants, and financial advisors, necessary in the preparation of this Indemnification Agreement, and such other agreements, instruments and documents required to be executed in connection herewith, and the consummation of the transactions contemplated

19.

herein and therein. The Receiver shall pay its own costs and expenses and the costs and expenses of Sterling, including fees of attorneys, accountants, and financial advisors, necessary in the preparation of this Indemnification Agreement, and such other agreements, instruments and documents required to be executed in connection herewith, and the consummation of the transactions contemplated herein and therein.

6.11. **Inurement.** This Indemnification Agreement is to the benefit of each party hereto, and shall inure to the benefit of the affiliates and subsidiaries of each such party and to the benefit of the principals, employees, owners, attorneys, and agents of each party and each such affiliate and subsidiary.

6.12. **Assignment.** The Receiver and Sterling may not assign their obligations hereunder without the prior written consent of Indian. Indian may not assign its obligations hereunder without the written consent of the Receiver (unless discharged) and Sterling. This Indemnification Agreement shall not, in any way, be construed as a limitation on Indian's right to assign a Purchased Asset, however, in the event of an assignment of all or substantially all of its Class 12 and/or all or substantially all of its Class 25 trademark rights in North America (comprised of the United States, Canada and Mexico, collectively), or the European Union (comprised of all member countries, collectively, as of the date of this Agreement), or all or substantially all of the Purchased Assets (whether in a single transaction or series of related transactions), Indian shall give the Indemnified Parties prior notice of the assignment and Indian shall require the assignee thereof to assume the obligations hereunder. An assumption of obligations by the assignee pursuant to this section 6.12 shall not, in any way, limit or diminish Indian's obligations. Notwithstanding anything herein to the contrary, Indian shall not execute an assignment that defeats the intent of this Indemnification Agreement. Indian may not disclose the terms of this Indemnification Agreement to such proposed assignee unless such proposed assignee agrees to hold this Indemnification Agreement confidential.

6.13. **IRS Actions Excepted from this Agreement.** Any provision of this Agreement notwithstanding, Indian shall have no obligation hereunder to Indemnify any Indemnified Party for any amounts relating to any Loss, Claim, Demand, or Request brought by the Internal Revenue Service against any Indemnified Party for unpaid taxes, interest, or penalties. Indian shall not independently or voluntarily cooperate with or assist in any way the Internal Revenue Service in the pursuit of any such unpaid taxes, interest, or penalties against any Indemnified Party without

20.

the prior written consent of the Indemnified Party.  Nothing herein shall preclude Indian from complying with compulsory process.

6.14. **Notices.** Any Demand, notice, or other communication required or permitted hereunder shall be deemed sufficiently given if hand delivered, sent by registered or certified mail, or sent by overnight courier (such as Federal Express), return receipt requested, and addressed as follows (the address for any party may be changed by giving notice thereof to the other parties):

If to Indian:

Indian Motorcycle Company
Attention:  Chief Financial Officer
Indian Motorcycle Company
200 East 10th Street
Gilroy, California  95020

With a copy to:

J. Eric Elliff, Esquire
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638

If to the Receiver or Sterling:

Sterling Consulting Corporation
91 East Dartmouth Avenue
Englewood, Colorado  80110

With a courtesy copies to:

John M. Tanner, Esquire
Fairfield and Woods
Suite 2400
1700 Lincoln
Denver, Colorado  80203-4524

-and-

21.

Marcus L. Squarrell, Esquire
Irizarry, McCall & Squarrell, P.C.
Suite 4704
1700 Lincoln Street
Denver, Colorado 80203

6.15. **Authority and Advice of Counsel.** The undersigned signatories to this Indemnification Agreement have carefully read the above and foregoing and know the contents thereof, have the authority to execute this Indemnification Agreement, in the case of corporations are in good standing in the state wherein they are incorporated, and have signed the same as their own free and voluntary act and after having the same explained to them by counsel.

Agreed and Accepted:
Sterling Consulting Corporation, as Receiver


By: _____
Richard A. Block, President


Sterling Consulting Corporation, Individually


By: _____
Richard A. Block, President

Indian Motorcycle Company


By: _____
James J. Kelly, CFO

IMCOA Licensing America, Inc.


By: _____
James J. Kelly, CFO

22.

IMCOA Holdings America, Inc.

By: _____
James J. Kelly, CFO

IMCOA Holdings America, Inc.

By:
        James J. Kelly