## Robert Pitts

**From:** Robert W. Pitts [rpitts@lawrwp.com]
**Sent:** Thursday, October 13, 2005 5:31 PM
**To:** rblock@xpn.com; 'Tanner_Jack'
**Cc:** 'Quinn_Thomas'; 'Lipscomb_Sara'
**Subject:** RE: IMCOA - Sterling

Jack,
I am currently traveling so a comprehensive response is not practical at this time. However, suffice to say that CMA disputes the position taken by Rick Block/Sterling in his/its letter of October 13, 2005. Nothing in the various agreements provides for the payment as requested in the letter.
Accordingly, Fairfield & Woods, as Fund Agent, is hereby instructed **not** to turnover any of the Cash Fund to Sterling or Rick Block absent compliance with the terms of the Indemnification Agreement. The October 13, 2005 letter fails to comply with such terms. Further, the unilateral demand for a "pleading" in response to the request set forth in the letter is unfounded. CMA expects that Fairfield & Woods will comply with its fiduciary obligations as Fund Agent.
I will follow up with a formal letter in response on Monday, October 17, 2005.
Thank You,
Bob

*Robert W. Pitts*
**LAW OFFICE OF ROBERT W. PITTS**
660 Newport Center Drive, Suite 400
Newport Beach, California 92660
T: 949-720-4125
F: 949-720-4111
E: rpitts@lawrwp.com
W: www.lawrwp.com

---

**From:** RichardBlock [mailto:rblock@xpn.com]
**Sent:** Thursday, October 13, 2005 11:05 AM
**To:** Tanner_Jack
**Cc:** Quinn_Thomas; Pitts_Robert; Lipscomb_Sara
**Subject:** IMCOA - Sterling

Please see attached.



EXHIBIT F

7/19/2006

### Robert Pitts

**From:** Jack Tanner [Jtanner@fwlaw.com]
**Sent:** Monday, October 17, 2005 8:23 AM
**To:** rpitts@lawrwp.com
**Cc:** Quinn_Thomas; Lipscomb_Sara; rblock@xpn.com
**Subject:** RE: IMCOA - Sterling

Mr. Pitts:

Thank you for your email of October 13. Your objection has been noted and will certainly be taken into account when Fairfield and Woods, as the "Fund Agent" under paragraph 5.12 of the Indemnification Agreement, decides what to do with the Cash Fund. Absent correspondence from Indian that identifies something in the Settlement Agreement (which includes the Indemnification Agreement) that would support CMA's position, I suggest that CMA plan to file something with the Colorado District Court if it expects to block the payment demanded by Sterling Consulting Corporation.

Under the Fund Agent's reading of the Settlement Agreement, CMA's demands are inconsistent with the spirit and the letter of the entire transaction. In particular, CMA's refusal to require the purchaser of the Indian Motorcycle trademarks to adopt the Settlement Agreement resulted in a split between the trademarks and the obligations of the trademark proprietor under the Settlement Agreement. This split cannot be reconciled with either the spirit or the letter of the Settlement Agreement.

To compound this, Mr. Block has advised us that CMA allowed Stellican (the purchaser of the trademarks) to cherry-pick among the various executory contracts. This decision by CMA defeats the provision in paragraph 6.12 that states "Notwithstanding anything herein to the contrary, Indian shall not execute an assignment that defeats the intent of this Indemnification Agreement."

By allowing Stellican to avoid the Settlement Agreement, CMA rendered it impossible for the trademark proprietor to be "aggressively prosecuting" anything under the Settlement Agreement. For example, paragraph 5.13 of the Indemnification Agreement contains a provision that states "For the purposes of this paragraph 5.13, Indian shall be deemed to be in default if a Claim has been made in any court and Indian is not aggressively prosecuting all of its obligations under paragraph 5.2." Beyond that, over the past year or two, it has been difficult to overlook the fact that neither CMA nor Stellican has acknowledged its obligation to indemnify Sterling (see paragraph 3.1.b., 5.1.b., and 5.1.c. of the Indemnification Agreement).

