## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re: Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

---

### RESPONSE TO ORDER TO SHOW CAUSE

---

Sterling Consulting Corporation, as receiver,[1] through its counsel Fairfield and Woods[2] hereby responds to the Court's Order to Show Cause (the "Show Cause Order") as follows:

#### INTRODUCTION

The Show Cause Order was directed to a narrow issue regarding why the receiver filed its First Amended Complaint. The short answer to the Order to Show Cause is "Because, given the prior Orders of the Receivership Court, it was the least worst option."

To understand that response, however, requires examination of the overall context of the receivership. This examination discloses that the problems with the First Amended Complaint are merely symptomatic problems that have consumed the efficient operation of the receivership for the past severl months, and threatens to not only defeat the last remaining mandatory function of the receivership but also threatens Sterling and Fairfield and Woods with financial disaster.

---

[1]  Sterling Consulting Corporation, in its individual corporate capacity and not as receiver, will be referred to as "Sterling" in this response.

[2]  Fairfield and Woods does not represent Sterling in the Receivership Action. As Sterling is not a party to the Receivership Action, Sterling's counsel was not asked to participate in this Response, and did not participate in this Response.

The Order to Show Cause was issued on the heels of comments from the bench by Magistrate Judge Shaffer that indicated he was puzzled by some of the actions taken by the receiver, and he stated that it appeared the receiver was "shooting from the hip." A receivership court should always be aware what its receiver is doing, and why.

The combination of the threat of personal financial disaster, Magistrate Judge Shaffer's comments, and the Show Cause Order has provided a vehicle for reviewing the factual foundation for the First Amended Complaint, the procedural context of the First Amended Complaint, and the consequences that will flow to all remaining issues in the Receivership Action as a result of the Court's determination of the Show Cause Order. The proper resolution of these issues is long overdue and may be necessary to wrap up the receivership.

### FACTUAL BACKGROUND

In 1999, after the receiver had paid out about $20 million in cash and paid all unsecured claimants 100% of allowed claims, the United States claimed taxes of as much as $4 million. The receiver disputed this claim, but the United States declined to file a formal assessment for the taxes at the time. As a result, Judge Weinshienk lacked jurisdiction to resolve that claim.

In 2002, in order to avoid a jurisdictional dispute that arose when the Massachusetts Bankruptcy Court entered an Order to Show Cause for holding the receiver in contempt for following the Orders of the Colorado District Court, and contrary to the recommendation of the receiver, the Colorado District Court transferred the Receivership Action to Massachusetts under 28 U.S.C. § 1404. Just days before the Receivership Action was transferred to Massachusetts, the United States filed its assessment.

2

On June 6, 2003, the Massachusetts Bankruptcy Court entered its Practice and Procedure Order No. 5 entered by the Massachusetts District Court (the "Tax Order"). In the Tax Order, the Massachusetts District Court determined that the Receivership Estate owed over $2,200,000 in taxes. The Receivership Estate had no money to pay those taxes (partly because the Colorado District Court Ordered the receiver to pay almost $500,000 over to the Massachusetts Bankruptcy Court, also contrary to the recommendation of the receiver). In addition, there were claims of penalties and interest that could be added to the Tax Order, plus four years of administrative expenses in litigating over the tax issue (well over $1,500,000).

Thus the receiver was thus charged with raising the $2,200,000 to pay taxes pursuant to the Tax Order, the $1,500,000 to pay administrative expenses, and perhaps more. Pursuant to the agreement among the receiver, the Trustee, and the IRS dated May 17, 2005 (the "Tax Settlement Agreement"), the receiver negotiated the tax amount down to $1 million, and the receiver and receiver's counsel agreed to waive past and future administrative expenses except as set out below. The case was then re-transferred back to Colorado to allow the receiver to collect the now-reduced amount due for taxes of $1,000,000. Three other aspects of the Tax Settlement Agreement affect this Response to the Order to Show Cause:

> *Carve-Out* – The negotiated Tax Settlement Agreement incorporated a carve-out of 37% of collections (up to $370,000) to pay the fees and costs of the receiver and its counsel. Because the receiver's fees and costs are paid out of the money payable to the United States, it is not technically payable out of money of the Receivership Estate.

> *Restriction on Fees and Costs* – Sterling has advanced over $50,000 in unreimbursed hard costs, Fairfield and Woods has advanced over $60,000 in unreimbursed hard costs, and Sterling and Fairfield and Woods have already billed around $2 million in fees. Of all of this money, plus all of the fees and hard costs not yet incurred, only $370,000 can ever

3

be paid. Further advances, and more time charges will, by definition, go unreimbursed and unpaid.

*Personal Liability* – If the receiver is unable to disgorge at least $350,000 and pay that amount to the United States within two years of the date of the Order transferring the Receivership Action back to the Colorado District Court (i.e., by September 7, 2007), the bar that prevents the United States from pursuing the unpaid taxes against Sterling (under 31 U.S.C. § 3713) in Tax Court,[3] and from pursuing the unpaid taxes against Sterling and Fairfield and Woods (under 28 U.S.C. § 6901)[4] in the Receivership Action will be lifted.

