**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No.  95-cv-00777-REB-CBS

In re: Receivership Estate of INDIAN MOTORCYCLE MANUFACTURING, INC., a New Mexico corporation,

---

**ORDER APPROVING AND ADOPTING**
**MAGISTRATE JUDGE'S RECOMMENDATION**

---

**Blackburn, J.**

This matters  before me are 1) the receiver's **Motion to Reconsider Orders, Amend Orders, and Order Restitution With Incorporated Legal Authority** [#1940], filed November 18, 2005; and 2) the Magistrate Judge's **Recommendation that Receiver's Motion for Reconsideration be Granted** [#2013], filed December 14, 2005.  Two claimants in this receivership action have filed objections to the recommendation: 1) **Michael Payne's Objection to Magistrate Judge's Recommendation that Receiver's Motion for Reconsideration be Granted** [#2048], filed December 29, 2005; and 2) **Joinder In and Supplement to Michael Payne's Objection to Magistrate Judge's Recommendation that Receiver's Motion for Reconsideration be Granted** [#2090] (Pacelli), filed January 23, 2006.  The receiver and the Internal Revenue Service have filed responses to Payne's objection [#2076] (receiver), [#2067] (IRS), and to Pacelli's objection [#2250] (receiver), [#2259] (IRS).

**I.  STANDARD OF REVIEW**

Typically, I must review *de novo* all portions of a Magistrate Judge's recommendation to which objections have been filed.  **28 U.S.C. § 636(b)**.  The

receiver argues that the recommendation at issue here is not dispositive, and, thus, is subject to review only to determine whether the recommendation is clearly erroneous or contrary to law. **28 U.S.C. § 636(b)(1)(A); F**ED**. R. C**IV**. P. 72(a)**.  In its motion to reconsider, the receiver seeks reconsideration and amendment of two orders entered by Magistrate Judge Schlatter, and one order entered by District Judge Zita L. Weinshienk.  The receiver reports that Magistrate Judge Schlatter filed a recommendation, rather than an order, because he did not have the authority to reconsider an order entered by Judge Weinshienk.

Both § 636(b)(1)(A) and Rule 72(a) speak of a magistrate judge's orders.  Here, I am reviewing a magistrate judge's recommendation.  I conclude that the *de novo* review standard of § 636(b) is applicable to my review of the Magistrate Judge's recommendation.  As required by **28 U.S.C. § 636(b)**, I have reviewed *de novo* all portions of the recommendation to which objections have been filed, and have considered carefully the recommendation, the objections, and the applicable law.  I overrule Payne and Pacelli's objections, and I adopt the magistrate judge's recommendation on the terms specified in this order.

## II.  FACTS

This receivership action, originally filed in 1995, has a long and complex history. I will outline here only the key facts that are relevant to the motion, the Magistrate Judge's recommendation, and the objections.

In 1999 and 2000, the receiver paid claimants with pre-appointment, general unsecured claims (Claimants) 100 percent of the amount of their claims. Subsequently, the Internal Revenue Service asserted and established a claim for income taxes due

from the receivership.  When the tax liability was established, and ever since, the receivership has had no appreciable assets.  In its Motion to Reconsider Orders, Amend Orders, and Order Restitution With Incorporated Legal Authority, the receiver seeks an order from the court directing the Claimants to repay to the receiver a part of the money the receiver paid to the Claimants.  The receiver seeks to recover this money to pay the IRS claim for taxes and to pay some administrative expenses of the receivership.  The Magistrate Judge held a hearing on this motion on December 13, 2005.  The following day, the Magistrate Judge filed a written recommendation [#2013] in which he recommended that the receiver's motion be granted.  Additional factual details are discussed below.

