## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re: Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

---

## RECEIVER'S REPLY BRIEF RE: BREACH OF CONTRACT

---

Sterling Consulting Corporation, as receiver, by and through its attorneys Fairfield and

Woods, P.C., hereby replies to CMA's Opening Brief as follows:

## I.    The Failure To Assign The Obligations Under The Settlement Agreement To The Buyer Of The Trademark Is Material.

### A.    As a factual matter, the breach is material.

CMA was not a party to the Settlement Agreement when it was negotiated and executed.

The receiver can state without fear of contradiction that the requirement that the obligation to

indemnify Sterling "run with the Trademark" was a complete deal-breaker for Sterling. Not only

was this requirement a deal-breaker, the Settlement Agreement and Indemnification Agreement

have numerous provisions that enforce the requirement.[1] CMA's claim that breach of this

provision is not material is no more than wishful thinking on its part.

Even at this early stage in dealing with the two IMCOA entities, Mr. Block was

---

[1] For example, ¶ 5.10 of the Settlement Agreement and ¶ 6.12 of the Indemnification Agreement have substantially the same language: "Notwithstanding anything herein to the contrary, Indian shall not execute an assignment that defeats the intent of this Indemnification [Agreement]." Similarly, the definitions in ¶ 1.1 .n. of the Indemnification Agreement and ¶ 1.1 .g. of the Settlement Agreement have substantially the same language: "'Indian' shall mean IMC, Licensing, and Holdings, collectively, jointly, and severally, and shall include the successors to and assignees of Indian's rights in the Subject Matter," where the "Subject Matter is defined as the Trademark and other matters.

cognizant of the "sleight of hand" being utilized regarding the Trademark.  For example, the

receiver assigned the Trademark to IMCOA Licensing America, whereas licensing activities

were performed out of IMCOA Holdings America.  This intentionally confusing nomenclature

was just the beginning of the Receiver's concern that the obligations would become separated

from the Trademark.[2]  The Settlement Agreement is founded on the premise that Sterling

obedience was directed to the Trademark.  Severing the Settlement Agreement from the

Trademark is material failure, and means that Mr. Block is still bound by obligations as to what

he can and cannot do, but the protections afforded to him are meaningless.

### B.    As a legal matter, CMA's repudiation is a material breach.

It is black-letter law that a repudiation of a contract is a material breach as a matter of

law.  *E.g. Russell v. Barnes Foundation*, 52 F.Supp. 827, 830 (E.D.Pa. 1943) ("A total breach

may consist of a partial failure of performance that is material or of a repudiation, anticipatory or

otherwise . . . ."); *O'Connor v. Sleasman*, 14 A.D.3d 986, 788 N.Y.S.2d 518 (2005); *Kammert*

*Brothers Enterprises, Inc. v. Tanque Verde Plaza Company*, 102 Ariz. 301, 428 P.2d 678 (1967).

This case amply demonstrates why a repudiation is necessarily a material breach, and is

viewed most easily by looking forward, not back.  The prohibition on Mr. Block working against

the Trademark remains,[3] yet there is no one to reimburse him for costs and fees if he is dragged

---

[2] Little did Mr. Block know how extreme the sleight of hand would become.  For example, when
CMA initially tried to sell the assets of the Indian entities, it advertised that it was selling the
intellectual property assets of Indian Motorcycle Corporation (a subsidiary of Indian Motorcycle
Company that had no direct ties to the Trademark).  Any reasonable person would assume that
Corporation, in fact, held the Trademark, but this was not correct.  After a prospective bidder
pointed this out, CMA then resorted to the fabled "bundling agreement," a process completely
contrary to law.  Finally, CMA took an assignment for the benefit of creditors from Licensing,
but if Audax reserved any portion of the Trademark for itself, then even that will not be valid.
[3] Contrary to the arguments of CMA and as discussed more full below, the entire contract did not

into litigation. CMA will not—it is currently trying to get the Cash Fund, which it will then distribute to other claimants at cents on the dollar, then it will close down its estate. The new buyer will not, as there is currently no one attempting to enforce the Settlement Agreement and the Indemnification Agreement against Stellican.[4] The repudiation means there is no "quo" to go with the "quid" Mr. Block is continuing to pay.

In fact, the general law of contracts holds that an anticipatory repudiation of a contract is a "total breach," not just a material breach. Restatement (Second) of Contracts § 373 (1979). The Restatement explains that "repudiation" is a "statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach." *Id.* § 250. And "total breach" is a breach that "so substantially impairs the value of the contract to the injured party at the time of the breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance." *Id.* § 243.

This is why it was so important to Mr. Block that the obligation to indemnify under the Settlement Agreement and the Indemnification Agreement not be separated from the Trademark. He is now left with the burdens of a contract, but not the benefits.

## II.   CMA's Other Arguments are Based on a Misreading of the Contract.

CMA has repudiated and materially breached the Contracts by transferring the

expire January 1, 2005; many obligations continue, and there is no termination date on the prohibition of Mr. Block working against the Trademark.

[4] Anyone who took the assignment of the Trademark from CMA with notice of the provisions of the Settlement Agreement and the Indemnification Agreement were aware that the Trademark could not be assigned without the Settlement Agreement and the Indemnification Agreement. Documents produced in discovery by Audax and CMA indicate that Stellican was aware of these provisions. If CMA ever completes its production, the receiver can determine whether Stellican should be brought into the action against CMA and Audax.

