**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 95-cv-0777-REB-CBS

In re: RECEIVERSHIP ESTATE OF INDIAN MOTORCYCLE MANUFACTURING, INC.

**ASSIGNEE'S RESPONSE BRIEF RE: CASH FUND DISPUTE**

COMES NOW Credit Managers Association of California, as Assignee, pursuant to ABCs by the Indian Entities, and submits this Response Brief regarding the Cash Fund Dispute.[1] In response to the Receiver's Opening Brief ("Receiver's Brief"), the Assignee states as follows:

1. The Receiver's Brief speaks volumes by its silence. Specifically, the Receiver's Brief fails, conspicuously, to demonstrate a single Claim under the IA or a single theory of damages applicable to the Cash Fund Dispute. The Assignee has been held hostage in this and other litigation for almost a year based on the implied threat of unpaid claims and "seven figure damage claims" that could have, should have, and would have (if they existed), been set forth in the Receiver's Brief. But they were not.

2. The facts in this matter are simple: (i) there is a SA that has been fully performed by all parties thereto, *see* Assignee's Brief, ¶2; (ii) there is an IA that provided for the indemnification of certain claims, *id.*, ¶3; (iii) the only previously unperformed acts left in the relationship between the Receiver/Sterling and the Indian Entities were set forth in the IA and related to notification of the existence of claims and indemnification of claims, respectively, *id.*, ¶¶2 and 3; (iv) the IA terminated on December 31, 2005, with no unpaid indemnification Claims, *id.*, ¶3; and (v) a Cash Fund was established to ensure the payment of Claim Losses in the event

---

[1] All undefined, capitalized terms are as in the Assignee's Opening Brief or the Agreements.

00047423                                                     1

the Indian Entities failed to pay such Claim Losses and which, upon termination of the IA, was to be paid out to the parties. *Id.*, ¶¶ 4 and 5.

3. Thus, in order to support its demand to the entire Cash Fund, the Receiver <u>should</u> have demonstrated that: (i) it complied with the IA by notifying Indian or the Assignee as to the existence of a Claim Loss; (ii) such Claim Loss was "X" amount based on attached documentation; and, *critically* (iii) such Claim Loss was <u>not paid</u> by Indian or the Assignee. The Receiver failed to show ANY of the foregoing. Instead, the Receiver's Brief focuses on unsupported and inapposite legal theories on damages, <u>without ever establishing a claim</u>.

4. The Receiver's complete failure to establish a claim relevant to the distribution of the Cash Fund is not surprising. In its Response to this Court's Order to Show Cause [Docket No. 2328] ("OSC Response"), the Receiver spells out exactly what the real issue is – and it has nothing to do with the Cash Fund or the IA. Rather, the Receiver seeks to have *Sterling* released from its obligations under §§ 3.4.a and 3.4.b of the **SA** not to attack or help others attack the Trademarks the Receiver sold. *See* OSC Response, p. 6. However, such intent is not only irrelevant to the Cash Fund Dispute, it is also irrelevant to any analysis of breach or damages herein because the SA was *fully performed* six years ago. Specifically, once the Receiver and Sterling received $350,000 and Stock Options as provided for in the SA, the consideration for "forever refrain[ing]" from attacking the Indian Trademark (the agreement Sterling now seeks to avoid) was complete and no further performance was required by any party thereto.[2]

---

[2] A scenario whereby Mr. Block and/or Sterling profit based on their alleged "knowledge" of the "weakness in the Trademark" raises substantial and troubling questions (e.g., Whose "asset" is this knowledge about the supposed "weakness" in the Trademark? How did Mr. Block and Sterling obtain it? Wasn't it solely in Sterling's capacity <u>as Receiver</u> that such knowledge was obtained? Isn't such knowledge therefore a Receivership Estate asset, if anyone owns it at all?). It should be a foregone conclusion that Mr. Block cannot use Estate assets to enrich himself. Issues of standing and gross and ongoing conflict of interest arise as well. This issue is not solved by the "Notice of Terms of Assignment" [Docket No. 2323] as the purported "Assignment" assumes, without basis, that the claim
*Footnote continued on next page*

