

4101 East Louisiana Avenue
Suite 300
Denver, Colorado  80246
Office:  303-388-1300
Fax:  303-781-4311
Email:  rblock@xpn.com

STERLING CONSULTING CORPORATION

April 27, 2005

To the Individuals and Entities on the Attached Distribution List

Re:     Settlement Agreement and Indemnification Agreement between Indian
         Motorcycle Company IMCOA Licensing America, Inc., and IMCOA Holdings
         America, Inc., and the assignees thereof (collectively, including the assignees,
         "Indian") and Sterling Consulting Corporation dated August 31, 2000

Dear Ms. Lipscomb and Gentlemen:

On April 16, 2005, a Request was made of Sterling via email.[1]  The Request was for certain documents that are generally available on the Internet web site of the receivership.  Due to the current status of the receivership, I assumed the Request was from a claimant.  After the first Request, I received another Request by email from the same lawyer, but, unlike the first Request, the context of the Request in the second email indicated that the lawyer making the request did not represent a claimant.[2]

After locating the lawyer on Martindale, I called him and inquired into the matter underlying his Request.  In fact, the Request was made by a law firm representing the plaintiff in what I was told was a products liability lawsuit against Indian.  The lawyer I called advised me that his lawsuit was just one of many similar claims, and that some of the cases included injuries ranging from minor to major, and at least one included a fatality.  I was unable to obtain any information as to the identity of the plaintiff.  I was able to determine that this lawyer has concluded that the information I possess is worth pursuing.  I doubt he knows why, but he is correct and seems unlikely to be deterred.

---

[1] A "Request" is defined in the Indemnification Agreement under paragraph 1.1.z. as follows:  "Request" shall mean any request made of the Receiver or Sterling by a third party or by Indian that is not a Demand or a Claim.

[2] Sterling has prepared this letter in its individual corporate capacity and not as receiver.  The receiver does not participate in this letter and may not participate in the matter in the future.



**EXHIBIT**

_A_

Distribution
April 27, 2005
Page 2.

During the telephone conversation with this lawyer, it was made clear to me that the Request was almost certain to be followed by a Demand.[3] Furthermore, the lawyer indicated that his Demand was likely to be followed by Requests and Demands from other lawyers representing other claimants and plaintiffs who have died or sustained injuries relating to Indian Motorcycles. Although I was not aware of any specific products liability lawsuits actually filed against Indian prior to now, I was aware that some claims had been made. More importantly, during the sale process under the assignment for the benefit of creditors, I had occasion to analyze the relationship between products liability claims and the Indian trademark.

Of course, Sterling has advised Indian under the Settlement Agreement that the Indemnification Agreement and the Settlement Agreement have both been intentionally breached by Indian. Please see my letter to Mr. Tanner with a copy to Mr. Pitts dated July 12, 2004, which was followed by an exchange of emails and telephone calls and a letter to Mr. Pitts dated September 1, 2004. Copies of the two letters are attached to this letter for your convenience. Mr. Pitts has consistently insisted that neither Indian, CMA, nor any other party to the Settlement Agreement and the Indemnification Agreement has breached either document.

Mr. Pitts' mystifying position leaves Sterling and Indian in a peculiar position: If Indian believes that the Settlement Agreement and the Indemnification Agreement have been breached by Indian, then there is no issue and the rest of this letter is unnecessary. We just need to know that fact. If, on the other hand, Indian and its assignees believe that the Settlement Agreement and Indemnification Agreement have not been breached, then it is incumbent upon them to so advise Sterling.

Please understand that the issue of breach has not been resolved just because someone at Indian or its assignees writes to say the Settlement Agreement and the Indemnification Agreement have not been breached by Indian. That notification must include detailed assurances that the Settlement Agreement and the Indemnification Agreement will be honored. In addition, Indian will be required to demonstrate a present and continuing ability to honor the Settlement Agreement and the Indemnification Agreement. Moreover, Indian must agree to amplify the language of the Settlement Agreement and the Indemnification Agreement so that

---

[3] A "Demand" is defined in the Indemnification Agreement under paragraph 1.1.e. as follows: "Demand" shall mean any demand, notice, subpoena, summons, or other process made against an Indemnified Party that is required by operation of law and that could result in a Loss, but shall not include a Request.

Distribution
April 27, 2005
Page 3.

the preposterous misinterpretations of those documents from the past will not be repeated in the future.

I have asked Mr. Quinn (the lawyer selected for Sterling by Indian) to prepare an estimate of his time and set a retainer. Sterling will be doing the same thing. This will be difficult because Indian has done nothing to advise Sterling of the extent of Demands that Sterling may expect. Incidentally, resort to the surety in paragraph 5.12 of the Indemnification Agreement will not be tolerated absent another default by Indian. Resort to paragraph 5.13 of the Indemnification Agreement will be made only if there is a default by Indian.

As I see it, one of the reasons Indian has to honor the Settlement Agreement and the Indemnification Agreement (aside from their legal responsibility to do so) is the fact that a material breach of the Settlement Agreement and the Indemnification Agreement will excuse Sterling from certain of the provisions thereof. I would strongly urge Indian to read the Settlement Agreement and the Indemnification Agreement carefully and make sure a breach is what it wants. I would also strongly urge Indian to put its product liability carrier on notice. The insurance carrier might have some preferences in this regard.

For reasons that should be obvious now (and should have been obvious all along), Sterling has less concern for the ultimate decision that Indian makes than that a decision be made definitively, promptly, and communicated to me in writing. Please write your response; do not call with Indian's answer. Failure to respond in writing prior to the close of business May 6, 2005 will be considered an admission of a breach.

You will note that I have not included a copy of the Indemnification Agreement with this letter because it has been sealed by Order of the Colorado District Court. Stellican should have an interest in this matter (if not a stake), and we do not know what right Stellican has, if any, to see the Indemnification Agreement.

Very truly yours,

Richard A. Block

enclosures

Distribution
April 27, 2005
Page 4.


