**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 95-cv-00777-REB-CBS

In re: THE RECEIVERSHIP ESTATE OF INDIAN MOTORCYCLE MANUFACTURING, INC.

---

**ASSIGNEE'S RESPONSE TO RECEIVER'S MOTION FOR ACCOUNTING**

---

COMES NOW Credit Managers Association of California, dba Business Credit Services ("Assignee" or "CMA") as Assignee, pursuant to California Assignments for the Benefit of Creditors and General Assignments (the "ABCs") by Indian Motorcycle Company, Indian Motorcycle Corporation, Indian Motorcycle Real Estate Services, Inc., IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. (collectively, the "Indian Entities"), and files this Response on behalf of the Assignee and the Indian Entities to the Receiver's Motion for an Accounting ("Motion"). As grounds, Assignee states as follows:

**BACKGROUND**

1. In keeping with its longstanding strategy, this Receiver is attempting to gain a tactical advantage by inserting superfluous language in an order entered by Magistrate Judge Schlatter in an unrelated matter and then "bootstrapping" a party that was not involved in the proceedings giving rise to the order via that language. In this latest instance, the Receiver filed a motion against the claimants in the Receivership Estate in November of 2005, seeking disgorgement of a portion of six year old payments previously made to the general unsecured creditors of the Receivership Estate (the "Disgorgement Motion"). Neither the Assignee nor the Indian Entities were involved in the Disgorgement Motion (as appropriate – the Assignee is not a party in the Receivership Action and the Indian Entities were dismissed, with prejudice, from the Receivership Action in 2001, *see* Discussion, pp. 8-9, *infra*) and there was no issue raised in the

Receiver's Disgorgement Motion that would have affected the Assignee or the Indian Entities. Accordingly, neither the Assignee nor the Indian Entities entered an appearance at the hearing on the Disgorgement Motion. Such motion was approved by Magistrate Judge Schlatter and a recommendation was forwarded to the District Court Judge. However, in addition to drafting the recommendation on the issues that were raised on notice to all interested parties in the Disgorgement Motion, the Receiver also drafted another, separate order relating to issues the Receiver orchestrated at the Disgorgement Motion hearing regarding the Assignee (the "December 14 Order"). Although neither the Assignee nor the Indian Entities (i) were parties to the Receivership Action, (ii) were even **referenced** in the Disgorgement Motion giving rise to the December 14 Order, or (iii) entered an appearance at the hearing, Magistrate Judge Schlatter signed the December 14 Order prepared by the Receiver and entered it on December 14, 2005. *See* Docket No. 2015.[1] As drafted by the Receiver and adopted, word for word, by Magistrate Judge Schlatter, the December 14 Order, among other things, "**cautioned**" the Assignee not to release any money from the California Assignment for Benefit of Creditors ("ABC"). *Id.* (Emphasis added). Although the Assignee was not a party to the Disgorgement Motion which gave rise to the December 14 Order, the Assignee has always exercised due caution in the administration of the Indian Entities' ABC Estates and has continued to administer the ABCs in accordance with all applicable California law, including paying administrative expenses such as the costs of defending the numerous lawsuits brought in this Court against the Assignee and the Indian Entities by the Receiver and Sterling Consulting Corporation, in its individual capacity.

[1] Of course, entry of the December 14 Order in 2005 gives rise to the inevitable argument by the Receiver that any appeal period has passed. For the reasons stated herein, any such argument based on purported applicability/effectiveness of the December 14 Order *vis-à-vis* the Assignee must fail, as not even the semblance of due process was followed.

2. As discussed below, the Motion, on its face, seeks – without legal or factual basis – an accounting in this Court of the California-administered Indian Entities' ABCs. Nonetheless, it is clear that what the Receiver hopes ultimately to accomplish amounts to injunctive relief that would deny the Assignee and the Indian Entities the benefit of counsel in all pending litigation matters brought against them by the Receiver *and Sterling in its individual capacity*.[2] For the reasons set forth below, this Court should not condone the Receiver's tactics.

3. However, as important as a denial of the Receiver's Motion is, it is equally important to put the Receiver's ongoing method of litigation to rest as well. For approximately one year, the Assignee (as well as the Audax entities) have been subjected to litigation that is baseless, both in terms of substantive claims as well as litigation tactics. As set forth in numerous pleadings in this action and the 05-1573 Action, the Receiver's litigation odyssey is being conducted at the expense of the Receivership Estate but is for the direct benefit of the Receiver itself, the Receiver's counsel, and Sterling Consulting Corporation in its individual corporate capacity (i.e., to relieve such parties of a potential tax liability).