As you are aware, I was personally involved in the negotiation of the Settlement Agreement and the Indemnification Agreement. In my view, not only do the documents require a completely different result than CMA reached in the event of an

assignment, the overall results of the assignment conducted by CMA are totally in conflict with the meaning and intent of the Settlement Agreement.

As you are also aware, the Settlement Agreement contains a Formal Dispute Resolution Process in Section 4 of the Settlement Agreement, and that CMA has a dispute with Sterling cannot be rationally denied. The Receivership Action is still pending (and was recently transferred back to the Colorado District Court), so there is no question that paragraph 4.1 requires that the dispute must be heard by a "Magistrate Judge pursuant to 28 U.S.C. § 636 who is not one of the Magistrate Judges who have previously entered Orders in the Receivership Action or any related action in which the Receiver was a party."

According to the docket in Sterling's complaint against CMA, the case was assigned to District Judge Phillip S. Figa, who referred the case to Magistrate Judge Craig B Shaffer. Neither of the presiding Judges were involved in the Receivership Action, so CMA has no basis for objecting to the venue. In order to avoid a crisis, Sterling has made its demand on the Fund Agent and voluntarily granted a twenty-day delay to allow for an objection in the exclusive venue for resolving the dispute. This is a perfectly reasonable course of action by Sterling, and calls into question the nature of CMA's response.

Lastly, Sterling has pointed out three things that you should take into account when you respond (whether by letter or pleading): First, the $50,000 cap is no longer in place because the trademark proprietor cannot be "aggressively prosecuting" its obligations under the Settlement Agreement. Second, CMA has no rights under the Settlement Agreement because it assigned the trademark to Stellican. Third, under paragraph 5.13 of the Indemnification Agreement, upon notice by Sterling "the Fund Agent shall promptly pay the said amount demanded from the funds available in the Cash Fund." The payment by the Fund Agent is not discretionary, it is mandatory, and there is no comparable provision for Indian to block the demand.

In summary, the Fund Agent intends to pay over the entire Cash Fund on November 3 unless Indian (which may include one or more of the defendants) provides a basis for the Fund Agent to refuse to pay over the money. Sterling has taken the initiative to follow the Formal Dispute Resolution Process, and I would strongly urge CMA to take advantage of that process. The Magistrate Judge has set a Scheduling Conference for November 28, and I have no doubt that he would consider this issue at that time if CMA properly pleads it. I also have no doubt that Sterling will wait until November 28 if CMA stops maneuvering and puts the matter at issue in the pending action.

Jack

Jack M. Tanner
Fairfield and Woods, P.C.
Wells Fargo Center, Suite 2400
1700 Lincoln Street
Denver, Colorado 80203-4524


7/19/2006

# LAW OFFICE OF
# ROBERT W. PITTS

*660 Newport Center Drive, Suite 400*
*Newport Beach, California 92660*
*T: 949-720-4125*
*F: 949-720-4111*
*E: rpitts@lawrwp.com*

---

October 17, 2005

**VIA EMAIL (jtanner@fwlaw.com)**
John M. Tanner, Esq.
Fairfield & Woods, P.C.
Suite 2400
1700 Lincoln Street
Denver, CO 80203-4524

    RE: **Release of Funds in Settlement Escrow Account**

Dear Mr. Tanner:

    As you know, my office represents Credit Managers Association of California, dba CMA Business Credit Services ("CMA"), as assignee for the benefit of creditors of Indian Motorcycle Company, IMCOA Licensing America, Inc. and IMCOA Holdings America, Inc. (collectively, "Indian"). I am in receipt of Sterling's letter of October 13, 2005 ("Sterling Letter") and your email of October 17, 2005.

    As you also know, pursuant to the terms of the Indemnification Agreement, a Cash Fund was established in the amount of $50,000 ("Cash Funds") to be held by your firm as escrow agent ("Escrow Agent"). As such, your firm is a fiduciary to the parties to the various agreements.