The receiver expected that, upon transfer of the case back to Colorado, an Order of

Recoupment would issue relatively quickly. Upon the transfer back, Magistrate Judge Schlatter

held two status conferences wherein the history of the case was discussed with all interested

parties. Both the Magistrate Judge and the interested parties asked questions of the

receiver.

The Court then Instructed the receiver to file its Motion to Reconsider. The

Motion to Reconsider was designed to restore to the Receivership Estate a small percentage of

the money used to pay junior claimants so the receiver could pay the taxes the Receivership

Court has determined are due. That Motion sought an Order requiring junior claimants

mistakenly paid in full to repay a small portion of the 100% payout they received to pay the taxes

---

[3] If the United States is correct in its position that only the Tax Court can hear an action against Sterling under 31 U.S.C. § 3713, this Court's failure to timely enable disgorgement will divest this Court of the jurisdiction to determine whether the receiver acted in a manner that would insulate it from liability. As positions of the United States tend to become self-fulfilling, the receiver has no doubt that Sterling will be ruined financially when the United States elects to proceed against Sterling.

[4] If this Court fails to timely enable disgorgement, it will likely be faced with a claim by the United States under 28 U.S.C. § 6901 against Sterling and Fairfield and Woods. To the extent the Court finds the partial disgorgement from pre-appointment claimants who have previously been paid 100% of their claims distasteful, a punishing disgorgement claim against Sterling and Fairfield and Woods for acting as instructed by this Court should be far worse.

4

to the United States Internal Revenue Service. This portion is considerably less that what should have been paid (under the Tax Order), and comes almost eight years since the mistaken over-payments (giving the claimants the use of the money for the entire period).

If this Court does not overrule the Objections to Magistrate Judge Schlatter's Recommendation or give the receiver another course of action to raise the money to pay the taxes determined by it to be due within the next few weeks, Sterling and Fairfield and Woods will be subject to a severe penalties pursuit by the United States. Neither has done anything to justify this punishment.

### COMMENTS BY MAGISTRATE JUDGE SHAFFER

On July 11, 2006, just two days prior to the issuance of the Show Cause Order, Magistrate Judge Shaffer made comments at a hearing in 05-1573 to the effect that actions were being taken by Sterling and the receiver that mystified the Court, and following a review of these actions, the Court could discern no identifiable litigation strategy. Magistrate Judge Shaffer also stated it appeared that the litigation was being conducted on a "shoot from the hip" basis. The Court then instructed all parties, but particularly the receiver, to "take a deep breath" and make sure each understood its goals.

Contrary to the observation by Magistrate Judge Shaffer, the receiver has been operating the receivership with one primary objective for the last year: Disgorge adequate funds from the claimants (who have been overpaid) to satisfy the Tax Settlement Agreement against the Receivership Estate, pay the receiver's counsel and the receiver (if there is anything left to pay), and close the Receivership Estate as soon as possible.

5

Besides sharing the receiver's primary objective as its primary objective, Sterling his two additional, subordinate objectives:  (a) avoid having to pay the taxes to the United States personally, and (b) get out from under the provisions of the Settlement Agreement with IMCOA (the receiver's purchaser) that add additional damage to the massive losses already sustained by the receiver, the receiver's counsel, and Sterling.

Receiver's counsel has been authorized to represent on behalf of Sterling, and can represent on behalf of the receiver and on its own behalf, that no action has been taken that was not intended to be wholly consistent with the primary objective, and very few that were not intended to be consistent with the subordinate objectives.  Those that were inconsistent with the subordinate objectives are only so because of conflicts with the primary objective.

The receiver is not surprised that the Court has not discerned the receiver's litigation strategy.  First, this incredibly-complicated case is over eleven years old and under new judges; second, this Court just became re-involved after the Receivership Action took a three-year hiatus in the Massachusetts District Court; third, it is not typical adversary-party litigation, but a receivership; and fourth, the usual means of communication between the receiver and the Court have been mired in procedural wrangling between the receiver and its adversaries.

As one counsel observed at the status conference on July 10, 2006, there have been no Receiver's Reports for several years.  There are a few reasons for this, but two reasons merit mention here.  First, under the settlement agreement with the United States, the receiver is prohibited from submitting narrative reports that would explain the actions and reasoning.

6

Without the narrative, the receiver can only report financial information, and that does not need a full-blown, resource-consuming Receiver's Report.

Second, receiver's reports—even "just" the financial sections—are expensive to prepare. The Receivership Estate has a large federal income tax judgment against it, no money (except approximately $151,000 in escrow from claimants paying under the Recommendation and about $300 keeping the checking account open), and high expenses. Beyond that information, there is little, if anything, to be gained by a Receiver's Report. If the Court wishes to see a Receiver's Report, it should Instruct the receiver to prepare and file one, keeping in mind that the Instruction will be followed even though the receiver has no hope of being paid for this work.