This Court has entered three orders in connection with its instructions to the receiver to distribute money to the Claimants.  Those orders are (a) the Order [Approving Claims] dated July 23, 1999; (b) the Order [Approving Distribution] dated September 30, 1999; and (c) the Order Clarifying Prior Order [dated September 30, 1999] and Giving Instructions dated January 20, 2000, nunc pro tunc January 19, 2000. I will refer to these orders as the Distribution Orders.  In addition, the court entered numerous orders in furtherance of the general plan of distribution of the assets of the receivership estate. To the extent these orders furthered the approval of payments to the Claimants, those additional orders are included in the term "Distribution Orders."

When the Distribution Orders were issued, the receiver and the court believed that there were no other expenses to be paid in the case, except for some prospective administrative expenses.  After the Claimants were paid under the terms of the Distribution Orders, the IRS filed an assessment for taxes against the receivership

estate.  The receiver contested the assessment, and this case was transferred to the

United States District Court for the District of Massachusetts for resolution of all issues

surrounding the alleged tax liability.  A closely related bankruptcy proceeding was

pending in Massachusetts.  After an extensive period of briefing and argument, the

District Court in Massachusetts found in favor of the IRS, and against the receiver.  As

a result of the proceedings in that court, the estate was ordered to pay about 1.5 million

dollars in taxes, interest, and penalties to the IRS.  There appears to be some

disagreement about the precise amount of and bases for the Massachusetts court's tax

award, but that dispute is not material here.  *See United States' position re: Payne's

objection*, [#2067], filed January 6, 2006, p. 4, n. 5.  If not for the settlement agreement

between the receiver and the IRS, the IRS reports that the receivership's tax liability as

of January 6, 2006, would be over 1.6 million dollars, with interest continuing to accrue.

*Id*.  The receivership incurred large administrative fees and expenses in defending

against the claims of the IRS. Having reviewed the record, I conclude that the tax

assessment and receivership expenses together represented a burden to the estate of

at least three million dollars.

On May 17, 2005, the receiver negotiated a settlement agreement with the

IRS and with the Trustee in Bankruptcy, which was administering claims that were

companion to the receivership proceedings. That settlement was approved by the

Massachusetts District Court on September 7, 2005.  Under the terms of the

settlement, the IRS agreed to limit the liability of the receivership estate for all taxes,

interest, and penalties to the sum of one million dollars.  The IRS agreed also that 37

percent of that one million dollars could be recouped by the receivership for its past

4

and future administrative expenses.  The receiver and its professionals have agreed to accept this amount as full payment of administrative expenses totaling about 1.4 million dollars.  Again, the effect of the settlement agreement was to limit the exposure of the receivership to one million dollars for these tax liabilities, instead of the three million dollars, or more, to which it would be exposed absent the settlement agreement.

The receiver and the IRS agreed also in the settlement agreement that the receiver shall seek a refund from the Claimants of 24.35 percent of the amounts the receiver has paid to the claimants.  The IRS states that this percentage "reflects the percentage of the tax judgment over the total distribution to the unsecured non-administrative claimants."  *See United States' position re: Payne's objection*, [#2067], filed January 6, 2006, p. 17.  The IRS reports also that the amount of tax, interest, and penalties due, as determined by the Massachusetts District Court prior to the settlement agreement, was used to compute the percentage to be recovered from the Claimants "in recognition of the fact that the distributees might not be located or might be insolvent.  That is why the settlement agreement provides also for refunds to be re-distributed to claimants if the total amount recovered exceeds the maximum allowed by the settlement agreement . . . ."  *Id.*, p. 17, n. 17.  In short, in settling the IRS's claim, the receiver and the IRS agreed that the receiver would seek recovery of 24.35 percent of the amounts paid to the Claimants in order to address the risk that full recovery from each Claimant may not be possible.  Following the resolution of the tax questions in the District of Massachusetts, the case was returned to this court.