Trademark without transferring the obligations under the Contracts. These actions took place before December 31, 2005. The receiver (by assignment from Sterling) is seeking restitution[5] and filed a claim for the same prior to December 31, 2005. Sterling will be seeking fees in the 05-cv-1573 action. Because CMA has refused to disclose how much additional profit it made by its wrongful conduct and because the amount of fees caused by the breach is not yet known, however, the claim was and remains unliquidated. If CMA would pay that claim in full (and not at four to six cents on the dollar), then it would be entitled to half the Cash Fund after provision is made for Sterling's fees in the o5-cv-1573 action. Until it does so, however, that Cash Fund should not be paid to it.

Contrary to CMA's claim in paragraph 12, the Indemnification Agreement has not expired, nor has Mr. Block's obligation not to work adverse to the Trademark. All that happened on January 1, 2006 was that the Cash Fund was to be disbursed if all claims to it had been paid, but they have not. The Indemnification Agreement clearly provides:

> 2.1. Term and Survival of Obligations. This Indemnification Agreement shall survive the termination of the Receivership Action or the discharge of Sterling Consulting Corporation from its duties as receiver. The obligations of Indian under this Indemnification Agreement shall not terminate for Claims: (a) which arose out of an action brought by Indian against any party; (b) which arose out of an attempt by any party to determine that the Trademark is in the public domain or is otherwise invalid; or (c) which arose out of an action brought by a party to one of the Ancillary Actions. (Emphasis added.)

Every one of the three conditions is likely to occur, especially given the facts that: (a) trademarks generally fare very poorly in liquidations because goodwill is required for trademarks to survive and, by definition, no good will survives a liquidation; (b) the

---

[5] The receiver seeks damages as an alternative remedy, but that is strictly in the alternative. Restitution is the primary claim.

quality of the Trademark assigned by the receiver was contingent upon Indian taking certain actions following the assignment, and those actions were not taken; (c) the assignment to Stellican might be invalid if Audax maintained any interest whatsoever in the Trademark, whether direct or indirect; and (d) there has been no Indian-brand motorcycle in commerce for many years.

Sterling's and the receiver's repeated demands on the escrowee for the disputed portion of the Cash Fund have been made to prevent the money being paid to CMA. CMA has expressly denied any obligation to honor Magistrate Judge Schlatter's Order not to spend the money in the Assignment Estates, and this money may be all that is left. Unless and until CMA represents to the Court that it is not running through the money Magistrate Judge Schlatter directed it not to spend, whether by payments to claimants or payments to CMA's overly aggressive litigators,[6] the receiver will insist that the disputed portion not be paid over, and will request this Court to enforce that demand.

Respectfully submitted this 31st day of July, 2006.

---

[6] In this regard, it should be noted that, since the first assignment for the benefit of creditors on September 26, 2003, no one from the receiver's side of the litigation has ever spoken to a principal from CMA. All communications have been through layers of attorneys who insist they are not principals of CMA. As a professional in the business of insolvent estates, the receiver is appalled at the staggering amounts of legal expense CMA is permitting over what CMA insists is a $25,000 issue. There is no chance that CMA has not expended considerably more than $25,000 in the effort, thereby violating one of the primary tenets of fiduciaries. There is an explanation for this, but until CMA is required to produce all of the documents requested by the receiver, there will be no way to determine what it is. In the meanwhile, the receiver reiterates its caution that all counsel for CMA may be called upon to return fees paid to them after the date of Magistrate Judge Schlatter's Order.

By: *s/ John M. Tanner*
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO 80203-4524
Phone: (303) 830-2400
Fax: (303) 830-1033
Email: jtanner@fwlaw.com

Attorney for Plaintiff Sterling Consulting
Corporation, as receiver

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO 80202
**Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
  Woods and Levy
633 17th St., Ste. 2200
Denver, CO 80202
**Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
  & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO 80202-1273
**Attorney for Carl D. Lucci/Albert R. Lucci**
jcage@cagewilliams.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO 80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, DC 20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO 80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO 80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO 80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA  91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI 53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA  92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL  34982
Robert W. Hallock, Esq.
202 S. Merrill St.
Park Ridge, IL  60068-4223

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C.  20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA  01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C.  20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA  70506
Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ  08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM  87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT  06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL  60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN  55311

Steve Halprin
1316 Penningtow Place
Concord, N.C.  28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa,IL  61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA  91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM  87501

John Inelli
17 Old Farmstead Rd.
Chester, NJ  07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO  80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO  80501

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO  80246
**Receiver**
rblock@xpn.com

**Courtesy Copies to:**
Julie Trent
jt@bsblawyers.com

Eugene Sprague
esprague@bw-legal.com

Michael Chodos
michael@chodos.com

Robert Pitts
rpitts@lawrwp.com

By:  *s/ John M. Tanner*
          Fairfield and Woods, P.C.
          1700 Lincoln St., #2400
          Denver, CO  80203
          Phone:  (303) 830-2400
          Fax:  (303) 830-1033
          Email:  jtanner@fwlaw.com