5. Sterling's attempt to eliminate a covenant it agreed to – and received substantial consideration for – six years ago is the genesis of the Receiver's contrived machinations to create a material breach of the **SA** that would result in relieving Sterling of its contractual obligation to refrain from attacking the Trademark. Each of those machinations is refuted below.[3]

6. In an attempt to create a breach, the Receiver first alleges that the IA obligations "run with the Trademark," presumably pursuant to § 5.10 of the SA and § 6.12 of the IA. *See* Receiver's Brief at ¶ 8. While the Receiver may wish this was the case, it is not the reality. Although the "run with the Trademarks" concept <u>could</u> have been accomplished by the granting of a simple lien on the Trademarks themselves, <u>no such lien was granted</u> and thus, there is no basis for the Receiver's concept that the IA obligations "run with the Trademarks."

7. Next, the Receiver alleges that the IA was "repudiated" by Indian or the Assignee, excusing any performance of Sterling and the Receiver. However, the authorities cited by the Receiver provide that a repudiation must be either a clear and unequivocal statement, *see* Restatement 2d Contract, § 250(a), or a "voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." *Id.* at § 250(b). After citing the law, the Receiver concludes, without legal or factual analysis, that the Assignee "repudiated" the Agreements. The Receiver fails to allege any repudiation "statement" under § 250(a), instead pointing to the "separation of the IA obligation from the Trademark" as the "voluntary

---

was Mr. Block/Sterling's to assign in the first place. This Court should closely evaluate whether Mr. Block should be free to profit personally from information obtained at Estate expense in his capacity as Receiver regardless of the prohibitions of the SA. This analysis also impacts the Receiver's (and Mr. Block's) fiduciary duty to the Estate. Indeed, Sterling's presumed future attacks on the very asset the Receiver/Sterling sold – and made specific representations in the SA and IA regarding – may subject the Receivership Estate to liability.

[3] Again, this Court need not address these purported breach issues to resolve the Cash Fund Dispute, which is limited by the specific terms of the IA. Nonetheless, the Assignee will address some of the Receiver's myriad contentions. The Receiver raises other irrelevant issues not addressed here due to space constraints. The Assignee reserves all rights relating thereto.

affirmative act" that rendered the Assignee "unable to perform" under the IA.  However, this ignores the fact that the Assignee <u>was willing and able</u> to perform all obligations under the IA.[4]  Indeed, in order to ensure such performance, the Assignee appropriately reserved for such claims in calculating its interim distributions to creditors of the ABCs, based on the known and estimated indemnity claims under the IA.  *See* Affidavit of M. Joncich, attached as Exhibit B.  Thus, there was no "repudiation" of the IA (or the SA) based on an inability to perform.

       8.      Continuing its focus on discussing damages before proving a claim, the Receiver then sets forth three bases for its theory of "restitution damages," which are inapplicable in this matter (restitution is available only when there has been a "total breach" regarding a "primary contractual obligation."  *See* Restatement 2d of Contracts, § 384 (2006)).  The first basis, breach of fiduciary duty, is not established.[5]  The Receiver alleges a fiduciary duty was owed to Sterling based on its status as a creditor of Indian.  However, the Receiver fails to establish that Sterling was, in fact, a creditor of Indian.  Indeed, the lack of any indemnity claim asserted herein establishes that Sterling was <u>not</u> a creditor of Indian.  Further, the IA was the only basis left upon which Sterling could form a creditor relationship, as all other claims were released.  *See* SA at § 2.5.d.  If a fiduciary duty existed, it existed only to the extent of Sterling's status as a *contingent* creditor under the IA.  Any such duty was satisfied by the Assignee's reservation of funds adequate to address all anticipated contingent (i.e., indemnity) claims.  *See* ¶ 7, *supra*.