<u>Distribution List (first class mail only)</u>:


Indian Motorcycle Company
Attention: Chief Financial Officer
200 East 10th Street
Gilroy, California 95020


<u>Distribution List (email and first class mail)</u>:

J. Eric Elliff, Esquire
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, Colorado 80202-5638
jelliff@mofo.com

Sara Lipscomb, Esquire
General Counsel
Audax Group
101 Huntington Avenue
Boston, Massachusetts 02199
United States of America
slipscomb@audaxgroup.com

Robert W. Pitts, Esquire
Winthrop Couchot, Professional
Corporation
660 Newport Center Drive
Fourth Floor
Newport Beach, California 92660
rpitts@winthropcouchot.com

Mr. David P. Wright
Partner
Stellican of the Americas
8161 15th Street East
Sarasota, FL 34243
dwright@stellican.com


<u>Distribution List (email only)</u>:

Mr. Frank O'Connell (via email: fjobarn@aol.com)
Mr. Chuck Klaus (via email: cklaus@creditservices.org)
John M. Tanner, Esquire (via email: jtanner@fwlaw.com)
Thomas F. Quinn, Esquire (via email: tquinn@tfqlaw.com)

# LAW OFFICE OF
# ROBERT W. PITTS

*660 Newport Center Drive, Suite 400*
*Newport Beach, California 92660*
*T: 949-720-4125*
*F: 949-720-4111*
*E: rpitts@lawrwp.com*

April 29, 2005

**VIA EMAIL: richardblock@xpn.com**
Richard A. Block
Sterling Consulting Corporation
4101 East Louisiana Avenue, Suite 300
Denver, CO 80246

RE:   **Indian Motorcycle**

Dear Rick:

I am in receipt of your letter dated April 27, 2005 regarding the various agreements between the various Indian entities and Sterling Consulting Corporation ("Sterling").

As usual, I have great difficulty in discerning exactly what it is you are requesting, but it appears that you are attempting to put Indian on notice that a Demand may be made upon Sterling, in its individual corporate capacity and not as receiver, at some point in the future.  Further, it appears that this Demand (or prospective Demand) relates to a product liability claim against Indian.

At first blush, it would appear that your actions in "locating" the lawyer that made the Request, calling that lawyer, and then inquiring into the matter underlying the Request is in breach of both the spirit and the letter of Section 3.1.f and/or Section 4.3 of the Indemnification Agreement.  Indian reserves all of its rights and remedies with respect thereto.  As far as the "information" that you "possess", in any capacity other than as receiver, it is not only irrelevant to any aspect of Indian, but particularly irrelevant to any Request or Demand relating to a product liability claim.  The fact that some product liability plaintiff's attorney wants to pursue the information you "possess" speaks undoubtedly to some combination of: (i) his confusion/ignorance of your involvement in Indian Motorcycle Corporation; and (ii) your usual cryptic non-sequiturs that have somehow piqued his interest.

Llr to R. Block 4.29.05 re Indemnity Demand.doc

Richard A. Block
April 29, 2005
Page 2

Furthermore, you have indicated that your letter is written by Sterling, in its individual corporate capacity and not as receiver. Thus, it is fair to assume that whatever demand is set forth in your letter is made on behalf of Sterling, not on behalf of the receiver. Further, it is also fair to assume that your letter asserts an anticipatory "Demand Loss" on behalf of Sterling (i.e., a "Loss" related to responding to the "Demand," if and when such Demand is ever received), pursuant to Article 3 of the Indemnification Agreement. As you know, any obligation of Indian to indemnify Sterling for a Demand Loss is limited to "Sterling's Fees" and "Sterling's Expenses", as set forth in Section 1.1.f of the Indemnification Agreement. Any such indemnification obligation specifically excludes Sterling's Legal Fees, so I'm not certain why you referenced an estimate for legal fees in your letter. Any such legal fee expense incurred by Sterling would be the sole responsibility of Sterling.[1]

To the extent your letter suggests anything beyond a Demand Loss, Section 5.10 of the Indemnification Agreement limits any "obligations of Indian to Indemnify Sterling from any and all Claim Losses incurred or suffered by Sterling" to indemnification relating to "Claims that arose or arise after the termination of the Receivership." Please advise me of the date of the termination of the Receivership. Obviously, to the extent the Receivership has not terminated, Indian has no obligation to indemnify Sterling for any Claim Loss.

Nonetheless, the one thing I do agree with in your letter is that the appropriate Indian product liability carrier be put on notice of whatever claim this attorney is asserting. To that end, pursuant to Section 3.1.a of the Indemnification Agreement, please immediately provide me with the name and contact information of the attorney who made the Request/Demand and I will obtain the appropriate information from him to put the insurance carrier on notice. Your failure to so provide me with such information by May 3, 2005 shall be deemed a breach of your obligations under the Indemnification Agreement and shall excuse any further performance by Indian.

Should you have any questions regarding the foregoing or if you feel it would be more productive to speak directly, please feel free to call me.

Very truly yours,

Robert W. Pitts

cc:   (All via email)
      Michael J. Joncich
      John M. Tanner, Esq.
      Thomas F. Quinn, Esq.

---

[1] Based upon the lack of any information regarding the potential Demand, Indian is unable to make any determination with respect to the provisions of Section 3.8 of the Indemnification Agreement.



STERLING CONSULTING CORPORATION

4101 East Louisiana Avenue
Suite 300
Denver, Colorado  80246
Office:  303-388-1300
Fax:  303-781-4311
Email:  rblock@xpn.com

May 4, 2005

To the Individuals and Entities on the Attached Distribution List

Re:   Settlement Agreement and Indemnification Agreement (the "Agreements") between Indian Motorcycle Company IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc., and the assignees thereof (collectively, including the assignees, "Indian") and Sterling Consulting Corporation dated August 31, 2000

Dear Ms. Lipscomb and Gentlemen:

I have received a letter from Mr. Pitts dated April 29, 2005 responding to my letter dated April 27, 2005, but from no one else.  I cannot tell from Mr. Pitts' letter whether he intended to respond for all of the recipients of my letter, just CMA, or some combination of the recipients of my letter.  (For the reasons discussed below, it may not be relevant.)  Mr. Pitts has always been polite to me and I do not wish my comments to be considered personal in nature, but his cat-and-mouse approach to the Settlement Agreement and the Indemnification Agreement is irksome, in part because we anticipated the likelihood of the current circumstances (or some variant) and structured the Agreements to avoid the present difficulties.