4. The Assignee and Audax have attempted to present this Court with issues in a resolvable form (e.g., Assignee's Cross-Motion for Summary Judgment and Audax's Motion to Dismiss in the 05-1573 Action); however, the Receiver has, to date, engaged in extensive litigation machinations to evade such summary proceedings (for a very simple reason - the resolution of even the smallest issues in this matter will deprive the Receiver, and Sterling, of the one thing they desperately need: prolonged litigation in order to extract the maximum settlement sum from parties like the Assignee and the Audax Entities). Two examples stand out. First, in

---

[2] Indeed, the Receiver has already asserted that the Assignee is unlawfully paying its counsel to defend itself against the Receiver's various lawsuits, citing to the "cautionary" language drafted by the Receiver and contained the December 14 Order regarding releasing money from the ABCs. *See* Exhibit C; *see also* Discussion, pp. 9-10, *infra*.

the 05-1573 Action, Sterling sued the Audax Entities for breach of an agreement to which the Audax Entities were not even a party. Audax filed a Motion to Dismiss on November 10, 2005, and through the machinations of the Receiver and Sterling (including filing a "provisional" First Amended Complaint in lieu of filing an "actual" amended complaint as ordered by the Court), such Motion to Dismiss was not heard for over eight months while Audax was required to defend itself against a discovery campaign based upon the so-called "provisional" First Amended Complaint. When it became clear that this Court was moving towards hearing the Motion to Dismiss, the "claims" were mysteriously "assigned" to the Receiver, and the allegations against Audax in the 05-1573 Action were dismissed, only to be re-filed that same afternoon in the context of a "First Amended Complaint" in this receivership action. In that the First Amended Complaint in this action is currently the subject of an Order to Show Cause, it is unclear whether such action will proceed or not.[3] The second example involves a similar tactic, but with respect to litigation brought by the Receiver in Case No. 06-cv-00076-LTB-PAC. In that matter, the Receiver instigated litigation against the Assignee and a California law firm that had acted as the Trustee under an Indian Motorcycle Depositors Trust Agreement. Both the Assignee and the law firm defendant brought Motions to Dismiss on jurisdictional grounds. The Receiver sought consolidation of that action with this 95-777 action in an attempt to cure the clear jurisdictional deficiencies. After the Court denied the Receiver's Motion to Consolidate, but prior to a ruling on the pending motions to dismiss, the Receiver "dismissed" the 06-76 action, only to re-file the exact same claims against the same parties later that afternoon as part of the "First Amended

[3] In its 20+ page response (and supplement), the Receiver failed entirely to address the one issue the Court requested that the Receiver address – to wit, why should the Receiver be allowed to amend a complaint filed over ten years ago? Rather, the Receiver blamed the Court for the various results of its own tangled litigation strategies (engendered by the lack of any substantive claims) and its own failures to conduct the Receivership Estate in accordance with the Court's Order Appointing Receiver.

Complaint" that is the subject of the Order to Show Cause. Through such machinations, the Receiver blatantly attempts to circumvent the Court's clear denial of its Motion to Consolidate.

5. The Receiver's ongoing pattern of abuse of the judicial process and attempts to circumvent prior court orders should not be tolerated by this Court. The Receiver's current attempt to circumvent the denial of its Motion to Compel the precise documentation it now seeks through the filing of the instant Motion, as discussed below, should be dealt with swiftly and definitively by this Court through a denial of such Motion.

**LEGAL ARGUMENT**

6. The Receiver's Motion is devoid of any legal basis or authority for requesting that this Court require an accounting in a foreign Assignment for Benefit of Creditors when (i) the Receiver has not *filed* a claim in the ABC; (ii) the Receiver has not *established* a claim in the ABC (or elsewhere); and (ii) the ABC is administered in another state.[4] *See* Discussion, p. 8, *infra*. Rather than setting forth a legal basis for its requested relief, the Receiver simply cites some of the basic duties of an assignee.[5] For the reasons set forth below, the Receiver's failure to set forth any legal basis for ordering an accounting requires that the Court deny the requested relief.