    In the Sterling Letter, Sterling takes the position that it is entitled to the entirety of the Cash Funds based on some conclusory reference in the Sterling Letter to "the foregoing" paragraphs, none of which even assert a basis for indemnity or resort to the Cash Funds. Based on your email of October 17, 2005, it appears you agree with that position, to the detriment of one of the parties to whom you owe your fiduciary duty as Escrow Agent. It also appears that you may be unaware of the Assignee's position on this matter (as stated to Mr. Block on numerous occasions).

    Obviously, the Assignee is limited in its interpretation of the various documents by what the respective parties committed to writing (and presumably agreed to). An objective reading of the actual language of the various agreements (rather than a reading of what Mr. Block _wishes_ was there, specifically, a securitization of any indemnity obligation by the intellectual property assets themselves) reveals that the intent of the agreements is to provide the indemnified parties some level of comfort that they will not be

October 17, 2005
Page 2

exposed to expenses in responding to claims or litigation with respect to the intellectual property assets. The Cash Funds were established to provide some financial security that appropriate and documented Claim Losses would in fact be paid.

It cannot be disputed, again based on the written documents, that <u>the Cash Funds were not intended to serve as liquidated damages</u> for one party's asserted breach. As such, it is the Assignee's position that resort to the Cash Funds is only appropriate where there are Claim Losses that are currently subject to indemnification, but which have not been paid in a timely manner. In the absence of unpaid Claim Losses, Sterling is not permitted to unilaterally request the release of the Cash Funds, and the Escrow Agent is prohibited, by virtue of its fiduciary duty, to release the Cash Funds on the basis of such unfounded demand. For the reasons set forth below, the demand in the Sterling Letter for the release of the Cash Funds is unfounded.

First, the Assignee has never refused to indemnify Sterling and has in fact affirmatively attempted to (a statement that I'm sure will bring howls of protest from Mr. Block, but it is true), with respect to the "Demand" received by Sterling in April of this year. Mr. Block refused to comply with the terms of the Indemnification Agreement to the extent necessary to allow such indemnification. With respect to reimbursement of the indemnified expenses, to the knowledge of the Assignee, Mr. Block has submitted ONE request for reimbursement under the Indemnification Agreement since the assignment was made to CMA. That request was paid in due course, contrary to the insinuation of the Complaint filed in the Colorado District Court. To the extent Mr. Block has submitted any other request for reimbursement of "indemnifiable" expenses, please provide me with same so that it can be processed.

Further, the Assignee has NEVER received, or been notified of, "a Claim from any Indemnified Party" as proscribed in Section 5.2 of the Indemnification Agreement. In that receipt or notification of a Claim is a prerequisite to any obligation under Section 5.2, it is specious for Sterling to assert a default based on the Assignee's failure to fulfill its obligations under Section 5.2.

All of that having been said, however, the clear and unambiguous language of Section 5.13 of the Indemnification Agreement (the very section under which the demand for the balance of the Cash Funds was made), states that the section is relevant if there is a default <u>"with respect to Receiver's Fees, Receiver's Expenses, Receiver's Legal Fees, Sterling's Fees, Sterling's Expenses or Sterling's Legal Fees in respect of any Claim."</u> There has been no such default because no such demand "with respect to Receiver's Fees, Receiver's Expenses, Receiver's Legal Fees, Sterling's Fees, Sterling's Expenses or Sterling's Legal Fees in respect of any Claim" has been made by any indemnified party, as far as the Assignee is aware. If you are aware of any such demand, please advise me immediately.

Alternatively, a default may be found, for purposes of Section 5.13, if "a Claim has been made in any court and Indian is not aggressively prosecuting all of its obligations under Paragraph 5.2." Again, the Assignee is unaware of any

October 17, 2005
Page 3

Claim in any court, but please advise me immediately if you are aware of any such Claim. A default cannot be based on the failure to "aggressively prosecute" an obligation to defend against a claim that has not been made.