Moreover, since the retirement of Magistrate Judge Schlatter (who had worked on this case since its inception), this Court has not carried on his practice of simply asking questions of the receiver directly. As a result, the Court has been left to struggle with a mountain of pleadings and glean the receiver's ends and means from that. It is by no means disrespectful to the Court to suggest that it would be impossible for any judge newly arriving in this case to determine what needed to be done by slogging through the over 2,500 pleadings in the case, some of which can never be reconciled with the facts and law.

Ironically, the receiver has concerns that mirror the Court's concern: the receiver is concerned either that the Court has no case management strategy or that the receiver is unaware of it. Case management strategy in a receivership can only be determined by the supervising Court. Professor Ralph Ewing Clark, in his treatise 2 *Clark on Receivers* (2d Ed.) § 355, at p. 611, states:

7

Powers and duties of receiver—generally

A receiver has the following powers and duties. First: Those powers and duties directly stated in the order of court appointing the receiver and such subsequent powers and duties as may from time to time be given.

Second: Those powers and duties clearly implied from the order or orders of court appointing the receiver and which are clearly and reasonably necessary to the carrying out of such order or orders.[5]

The receiver can make suggestions as to the implementation of a case management strategy, but must follow the Instructions and Orders of the supervising Court. The receiver has been unable to determine the nature of the Court's case management strategy because the Court has not advised the receiver of that strategy, and because it is not readily apparent from recent expressions of this Court or Magistrate Judge Shaffer.

PROCEDURAL CONSTRICTIONS

1.      Channeling Documents

In addition to the Tax Order and the Tax Settlement Agreement referenced above, there are two other crucial documents that have channeled the case to where it is today: (a) the Order Approving Settlement Agreement, Severing Cases, and Transferring Receivership Case dated September 7, 2005 (the "Order Approving Tax Settlement Agreement"); and (b) Order for Entry of Separate Final Judgment, Pursuant to Rule 54(b), Determining Tax (the "Final Tax Order").[6] (The four referenced documents are referred to collectively as the "Channeling Documents.")

---

[5]  Professor Clark goes on to itemize powers that are conferred by statutes, but typically those are not powers but rather duties.

[6] The Tax Order, the Tax Settlement Agreement, the Order Approving Tax Settlement

8

The Channeling Documents were intended to constrict the receiver and this Court in their abilities, and they have accomplished that goal. When the receiver is considering any action, the receiver must first take into account the Channeling Documents as they generally confine, regulate, and channel any action under consideration. To the extent the Court can modify previously entered Orders, the Court may have more flexibility than the receier. Absent such modifications, however, the Court does not appear to have any more flexibility than the receiver has.

2.    Administrative Decisions.

When pursuing assets that rightfully belong to their estates, receivers traditionally file adversary proceedings[7] within the main receivership case against third parties to recover those assets. The adversary proceeding procedure is still used in bankruptcy cases on a day-to-day basis, and as far as the receiver knows, it is still used in receivership actions outside this Court. The form of an adversary proceeding starts with the main case number, then the adversary proceeding is assigned an adversary proceeding number.

The more important of the reasons to use an adversary proceeding are: (a) the law of the case of the Receivership Action would be wholly applicable to the adversary proceeding; (b) the receiver would have the benefit of 28 U.S.C. § 754, 28 U.S.C. §

---

Agreement, and the Final Tax Order are collectively referred to in this Response as the "Channeling Documents."

9

1692, and the common-law, carry-forward provisions in Fed.R.Civ.P. 66; (c) the receiver would have national *in rem* jurisdiction over the matter, making "minimum contacts" *in personam* jurisdiction irrelevant; and (d) the receiver would have the benefit of abbreviated procedures.[8] Conversely, when in another jurisdiction (or even when in the same jurisdiction but before a different Judge), the receiver loses the advantages in (a), (b), (c) and (d) above.[9]

---

[7] An adversary proceeding in a receivership is a plenary action by the receiver against one not a party to the Receivership Action under the main case with a separate adversary proceeding case number.

[8] In 2001, the Sixth Circuit Court of Appeals summarized the well-established principle that receivers should be given the benefit of abbreviated procedures in *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657 (6th Circuit) 2001 when it wrote:

> The challenged order clearly falls within the "broad powers and wide discretion" that a district court may utilize in fashioning relief in an equity receivership proceeding. *Elliott*, 953 F.2d at 1566. This discretion, which "derives from the inherent powers of an equity court to fashion relief," makes the use of abbreviated, summary processes possible. *Id. See also SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) ("Once the Commission has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement . . . ."). Such abbreviated procedures (including the use of a single receivership proceeding to resolve all claims) advance the government's interest in judicial efficiency by reducing the time needed to resolve disputes, decreasing the costs of litigation, and preventing the dissipation of the receiver's assets. *Elliott*, 953 F.2d at 1566 (citing *SEC v. Wencke*, 783 F.2d 829, 837 (9th Cir.), cert. denied, 479 U.S. 818, 93 L. Ed. 2d 33, 107 S. Ct. 77 (1986); *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 460 (9th Cir. 1984)).