The receiver argues in its motion that federal income taxes are an obligation of the receivership estate that is senior to the claims of the Claimants. The taxes that

were assessed after distribution to the Claimants should have received absolute

priority, and should have been paid before the general, unsecured claims of the

Claimants.  31 U.S.C. § 3713.  In addition, the administrative expenses of the

receivership have priority over the claims of the Claimants.  On this basis, the receiver

seeks to recover 24.35 percent of the amounts paid to the Claimants, and asks this

court to order the Claimants to pay this amount to the receiver.  The Magistrate Judge

recommends that such an order be entered by the court.  Some additional terms

proposed by the receiver are discussed below.

Objections to the recommendation have been filed by Claimants, Michael Payne

[#2048] and Edward Pacelli [#2090].  Both the receiver and the IRS have filed

responses to the objections.  Both the receiver and the IRS argue that it is necessary

and proper for the court to order the Claimants to return money to the receiver in order

to pay the IRS's tax claim and a portion of the receivership's administrative expenses.

### III.  ANALYSIS

The Tax Orders and the Tax Settlement Order entered by the Massachusetts

District Court are inconsistent with the Distribution Orders entered by the predecessor

of this court because  a portion of the money paid to the Claimants under this court's

Distribution Orders should have been paid to the IRS as a priority creditor, and to the

administrative creditors of the receivership.  Again, federal income taxes are an

obligation of the receivership that is senior to the receivership's obligations to the

Claimants.  31 U.S.C. § 3713.  Similarly, the receiver's reasonable administrative

expenses are senior to the Claimant's pre-appointment, general unsecured claims.

See, e.g., Clark, *Clark on Receivers*, § 667 (3rd Ed.).  The tax obligation and the

receiver's administrative expenses should have been paid before the general, unsecured claims of the Claimants.

Both the predecessor of this court and the receiver were mistaken about the status of the receiver's tax liability and liability for administrative expenses when the predecessor court ordered full payment to the Claimants.  Had the predecessor court and the receiver known of these liabilities, the predecessor court would not have ordered payment in full to the claimants.  To resolve this situation, the receiver and its professionals have compromised claims in excess of 1.4 million dollars to 370 thousand dollars.  The IRS has compromised a claim of at least 1.6 million dollars, with interest continuing to accrue, to 630 thousand dollars.  Under the circumstances, it is unfair and inequitable for junior, pre-appointment, general, unsecured creditors to have been paid 100 percent of their claims six years ago, while priority creditors, who have agreed to substantial compromises of their priority claims, remain unpaid.  Therefore, I conclude that the Magistrate Judge's recommendation should be approved and adopted.

I summarize in the next section the bases on which two of the Claimants have objected to the relief sought by the receiver.  A review of the objections also serves to outline the bases for my conclusion that the Claimants must be ordered to refund to the receiver a portion of the money they previously were paid by the receiver.

## IV.  OBJECTIONS

Claimant Michael Payne has asserted several objections to the Magistrate Judge's recommendation.  Claimant Edward Pacelli has joined in Payne's objections and has stated two objections not asserted by Payne.  I will group these objections into three groups: A) Procedure; B) Factual basis; and C) Equitable defenses.

A.  Procedure

Citing 28 U.S.C. § 1291, Payne argues that the Distribution Orders are collateral orders that were final and appealable when they were entered, and are not subject to amendment now.  As Payne notes, a collateral order is one that settles rights, makes no reservation as to its effect, and is designed to be operative irrespective of a final decree in the main litigation.  ***Kashiske v. Baker***, 144 F.2d 384, 386 (10th Cir. 1994).  I conclude that this court's Distribution Orders are not final orders under FED. R. CIV. P. 54, or under 28 U.S.C. § 1291.  It is apparent that all involved expected that the Distribution Orders effectively resolved the Claimants' claims against the receivership. That expectation, however, does not make those order final orders under Rule 54. Rather, Rule 54 provides that an order that resolves some, but not all, claims in a civil action "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties."  The Distribution Orders resolved some, but not all, of the claims in this case.  Therefore, they remain subject to revision.