---

[4] The Assignee's repeated attempts to determine the existence of a potential indemnification obligation were rebuffed by Sterling/the Receiver.  *See* Correspondence between R. Block and R. Pitts dated April 27 through May 10, 2005, attached collectively as Exhibit A hereto.  As evidenced by the series of correspondence, Sterling failed to comply with the simple notification requirements of the IA.  The Assignee's position is summed up on page 6 of the second May 5, 2005 letter from R. Pitts to R. Block.

[5] The Receiver alludes to "breach" theories set forth in the 05-1573 complaint, *but no fiduciary duty is even alleged therein*.  The Receiver also states that, contemporaneously with the Receiver's Brief, a Motion for Summary Judgment will be filed resolving all the "breach" issues.  No such Motion was filed.

9.     Second, the Receiver appears to argue that it can simply "elect" restitution. Even if such election were applicable in this case, which it is not, there are no restitution damages established in any pleading in this matter for the Receiver to "elect." Nor does this "election" address the fact that, to order restitution, the Court must restore all parties to the *status quo ante*. *Forest View Acres Water District v. Colorado State Bd. of Land Commissioners*, 968 P.2d 168, 173 (Colo. App. 1998). Can the Receivership Estate repay the $350,000 (and other consideration) it received?

10.    Third, the Receiver appears to argue that it is entitled to restitution based on some sort of "property right" related to its assertion that the IA obligations "run with the Trademarks." The Assignee is lost as to what theory the Receiver is trying to advance. The legal authority cited by the Receiver in support of this theory relate to cases where a party materially breaches an agreement to sell real property (income producing or increasing in value) and the increased value/income may be used to determine restitution damages. That is not the case herein, thus the Receiver's theory is unfounded.

11.    The Receiver's attempt to tie all of the foregoing to the Cash Fund Dispute by claiming that its restitution claim should be "offset" against the Cash Fund is unfounded because the Receiver has failed to establish a restitution claim, let alone a right of offset. Distribution of the Cash Fund should be determined pursuant to the clear language of the IA based on the non-existence of any unpaid Claim Losses.

WHEREFORE, the Assignee requests that this Court order that one-half of the Cash Fund (including accrued interest) be paid immediately by the Fund Agent to the Assignee.

00047423                                                  5

Respectfully submitted this 31st day of July, 2006.

        BIEGING SHAPIRO & BURRUS LLP

        By:  s/ Julie Trent
           Julie Trent, No. 17086
           4582 S. Ulster Street Pkwy., Suite 1650
           Denver, CO 80237
           Office: (720) 488-0220
           Fax: (720) 488-7711
           E-mail: jtrent@bsblawyers.com

           Robert Pitts
           LAW OFFICE OF ROBERT W. PITTS
           660 Newport Center Drive, Suite 400
           Newport Beach, California 92660
           T: 949-720-4125
           F: 949-720-4111
           E: rpitts@lawrwp.com
           *Attorneys for CMA as Assignee*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31st 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties who have entered a CM/ECF appearance in this matter.

And by facsimile number to the following:

| | |
|---|---|
| Michael E. Chodos, Esq.<br>Michael E. Chodos, Attorney at Law<br>56 Malaga Cove Plaza<br>Palos Verdes Estates, CA 90274 | Fax:  310.791.1958 |
| Tom Quinn, Esq.<br>1600 Broadway, Suite 1675<br>Denver, CO 80202 | Fax:  303.672.8281 |

          s/ Julie Trent
         **Julie Trent**, No. 17086
         Bieging Shapiro & Burrus, LLP
         4582 South Ulster Street Parkway, Suite 1650
         Denver, Colorado 80237
         Telephone: (720) 488-0220
         Fax: (720) 488-7711
         E-mail: jtrent@bsblawyers.com