A key element of the Agreements (as expressed by Indian) was the intention that Indian, the receiver, and Sterling would have congruent interests, such that they would cooperate when an attack is made, directly or indirectly, on the Trademark.  Although the Agreements speak for themselves and cannot be easily paraphrased, the simple fact is that Indian wanted the Agreements more than the receiver or Sterling.  That logical alignment of parties ceased to exist when Audax took control of Indian, and nothing about the relationship has made sense since.

Mr. Pitts' assertion that Sterling breached the Settlement Agreement or the Indemnification Agreement by tracking down the attorney initiating the inquiry referenced in my April 27, 2005 letter is nonsense.  Had Sterling not identified the requesting party, he would have been indistinguishable from the multitude of other parties requesting information from the receiver.  Sterling has not cooperated with

Distribution
May 4, 2005
Page 2.

any party identified as adverse to Indian or the Trademark, at least under the conditions as they existed at that time. Other than that, Mr. Pitts' remarks do not merit a further response except to say that Sterling has received another Request[1] from the same lawyer and has not responded. Sterling does not intend to respond until at least the close of business, May 6, 2005, to further provide the Addressees of this letter an opportunity to provide the assurances required by my April 27, 2005 letter.

Mr. Pitts' assertion that Sterling is not entitled to fees and costs is also nonsense, and, absent a clear and unequivocal retraction of this position, Sterling will consider his letter to be a repudiation of the duty to pay fees and costs on behalf of all parties represented by Mr. Pitts.

Mr. Pitts professes not to understand Sterling's position. We think Sterling's position is clear, but will make one further effort to clarify matters. First, Sterling submits that Indian has defaulted in its obligations to Sterling under the Settlement Agreement and the Indemnification Agreement. These defaults excuse Sterling[2] from its future obligations under those Agreements. Second, Sterling believes that the benefit to the parties that result from Sterling continuing to be bound by the Agreements should be apparent to the parties, but if the parties do not share Sterling's view, so be it. Third, Sterling wishes to clarify the parties' positions, so that each may govern its own actions accordingly.

In light of the defaults under the Agreements, as outlined in my letters of July 12, 2004, September 1, 2004, April 27, 2005, and this letter, Sterling will consider itself excused from future performance under the Agreements, absent a timely, specific, and substantive response, meeting all of the following criteria:

    a.    Each Addressee must respond, in writing, stating that the responding Addressee has not breached the Settlement Agreement or the Indemnification Agreement, stating the basis for this contention,

---

[1] The terms "Request," "Demand," and "Claim" are used as defined in the Agreements. If any addressee has a question as to the meaning of those terms, please consult your own attorneys.

[2] It should be evident to the Addressees that a breach by Indian or its assignees of the Agreements is a breach as to Sterling and the receiver, but the receiver is preoccupied with other matters, and has no intention of being involved in any of this unless some Request, Demand, or Claim is made of or against the receiver directly, and that has not yet happened.

Distribution
May 4, 2005
Page 3.

addressing each of the issues raised in my July 12, 2004, September 1, 2004, April 27, 2005, correspondence and this letter as specifically as practicable. Sterling will not consider general denials as responsive. Likewise, Sterling will not consider statement to the effect that Sterling does not need assurance of the parties' performance to be responsive.

b.      Any attorney responding for an entity must state affirmatively that he or she has an attorney-client relationship with that entity. In the absence of any contrary indication from a party, Sterling may rely upon the representation of an attorney that the attorney represents those entities, without further inquiry. For example, unless Mr. Pitts advises me otherwise, I will assume that he represents only CMA and not any other entity. Specifically, I will assume that Mr. Pitts does not represent Indian or Stellican.

c.      If any party claiming under Indian[3] wishes to give direction to Sterling under 5.1.b or 5.1.c. of the Indemnification Agreement as to how to respond to this Request, or any other Request, Claim, or Demand, such party should so notify Sterling and state the basis for the direction. Of course, Indian must make the acknowledgement required in paragraph 5.1.b. first, and we must insist on a response meeting the specifics set forth above, on or before May 6, 2005.

d.      If any party claims that Sterling owes any duty to such party with respect to the pending Request, or any other Request, Claim, or Demand, such party's response should state the basis for any such claim, as well as the directions such party believes that it is entitled to make and the basis for such entitlement.

e.      Time is of the essence in this matter. Sterling believes that it is subject to risk and expense, and must take such actions as it deems necessary to mitigate its risks and expense, unless it is adequately assured of indemnity.

Mr. Pitts has asked Sterling for information about the Requesting attorney. Sterling will defer responding to this request until after May 6, 2005, at which time

---

[3] Sterling has made the assumption that Indian, *per se,* cannot take any actions because Indian is no longer operational.

Distribution
May 4, 2005
Page 4.

Sterling will either have the assurances it has required or it will be excused from responding to Mr. Pitts's Request.[4]  Please recall that every obligor under the Agreements (except Sterling and the Receiver) has breached those Agreements, and Sterling no longer has affirmative obligations thereunder.

Sterling extends this opportunity to deny the breaches of the Agreements, all of which are clear and unequivocal, only out of an abundance of caution.  Indian (and any entity claiming under Indian) cannot avail itself, or themselves, of the benefits of the Agreements without acknowledging and then meeting the obligations of the Agreements.

Sterling has no idea what position Stellican has in this matter, but I expect that we will find out fairly soon.  Sterling will consider any response from Stellican addressing the specific requests for position set forth above, if it is received, in writing, on or before May 6, 2005.  Similarly, if Indian's insurance carriers (the identities of which are not known to Sterling) expect any of the benefits of the Agreements to accrue in their favor, the Requesting carrier must identify itself directly to Sterling, advise Sterling that it wishes to subscribe to the obligations of the Agreements, and provide the assurances required in the April 27, 2005 letter.  Any such insurance carrier is invited to call me directly and discuss this before the end of the week.