(1) <u>No Status as Claimant in the ABCs:</u> The Receiver cites extensively to law regarding an assignee's general duties to claimants in an Assignment for Benefit of Creditors

---

[4] Because the Receiver has failed to proffer any legal authority in support of the requested relief, the Assignee reserves the right to file a sur-reply (with Court approval) in the event a legal basis for the Motion is eventually proffered in the Receiver's Reply.

[5] In its discussion of Assignments for Benefit of Creditors generally, the Receiver implies that the applicable California law is either non-existent, repealed, or is somehow unconstitutional. *See* Motion, pp.2-3, ¶¶ 7-9. The applicable California law is in full force and effect as to each and every issue related to the Receiver's various allegations. The Receiver's contentions simply illustrate that if the Receiver had any issue with the validity or propriety of the Indian Entities' ABCs, it should have filed a proof of claim and addressed those concerns in the appropriate California state court. Having chosen to forgo the appropriate procedure, the Receiver cannot now invoke this Court's jurisdiction to rectify its failure.

process, yet conspicuously fails to articulate how the Receiver is a claimant in the Indian Entities' ABCs – a condition precedent to entitlement to an ABC accounting. The reason is simple: the Receiver is **not** a claimant in the Indian Entities' ABCs. Indeed, the Receiver (and Sterling) made a conscious decision not to participate in the ABC process by not filing a proof of claim in ABCs. The fact that neither the Receiver nor Sterling filed a proof of claim in the Indian Entities' ABCs is undisputed.[6] As such, the Receiver cannot rely on rights afforded to actual claimants in the Indian Entities' ABCs.

The Receiver's status as a "non-claimant" renders its request for information on the ABCs irrelevant. Because the Receiver is not a claimant in the Indian Entities' ABCs, any marshalling of assets, collection of funds, liquidation of assets, or expenditure/distribution of funds by the Assignee have no effect on the Receiver (or the Receivership Estate) whatsoever.

(2) <u>No Status as Creditor in the ABCs:</u> The Receiver has repeatedly tried to avoid the effect of its failure to file a proof of claim in the Indian Entities' ABCs by asserting that it is a "non-consenting creditor" to the ABCs. "Consent" is not a recognizable concept in Assignment for Benefit of Creditors law, as ABCs do not contemplate creditor consent. Notwithstanding, the Receiver continues to assert that it is a creditor of the Indian Entities (either through its own right or as a putative "assignee" of some claim of Sterling), regardless of its failure to file a proof of claim in the ABCs. However, even assuming that the Receiver/Sterling can overcome the failure to file a proof of claim, as set forth below, neither the Receiver nor Sterling is a "creditor" of any of the Indian Entities and both have failed to establish otherwise.

---

[6] In yet another example of the Receiver's litigation tactics, the Receiver never directly challenges the Assignee's assertion of such a simple undisputed fact. Rather, the Receiver simply ignores the fact and proceeds with its argument of the day. The Receiver must present the basic underlying facts upon which the Receiver bases its claims. *See, e.g.,* Receiver's Reply Brief in Support of Motion to Consolidate [Docket No. 2088], p. 6 (seeking consolidation based on "credible rumors" and "palpable indications").

i. *Effect of Mutual Release.* As part of the settlement memorialized in the Settlement Agreement that is currently the focus of the pending Motions for Summary Judgment in the 05-1573 Action, the parties to that Agreement (the Receiver, Sterling in its individual corporate capacity, and the Indian Entities) executed a Mutual Release dated August 31, 2000, a copy of which is attached hereto as Exhibit A. In that Mutual Release, the Receiver and Sterling forever released claims against the Indian Entities, except as specifically provided for under the Settlement Agreement and the Indemnification Agreement (as well as some other related agreements not relevant here). *See* Exhibit A, Mutual Release, ¶ 4. The practical effect of the Mutual Release is that the only way for the Receiver to be a "creditor" of the Indian Entities is under the terms of the Settlement Agreement and/or the Indemnification Agreement. As discussed in detail in the Assignee's Brief in Support of Cross-Motion for Summary Judgment in the 05-1573 Action, all of the terms of the Settlement Agreement (and the other related agreements) were fulfilled immediately following the Court's approval of the settlement in 2001. The only basis under which the Receiver (or Sterling) could be a creditor of the Indian Entities is under the provisions of the Indemnification Agreement.

ii. *No Claim Made Under Indemnification Agreement.* As has been discussed in numerous pleadings, the Receiver and Sterling have repeatedly and consistently failed to articulate a single basis for the assertion of a claim under the Indemnification Agreement. Neither the Receiver nor Sterling have even alleged that an unpaid indemnification claim exists, notwithstanding numerous requests and opportunities.[7]

iii. *No Damages Asserted.* Bolstering the Assignee's contention that there is no claim under which the Receiver (or Sterling) could assert the rights described in the

[7] Again, instead of challenging the Assignee's assertion that no indemnification claim exists, the Receiver simply ignores the fact that there is no indemnification claim and continues with its various arguments as if there is an outstanding, unpaid claim.