Finally, in order for an indemnified party's resort to the Escrow Funds to be paid by the Escrow Agent, the written demand must specify the amount due and payable. If for no other reason than this requirement was not met by the Sterling Letter of October 13, 2005, the Escrow Agent cannot release any of the Cash Funds. I suspect that the reason the amount due and payable was not specified in the Sterling Letter is a very simple one: no amount is due and payable to any indemnified party and Sterling knows that.

As a technical matter, inasmuch as the Sterling Letter purports to make demand on the Escrow Agent to make payment to Sterling on account of certain unspecified, and unpaid, Claims, and in light of your statement in your email in which you confirmed that the "Receivership action is still pending," it appears that payment to Sterling on account of any Claim Loss suffered by Sterling would contradict Section 5.10 of the Indemnification Agreement.

The bottom line is this:

1. The Assignee is unaware of any demand made by any Indemnified Party under the Indemnification Agreement that has not been paid in full.

2. The Assignee has not received, nor been notified of, any Claim giving rise to any obligation on its part under Section 5.2 of the Indemnification Agreement, which receipt or notification is a prerequisite to such obligation;

3. The Sterling Letter of October 13, 2005 is not a proper demand under Section 5.13 of the Indemnification Agreement in that it fails to specify the amount due and payable; and

4. Any payment to Sterling at this time would violate Section 5.10 of the Indemnification Agreement.

To the extent you have any information that would contradict any understanding of the Assignee set forth herein, I would inviter you to provide same to me as soon as possible. Further, the Sterling Letter and your email make numerous other allegations and/or insinuations not particularly relevant to the issues discussed above. The lack of a direct response thereto is intended to simply shorten the correspondence to a manageable length, and is not intended as any acquiescence of the Assignee to such allegations and/or insinuations.

Should you have any questions regarding the foregoing, please do not hesitate to call me.

Very truly yours,

Robert W. Pitts

Cc: Michael L. Joncich

# LAW OFFICE OF ROBERT W. PITTS

660 Newport Center Drive, Suite 400
Newport Beach, California 92660
T: 949-720-4125
F: 949-720-4111
E: rpitts@lawrwp.com

October 25, 2005

**VIA EMAIL (jtanner@fwlaw.com)**
John M. Tanner, Esq.
Fairfield & Woods, P.C.
Suite 2400
1700 Lincoln Street
Denver, CO 80203-4524

RE:  **Release of Funds in Settlement Escrow Account**

Dear Mr. Tanner:

I am in receipt of your email of October 22, 2005, a copy of which is attached hereto. Clearly, I am "behind the curve" on the relevant provisions of the Settlement Agreement and the Indemnification Agreement.[1] However, I do agree with you that my letter of October 17, 2005, did contain many procedural and substantive arguments advanced on behalf of CMA, as assignee of the Indian entities ("Assignee"). Apparently what you don't agree with is that those arguments are dispositive, be they procedural, substantive or simply based on the clear language of the documents.

The fact of the matter is that the language in the Indemnification Agreement regarding the "Resort to Cash Fund" is clear and unambiguous. While your statement is correct that an Indemnified Person may make demand upon the Escrow Agent for payment, **the right to make such a demand arises only "[i]f Indian shall be in default of its obligations to Indemnify an Indemnified Person [under the Indemnification Agreement] with respect to [a reimbursable claim]."** You have failed to provide me with even an allegation that Indian or the Assignee is "in default of its obligations to Indemnify an Indemnified Person." As such, I do not understand your statement that your firm's interpretation, as Escrow Agent, of the Indemnification Agreement would "require" your firm, as Escrow Agent, to pay over the Cash Funds to Sterling based on Sterling's letter of October 13, 2005. Such an interpretation ignores all but five words in the relevant section.

---

[1] All capitalized terms used herein are as defined in the relevant Settlement Agreement and Indemnification Agreement, unless otherwise defined herein.