[9] As discussed more fully below, it is this result that drives the receiver to file adversary matters within the Receivership Action and not in another Court, even if that Court is in the District of Colorado. A receiver filing a new case as plaintiff in another court in the same district cannot invoke supplemental jurisdiction. *See Johnson v. Miller*, 596 F. Supp. 768, (D. Colo. 1984) (receiver before Judge Kane could not invoke supplemental jurisdiction to give Judge Kane jurisdiction over case when receivership was pending before Judge Finesilver).

The receiver followed this procedure in filing its first adversary proceeding in the Receivership Action in 1995. Within a few months of the receiver's filing of the adversary proceeding, the Clerk of the District Court realized that there were effectively two cases with the same number, and this caused problems for the Court's computerized docketing system. The Clerk made an administrative decision that adversary proceedings should be filed under a separate case number, not the case number for the Receivership Action. This decision was communicated to Judge Weinshienk.

Without briefing on the issue from the receiver, Judge Weinshienk Instructed the receiver to file adversary proceedings thereafter under a separate case number and file a "Related Case Memo." This would result in all receiver-as-plaintiff actions being assigned to Judge Weinshienk and Magistrate Judge Schlatter.

The receiver was further Instructed to file a motion to consolidate any adversary proceeding brought in this manner in the Receivership Action. Judge Weinshienk stated that upon filing a Motion to Consolidate in these circumstances, the Court would Order consolidation, thereby providing the receiver with the benefits discussed above within each adversary proceeding so brought. This somewhat cumbersome procedure was followed by the receiver and the Court with overall success from 1995 until the case was transferred to Massachusetts, but failed with the return of the Receivership Action to the Colorado District Court.

3.     Procedural Failure.

11

While the receiver was waiting for the Court to make a determination on the Rule 72 Objections, the receiver realized it had time to pursue other assets that belong to the Receivership Estate without risking a delay in wrapping-up the Receivership Action. This included the claims and assigned rights to collect claims against Audax, CMA, Indian, and Pahl & Gosselin that have already been brought, and possibly more. The receiver filed cases against these entities (Case Nos. 05-cv-01573 and 06-cv-00076) and the usual Motions to Consolidate were filed, as had been done under Judge Weinshienk.

In an unexpected reversal of the Instructions to the receiver in bringing its adversary actions, this Court denied the receiver's Motions to Consolidate. The denial of the Motion to Consolidate effectively elevated the Clerk of the District Court's prior administrative decision to one affecting the substantive powers and rights of the receiver. Because the denial of the Motion to Consolidate was well within the Court's discretion, however, the receiver found itself unable to challenge the decision directly. Thus, the receiver was relegated to fabricating a yet another work-around.[10]

---

[10] An example of only one substantive consequence of the denial of the receiver's Motion to Consolidate occurred when, on July 10, 2006, Magistrate Judge Shaffer denied the receiver's Motion to Compel and suggested the receiver re-file it in the Central District of California. The denial turned on the fact that CMA and Audax were not parties in the receivership and thus the Court lacked jurisdiction over them under Rule 45. Had the cases been consolidated, however, CMA and Audax would have been parties in the Receivership Action, and the documents could have been obtained by a Rule 34 request, which is good nationwide and disputes as to which would be brought before Magistrate Judge Shaffer.

As detailed below, this is why the First Amended Complaint was filed—it appeared to be the least worst of several alternatives created by the various Court Orders referenced above.

4.      Procedural Alternatives.

The denial of the Motion to Consolidate left the receiver with five options, all of which were bad:

a.      *Option One; Abandon Actions* – Abandoning these actions will deprive the Receivership Estate of significant assets needed to pay the taxes that have been Ordered paid. Nevertheless, this is the default alternative, and failing any of the other alternatives, this is precisely what will happen.

b.      *Option Two; Plenary Actions in Foreign Jurisdictions* – One option was for the receiver to bring actions against CMA, Indian, and Pahl & Gosselin in California, and to bring an action against Audax in Massachusetts. This will not happen because: (i) the Receivership Estate lacks the resources to prosecute a claim in a foreign jurisdiction; and (ii) there is no reason for a receiver to utilize unnecessarily expensive and time consuming procedures when there are perfectly suitable procedures available.