The fact that the court's Distribution Orders remain subject to modification precludes Payne's argument on two other points.  First, Payne claims that the receiver can obtain the refunds the receiver seeks only by filing a new law suit.  Second, Payne argues that the statute of limitations on any restitution claim has expired, and, thus, the receiver's claim for restitution is barred.  If the distribution orders are subject to modification in this case, then no separate lawsuit is required to obtain modification, and a statute of limitations that might be applicable to the assertion of a new claim is not applicable to the relief at issue here.

Payne argues also that he was not given adequate notice of the Magistrate Judge's December 13, 2005, hearing, and that he has not had adequate opportunity to develop and present equitable defenses to the receiver's request.  I agree with the Magistrate Judge that Payne received adequate notice of the receiver's motion and the hearing on the motion.  The motion [#1940] was filed on November 18, 2005.  On November 21, 2005, the Magistrate Judge issued an order [#1942] giving the parties until December 9, 2005, to file responses to the motion.  On November 28, 2005, the Magistrate Judge issued an order [#1951] setting a hearing on the motion for December 13, 2005.  Payne does not argue that he did not receive notice of these filings.  Payne filed a response [#1995] on December 9, 2005, and his counsel appeared at the December 13, 2005, hearing.  I note also that on August 8, 2005, the receiver mailed to the Claimants a notice outlining the receiver's settlement with the IRS and the receiver's plan to seek disgorgement of 24.35 percent of the funds previously paid to each Claimant in an effort to make the payments required under the settlement agreement.  *Payne's objection*, p. 5-6.  This notice outlines precisely the issues addressed by the Magistrate Judge and in this order.  This notice apparently was delivered to Payne's former counsel.  Further, as the IRS notes, Payne has not posited the existence of any facts that might alter the outcome, which facts he has been unable to investigate and prove because he was not given adequate notice.  Having reviewed the record in this case, I conclude that Payne was given adequate notice of the motion and the December 13, 2005, hearing.

Pacelli argues that the receiver improperly is refusing to seek a refund from Michael Mandelman, a party who received two million dollars from the receivership

estate.  As outlined by the IRS in its response to Pacelli's objection, the payment to Mandelman was not based on a pre-appointment, general, unsecured claim held by Mandelman.  Rather, the payment was based on a contract between the receiver and Mandelman as part of the administration of the receivership estate.  Mandelman was essentially an administrative contract creditor, and it is proper to treat him differently than the Claimants.

## B.  Factual Basis

Payne argues that there is no factual basis in the record for the relief sought by the receiver.  Payne says about 17 million dollars was paid to the Claimants, yet the receiver seeks restitution of 24.35 percent of that amount, about four million dollars, to pay a one million dollar liability.

As the IRS notes in response to Payne's objection, much of the 17 million dollars previously distributed by the receiver was disbursed to satisfy higher-priority administrative claims.  As discussed previously, the receiver and the IRS agreed in their settlement agreement that the receiver will seek recovery of 24.35 percent of the amount paid to the Claimants.  Again, the Claimants are those who had pre-appointment, general, unsecured claims.  The receiver indicates that the total amount paid to the Claimants was approximately 6.5 million dollars.  One million is about 23 percent of 6.5 million.  The record indicates that the IRS and that the receiver, in reaching a practical compromise of the IRS's claim, agreed to the 24.35 percent figure on a reasonable basis that is supported by the underlying facts.

Again, I note that in settling the IRS's claim, the receiver and the IRS agreed to the 24.35 percent figure to address the risk that full recovery from each claimant likely

is not possible.  In short, the receiver and the IRS have addressed the possibility that some Claimants may have to pay while others cannot or will not.  Of course, such a result is not perfectly fair but, as a practical matter, such a result likely is unavoidable. It is important to note that the settlement agreement reduces receivership liabilities that total at least three million dollars to a total of one million dollars.  In this context, the parties' agreement to the 24.35 percent figure, in an effort to provide some practical assurance of collection, is reasonable.  Even for claimants who must pay, 24.35 percent is significantly preferable to the percentage they would have to pay to cover three million dollars in priority claims if the settlement agreement did not exist.