From what we have been told, people have been injured and are alleging that Indian is liable under a products liability theory.  Sterling has been Requested to provide information in its possession, which it believes that it is not under any duty to withhold.  Sterling can go only delay responding to this Request for so long.  Sterling has chosen the close of business, May 6, 2005 as the time that it must decide how to respond to this Request (and future like Requests).

It is interesting to note that the only people who have succeeded in operating the Trademark were the people who prepared the Agreements.  Conversely, it is remarkable that the people who failed in every aspect of their short tenure with the Trademark (whether that be losing $200 million or selling the Trademark for a pittance) are the ones resisting the Agreements. At the time the Agreements were prepared Sterling was wary of possible changes in management.  That concern has been accented by recent history.  The Agreements do, however, contemplate the

---

[4] Please note that Mr. Pitts has made a Request on behalf of Indian, as the term "Request" is defined under the Indemnification Agreement.

Distribution
May 4, 2005
Page 5.

changes in management and ownership, and giving only slight consideration to an assignee hopelessly mired in denial, the Agreements will serve their purpose just fine.

Little foresight is required to anticipate that more Requests, Demands, and Claims are likely in the near future, so the long and short of the message in this letter is to stop being cagey if you want Sterling to reconsider its position that the Settlement Agreement and the Indemnification Agreement have been breached—or be cagey—your choice. It is not that Sterling does not care, it is just that Sterling is finished with the cat-and-mouse games that have governed the relationship since Audax took control. If a well-reasoned position can be articulated that Indian or one of its assignees is not in default (and as a consequence, Sterling is not excused from further duties under the Agreements), it must be articulated before the close of business on May 6, 2005 to have any effect.

Very truly yours,

Richard A. Block

Distribution
May 4, 2005
Page 6.


Distribution List (first class mail only):

Indian Motorcycle Company
Attention:  Chief Financial Officer
200 East 10th Street
Gilroy, California  95020


Distribution List (email and first class mail):

J. Eric Elliff, Esquire
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638
jelliff@mofo.com

Sara Lipscomb, Esquire
General Counsel
Audax Group
101 Huntington Avenue
Boston, Massachusetts  02199
United States of America
slipscomb@audaxgroup.com

Robert W. Pitts, Esquire
Law Office of Robert W. Pitts
660 Newport Center Drive
Fourth Floor
Newport Beach, California  92660
rpitts@lawrwp.com

Mr. David P. Wright
Partner
Stellican of the Americas
8161 15th Street East
Sarasota, Florida  34243
dwright@stellican.com


Distribution List (email only):

Mr. Frank O'Connell (via email:  fjobarn@aol.com)
Mr. Chuck Klaus (via email:  cklaus@creditservices.org)
John M. Tanner, Esquire (via email:  jtanner@fwlaw.com)
Thomas F. Quinn, Esquire (via email:  tquinn@tfqlaw.com)

# LAW OFFICE OF
# ROBERT W. PITTS

*660 Newport Center Drive, Suite 400*
*Newport Beach, California 92660*
*T: 949-720-4125*
*F: 949-720-4111*
*E: rpitts@lawrwp.com*

May 4, 2005

**VIA EMAIL: rblock@xpn.com and sterlingconcorp@earthlink.net**
Richard A. Block
Sterling Consulting Corporation
4101 East Louisiana Avenue, Suite 300
Denver, CO 80246

**RE:   Indian Motorcycle**

Dear Rick:

I have not received a response from you regarding my letter of April 29, 2005. As you will recall, I requested that you provide me, by May 3, 2005, with the contact information for the attorney asserting the claim referenced in your letter of April 27, 2005 so that the Assignee could promptly: (i) ascertain the nature and extent of the claim; and (ii) notify the appropriate product liability carrier of such claim.

To that end, pursuant to Section 3.1.a of the Indemnification Agreement, please **immediately** provide me with the name and contact information of the attorney who made the Request/Demand. Your continued failure to provide me with such information is a breach of your obligations under the Indemnification Agreement and shall excuse any further performance by Indian. To the extent you wish to respond to other issues raised by your letter of April 27 and my letter of April 29, please feel free to do so. However, your failure to timely provide the requested information is prejudicial to the Assignee and exacerbates your breach of the Indemnification Agreement.

Very truly yours,

Robert W. Pitts

cc:   (All via email)
    Michael J. Joncich
    John M. Tanner, Esq.
    Thomas F. Quinn, Esq.

Ltr to R. Block 5 4.05 re Information Request.doc



STERLING CONSULTING CORPORATION

4101 East Louisiana Avenue
Suite 300
Denver, Colorado 80246
Office: 303-388-1300
Fax: 303-781-4311
Email: rblock@xpn.com

May 4, 2005

Robert W. Pitts, Esquire
Law Office of Robert W. Pitts
660 Newport Center Drive
Fourth Floor
Newport Beach, California 92660

Re:   Settlement Agreement and Indemnification Agreement (the "Agreements")
      between Indian Motorcycle Company, IMCOA Licensing America, Inc., and
      IMCOA Holdings America, Inc., and the assignees thereof (collectively,
      including the assignees, "Indian") and Sterling Consulting Corporation dated
      August 31, 2000

Dear Bob:

Shortly after I sent my letter dated today, I received your letter dated today. Had I received your letter first, I would have included some of this letter in that letter. In one way, the separation of issues is convenient, because there are some references in your letters that must be addressed before anything else can be done by Indian.

In the second paragraph of your letter of April 27, 2005, you wrote "*Indian* reserves all of its rights and remedies with respect thereto." [Emphasis added.] I defined the term "Indian" before I used it, as is the case in this letter, but you did not do so. You must clarify your use before an answer is possible. If you intended to adopt the definition I applied, please confirm that fact, as well as your authority to act on behalf of the entities comprising "Indian." Because some of the "Indian" entities are defunct, it appears unlikely at first impression that you have the authority to act for them, but I am willing to be educated on that point.