Motion is a critical admission made repeatedly by the Receiver and Sterling. Specifically, those parties have admitted that there are no damages relating to their pending actions.

(3) No Basis for Colorado District Court Subject Matter Jurisdiction. Even if the Receiver was a claimant or creditor of the Indian Entities, this Court is not the appropriate court to bring a motion for an accounting in the California ABCs. The Indian Entities' ABCs are proceeding in the State of California under applicable California state law and are subject to the jurisdiction of the California courts. The Receiver has not offered, and the Assignee cannot find after extensive review, any basis for a federal district court overseeing a receivership in one state to compel an "accounting" of an Assignment for Benefit of Creditors estate that is proceeding under the applicable laws of another state where the party against whom the accounting is sought is neither a party to nor a claimant of the receivership estate. The Receiver has not shown any such basis and this Court should decline the Receiver's implicit invitation to invent such a basis, particularly given the lack of any nexus between the Indian Entities' ABCs and this Receiver. *See* Discussion, pp. 5-6, *supra*.[8] If the Receiver ever establishes that it is in fact a claimant in the Indian Entities' ABCs, it can request an accounting of the Indian Entities' ABCs at that time.

7. As set forth in the Motion itself, the Receiver's motivation is not so much to obtain an accounting of the Assignment Estates, but rather to set up what the Receiver perceives to be the basis for a Motion for Contempt. *See* Motion, p. 4, ¶ 13. Inasmuch as the information

---

[8] The Receiver implies that the Assignee is "susceptible" to motions like the Motion for Accounting because the Assignee has sought "affirmative relief" in the Receivership case. *See* Motion, p. 2, fn. 1. First, the Assignee has not sought "affirmative relief" in the Receivership action – every pleading filed by the Assignee has been either in response to actions taken by the Receiver or as part of the Assignee's attempts to defend itself and its constituents (the claimants in the Indian Entities' ABCs). Second, the Receiver provides no basis under which this Court could compel an accounting of a third party litigant in federal court (again, the Assignee has not been named as a defendant, with the exception of the "First Amended Complaint" that is currently the subject of this Court's Order to Show Cause). Simply put, the Receiver's Motion for an Accounting is nothing more than third party discovery dressed up as a motion in the Receiver's attempt to circumvent this Court's previous denial of the Receiver's Rule 45 Motion to Compel in this Action. *See* p. 5, *infra*.

contained in any accounting, in and of itself, is irrelevant to the Receiver, it is clear that the Receiver hopes to obtain an accounting to prove that the Assignee has "paid out" funds, ostensibly in contempt of the December 14 Order. However, as set forth below, the Receiver's contempt theory is flawed.

(1) The December 14 Order Is Not Effective as to the Assignee. First and foremost, the actions (or inactions) of the Assignee relative to the December 14 Order cannot form the basis of a contempt order because the December 14 Order does not, and cannot, apply to an entity who was not part of the proceeding giving rise to the order at issue or even a party in the case.[9] In essence, the Receiver interprets the December 14 Order as some sort of injunction against the Assignee against paying, *inter alia*, its counsel.

The Receiver asserts that the issue in its ostensible Contempt Motion is whether the Assignee "abided by Magistrate Judge Schlatter's Order not to pay any money . . ." *See* Motion, p. 2, ¶ 6. However, the December 14 Order does not order the Assignee not to pay in money. In fact, it doesn't order the Assignee to do or not do anything. Indeed, the language used by the Receiver, and adopted wholesale by the Magistrate in the December 14 Order, states: ". . . CMA is **cautioned** not to release any money from the Assignment for Benefit of Creditors until this issue is resolved."[10] December 14 Order [Docket No. 2015] (Emphasis added). However, even if the *language* was clear, which it is not, *see* p. 13, *infra*, for the reasons stated below, there is no basis for any such interpretation.