October 25, 2005
Page 2

    Based on the forgoing and the reading of the plain language of the entire Section 5.13 of the Indemnification Agreement (not simply the half sentence referenced in your email of October 17, 2005), and the other relevant provisions of the Indemnification Agreement, your firm's interpretation of the Indemnification Agreement as referenced in your email of October 22, 2005, requires additional explanation. In particular, could you please explain: (i) as a threshold matter, how Sterling is entitled to any payment given the limitation set forth in Section 5.10 and fact that the Receivership has not yet been terminated; (ii) whether there are any unpaid Claim Losses that would require the Escrow Agent to pay over any portion of the Cash Fund in payment of such unpaid Claim Losses; (iii) how Indian or the Assignee is "in default of its obligations to Indemnify an Indemnified Person" as referenced in Section 5.13 of the Indemnification Agreement (as opposed to your allegation of a general default under Section 6.12); and (iv) the basis for your firm's determination, as Escrow Agent, that it may act on the unilateral instruction of one party in direct contradiction of the instructions of the other party to the relevant agreements?

    Finally, your email also states that your firm, as Escrow Agent, will make its "determination as to paying over the funds based upon the pleading filed by CMA on or before November 10." In our view, there is no relationship between our responsive pleading to the Sterling complaint and your fiduciary duties as Escrow Agent under the Indemnification Agreement. Could you please explain why the Escrow Agent is determining whether to abide by its obligations under the Indemnification Agreement based upon the Assignee's response to the Sterling complaint?

    I would reiterate my request made in my letter of October 17, 2005 for you to provide me with any factual basis for any disbursement to Sterling that would contradict the Assignee's factual understanding as set forth in my letter of October 17, 2005. Further,

    **Please take notice that should your firm, as Escrow Agent, take any action that fails to comply with the express terms of the Indemnification Agreement, including but not limited to, the release of any portion of the Cash Fund to any party based on the Sterling Letter of October 13, 2005, the Assignee shall pursue any and all of its legal rights and remedies against all parties, including your firm, as Escrow Agent.**

    Should you have any questions regarding the foregoing, please do not hesitate to call me.

Very truly yours,

Robert W. Pitts

Cc:    Michael L. Joncich

## Robert Pitts

**From:** Jack Tanner [Jtanner@fwlaw.com]
**Sent:** Saturday, October 22, 2005 1:20 PM
**To:** rpitts@lawrwp.com
**Cc:** Quinn_Thomas; Lipscomb_Sara; rblock@xpn.com
**Subject:** RE: IMCOA - Sterling

Bob:

Your letter to me of October 17, 2005 contains many procedural and substantive arguments that are misdirected. Our interpretation of the Indemnification Agreement requires us to pay over the Cash Fund upon demand by Sterling Consulting Corporation, and we have received such demand. You should make your arguments to the Colorado District Court.

We are aware that CMA has been served and has filed a Motion for an Extension of Time to November 10, 2005. On the assumption that the Court will approve the Motion, we have asked Sterling to extend the deadline to pay over the fund to November 10, and Sterling has consented. We will make our determination as to paying over the funds based upon the pleading filed by CMA on or before November 10.

Jack

**From:** Robert W. Pitts [mailto:rpitts@lawrwp.com]
**Sent:** Monday, October 17, 2005 5:10 PM
**To:** Jack Tanner
**Cc:** 'Quinn_Thomas'; 'Lipscomb_Sara'; rblock@xpn.com
**Subject:** RE: IMCOA - Sterling

Jack,
Please see the attached letter in response to your email below and Sterling's letter of October 13, 2005.
Thank you,
Bob

ROBERT W. PITTS
LAW OFFICE OF ROBERT W. PITTS
660 NEWPORT CENTER DRIVE, FOURTH FLOOR
NEWPORT BEACH, CALIFORNIA 92660
T: 949-720-4125
F: 949-720-4111
E: rpitts@lawrwp.com
www.lawrwp.com

-----Original Message-----
**From:** Jack Tanner [mailto:Jtanner@fwlaw.com]
**Sent:** Monday, October 17, 2005 8:23 AM
**To:** rpitts@lawrwp.com
**Cc:** Quinn_Thomas; Lipscomb_Sara; rblock@xpn.com
**Subject:** RE: IMCOA - Sterling

10/24/2005