c.      *Option Three; Adversary Proceeding in the Receivership Action* – By filing adversary proceedings against CMA, Audax, and Pahl and Gosselin within the Receivership Action, the receiver would obtain national jurisdiction over the defendants, and could pursue the actions against them in the Colorado District Court. As a component of restoring the receiver's powers and rights, discovery issues against the defendants would be heard exclusively in the Colorado District Court. The problem with this approach was that it was directly in conflict with a prior Instruction of the Court, and given the fact that this Court has not made a determination on the receiver's Emergency Motion for Instructions in over four months, the receiver had little hope of getting the Court to give an Instruction that was not pursuant to an emergency request. As discussed in the Recommendation section at the end of this Response, this is clearly the most appropriate proceeding, but can only be accomplished with an Order from this Court.

d.      *Option Four; Motion for Turnover in the Receivership Action* – Bringing a simple motion for turnover within the Receivership Action would certainly work

13

against a party that had submitted itself to the jurisdiction of the Court (such as CMA), but might or might not work against parties who had not (such as Audax and Pahl & Gosselin). This option was not selected both for that reason and because it was previously considered and rejected by Judge Weinshienk.

e.      *Option Five; First Amended Complaint* – As counterintuitive as filing a First Amended Complaint in a case eleven years old may be, it appeared to be the only option the receiver could take unilaterally (other than forfeiture). Although the receiver did not anticipate the rapid reaction it got from the Court with the Show Cause Order, it at least enables the Court to consider the issues and the alternatives before directing a forfeiture against the receiver. The receiver agrees with Magistrate Judge Shaffer's observation from the bench on July 11, 2006 that this option has its drawbacks, but it appeared to the receiver, after considerable thought, to be the least worst option.

### LEGAL STANDARDS THAT AFFECT THE RECEIVER'S DECISIONS

1.      Receiver is an Arm of the Court.

A receiver is not a "party" to litigation in the receivership Court. Rather, it is an arm of the Court. *See* Magistrate Judge Schlatter's Order of August 4, 1997. Although that Order was directed to a narrow issue (what a claimant should do with some stock certificates), the Order of Judge Schlatter gives insight into the relationship between the receiver and the Court:

> Mr. Mandelman states that he has signed the Replacement Certificates, and requests permission to deliver them to the Court, instead of the receiver, because "there exists a legitimate dispute as to whether Mr. Mandelman should be forced to disgorge his stock with a concomitant turn-over of stock from the receiver pursuant to a previous Court Order" (Motion, ¶ 7).

> Mr. Mandelman's motion evidences a fundamental misunderstanding of the nature of a receiver. In an equitable receivership proceeding such as this, the receiver acts as an officer of the court, and holds assets of the receivership in that capacity. *See Atlantic Trust Co. v. Catman*, 208 U.S. 360, 372 (1908) (the receiver is officer of court, and property in his hands is *in custodia legis*); *Brunswick Corp. v. J & P, Inc.*, 424 F.2d 100, 103 (10th Cir. 1970) (funds *in custodia legis* are the same as if actual possession is with an officer of the court); *In re Real Estate Mortgage Guaranty Co.*, 55. F.Supp. 749 (E.D.P.A. 1944) (possession of receiver is possession of court; court itself holds and administers estate, through receiver as its officer). *See also,* R. Clark, *Clark on Receivers*, §

14

36 (1959) (receiver is an arm or administrating hand of the courts); § 332 (effect of appointment of receiver is to put property in custody of court).

In short, the receiver *is* the registry of the court. The receiver holds all property for the ultimate benefit of the receivership estate, subject to exclusive jurisdiction and control of this court. The motion seeks an artificial distinction between the court and the receiver when, for purposes of custody and distribution of property in question, none exists. (Emphasis in original.)

2.    <u>The Court can and should give the receiver instructions to direct the receivership.</u>

The United States Court of Appeals for the Sixth Circuit, in *Haines v. Buckeye Wheel*

*Co.,* 224 F. 289, 1860 (6th Cir. 1915) wrote:

"A receiver is an officer of court, and amenable to it for a proper discharge of the trust confided to him. When he is in doubt as to what he ought to do, he should take the advice of the court." By so doing he can at all times protect himself, and if he neglects or refuses to avail himself of the ample and effective shield which the law thus provides and places in his hands, he acts upon his own responsibility and at his own risk and peril. (Quoting *In re Angell*, 131 Mich. 345, 91 N.W. 611, (1902)).

Similar, Professor Clark writes:

Receiver's duty to ask for instructions. Receivers have a very large latitude in the matter of asking advice and seeking the protection of the court appointing them with reference to the discharge of their duties. They are at all times entitled to apply to the court for instructions. . . . [T]he receiver himself can and should apply for instructions in matters pertaining to the preservation of the estate. (See 102, supra.)

2 Ralph Ewing Clark, *Clark on Receivers*, § 361.

3.    <u>Statutes and Rules Applicable to Receiverships.</u>

There are few statutory or other regulatory guidelines for federal court receivers, but

there are three important ones, and they form the basis of the Receivership Court's national

jurisdiction:

Fed.R.Civ.P. 66 provides:

15

Receivers Appointed by Federal Courts

An action wherein a receiver has been appointed shall not be dismissed except by order of the court. The practice in the administration of estates by receivers or by other similar officers appointed by the court shall be in accordance with the practice heretofore followed in the courts of the United States or as provided in rules promulgated by the district courts. In all other respects the action in which the appointment of a receiver is sought or which is brought by or against a receiver is governed by these rules.