### C.  Equitable Defenses

Payne and Pacelli argue that a variety of equitable considerations augur against requiring the Claimants to refund any money to the receiver.  Requiring the Claimants to refund some money to the receivership will upset expectations and will impose a significant burden on the Claimants.  For example, Payne notes also various hardships he will suffer if his reliance on the receiver's payment of 100 percent of Payne's claim is upset.  He says he distributed some of this money in a divorce settlement, and that he has made some failed investments with the money.  These hardships appear legitimate.  However, such hardships do not outweigh the equity of removing the windfall received by the Claimants at the expense of higher priority creditors who have compromised their claims and still have not been paid.  Having considered all of the circumstances, I find that the relevant equitable considerations weigh in favor of requiring the Claimants to refund a portion of the amounts they were paid by the

receivership, even though the expectations of the Claimants will be upset to some degree.

Payne and Pacelli argue also that the receiver improperly retained stock in a company known as IMCOA in the receivership estate. Payne and Pacelli say the receiver held the IMCOA shares as they declined in value, and now is asking the Claimants to suffer the consequences of that failed investment. As outlined by both the receiver and the IRS in their responses to the objections, the receiver's holding of IMCOA stock was not simply a failed investment. Rather, the receiver's retention of that stock played an significant role in the administration of the receivership. Further, when the receiver sought to sell the stock, litigation ensued and the receiver's hands essentially were tied on this issue as the stock declined in value. In short, the record demonstrates that the Claimants are not being required inequitably to shoulder the burden of a failed investment decision of the receiver.

One of the primary equitable considerations cited by Payne is delay. He says the receiver did not notify the Claimants of the tax claim until long after is arose, and that the receiver has not stated any good reason for the delay. The record does not demonstrate unreasonable delay by the receiver. As soon as the receivership's tax liability had been determined, and as soon as the receiver had negotiated an advantageous settlement, the receiver promptly notified the claimants. The tax issue was hard-fought, and once resolved, the receiver acted promptly to notify the Claimants of the effect the tax settlement would have on the Claimants. On the same basis, Payne's laches argument fails also.

Payne argues that it is inequitable to require some Claimants to refund money to the receiver when some Claimants will not be required to refund money. As noted above, it is probable that not all Claimants can be found, and that not all Claimants will have funds to refund to the receiver. The receiver's settlement agreement with the IRS anticipates this problem. It is unfair that some Claimants will have to pay when others do not. As a practical matter, such unfairness likely is unavoidable under the circumstances. Equity does not mandate inaction when action will impose some level of unfairness. Rather, the action taken must be equitable, considering the circumstances. Given the practical considerations, the refund procedure proposed by the receiver is reasonably fair and equitable.

In a similar vein, Payne asserts that the payment incentive program proposed by the receiver is unfair. In the settlement agreement with the IRS, the receiver included an incentive program to encourage prompt payment of refunds by the Claimants. The program provided that Claimants who repaid 20 percent of their claim to the receiver by December 27, 2005, would receive credit for having paid 24.35 percent. In addition, should the receiver require additional restitution, Claimants who paid the receiver 20 percent by December 27, 2005, would be given credit for a 28 percent payment. If the receiver collected more money than was needed, any rebates would be calculated at the actual 20 percent rate paid by such early paying Claimants. *See Recommendation* [#2013], filed December 14, 2005, Attachment (proposed order), ¶ 21. Although the deadlines proposed in the settlement agreement with the IRS have passed, I conclude that such an incentive program is not, given the circumstances, inequitable. Prompt collection from cooperative Claimants will serve the key purposes of achieving payment

to priority creditors as required by law, and of ensuring an equitable distribution of assets among all interested parties.  Given the practical considerations, this part of the refund procedure proposed by the receiver is reasonably fair and equitable.  I will authorize the receiver to extend a payment incentive program with similar terms if, in the receiver's discretion, such a program would help to ensure payment of priority creditors and to effect equitable distribution of receivership assets.