On the other hand, if you are using the term "Indian" to refer to some other entity, or to some, but not all, of the entities I have included in my definition of "Indian," I need to know the identity of the entities for which you are acting before an answer is possible.

Robert W. Pitts, Esquire
May 4, 2005
Page 2.

Similarly, in your letter dated May 4, 2005, you used the term "Assignee" without definition. You also wrote "However, your failure to timely provide the requested information is prejudicial to the *Assignee* and exacerbates your breach of the Indemnification Agreement." [Emphasis added.] You use the term Assignee with a capital A, but without a corresponding definition. As with the word "Indian," you must tell us which entities are included in the term "Assignee" before we can respond with any degree of accuracy. In addition, it would be helpful if you would clarify what rights the "Assignee" has under the implied assignment of rights. As I am sure you are aware, no entity can take rights against Sterling (or the Receiver) under the Agreements, without assuming the corresponding obligations of the assignor from whom such rights derive.

There is no question that Indian Motorcycle Company, IMCOA Holdings America, Inc., and IMCOA Licensing America, Inc. were all obligors under the Agreements—they were named obligors in the Agreements. In my letters, I included them only for the purpose of not excluding them, as they are all "Void" corporations according to the Delaware Department of State. By reason thereof, they are all in breach of the Agreements. The Indemnification Agreement provides "An assumption of obligations by the assignee pursuant to this section 6.12 shall not, in any way, limit or diminish Indian's obligations." That would certainly be true if they were not all insolvent, non-operational, and not in good standing with the Delaware Department of State. Simply stated, Indian Motorcycle Company, IMCOA Holdings America, Inc., and IMCOA Licensing America, Inc. are in breach because they are out of business and cannot comply with any of the requirements of the Agreements under any conditions.

The assignees of Indian are all in a different position, but it is not clear precisely which entities are assignees under paragraph 6.12 for the purpose of identifying the current obligors under the Agreements. My letters were intended to enable each assignee to identify itself as a potential obligor under the Agreements, but none of those entities took advantage of the opportunity. CMA's legal mumbo jumbo hardly qualifies as the assurances necessary under the circumstances. Each entity that we understand could be both an assignee under paragraph 6.12 of the Indemnification Agreement and a current obligor under the Agreements is described below:

a.     CMA – Indian Motorcycle Company and CMA advised Sterling that CMA was an assignee of substantially all of Indian's assets, including the Trademark. Sterling advised CMA that it was an obligor under the Agreements. I understand that you (on behalf of CMA),

Robert W. Pitts, Esquire
May 4, 2005
Page 3.

assert that CMA is not obligated to Sterling under the Agreements. Sterling considered your assertion of that position to be a repudiation of any obligation to Sterling, and hence, a breach of the Agreements. As I understand it, CMA believes its breach is cured (or mooted, or something) if its assignee, Stellican, adopts the Agreements. If Stellican ever does adopt the Agreements, and provide assurance of performance to Sterling, Sterling may reconsider its position that CMA breached the Agreements. So far, however, Stellican has made no indication that it is even considering confirming its obligations under the Agreements. As CMA does not appear interested in providing the assurances required by Sterling, it makes no difference what Sterling's position would be under this hypothetical scenario.

b.      Stellican – Stellican, or more accurately Indian Motorcycle International, LLC Limited Liability Company Delaware, 8161 15th Street East, Sarasota Florida 34243, was an assignee as contemplated by the Indemnification Agreement. According to you, however, Stellican was allowed by CMA to refuse to become an obligor, as required by the Indemnification Agreement. Without attempting to determine whether or not that was legally permissible, Stellican has elected to not respond to my letters. When a determination of Stellican's position becomes significant to Sterling, Sterling will make that determination. In the meanwhile, the Trademark is at risk and it would seem to us prudent for Stellican to do everything possible to accrue to the benefits of the Agreements, including the obligations of Sterling under the Agreements. So far, Stellican seems satisfied with the Trademark, some of the executory contracts that were associated with the Trademark, but not the Agreements.

c.      Insurance Carriers – As far as Sterling knows, Sterling has no privity with Indian's insurance carriers. Nevertheless, Sterling has given the Insurance Carriers of Indian an opportunity to discuss the matter with Sterling. Even if Sterling cannot agree to allow the Insurance Carriers to become parties to the Agreements, Sterling might consider a separate arrangement with the Insurance Carriers that yields a similar result. There is no way to determine whether CMA or you have given the Insurance Carriers my phone number to arrange a conversation. There is probably significant exposure under the policies and the Agreements might have a bearing on that exposure.

Robert W. Pitts, Esquire
May 4, 2005
Page 4.

One of the primary purposes of both of my recent letters was to determine which entities assert that they are obligors. The form of "Indian" and the opacity of the recent transactions have made it difficult, if not impossible, for Sterling to determine precisely who is an obligor under the Agreements—and hence, to whom it might owe duties under the Agreements (assuming that Sterling's duties have not been discharged by breach of obligations running to Sterling). As I have previously stated, I suspect that this is intentional on your part.

Before moving too quickly to counter this letter, I would suggest that you carefully reread the Agreements, especially the Indemnification Agreement. You have misconstrued a number of provisions, and that has exacerbated Indian's breach. At the outset, you must focus on the fact that there has been a Request made of Sterling by a third party, not a Demand and not a Claim. The provision that you cited in support of your claim of breach (assuming CMA can even claim a breach if it is not an obligor under the Agreements), is a provision under the Demands section of the Indemnification Agreement. As you state in your own letter, there has been no Demand of Sterling by a third party—yet.

CMA's Demand for information (i.e., the name of the attorney making the Request) is a different matter; that is a Demand under the Indemnification Agreement. The Indemnification Agreement contains the following provision:

> 3.1.b. Provide Opportunity to Refuse or Dispute Demand: *Provided that Indian acknowledges its obligation to Indemnify* the party seeking Indemnification for the Demand, such party shall cooperate fully with any tactics or proceedings which Indian shall request to lawfully refuse, limit, resist or dispute any such Demand on such reasonable legal grounds as may be available. [Emphasis added.]