---

[9] This is not to suggest that the Assignee views itself as "above the law" of this Court, but rather that the December 14 Order, specifically, is not effective to enjoin or preclude the Assignee from fulfilling its lawful duties and obligations under applicable California law because the manner in which it was obtained violates even the bare essentials of due process.

[10] Clearly, the Receiver was aware of the concern the Magistrate might have in that regard by deliberately wording the submitted December 14 Order as vaguely as it did. The Receiver now attempts to use the extremely loose language *the Receiver itself chose to use* to circumvent due process.

i. *The Assignee and the Indian Entities Are Not Parties to Receivership.* Contrary to the Receiver's assertions in its Motion, neither the Assignee, nor the Indian Entities, is a party to the Receivership Estate. The Assignee has not been named in any pending complaint by the Receivership Estate and the Assignee is not a claimant in the Receivership Estate. Moreover, the Indian Entities were dismissed **with prejudice** on March 28, 2001, and have not been parties to the Receivership Estate since that time. *See* Order dismissing Indian Entities [Docket No. 1615]. In fact, the only connection that either the Assignee or the Indian Entities now have to the Receivership Estate is in defending themselves against frivolous litigation and defending the Assignee's right, on behalf of the creditors of the Indian Entities' ABC Estates, to receive one half of the Cash Fund currently held by Receiver's counsel. The Receiver's constant attempts to "bootstrap" parties into this Receivership Estate and then assert omnipotent jurisdiction over them (and over assets held by them for the benefit of third parties, wherever located) should not be condoned by this Court.

ii. *The Assignee Was Not a Party to the Disgorgement Motion.* The Assignee was not a party to the Disgorgement Motion which gave rise to the December 14 Order. The basic tenets of due process require that a party be given notice of any relief sought against it and the opportunity to respond. Thus, the December 14 Order, which the Receiver argues enjoins the Assignee from complying with its obligations under applicable California law, is not, and cannot be, effective against the Assignee.

iii. *The Disgorgement Motion Did Not Seek the Relief the Receiver Now Asserts Was Granted in the December 14 Order*. The Disgorgement Motion is bare of even a reference to the Assignee, let alone a request for the type of relief that the Receiver now asserts was granted: injunctive relief that, in effect, precludes the Assignee from administering the Indian Entities' ABCs under applicable California law. Injunctive relief, such as the type

asserted by the Receiver, is a fact specific, equitable remedy that invokes the sound discretion of the district court after a hearing. *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp.2d 1216, 1221 (D. Colo. 2001). "In shaping injunctive relief which freezes assets for the purpose of securing satisfaction of any judgment ultimately obtained, pursuant to Fed.R.Civ.P. 64, [the Court must] look exclusively to state law." *National Union Fire Ins. Co. v. Kozeny, et al.*, 115 F.Supp.2d 1210, 1239 (D. Colo. 2000), *citing* Fed. R.Civ.P. 65; *FDIC v. Antonio*, 843 F.2d 1311, 1315 (10th Cir. 1988). In Colorado, in order for a preliminary injunction to issue, the trial court must find that the party seeking the preliminary injunction has demonstrated: (i) a reasonable probability of success on the merits; (ii) a danger of real, immediate, and irreparable injury that may be prevented by injunctive relief; (iii) the absence of a plain, speedy, and adequate remedy at law; (iv) that the granting of a preliminary injunction will not disserve the public interest; (v) that the balance of the equities favors the injunction; and (vi) that the injunction will preserve the status quo pending a trial on the merits. *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 909 (Colo. App. 1997). It is axiomatic that all of the forgoing, in addition to being demonstrated in the request for relief, must also be noticed to the party against whom such relief is sought. The Receiver obviously failed to meet the foregoing standards as it failed to even raise the request for the injunctive relief it now seeks to enforce.

It is critical to note that this is not an instance of a receivership court asserting jurisdiction over specific, identifiable property of this Receivership Estate. Rather, it is an attempt by the Receiver to use vague and surreptitiously inserted language in an order to bully a defendant into not mustering a legal defense. Any doubt that this is the Receiver's true intent is removed by the language in the Receiver's Motion itself. *See* Motion at ¶ 6 ("Had [the Assignee] adhered to the [December 14] Order, this case would be completely different, considerably less expensive for the receiver, and consumptive of far fewer resources of this court"). Of course, litigants such as

the Receiver would be far more successful, and successful at less cost, if their litigation targets were deprived of the ability to defend themselves, but the Receiver's suggestion that Magistrate Judge Schlatter intended to obviate the Assignee's ability to defend against this litigation is preposterous. This Court should not, and cannot, condone such an egregious abuse of the judicial process.