28 U.S.C. § 754 provides:

Receivers of property in different districts

A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

He shall have capacity to sue in any district without ancillary appointment and may be sued with respect thereto as provided in section 959 of this title.

Such receiver shall, within ten days after the entry of this order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

28 U.S.C. § 1692 provides:

In proceedings in a district court where a receiver is appointed for property, real, personal or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

All three of the foregoing are completely applicable to this receiver. Rule 66 and Section 1692 are applicable without any precondition. Section 754 has a significant precondition, but the record will show that this receiver complied with that precondition within the time provided therein.

16

4.     National *In Rem* Jurisdiction (Nationwide Service of Process).

The Sixth Circuit Court of Appeals addressed the very issue that confronts the Court in

considering whether and how to Instruct the receiver to bring its claims against non-parties to the

Receivership Action.  In *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 817 (6th Cir. 1981), the

Court identified the issue:

> The sole question presented for review is whether the minimum contacts analysis
> of *International Shoe v. State of Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L.
> Ed. 95 (1945), and its progeny properly applies to ancillary actions and
> proceedings brought by a federal receiver appointed pursuant to Fed.R.Civ.P. 66
> and 28 U.S.C. §§ 754 and 1692.

The Court in *Haile* (at page 826) went on to resolve the issue framed above as

follows:[11]

> We find the reasoning in *Driver v. Helms* to be directly applicable to the case at
> bar.  The process authorized by § 1692 is not "extra-territorial" but rather
> nationwide. The appointment court's process extends to any judicial district
> where receivership property is found. As such, the minimum contacts analysis, as
> a limitation on state extra-territorial power, is simply inapposite.

The same nationwide service of process issue was considered by Judge Kane

within the context of a federal securities case in *Piper Acceptance Corp. v. Slaughter*,

600 F. Supp. 169, 171 (D. Colo. 1985).  The defendant in *Piper* insisted that it was not

subject to the jurisdiction of the Colorado District Court because it had no contacts with

the State of Colorado.  There was no dispute on the lack of contacts, but Judge Kane

found that it had jurisdiction under a federal statute:

---

[11]  The Court in *Haile* supported its ultimate conclusion with excellent analyses of Fed.R.Civ.P.
66 and 28 U.S.C. §§ 754 and 1692.

This position, however, misconstrues the jurisdictional basis underlying the Hayzlett's federal securities claims. Jurisdiction here is founded on specific statutory provisions authorizing nationwide service of process. Fed. R. Civ. P. 4(f). A claim under federal securities laws "may be brought in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. Service of process is, therefore, not constrained by the limitations of the Colorado long-arm statute or the minimum contacts requirements of International Shoe, but is "co-extensive with the boundaries of the *United States.*" *See F.T.C. v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir. 1981). Thus, the fairness requirements embodied in due process are satisfied if the party contesting personal jurisdiction is a resident of the United States, "the sovereign that has created the court." *Stafford v. Briggs*, 444 U.S. 527, 554, 63 L. Ed. 2d 1, 100 S. Ct. 774 (1980) (Stewart, J., dissenting). "Here the sovereign is the United States, and there can be no question but that . . . [Bangor Punta] . . . has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States Court." *Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979).

If the receiver were to file a separate action in a different district, the Court in the foreign jurisdiction would not have any of the powers of the appointing court. *Baker v. Heller*, 571 F. Supp. 419, 422 (D.C.Fla. 1983) ("This court concurs with the court's opinion in *Franklin [United States v. Franklin National Bank,* 512 F.2d 245 (2d Cir.1975)]. The mere presence of a federally appointed receiver does not confer subject matter jurisdiction upon this court. The cases cited by plaintiff, *Pope v. Louisville, New Albany & Chicago Railway Co.*, 173 U.S. 573, 43 L. Ed. 814, 19 S. Ct. 500 (1899) and *Haile v. Henderson National Bank*, 657 F.2d 816 (6th Cir. 1981), are inapposite for in both cases the federal receiver had been appointed by the court in which the action was filed."); *Sullivan v. Swain*, 96 F. 259, 259 (C.D.Cal. 1899) ("It is true that where a receiver, in administering his trust, brings an action in the court which appointed him, such court has jurisdiction of the action without regard to the amount involved or the