Finally, Payne objects to the receiver's proposal that the receiver be permitted to request the entry of judgment against Claimants who fail to refund the required amount to the receiver by the deadline set by the court.  The receiver requests that any such judgment include post-judgment interest from and after the due date set by the court, as well as all costs of collection up to 35 percent of the face amount of the judgment.  If the receiver demonstrates to the court that a particular Claimant was paid a specific amount in payment of a pre-appointment, general, unsecured claim, and that the claimant has been notified of my order that part of that payment must be refunded to the receiver, and that the Claimant has failed to pay as directed, then the entry of judgment against that Claimant would not necessarily be improper.  However, absent an agreement by a Claimant to pay collection costs, the court will not impose collection costs in such a judgment.

## V.  CONCLUSION & ORDERS

I have considered carefully the recommendation, the objections, and the applicable law.  At issue are two claims against the assets of this receivership which, under law, have priority over the claims of the Claimants.  The key claim, the IRS's tax claim, was asserted after the Claimants were paid 100 percent of the amount they were

owed.  The receiver challenged this claim, but eventually lost.  The receiver then negotiated a substantial reduction of the tax claim and the priority claim for administrative expenses of the receivership.  These priority claims remain unpaid.  Given the undisputed facts reflected in the record in this case, it is clear that the Claimants received a windfall when they received 100 percent payment from the receivership.  As a result of this windfall, the priority claims remain unpaid.  Both the law and equity weigh in favor of recovering the windfall from the Claimants to ensure that the compromised priority claims against the receivership estate are paid.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the Magistrate Judge's **Recommendation that Receiver's Motion for Reconsideration Be Granted** [#2013], filed December 14, 2005, is **APPROVED AND ADOPTED** as an order of this court on the terms outlined in this order;

2.  That the receiver's **Motion To Reconsider Orders, Amend Orders, and Order Restitution With Incorporated Legal Authority** [#1940], filed November 18, 2005, is **GRANTED** on the terms outlined in this order;

3.  That the objections filed by Michael Payne [#2048] and Edward Pacelli [#2090] are **OVERRULED**;

4.   That each claimant of this receivership who holds or held a pre-appointment, general, unsecured claim against the receivership (Claimants) **SHALL REFUND** to the receiver 24.35 percent of the amounts the receiver previously paid to the claimant in payment of the Claimant's pre-appointment, general, unsecured claim against the receivership;

5.  That by August 7, 2006, the receiver **SHALL PROVIDE WRITTEN NOTICE** of this refund requirement to all Claimants (as that term is defined in paragraph 4., above);

6.  That such written notice **SHALL INCLUDE** a statement to each Claimant of the amount the receiver previously paid to the Claimant and the amount the Claimant is required to refund to the receiver under the terms of this order;

7.  That such written notice **SHALL INCLUDE** reasonable and clear instructions describing how payments should be made and delivered to the receiver, and **SHALL SPECIFY** the deadline for such payments;

8.  That by August 7, 2006, the receiver **SHALL FILE** with the court a copy of the written notice provided to the Claimants;

9.  That each Claimant **SHALL REFUND** to the receiver the amount required under the terms of this order **ON OR BEFORE 5:00 p.m. (MDT), September 28, 2006**;

10.  That in its discretion the receiver **IS AUTHORIZED** to extend a prompt payment incentive program to the Claimants on the terms outlined on pages 12 through 13 of this order;

11.  That all actions taken by the receiver under this order also **SHALL BE IN COMPLIANCE** with the requirements of the receiver's settlement agreement with the IRS, as approved by the United States District Court for the District of Massachusetts on September 7, 2005; and

12.  That the extant Distribution Orders are modified to the extent necessary to

facilitate and implement the terms and provisions of this order.

Dated July 24, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**