Under the foregoing provision, if CMA wishes to make a Demand of Sterling for any information, CMA must first acknowledge its obligation to Indemnify Sterling and Sterling must be willing to consider CMA an obligor under an executory Indemnification Agreement.

It was obvious to both Indian and Sterling at the time the Agreements were prepared that Sterling and the receiver would be targets of third parties just like the products liability plaintiffs. Moreover, I personally advised you last year that Sterling and the receiver would be such targets. You can say that you were not thinking very clearly, but you cannot now say that you were not on notice, and you certainly cannot now say that you could

Robert W. Pitts, Esquire
May 4, 2005
Page 5.

not have reasonably been expected to understand what was coming. In fact, you still seem to be in a general state of denial, but I suspect that is more out of establishing a defense to your personal liability than anything else. Perhaps it is you who should put your insurance carrier on notice.

The close of business on May 6, 2005 has not yet come and gone. It is not too late for Indian, including its assignees, to ask to subscribe to the Agreements and make the required assurances. I cannot say I would welcome that event, but Sterling will consider anything that conforms to Sterling's letters of the past week. If you have not given the insurance carriers my name and phone number, I would suggest doing so immediately so they at least have an opportunity to make arrangements with Sterling.

Very truly yours,

Rich Block

Richard A. Block

cc.     Robert W. Pitts, Esquire (via email: rpitts@lawrwp.com)
        John M. Tanner, Esquire (via email: jtanner@fwlaw.com)
        Thomas F. Quinn, Esquire (via email: tquinn@tfqlaw.com)

# LAW OFFICE OF
# ROBERT W. PITTS

*660 Newport Center Drive, Suite 400*
*Newport Beach, California 92660*
*T: 949-720-4125*
*F: 949-720-4111*
*E: rpitts@lawrwp.com*

May 5, 2005

**VIA EMAIL: rblock@xpn.com and sterlingconcorp@earthlink.net**
Richard A. Block
Sterling Consulting Corporation
4101 East Louisiana Avenue, Suite 300
Denver, CO 80246

### RE: Indian Motorcycle

Dear Rick:

I am in receipt of both of your letters of May 4, 2005.  In the interests of clarity, this office represents Credit Managers Association of California d/b/a CMA Business Credit Services ("CMA" or "Assignee"), as Assignee for the Benefit of Creditors of each of Indian Motorcycle Corporation, IMCOA Real Estate Services, Inc., Indian Motorcycle Company, IMCOA Licensing America, Inc. and IMCOA Holdings America, Inc. (collectively "Indian").  This office does not represent or speak for any other party.

It has become abundantly clear that I cannot change the prism through which you view all matters relating to Indian, but what I can do is try to struggle through your Byzantine letters to discern what you're talking about and then attempt to clarify your various misstatements, misperceptions, or misunderstandings.  That is the goal, albeit wildly optimistic, of this letter.

As a threshold matter, allow me to first respond to your second letter of May 4, 2005.  Regarding your confusion as to the references to the "Assignee" and to "Indian," (I know this causes you indescribable heartburn), the references to Indian and Assignee are interchangeable with respect to the context of these letters.  When CMA acts in its capacity as assignee for the benefit of the creditors of the Indian entities (i.e., as "Assignee"), it speaks for "Indian" as that term is described above (i.e., each of the listed Indian entities has executed an assignment for the benefit of creditors in favor of CMA). Thus, to make it very simple with respect to the context of these letters, **if any party is**

Richard A. Block
May 5, 2005
Page 2

**going to indemnify Sterling under the terms of the Indemnification Agreement, it will be the assignment estate of the Indian entities**.  Unless one of the other Addressees of your letter voluntarily steps forward (which I cannot imagine happening), no other party will indemnify Sterling as no other party has any obligation to indemnify Sterling (or, for that matter, any other party seeking indemnification under the Indemnification Agreement).  Specifically, none of the three parties listed in your second letter (i.e., CMA[1], Stellican or the Insurance Carriers[2]) are in any way "obligated" under the Indemnification Agreement and, frankly, I cannot imagine a scenario in which Sterling would be obligated to any of them.  In anticipation of your next missive, let me reiterate here that my views relating to those parties are mine alone and I do not speak for, or represent, them in any way.

The balance of your second letter of May 4, 2005 is addressed where appropriate below.

With respect to your first letter of May 4, 2005, as I stated in my letter of April 29, 2005, and you appear to have confirmed in your first letter, it is the understanding of the Assignee that you received an inquiry regarding an alleged product liability claim against Indian.  That claim may or not be a claim against the Indian assignment estate, as such a determination would depend on the particulars of the claim (e.g., the deadline for filing a claim against the Indian assignment estates has long since expired).  That is why I made a very simple request of you that you provide me with the contact information of the person making the claim so I could determine how the Indian assignment estate will handle the claim.  That is a request that I make of sane, rational, professional people every week and, I realize this will come as a shock to you, they comply with the request!

The reason they comply with the request is because: (i) it is the professional thing to do; (ii) perhaps more importantly, it is the logical thing to do, i.e., allow the people who are charged with the responsibility of dealing with claims just like this, the Assignee, to deal with it; (iii) they want the claimant to speak to the appropriate party to address such claim; and (iv) they do not want to waste their time or the claimant's time.  In light of these rather compelling reasons, I simply cannot understand your cat and mouse tactics in obstructing our efforts to deal with this claim.  To that end, pursuant to Section 3.1.a of the Indemnification Agreement, please **immediately** provide me with the name and contact information of the attorney who made the Request/Demand.  I

---

[1]  Note that there is a distinction between "CMA, as assignee for the Indian entities," versus "CMA in its individual corporate capacity."  CMA, in its individual corporate capacity, has had no involvement in the Indian matters.  The reference in your second letter seems to be to CMA in its individual capacity.  In its capacity as assignee for the Indian entities, CMA "speaks" on behalf of the Indian assignment estates, which assignment estates would be the only possible obligor under the Indemnification Agreement, other than the Receiver/Sterling.