iv. *Assignee's Position on December 14 Order.* The Assignee has always exercised caution in its administration of the Indian Entities' ABCs. The Assignee has continued to pay all administrative costs of the ABC Estates as they accrue, as permitted and, in fact, as required by applicable California law. Such administrative costs include the expenses of counsel in defending this litigation and advising the Assignee in all other matters relating to the Indian Entities' ABCs. Notwithstanding the foregoing, the Assignee has not made any further interim distributions to general unsecured creditors since the entry of the December 14 Order. The Receiver disingenuously implies that it recently learned of the Assignee's position *vis-a-vis* the December 14 Order. *See* Motion, p. 2, ¶ 4. Since the December 14 Order was issued, the Assignee has been consistent in its position that such order could not, and would not, enjoin the Assignee from performing its fiduciary obligations in the Indian Entities' ABC, such as paying its administrative expenses, including, *inter alia*, its counsel to defend the Receiver's numerous lawsuits. *See* Exhibit B, Correspondence, various dates (specifically, Letter dated December 20, 2005, from J. Trent to J. Tanner, ¶ 2; e-mail dated January 3, 2006, from R. Pitts to J. Tanner & T. Quinn, ¶ 4; Letter dated February 6, 2006 from R. Pitts to J. Tanner, ¶ 2). If the Receiver believed that such payments violated the December 14 Order, it could have and should have raised the issue nine months ago. Moreover, if the Receiver believed there was a justification for any such injunction, it could have, and should have, engaged the appropriate judicial process to obtain same. The Receiver did neither.

(2) The December 14 Order is Vague and Ambiguous. This Court need not address the issue of whether the December 14 Order applies to the Assignee. The Court need only review the vague and ambiguous language – drafted by the Receiver – to determine that the December 14 Order is ineffective, particularly where, as here, there is nothing in the Disgorgement Motion to provide the appropriate context. For example, the December 14 Order "cautions" the Assignee about how it complies with its fiduciary duties. Clearly, the word "cautioned" does not have the same legal effect as the word "ordered" or "enjoined," as the Receiver would have the Court hold. The vagueness of the Order's language does not end there. For example, does the phrase "release any money" refer to any further interim distributions to the creditors of the Indian Entities (the creditors to which the Assignee actually owes fiduciary duties)? Does that phrase mean that the Assignee cannot pay its counsel; or the storage fees for the remaining property; or the accountants preparing the tax returns for the Assignment Estates? What does the phrase "until this matter is resolved" mean? Until the Receivership Estate is resolved (which may mean that the Indian Entities' creditors do not receive further distributions for years)? Until the Assignment Estate is resolved? Until the allegation referenced in the previous paragraph of the December 14 Order is resolved? These are all questions that would have been addressed and answered if the Receiver had followed the appropriate judicial process, specifically, seeking injunctive relief and addressing these questions in a proceeding where the Assignee was actually provided an opportunity to respond. Because the Receiver did not utilize that procedure, but instead simply inserted the language in an order presented to Magistrate Judge Schlatter as part of the Disgorgement Motion and hearing thereon, the vagueness and ambiguities remain and render the December 14 Order ineffective.

8. The egregious nature of the Receiver's Motion is heightened by the fact that the Motion has been brought in an attempt to circumvent this Court's July 10, 2006, denial of the

Receiver's Motion to Compel discovery against the Indian Entities' ABC Estates in this Action. In the August 29, 2006 letter referenced by the Receiver (but not attached to the Motion), the Receiver requests "an accounting of all monies paid out by [the Assignee] in any of the Indian Estates since the first Assignment for the Benefit of Creditors" because "[the Assignee's] *production under the Receiver's discovery* did not include any information on the revenues of the assignment estates, nor did it include any information on the expenses and claims paid from the assignment estates." *See* Letter from J. Tanner to J. Trent, dated August 29, 2006, p. 2 (emphasis added), attached as Exhibit C. The Assignee's reply points out the Receiver's blatant attempt to circumvent this Court's order and requests that the Receiver provide the Assignee with any applicable authority in support of the Receiver's request. *See* Letter from R. Pitts to J. Tanner dated September 1, 2006, attached as Exhibit D. No response to this request was received, other than the filing of the Receiver's Motion.