18

citizenship of the parties (*White v. Ewing*, 159 U.S. 36, 15 Sup. Ct. 1018; *Lanning v. Osborne*, 76 Fed. 319); but in such a case the jurisdiction in upheld on the ground that the action is but auxiliary to—indeed a part of—the original suit, in which the receiver was appointed. This ground of jurisdiction, however, manifestly does not exist where the receiver sues in a jurisdiction other than that of his appointment. The suit will be dismissed for lack of jurisdiction."); *Kelley v. Queeney*, 41 F. Supp. 1015, 1018 (W.D.N.Y. 1941)) ("This ground of jurisdiction, however, manifestly does not exist where the receiver sues in a jurisdiction other than that of his appointment."); *Mitchell v. Maurer*, 293 U.S. 237, 243 (1934) ("For the rule can have no application where primary receivers appointed by a state court bring a suit for the appointment of ancillary receivers in the federal court for another State. Obviously such an application is not ancillary to any proceedings in any federal court. It is an independent original bill. Being such, it cannot be sustained when diversity of citizenship does not exist and no other ground of federal jurisdiction is shown.").

5.    Supplemental Jurisdiction.

Hundreds of years of receivership law hold that a complaint brought by a receiver should be brought as a matter within the receivership itself. Indeed, the entire concept of what was originally called auxiliary jurisdiction, then ancillary jurisdiction, then pendent jurisdiction, and now supplemental jurisdiction, originated so a federal receivership court could resolve disputes regarding receivership claims for which there was not otherwise federal jurisdiction. 13A Charles A. Wright and Arthur A. Miller *Federal Practice and Procedure* § 1444, at p.316-317:

19

> Ancillary jurisdiction is a . . . judicially developed concept based on the premise that a District Court acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented. Originally, the Courts held that ancillary jurisdiction would be employed only in those cases in which it appeared to be a matter of necessity to do so, such as jurisdictionally deficient disputes relating to the ownership of property in the control of federal courts. (Emphasis added.)[12]

Prior opinions in this District, however, indicate that Supplemental Jurisdiction in a receivership case only applies with a case pending before the same Judge. In *Johnson v. Miller*, 596 F. Supp. 768, (D. Colo. 1984), Johnson was a receiver in a receivership action before Judge Finesilver. His suit to gather assets for the receivership estate against Mr. Miller, however, was assigned to Judge Kane. Judge Kane determined he lacked supplemental jurisdiction because the receivership was pending before Judge Finsilver:

> The claims asserted here are all based upon state law. There are no federal issues to confer jurisdiction upon this court. If the case were tried before Chief Judge Finesilver, jurisdiction could be ancillary to the principal suit in which the receiver was appointed. There are, however, no federal claims before me upon which jurisdiction can be pegged. The appointment of an equity receiver in one federal court does not necessarily imbue that receiver with jurisdiction to pursue all actions in other federal courts.

6.   Receiver as a Party.

Among the lessons learned by the receiver while this case was pending in Massachusetts was that a Court treating its receiver as an ordinary party destines the

---

[12]  The phrase "jurisdictionally deficient disputes relating to the ownership of property in the control of federal courts" refers to ancillary actions brought by receivers regarding receivership property. As a basis of this proposition, *Wright and Miller* cites *Wabash Ry. Co. v. Adelbert College*, 208 U.S. 38 (1908). *Wabash Ry. Co.* is a well-known receivership case, and was cited by this Court in its Order Regarding Licensing and Enforcement of August 20, 1996.

receivership for failure. At the present time, the receiver believes it is being treated like an ordinary party, and there is every indication that failure is imminent. A failure in this regard will result in personal financial devastation for Sterling and Fairfield and Woods. The receiver urges the Court to address these matters and confirm that the Court at least understands the ruinous consequences of its determinations and absence of determinations.

The receiver does not wish to imply that this Court is powerless to identify procedural alternatives, but the receiver does want to state that it and its counsel are intimately familiar with the travel of the Receivership Action and the law of the case, and has formulated its litigation strategy in what it perceives to be the only course of action available. If this Court can identify better procedural alternatives, the receiver will adopt them instantly.

## LACK OF CASE VELOCITY

The final factor the receiver considered in determining to file a First Amended Complaint was the lack of velocity to closure of this Receivership. The Tax Settlement Agreement provides that the United States can not pursue Sterling (individually) or Fairfield and Woods for the Receivership Estates' taxes for two years from the date of transfer. After that, the Sterling and Fairfield and Woods face the certainty of being pressed by the United States to pay the taxes under the Tax Settlement Agreement, despite the fact that neither Sterling nor Fairfield and Woods owe these taxes.

Upon the case arriving in Colorado in September, 2005, Magistrate Judge Schlatter held two status conferences. The point of these conferences was to educate both the Court and any interested party in the Receivership Estate as to what had transpired in Massachusetts and what was likely to transpire in Colorado. These conferences were held in October, 2005.

The receiver then filed its Motion for Reconsideration, aimed at collecting back from junior claimants the erroneous overpayments they had received, so the money could be used to satisfy the Tax Settlement Agreement and this Receivership wound-down. After Magistrate Judge Schlatter entered his Recommendation that the Motion for Reconsideration on December 14, 2005 be granted, the receiver expected the Court to promptly hear any Rule 72 objections. Only one objection was filed timely; another was filed late but the Court has since allowed that late filing.