[2]  In your second letter, you state that "Sterling has given the Insurance Carriers of Indian an opportunity to discuss the matter with Sterling."  Are you referring to the alleged product liability claims?  Have you put the Insurance Carriers of Indian on notice of such claims?  Are you referring to the product liability Insurance carriers?  Please clarify.

Richard A. Block
May 5, 2005
Page 3

have also provided your contact information to Indian's Claims Agent so that she may
make the same request of you (per your request in your second letter of May 4, 2005).

Turning to the clarification efforts, allow me to address each of your
misstatements, misunderstandings and misconceptions in turn:

1.    **The assertion that Sterling breached the Indemnification
Agreement by tracking down the requesting attorney:** First, my letter
says that "it would appear" that your actions are in breach of certain
provisions in the Indemnification Agreement. I do not possess all of the facts,
hence not only the qualifier "it would appear," but also the prefatory statement
"[a]t first blush." Second, it may very well be that your actions are in breach of
the letter and spirit of the Indemnification Agreement. Time will tell.

2.    **The assertion that Sterling is not entitled to fees and costs:** I'm
not certain what you are referring to, as my letter makes no such assertion.
What my letter <u>does</u> assert is what is clearly set forth in the Indemnification
Agreement, namely, that: (i) any indemnity of Sterling with respect to a
Demand Loss is limited to reimbursement of Sterling's Fees and Sterling's
Expenses (as those terms are defined in the Indemnification Agreement), and
specifically excludes indemnity for reimbursement of Sterling's Legal Fees;
(ii) there is no obligation to indemnify Sterling with respect to a **<u>Claim Loss</u>**
until such time as the Receivership has terminated. Please point me to any
provision of the Indemnification Agreement that is contrary to the forgoing (as
I also stated in the footnote, Section 3.8 of the Indemnification Agreement
provides that an indemnified party may be reimbursed its legal expenses
relating to a Demand, upon certain conditions. Obviously, until such time as
the Assignee is provided with information regarding the Demand, no such
decision can be made).

3.    **The assertion that I profess to not understand Sterling's position:**
I do understand Sterling's position to the extent Sterling will be seeking
indemnification of its Demand Losses if and when it receives a Demand and
incurs such Demand Losses. However, I maintain that I do not understand
Sterling's "position" vis a vis its claim that Indian has defaulted on its
obligations to Sterling under the agreement and why you continue to write
your letters if that is in fact the case.

4.    **The assertion in your second letter that the Indemnification
Agreement was misconstrued:** My letter specifically refers to the
anticipatory nature of the Demand, as your letter makes clear that a Demand
had not yet been made. Of course, your letters are more pointless than usual
if we are not discussing the inevitable Demand that you feel is imminent.
Accordingly, your letters and the implicit demand contained therein was
analyzed as if Sterling had received the inevitable Demand. Obviously, if

Richard A. Block
May 5, 2005
Page 4

Sterling never receives the Demand, all of this is moot.

5.      **The assertion in your second letter that the Assignee's request for the contact information is a "Demand" under the Indemnification Agreement:** Based on the context of the Indemnification Agreement and the definition of Demand set forth in Section 1.1.e. of the Indemnification Agreement, it would not appear that the request contained in my letter of April 29, 2005 for the contact information is a Demand, in that your response is not "required by operation of law." The request for the contact information, and your response thereto, is simply part and parcel of complying with the terms of the Indemnification Agreement.

6.      **The assertion in your second letter that "CMA's Demand" triggers the acknowledgment required in Section 3.1.b of the Indemnification Agreement:** Again, a simple reading of the Indemnification Agreement exposes the fallacy of your position. As set forth in Section 3.1.b., a specific acknowledgement of indemnity is required where Indian (now the Assignee) seeks an indemnified party's full cooperation "with any tactics or proceedings which Indian shall request to lawfully refuse, limit, resist or dispute any such Demand on such reasonable legal grounds as may be available." Of course, that makes perfect sense in that if Indian (or the Assignee) is going to direct Sterling to "refuse, limit, resist or dispute" the Demand (if and when it comes), Sterling should be entitled to assurances that it will be indemnified for the Demand Loss incurred relative thereto. It is equally clear that Indian (now the Assignee) is entitled to review the Demand prior to requesting Sterling to "refuse, limit, resist or dispute" it. Thus, Sterling's receipt of a Demand, be it from the Assignee or some third party, does not in and of itself trigger the acknowledgement described in Section 3.1.b. of the Indemnification Agreement. It may very well be the case that, after reviewing the Demand, the Assignee will not request Sterling to "refuse, limit, resist or dispute" the demand.

Moving on, regarding your "conditions" for Sterling's performance under the Indemnification Agreement as set forth in the lettered paragraphs of your first letter,[3] the Assignee's response is as follows:

a.      The Assignee has no control over any other "Addressee" and notes that at least two of your "Addressees," Audax and Stellican, are not even parties to the Indemnification Agreement. Thus, with respect to this "condition", to use the vernacular, it ain't gonna happen. Further, I am in receipt of Audax's response to your first letter and it

---

[3]  Setting aside the logical disconnect for a moment, am I once again missing something, or is the real issue not so much Sterling's performance under the Indemnification Agreement as it is <u>Indian's</u> performance? Is it not Sterling that is looking for Indian (more specifically the Indian assignment estate) to indemnify it for the anticipated Demand Loss (i.e., to perform under the Indemnification Agreement)?