9. The Assignee does not view a threat of, or request for, sanctions lightly. However, there reaches a point in some litigation where a litigant finds itself defending against parties and pleadings where reason has gone out the window, where pleadings are filed without even an attempt to set forth a legal basis, and where court rulings are ignored. Because this litigation has reached that point, the Assignee seeks sanctions as set forth below.

(1) <u>The Assignee Has Complied with Its 7.1 Duties.</u> As set forth in the Assignee's letter dated September 1, 2006, Exhibit D, the Assignee stated in clear and unambiguous language that it would seek sanctions against the Receiver if the Receiver followed through on its threat to file the baseless Motion for Accounting. The Assignee also stated to the Receiver that if there was any legal authority for its proposed Motion, the Assignee would be happy to review same so that a meaningful Rule 7.1 conference could occur on the proposed

Motion. The Receiver not only failed to provide the Assignee with the requested legal authority, the Receiver also failed to include the requisite legal authority in the Motion itself.

(2) Violation of Fed.R.Civ.P 11(b). The Receiver's Motion violates both the letter and intent of each of the four elements of Fed.R.Civ.P. 11(b), and is thus subject to sanctions. First, the Motion was brought for an improper purpose in that the only possible "purpose" for the Motion would be: (i) to obtain an accounting of the ABCs; and/or (ii) to set up a Motion for Contempt. To the extent the Motion seeks to obtain an accounting of the ABCs, it is an improper attempt to circumvent this Court's previous denial of the Receiver's Motion to Compel and, moreover, is irrelevant to the Receiver and the Receivership Estate. To the extent the Motion is a thinly disguised Motion for Contempt (or an attempt to establish a basis therefore), it is an improper attempt to eliminate the Assignee's ability to defend itself in this litigation and to carry out its duties under the Indian Entities' ABCs. Second, the legal contentions contained in the Motion are not warranted in that there is no basis whatsoever for the requested relief. Third, the factual allegations (or, more aptly, the factual implications) that the Receiver is a creditor or claimant of the Indian Entities' ABC are not supported by any evidence and, in fact, have been shown repeatedly to be erroneous and meritless. Finally, the continued and pervasive implicit denial of exculpatory facts by the Receiver (such as the refusal to acknowledge the legal implications of its failure to file a proof of claim in the Indian Entities ABC estates) has resulted in unnecessary expense on the part of all parties and this Court.

This Court should award sanctions to the Assignee pursuant to Fed.R.Civ.P 11(c) in an amount sufficient to deter the Receiver's litigation tactics in the future. The Assignee respectfully submits that such sanctions should be comprised of not less than the amount in legal fees expended by the Assignee in responding to the Receiver's baseless Motion for an Accounting, which amount would be determined by separate submission to this Court.

WHEREFORE, for the reasons set forth herein, the Assignee respectfully requests that this Court deny the Receiver's Motion for an Accounting and award appropriate sanctions as set forth herein.

Respectfully submitted this 20th day of September, 2006.

**BIEGING SHAPIRO & BURRUS LLP**

By: s/ Julie Trent
Julie Trent, No. 17086
4582 S. Ulster Street Pkwy., Suite 1650
Denver, CO 80237
Office: (720) 488-0220
Fax: (720) 488-7711
E-mail: jt@bsblawyers.com

Robert Pitts
LAW OFFICE OF ROBERT W. PITTS
660 Newport Center Drive, Suite 400
Newport Beach, California 92660
T: 949-720-4125
F: 949-720-4111
E: rpitts@lawrwp.com
*Attorneys for CMA as Assignee of the Indian Entities*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Thomas F. Quinn, Esq. tquinn@tfqlaw.com

And by U.S. Mail, first class, postage prepaid and facsimile number to the following:

Michael E. Chodos, Esq.
Michael E. Chodos, Attorney at Law
56 Malaga Cove Plaza
Palos Verdes Estates, CA 90274
Fax: 310.791.1958

Jack Tanner, Esq.
Fairfield & Woods, PC
1700 Lincoln St., Suite 2400
Denver, CO 80203
Fax: 303.830.1033

s/ Julie Trent

**Julie Trent**, No. 17086
Bieging Shapiro & Burrus, LLP
4582 South Ulster Street Parkway, Suite 1650
Denver, Colorado 80237
Telephone: (720) 488-0220
Fax: (720) 488-7711
E-mail: jt@bsblawyers.com