As the Recommendation is well within established receivership law, the receiver anticipates that the Objections will be overruled. If the Objections are sustained, it will be incumbent upon the Court to identify an alternative if any alternative actually exists.

Meanwhile, the Motions to Dismiss for lack of jurisdiction in the 05-cv-1573 and 06-cv-00076 actions had been pending for months. Those motions would probably not even have been filed in the main receivership action and, had they been filed, would have been given the short shrift they deserve. With the denial the Motion to Consolidate, however, those Motions were likely to be granted under the authorities cited above. Thus the receiver felt an urgency to dismiss those cases and re-file them

within the Receivership Action before the Defendants could take unilateral action that would prevent the receiver from doing so (for example, filing a motion for summary judgment that would have defeated the receiver's ability to dismiss those actions under

The Court should notice that the First Amended Complaint was a pursuit of claims that largely rightfully belonged to Sterling, in its individual corporate capacity. At an early settlement conference, however, Audax and CMA demanded that the receiver release Audax and CMA as part of any settlement. This created a potential conflict of interest between the receiver, which Sterling resolved by assigning the claims to the receiver.

Sterling would have preferred that the Receivership Action end quickly so it could pursue its claims, but that is not the case. Sterling was compelled to assign the right to collect under those claims to the receiver to avoid a potential conflict of interests while not losing the claims. The concern, of course, would be that the claims would become stale with the passage of time. If the Court is inclined make the Order to Show Cause Absolute without enabling an alternative, the Court should be prepared to hear the objections of those who believe the receiver should get the benefit of the assignments and the ability to recover property of the Receivership Estate from Pahl & Gosselin.

### RECOMMENDATION

The receiver recommends that this Court Instruct the receiver to withdraw the First Amended Complaint and file such adversary proceedings as the receiver, in its judgment, believes should be filed. The adversary proceedings should be ancillary to the Receivership Action (i.e., 95-CV-00777), and should bear that case number. The

receiver is confident that the administrative Clerk of Court can find a way to keep track of all such adversary actions.

The adversary proceedings should be plenary except to the extent a defendant is already a party to the Receivership Action. In that instance, the receiver may file by summary proceeding (e.g., a motion) or by plenary action. The receiver may ask the proposed defendant whether the proposed defendant prefers a motion or a plenary complaint, and if the proposed defendant states no preference, the receiver may use whichever pleading the receiver believes is appropriate. If the proposed defendant expresses a preference, the receiver should accommodate that preference.

WHEREFORE, Sterling Consulting Corporation, as receiver, prays that this Court either discharge the Order to Show Cause, make it absolute and instruct the receiver to use an "adversary case" caption to bring the adversary action, or identify another procedural device that will avoid forfeiture, and that it grant the receiver such other and further relief as the Court deems just and proper.

Respectfully submitted this 24th July, 2006.

Respectfully submitted,

By: *s/ John M. Tanner*
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203-4524
Phone: (303) 830-2400
Fax: (303) 830-1033
Email: jtanner@fwlaw.com

Attorney for Plaintiff Sterling Consulting
Corporation, as receiver

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO 80202
**Attorney for Richard Basciani, N.
Rooke Everill, Pres./Everill Bros.,
Inc., John H. Nicholson or Virginia A.
Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
  Woods and Levy
633 17th St., Ste. 2200
Denver, CO 80202
**Attorneys for William R. Childs, Scott
McCormick, Jr., Douglas Walliser,
Ronald Schiff, Edward Pacelli, Morty
Lempel, A.B. Goldberg, First
Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
  & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO 80202-1273
**Attorney for Carl D. Lucci/Albert R.
Lucci**
jcage@cagewilliams.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO 80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, DC 20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO 80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO 80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO 80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA 91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI 53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA 92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL 34982
Robert W. Hallock, Esq.
202 S. Merrill St.
Park Ridge, IL 60068-4223

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C. 20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA 01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C. 20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA 70506
Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ 08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM 87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT 06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL 60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN 55311

Steve Halprin
1316 Penningtow Place
Concord, N.C. 28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa,IL 61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA 91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM 87501

John Inelli
17 Old Farmstead Rd.
Chester, NJ 07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO 80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO 80501

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO 80246
**Receiver**
rblock@xpn.com

**Courtesy Copies to:**
Julie Trent
jt@bsblawyers.com

Eugene Sprague
esprague@bw-legal.com

Michael Chodos
michael@chodos.com

Robert Pitts
rpitts@lawrwp.com

By:  *s/ John M. Tanner*
        Fairfield and Woods, P.C.
        1700 Lincoln St., #2400
        Denver, CO 80203
        Phone: (303) 830-2400
        Fax: (303) 830-1033
        Email: jtanner@fwlaw.com