Richard A. Block
May 5, 2005
Page 5

appears that your condition will not be met.

b.      As stated above, this office is the attorney for the Assignee of the Indian entities and, under California law, such Assignee is charged with the responsibility of addressing any obligations of the Indian assignment estates. Based on everything discussed to date, it appears that the Indian assignment estates are the only potential obligor under the Indemnification Agreement to which Sterling can now look for indemnity. I realize that you wish that you could draw in additional, more solvent, parties, but I just don't think that's going to happen. The only party that would even remotely have any interest in doing so, Stellican, has unequivocally expressed their position, which as I understand it (reiterating that I do not speak for, or represent, Stellican), is that they are not willing to "subscribe" to any agreement with the Receiver/Sterling. Thus, like it or not, Sterling is stuck with the Indian assignment estates as its sole recourse for indemnity under the Indemnification Agreement. I would suggest that Sterling move forward and comply with the terms of the Indemnification Agreement or risk losing even the Indian assignment estates as a potential obligor.

c.      Article 5 of the Indemnification Agreement deals with "Claims Loss Indemnification," not Demand Loss Indemnification, which is the issue at hand (again, it is "at hand" in anticipation of the "Request" turning into a "Demand"). Sterling has not provided notice of any **Claim** to Indian, promptly or otherwise. Further, based on the facts thus far revealed to the Assignee, Sterling is not in "receipt or notification" of a Claim. Thus, Article 5 of the Indemnification Agreement is not yet applicable. You may wish to peruse the Indemnification Agreement yourself or have your lawyer do so.

d.      To borrow from your numerous emails in the past, the Indemnification Agreement "speaks for itself." However, to amplify the Assignee's understanding of the Indemnification Agreement (which I'm sure you will be more than eager to correct), such understanding is that Sterling may be required to expend funds in responding to legitimate Demands (setting aside for a moment the provisions of Article 5, which are not applicable to the instant situation) (See, §1.1.f). The Indemnification Agreement provides that Sterling is entitled to reimbursement of certain of those expenses from Indian (i.e., the Indian assignment estate), so long as Sterling complies with the provisions of Article 3 of the Indemnification Agreement, and is not in material breach of any other provision of any of the various related agreements (See, §3.3 as to reimbursement, §1.1.f as to the definition of Demand Loss).

Richard A. Block
May 5, 2005
Page 6

One of the crucial "provisions" of the Indemnification Agreement is Section 3.1.a., which provides that Sterling (if in fact Sterling is seeking indemnification for its expenses in responding to the anticipated Demand) shall "[g]ive Indian prompt written notice and full particulars of the Demand" if Indian did not otherwise receive such particulars (See, §3.1.a.). As I have informed you, CMA, as the Assignee of Indian, has not received any particulars of the Demand. Therefore, if Sterling wishes to be indemnified for any Demand Loss, it will need to comply with the terms of the Indemnification Agreement. If Sterling does not wish to be indemnified, it does not need to comply with the terms of the Indemnification Agreement. It's that simple.

e.   Regardless of any "assurance[s] of indemnity" requested in your letter, Sterling has the duty, under the provisions of Section 3.1.c. of the Indemnification Agreement, to mitigate the amount of any Demand Loss. I am sure it is just an oversight on your part, but your assertion that Sterling "must take such actions as it deems necessary to mitigate its risks and expense, **unless** it is adequately assured of indemnity" [emphasis added] might actually be interpreted as you saying that once Sterling is assured that other people will be paying its expenses, it can incur expenses with wild abandon. That couldn't possibly be the case, but please so confirm.

So, I guess this brings us to the crux of the issue: Sterling can comply with the terms of the Indemnification Agreement and seek to be indemnified for its Demand Loss by the Indian assignment estate, if and when any such Demand Loss occurs, or it can take the position that every other party has breached the terms of the Indemnification Agreement so it need not comply with such terms, thereby foregoing its right to seek indemnification thereunder. Please advise me of what Sterling wishes to do.

Finally, the final paragraph of your second letter speaks volumes regarding the real reason for your logical gymnastics, namely your thinly disguised attempt to have some party not otherwise obligated under the Indemnification Agreement to become so obligated. Suffice to say that, although the other Addressees of your letters can make their own determinations regarding whether they wish to "subscribe" to any agreement with Sterling, CMA, in its individual corporate capacity, has no interest in doing so. CMA, as Assignee of the Indian entities, however, is prepared to address the obligation of the Indian assignment estates vis a vis the Indemnification Agreement. If Sterling takes the position that that's not good enough, so be it, there is nothing more the Assignee can do for you.

Once again, I would reiterate my request that you undertake the simple act of forwarding to me, via a simple email, the contact information of the attorney alleging the

Richard A. Block
May 5, 2005
Page 7


product liability claim so that the Assignee of the Indian assignment estate may address such claim appropriately. Alternatively, you can certainly provide such information to the Indian Claims Agent when she contacts you. For that act, the Assignee is prepared to reimburse Sterling for the cost of sending the email.

Very truly yours,

Robert W. Pitts

cc:   (All via email)
      Michael J. Joncich
      John M. Tanner, Esq.
      Thomas F. Quinn, Esq.

# LAW OFFICE OF
# ROBERT W. PITTS

*660 Newport Center Drive, Suite 400*
*Newport Beach, California 92660*
*T: 949-720-4125*
*F: 949-720-4111*
*E: rpitts@lawrwp.com*

May 10, 2005

**VIA EMAIL: rblock@xpn.com and sterlingconcorp@earthlink.net**
Richard A. Block
Sterling Consulting Corporation
4101 East Louisiana Avenue, Suite 300
Denver, CO 80246

**RE:  Indian Motorcycle**

Dear Rick:

In response to your explicit request in your letter of May 4, 2005, I requested that the insurance representative of Indian contact you to ascertain the particulars of the alleged product liability claim alluded to in your recent correspondence. I have now been informed that you, for reasons I cannot begin to fathom, have refused to provide such insurance representative with the most basic of information related to the alleged claim. Suffice to say that the Assignee now considers this matter closed as it appears that there is no claim or issue remaining.

If, in the future, you wish to seek indemnification from the Indian assignment estates under the Indemnification Agreement, please conform to the requirements and provisions thereof. Nothing herein, or in any other correspondence related hereto, shall constitute a waiver of any rights or remedies the Assignee and/or Indian may have related to these matters, all of which are express reserved.

Very truly yours,

Robert W. Pitts

cc:     (All via email)
        Michael J. Joncich
        John M. Tanner, Esq.
        Thomas F. Quinn, Esq.