## MUTUAL RELEASE

Sterling Consulting Corporation, in its capacity as receiver appointed in the Receivership Action (the "Receiver"), Sterling Consulting Corporation, in its individual capacity ("Sterling"), on the one hand, and Indian Motorcycle Company, American Indian Motorcycle Company, Inc., IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. (separately referred to as "IMC," "AIMC", "Licensing," and "Holdings," respectively and collectively referred to as "Indian"), on the other, hereby enter into the following Mutual Release ("Mutual Release") as of the 31st day of August, 2000.

The parties to this Mutual Release have entered into a settlement agreement made as of the 31st of August, 2000 (the "Settlement Agreement"). The execution and delivery of this Mutual Release is required by the provisions of the Settlement Agreement.

### AGREEMENT

In consideration of valuable consideration, the sufficiency of which is hereby acknowledged, the Receiver and, Sterling (collectively and individually) and Indian (collectively and individually) do hereby agree as follows:

1.    **Defined Terms.** Those terms defined in the Settlement Agreement shall have the same meaning when employed herein and the following terms, when set out in initial upper case letters, shall have the following meanings respectively:

a.    "Amended Purchase Agreement" shall mean that certain Amended Purchase Agreement between Indian and the receiver dated October 16, 1998, as modified by the Joint Motion to Approve the Amended Purchase Agreement, the Joint Motion to Approve Termination of Eller Contract, Set Contractual Approval Procedure, and Approve Interim Funding of Receivership dated October 19, 1998, and various District Court Orders including the Order approving the Amended Purchase Agreement.

b.    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts.

c.    "Cow Creek Action" shall mean that matter captioned *The Cow Creek Band of the* Umpqua *Tribe of Indians v. Sterling, as receiver, and IMCOA*, United States District Court for the District of Colorado No.

1.



EXHIBIT

A

99-Z-453, or any other action brought by the Cow Creek Band of the Umpqua Tribe of Indians brought against any of the Indemnified Parties, in its individual capacity, regarding any events allegedly arising out of the Receivership Action.

d. "Wind-Down Protocol Outline" shall mean the Wind-Down Protocol Outline, dated December 1, 1999, between the Receiver and IMCOA, including the Addendum of Confidential Matters.

e. "Receiver's Parties" shall mean the Receiver, Sterling, the Trustee, and all of their respective agents, employees, officers, directors, shareholders, successors, assigns, heirs, representatives, executors, administrators, attorneys, and insurers.

f. "Indian's Parties" shall mean IMC, AIMC, Licensing, Holdings, all of their respective agents, employees, officers, directors, shareholders, successors, assigns, heirs, representatives, executors, administrators, attorneys, and insurers.

2. **Exception: Release does not derogate from the Grant.** Nothing in this Mutual Release shall constitute a reassignment or transfer of any of the property transferred by the Receiver to Indian pursuant to the terms of the Amended Purchase Agreement.

3. **Release by Indian in Favor of the Receiver and Sterling.** Subject to the obligations set forth in the Settlement Agreement, the Indemnification Agreement, and the Stock Option, Indian for itself and for their successors and assigns, and for all of their respective affiliates and subsidiaries, agents, employees, officers, directors, shareholders, successors, assigns, heirs, representatives, executors, administrators, attorneys, does hereby remise, release, and forever discharge both individually and collectively, the Receiver's Parties of and from any and all liability for any and all claims, whether known or unknown, from or in any way arising or growing out of:

a. the Receiver's Parties' participation in any aspect of the Receivership Action;

b. further performance or liability under or relating to:

i. the Amended Purchase Agreement;

ii. the Wind-Down Protocol Outline;

2.

iii.     all Orders and Rulings granted by the District Court requiring any payment, action, or performance by the Receiver's Parties (individually or collectively) of any amount, deed, liability or obligation whatsoever to or for the benefit of Indian;

iv.     all Orders and Rulings granted by the Bankruptcy Court requiring any payment, action, or performance by the Receiver's Parties (individually or collectively) of any amount, deed, liability or obligation whatsoever to or for the benefit of Indian;

v.     any agreement, whether written or oral and any obligation otherwise arising at law or in equity, whether statutory or otherwise, or otherwise resulting from a fiduciary relationship or negligence, creating or allegedly creating any obligation on the part of the Receiver's Parties to Indian in any capacity or authority public or private whatsoever; and

c.     any other matter whatsoever relating to facts, circumstances, duties, obligations, acts or omissions which exist or may exist or have taken place at any time prior to the date hereof,

for which Indian's Parties have claimed, or could have claimed, that the Receiver's Parties are or were liable.

4.     **Release by the Receiver and Sterling in Favor of Indian.** Subject to the obligations set forth in the Settlement Agreement, the Indemnification Agreement, and the Stock Option Agreements, the Receiver and Sterling, for themselves and on behalf of their successors, assigns, and all of their respective affiliates and subsidiaries, agents, employees, officers, directors, shareholders, successors, assigns, heirs, representatives, executors, administrators, attorneys, do hereby remise, release, and forever discharge the Indian Parties both individually and collectively of and from any and all liability for any and all claims, whether known or unknown, from or in any way arising or growing out of:

a.     Indian's participation in any aspect of the Receivership Action;

b.     further performance or liability under or relating to:

i.     the Amended Purchase Agreement;

ii.     the Wind-Down Protocol Outline;

3.

> iii.    all Orders and Rulings granted by the District Court requiring any payment, action or performance by Indian (individually or collectively) of any amount, deed, liability or obligation whatsoever to or for the benefit of the Receiver, the Combined Estates, Sterling or the Blocks;
>
> iv.    all Orders and Rulings granted by the Bankruptcy Court requiring any payment, action or performance by Indian (individually or collectively) of any amount, deed, liability or obligation whatsoever to or for the benefit of the Receiver, the Combined Estates, Sterling or the Blocks;
>
> v.    any agreement, whether written or oral and any obligation otherwise arising at law or in equity, whether statutory or otherwise, or otherwise resulting from a fiduciary relationship or negligence, creating or allegedly creating any obligation on the part of Indian to the Receiver, Sterling or the Blocks in any capacity or authority public or private whatsoever;
>
> vi.    without limiting the generality of the foregoing, this release is specifically intended, subject to the other conditions contained herein, to release any and all claims seeking the to have the Purchased Assets returned to the Receiver or to a third party; and

c.    any other matter whatsoever relating to facts, circumstances, duties, obligations, acts or omissions which exist or may exist or have taken place at any time prior to the date hereof,

for which the Receiver's Parties have claimed, or could have claimed, that Indian's Parties are or were liable.

5.    **Cow Creek Excepted.** Nothing in this Mutual Release shall remise, release, or discharge any claim by the Receiver or Sterling for Indemnification against any claim arising out of or relating to the Cow Creek Action.

6.    **Release of Claims Relating to AIMC.**

a.    Indian has represented to the Receiver that Indian acquired the shares and assets (including the goodwill) of AIMC through agreements with the 1992 Mathre Family Trust, Charles D. Mathre and Lois L. Mathre, both in their personal capacities and as trustees under a declaration of trust dated January 28, 1992, which settled the

4.

said trust and that Indian has an interest in ensuring that no dispute
shall arise between the Receiver's Parties and the Mathres or the 1992
Mathre Family Trust which shall in any way impugn or derogate from
the transfer of property, rights and interest to Indian pursuant to
these arrangements. Subject to paragraph 6.b. hereof, without
intending to limit the generality of the release granted above, the
Receiver, for and on behalf of the Receiver's Parties, does hereby
remise, release, and forever discharge the 1992 Mathre Family Trust,
Charles D. Mathre and Lois L. Mathre, both in their personal
capacities and as trustees of the 1992 Mathre Family Trust, both
individually and collectively, and all of their respective affiliates and
subsidiaries, agents, employees, officers, directors, representatives,
successors, assigns, heirs, representatives, executors, administrators,
attorneys, servants, and insurers, of and from any and all liability for
any and all claims, whether known or unknown, from or in any way
arising or growing out of any matter whatsoever arising prior to the
date hereof. The Receiver and Sterling recognize and acknowledge
that they have received valuable consideration from Indian in
exchange for this release.

b. The Receiver and Indian intend this provision to benefit the 1992
Mathre Family Trust, Charles D. Mathre and Lois L. Mathre, both in
their personal capacities and as trustees. Notwithstanding anything to
the contrary in this paragraph 6, the Receiver and Indian do not intend
this paragraph 6 to benefit parties that have not released the
Receiver's Parties hereunder. For greater certainty, if any of the 1992
Mathre Family Trust, Charles D. Mathre and Lois L. Mathre, either in
their personal capacities or as trustees, or any of their respective
affiliates and subsidiaries, agents, employees, officers, directors,
representatives, successors, assigns, heirs, representatives, executors,
administrators, attorneys, servants, and insurers ("Mathre Affiliate"),
shall bring any action against the Receiver or Sterling based upon any
matter whatsoever arising prior to the date hereof, then the Receiver
and Sterling shall not, as against such person, be bound by the release
provided for in paragraph 6.a hereof. Similarly, should any Mathre
Affiliate bring any action against a third party who thereafter seeks
defense, protection, or indemnification from the Receiver or Sterling
based upon any matter whatsoever arising prior to the date hereof,
then the Receiver and Sterling shall not be bound by the release
provided for in paragraph 6.a hereof as against such Mathre Affiliate.

7. **Release of Claims Relating to the Blocks.** Indian
acknowledges that the Receiver and Sterling have an interest in ensuring

5.

that no dispute shall arise between the Indian and Andrea A. Block and Richard A. Block which shall in any way impugn or derogate from the Block's ability to pursue their profession, whether or not such pursuit includes competition with Indian. Without intending to limit the generality of the release granted above, but subject to the obligations set forth in the Inducement Agreement, Indian, for and on behalf of the Indian Parties, does hereby remise, release, and forever discharge Andrea A. Block and Richard A. Block, and all of their respective affiliates, agents, employees, representatives, successors, assigns, heirs, representatives, executors, administrators, attorneys, servants, and insurers, of and from any and all liability for any and all claims, whether known or unknown, from or in any way arising or growing out of any matter whatsoever arising prior to the date hereof. Indian recognizes and acknowledges that the Indian Parties have received valuable consideration from the Receiver's Parties in exchange for this release.

8.    **Covenant Not to Induce Third Party Claims.** The parties agree not to make any claim or institute any proceedings against any other person, firm, or corporation that might claim contribution or indemnity, whether under any legal theory, from any of the parties discharged by this release.

9.    **Representations as to Legal Capacity and Authority - In Favor of the Indian Parties.** Sterling hereby declares and represents to Indian, and acknowledges that no other person, firm, or corporation has received any assignment, subrogation, or other right of substitution to any of the rights, claims, privileges, liabilities, or obligations which have been released by it pursuant to this Mutual Release and that it is the proper parties with full legal capacity and authority to grant the release hereby granted to Indian by Sterling.

10.   **Representations as to Legal Capacity and Authority in Favor of the Receiver's Parties.** Indian hereby declares and represents, and acknowledges that the Receiver and, Sterling are relying upon this representation in entering into this Mutual Release, that no other person, firm, or corporation has received any assignment, subrogation, or other right of substitution to any of the rights, claims, privileges, liabilities or obligations which have been released by it pursuant to this Mutual Release and that it is the proper party with full legal capacity and authority to grant the release hereby granted to the Receiver's Parties.

11.   **Acknowledgment Regarding the Effect of this Release.** The parties to this Mutual Release fully realize that they may have sustained

6.

unknown and unforeseen losses, costs, expenses, damages, liabilities, claims, damage to property, and business losses, and the consequences thereof, which may be at this time, heretofore and hereafter, unknown, unrecognized and not contemplated by them, which resulted or may or will result from the above-mentioned circumstances and all matters incident and related thereto. Except as otherwise specifically set forth herein, by executing this Mutual Release, the parties fully intend to release each other from any and all liability for any and all such unknown and unforeseen losses, expenses, damages, costs, liabilities, business losses, damages to property, and the consequences thereof.

12. **Proviso Regarding Effect of Release.** This Mutual Release does not release any claim which the Receiver may otherwise have had against Indian's Parties if the Receiver can show:

a.    that Indian intentionally concealed a past or present fact from the Receiver;

b.    that Indian knew that the fact was material;

c.    that the Receiver entered into the Mutual Release relying on the assumption that the concealed fact did not exist or was different from what it actually was;

d.    that the Receiver's reliance was justified; and

e.    that the Receiver's reliance caused the Receiver its damages.

Notwithstanding the foregoing, this Mutual Release shall release all claims known or unknown based on any legal theory whatsoever for claims of less than $75,000.

13. **No Affirmative Action.** The parties understand that certain advantages that accrue from the Receivership Action shall be forever waived by entering into this Mutual Release. The parties nevertheless assume the risk of losing these advantages, whatever their nature, known or unknown. Without limiting the generality of the foregoing, Indian agrees to forever refrain from filing any motions (except motions made with the consent of the Receiver, Sterling or the Blocks as the context may require) in the Receivership Action or any actions involving the Subject Matter that require performance of any kind by the Receiver, Sterling or the Blocks, or a response by the Receiver, Sterling or the Blocks. Similarly, the Receiver, Sterling and the Blocks agree to forever refrain from filing any motions (except for motions made with the consent of Indian) in the Receivership

7.

Action or any actions involving the Subject Matter that require performance of any kind by Indian, or a response by Indian. If either party inadvertently files such a motion, the motion shall be promptly withdrawn by such party. Refusal to withdraw such a motion shall be deemed a dispute under the terms of the Settlement Agreement and subject to the Formal Dispute Resolution Process thereof.

14.     **Pending Court Approval No Affirmative Action Pending Entry of Approval Order.** Indian and the Receiver hereby agree to refrain from filing any motions (other than joint motions) in the Receivership Action or any actions involving the Subject Matter that require performance or a response of any kind by the other.

15.     **Accord and Satisfaction; No Admission of Liability.** It is expressly understood and agreed that the acceptance of the consideration and releases herein is in full accord and satisfaction of disputed claims and that the exchange of the consideration and releases herein is not to be construed in any way as an admission of liability on the part of any party hereto, but, on the contrary, each party hereof specifically denies any liability as to any matters related or incident thereto, or otherwise.

### GENERAL PROVISIONS

16.     **District Court Approval.** This Mutual Release shall not become effective until approved by the District Court. After such approval and prior to the termination of the Receivership, it may only be modified upon the further approval of the District Court. After such approval and after the termination of the Receivership, this Mutual Release may only be modified upon the agreement of the parties.

17.     **Governing Law and Jurisdiction.** This Mutual Release shall be governed by law of the United States and the State of Colorado, except for Colorado choice of law rules should they require the substantive law of a different jurisdiction control. By approving this Mutual Release, the District Court consents to the Formal Dispute Resolution Process as set forth in the Settlement Agreement.

18.     **Venue, Dispute Resolution.** The parties agree that any dispute with respect to this Mutual Release shall be resolved exclusively through the Formal Resolution Process as set forth in the Settlement Agreement.

8.

19.   **Remedies.**  Any forbearance or failure or delay in exercising any remedy hereunder shall not be deemed to be a waiver of any other remedy a party may be entitled to under this Mutual Release.

20.   **Third-Party Beneficiaries.**  This Mutual Release is intended to confer upon the signatories hereto all rights and remedies hereunder. This Mutual Release shall not confer upon any non-signatory any rights or remedies hereunder unless (a) that non-signatory was contemplated by the parties to enjoy the benefits of this Mutual Release and (b) that non-signatory contemporaneously consents to release the party from whom the non-signatory seeks a release on terms and conditions substantially identical to the release contained herein.

21.   **Headings and Captions.**  All headings and captions used in this Mutual Release are for convenience only, and shall not be construed to either limit or broaden the language of this Mutual Release or any particular section of this Mutual Release.

22.   **Agreement Integrated.**  This Mutual Release is an exhibit to a Settlement Agreement, and is meant to be read in conjunction with that Settlement Agreement and all the other exhibits thereto. When read in conjunction with that Settlement Agreement (including the other exhibits), those documents constitute the entire agreement between the parties pertaining to the Subject Matter. This Mutual Release supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the parties. There are no warranties, representations, or other agreements between the parties in connection with the Subject Matter except as specifically set forth in this Mutual Release, the Settlement Agreement, and the other exhibits attached thereto.

23.   **Counterparts.**  This Mutual Release may be executed in counterparts.

24.   **Costs of Preparation.**  Indian shall pay its own costs and expenses, including fees of attorneys, accountants, and financial advisors, necessary in the preparation of this Mutual Release, and such other agreements, instruments and documents required to be executed in connection herewith, and the consummation of the transactions contemplated herein and therein. The Receiver shall pay its own costs and expenses and the costs and expenses of Sterling, including fees of attorneys, accountants, and financial advisors, necessary in the preparation of this Mutual Release, and such other agreements, instruments and documents required to be executed in connection herewith, and the consummation of the transactions contemplated herein and therein.

9.

25.   **Inurement.** This Mutual Release is to the benefit of each party hereto, and shall inure to the benefit of the affiliates and subsidiaries of each such party and to the benefit of the principals, employees, owners, attorneys, and agents of each party and each such affiliate and subsidiary.

26.   **Assignment.** The Receiver and Sterling may not assign their obligations hereunder without the prior written consent of Indian. Indian may not assign its obligations hereunder without the written consent of the Receiver (unless discharged) and Sterling. This Mutual Release shall not, in any way, be construed as a limitation on Indian's right to assign a Purchased Asset. However, in the event of an assignment of all or substantially all of its Class 12 and/or all or substantially all of its Class 25 trademark rights in North America (comprised of the United States, Canada and Mexico, collectively), or the European Union (comprised of all member countries, collectively, as of the date of this Agreement), Indian shall give the Receiver's Parties prior notice of the assignment and Indian shall require the assignee thereof to assume the obligations hereunder. An assumption of obligations by the assignee pursuant to this section 26 shall not, in any way, limit or diminish Indian's obligations. Notwithstanding anything herein to the contrary, Indian shall not execute an assignment that defeats the intent of this Mutual Release.

27.   **Notices.** Any demand, notice, or other communication required or permitted hereunder shall be deemed sufficiently given if hand delivered, sent by registered or certified mail, return receipt requested, or sent by overnight courier (such as Federal Express), and addressed as follows (the address for any party may be changed by giving notice thereof to the other parties):

If to Indian:

Indian Motorcycle Company
Attention:  Chief Financial Officer
Indian Motorcycle Company
200 East 10th Street
Gilroy, California  95020

With a copy to:

J. Eric Elliff, Esquire
Morrison & Foerster LLP
5200 Republic Plaza
370 Seventeenth Street
Denver, Colorado  80202-5638

10.

If to the Receiver or Sterling:

Sterling Consulting Corporation
91 East Dartmouth Avenue
Englewood, Colorado  80110

With a courtesy copies to:

John M. Tanner, Esquire
Fairfield and Woods
Suite 2400
1700 Lincoln
Denver, Colorado  80203-4524

-and-

Marcus L. Squarrell, Esquire
Irizarry, McCall & Squarrell, P.C.
Suite 4704
1700 Lincoln Street
Denver, Colorado  80203

   28.   **Authority and Advise of Counsel**. The undersigned signatories to this Mutual Release have carefully read the above and foregoing and know the contents thereof, have the authority to execute this Mutual Release, in the case of corporations are in good standing in the state wherein they are incorporated, and have signed the same as their own free and voluntary act and after having the same explained to them by counsel.

Agreed and Accepted:
Sterling Consulting Corporation, as Receiver


By: _____
Richard A. Block, President


Sterling Consulting Corporation, Individually


By: _____
Richard A. Block, President

11.

Indian Motorcycle Company

By: _____
James J. Kelly, CFO

IMCOA Licensing America, Inc.

By: _____
James J. Kelly, CFO

IMCOA Holdings America, Inc.

By: _____
James J. Kelly, CFO

IMCOA Holdings America, Inc.

By: _____
James J. Kelly

American Indian Motorcycle Company, Inc.

By: _____
James J. Kelly

12.

# BIEGING SHAPIRO & BURRUS LLP

ATTORNEYS AT LAW

4582 S ULSTER STREET PKWY
SUITE 1650 • DENVER
COLORADO 1 80237
TEL 720 1 488 0220
FAX 720 1 488 7711
WWW.BSBLAWYERS.COM

December 20, 2005

Julie Trent, Esq.
Direct Dial: (720) 488-5435
jt@bsblawyers.com

Via U.S. Mail and E-mail

Mr. Jack Tanner, Esq.
1700 Lincoln St., Suite 2400
Denver, CO 80203-4524

**Re:   Indian**

Dear Jack:

I am in receipt of Rick Block's e-mail of December 19, 2005 in response to Michael Chodos' e-mail of December 16, 2005 and apparently in partial response to my letter of December 19, 2005. While the bulk of Mr. Block's e-mail appears directed to Audax, he does state that you have received only three of the five Assignments (Mr. Block's mischaracterization of them being "arranged by Audax" notwithstanding) in this matter. Assignments have been made by: (i) Indian Motorcycle Corporation; (ii) IMCOA Real Estate Services, Inc.; (iii) Indian Motorcycle Company; (iv) IMCOA Licensing America, Inc.; and (v) IMCOA Holdings America, Inc. Please let me know which Assignments you and/or Mr. Quinn are missing and I will re-send them to you forthwith.

Regarding Mr. Block's comments with respect to an "Order dated December 14, 2004," please be advised that the Assignee has not been served with any pleading that would make the Assignee a party to any such Order, nor any matter giving rise to such Order, and that the Assignee will continue to carry out its fiduciary duties and obligations in accordance with California law.

Very truly yours,

Julie Trent

JT/s

00036202

EXHIBIT
B

Mr. Jack Tanner, Esq.
December 20, 2005
Page 2

cc:   Robert Pitts, Esq., via e-mail
       Eugene Sprague, Esq., via e-mail
       Michael Chodos, Esq., via e-mail
       Thomas Quinn, Esq., via e-mail

BSB

## Robert Pitts

| | |
|---|---|
| **From:** | Robert W. Pitts [rpitts@lawrwp.com] |
| **Sent:** | Tuesday, January 03, 2006 9:53 AM |
| **To:** | 'Tanner_Jack'; 'Thomas Quinn' |
| **Cc:** | 'Julie Trent' |

**Subject:** FW: IMCOA - Indian

Jack and Tom,
In response to an email of December 28, a copy of which is included below, please note the following response of the Assignee. This email is addressed to both of you as it relates to issues in both the 95-00777 action and the 05-01573 action.

With respect to any request for documents, we believe the Assignee has voluntarily provided all relevant documents, based on the legal theories (or lack thereof) advanced by the Receiver thus far. The "fifth" assignment, for Indian Real Estate Services, Inc., apparently was either inadvertently omitted from Julie Trent's letter dated December 23 or was not forwarded to Mr. Block). In any event, a copy of that ABC is attached hereto. Beyond that, the Assignee will respond to any formal discovery at the appropriate time and in the appropriate manner, and consistent with the express mandate of the Massachusetts District Court.

With respect to the issue of service in the 05-01573 action, the Assignee and each of the three assignors that were named in such action (i.e., Indian Motorcycle Company, IMCOA Holdings America, Inc and IMCOA Licensing America, Inc.) have been served. Each of those four entities that have been served have answered the complaint.

Finally, with respect to the issue of service of the referenced December 14 Order, please note that in light of that Order and the circumstances giving rise to it (including the fact that it relates to a motion to which the Assignee was never even a party), the Assignee will continue to carry out its fiduciary duties and obligations in accordance with California law. The oft-repeated refrain of "in rem jurisdiction" is all well and good, but is irrelevant to the Assignee's administration of the Indian Entities' assignments under California law. Not only has there NOT been any showing that the Assignee is holding property of the receivership estate, there hasn't even been a cogent allegation that would give rise to a colorable claim that the Assignee is holding receivership property. Furthermore, if and when the Receiver makes such a cogent allegation in the proper forum, the Assignee will address it accordingly. Until then, please be advised that the Assignee will conduct its administration of the Indian Entities assignment in accordance with all applicable laws.

Should you have any questions, please let me know.
Thanks,
Bob

*Robert W. Pitts*
**LAW OFFICE OF ROBERT W. PITTS**
**660 Newport Center Drive, Suite 400**
**Newport Beach, California 92660**
**T:  949-720-4125**
**F:  949-720-4111**
**E:  rpitts@lawrwp.com**
**W: www.lawrwp.com**


**From:** RichardBlock [mailto:rblock@xpn.com]
**Sent:** Wednesday, December 28, 2005 10:02 AM
**To:** Julie Trent
**Cc:** Sprague_Gene; Tanner_Jack; Quinn_Thomas
**Subject:** IMCOA - Indian

Julie:

I just received your letter to Jack Tanner dated December 23, 2005. First, I would like to point out that you again failed to add me to the mailing list. I am beginning to believe that this is intentional. As a result, it took five days to get to me. Once again, I will ask that you include me on the courtesy copy list for any documents you send to Jack Tanner, Tom Quinn, or both. In return, we will put Bob Pitts back on the courtesy copy list for documents from us.

You will soon receive a copy of the Notice of Discovery we filed (or are filing today) in the Receivership Action. In this Notice, we have advised the Court that informal discovery did not work and that we will be pursuing formal discovery. I thank you for your attempt to provide a few documents informally.

I have just a few observations about what little you produced, however, and would appreciate further information and additional documents while we are preparing our formal discovery:

1. You sent four Assignments, but there were reportedly five Assignments in all. We would like to have the fifth and any others that may have been signed.

2. The Assignment for Indian Motorcycle Corporation was signed September 26, 2003, whereas the Assignments for Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. were signed May 12, 2004. During the interim seven and a half months, there were efforts by CMA, made known to the public, to sell assets of Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. (most notably, the trademark). Because this sale effort predated the Assignments of Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc., we must assume there were other arrangements. At the time, CMA mentioned a "bundling" arrangement. Please provide us with any documents and information CMA may have to evidence this arrangement.

3. You sent corporate minutes for a "meeting of the directors of Indian Motorcycle Company" dated September 26, 2003. This is completely inconsistent with the dates on the Assignments you sent. Please explain this discrepancy.

4. At the end of the corporate minutes for a "meeting of the directors of Indian Motorcycle Company" dated September 26, 2003, there is a Consent to Assignment by Stockholders signed by Frank O'Connell as the sole shareholder of Indian Motorcycle Corporation. Besides being unrelated to the corporate minutes to which it is attached, this raises a very large number of questions that will require explanation and documentation. The most important question that surfaces is the justification CMA had to use assets from Indian Motorcycle Company, IMCOA Licensing America, Inc., IMCOA Holdings America, Inc., and the fifth Assignor to pay the liabilities of Indian Motorcycle Corporation if Indian Motorcycle Corporation is owned by solely

1/3/2006

Frank O'Connell and not Indian Motorcycle Company.

The documents you attached to your letter have raised some important questions, only a few of which have been mentioned above. Any assistance CMA can volunteer would be appreciated, but we will understand if CMA decides to wait for our formal discovery requests.

In addition to matters involving the sale of assets by CMA, there are questions about certain events that post-dated the receiver's sale to Indian Motorcycle Company and predated the Assignments that, contrary to your previous letter, cannot be answered by documents in the files of the receivership. We assume CMA took possession of the files of Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. when CMA took the Assignments of those companies. Please let us know where those documents are and who is in control of them (if it is not CMA). We will add them to the discovery.

Without intending to limit the generality of the foregoing request, we are particularly interested in correspondence and other documents that relate to transfers of stock in Indian Motorcycle Company between the time the receiver sold its assets and the Assignment. The receiver, claimants in the receivership who owned stock, and the government are all interested in this information and the documents that support it. Any information CMA has to facilitate obtaining this information and the documents to support it would be appreciated.

You will notice that I have added Mr. Sklarew to the courtesy copy list for this email. Mr. Sklarew is the Assistant Chief, Civil Trial Section, Northern Region, U. S. Department of Justice, Tax Division, and the government lawyer responsible for litigating the tax claim against the receivership. As the government is interested in any source for the collection of taxes, and as CMA and the Indian entities would appear to us to all have significant liability for this, you should assume that this will not go away. In fact, your assertion in your letter dated December 20, 2005 to Jack Tanner (and not copied to me) that CMA "has not been served with any pleading that would make the Assignee a party to any such Order" is a dangerous statement and completely disregards the law of receiverships.

I will reiterate the warning given CMA by the Court: "CMA is cautioned not to release any money from the Assignment for Benefit of Creditors until this issue is resolved." Moreover, before too much water goes under CMA's bridge, I would strongly urge CMA to consider 26 U.S.C. § 482 when allocating revenues from the sale of assets to the wrong estate. From personal experience, I can assure you that an oversight in this area generates personal liability for fiduciaries for which state law provides no insulation.

Lastly, we have been trying to get a straight answer as to which entities CMA believes has been served. Due to the fact that the receiver will almost certainly be serving the same entities, it would be helpful to determine which entities are in and which are out. Sterling believes it served CMA in its individual corporate capacity

and in its capacity as Assignee.  Sterling believes it served Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc.

Similarly, the receiver has an interest in determining whether the three Indian entities have answered Sterling's complaint.  Sterling has seen no authority from CMA that would indicate that CMA appeared on behalf of those entities.  In fact, a review of the Assignments discloses no mention of any power or authority given CMA over the companies, just the assets.  CMA's authority over the assets is not being questioned here, just its ability to appear on behalf of the Assignors.

Furthermore, the receiver must determine whether CMA, in its individual corporate capacity, CMA as Assignee, Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. have all been served with a copy of the Court's Order dated December 14, 2005.  A simple confirmation (or denial) by CMA, in any capacity, would suffice.

Please make sure you include me in any response to this email.  Incidentally, due to the holidays, neither Jack Tanner nor Tom Quinn participated in the preparation of this email.  They may wish to add comments and questions when they get a chance to review it.

Richard A. Block
Sterling Consulting Corporation
Suite 300
4101 East Louisiana Avenue
Denver, Colorado  80246
Office:  303-388-1300
Cell:  303-888-1300
Fax:  303-781-4311
Email:  rblock@xpn.com

# FAIRFIELD AND WOODS, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

Wells Fargo Center, Suite 2400
1700 Lincoln Street
Denver, Colorado 80203-4524
Telephone: (303) 830-2400
Facsimile: (303) 830-1033
www.fwlaw.com

John M. Tanner
(303)-894-4495
jtanner@fwlaw.com

February 5, 2006

**Via E-mail**
**jtrent@bsblawyers.com**
Julie A. Trent, Esq.
Beiging Shapiro & Burrus LLP
4582 S. Ulster St. #1650
Denver, CO 80237

Re:   *Receivership Estate of Indian Motorcycle Manufacturing, Inc.*
United States District Court, District of Colorado No. 95-cv-00777-REB-CBS
*Sterling and Sterling, as receiver v. CMA*
United States District Court, District of Colorado No. 05-cv-01573-PSF-CBS
*Sterling, as receiver v. Pahl & Gosselin*
United States District Court, District of Colorado No. 06-cv-00076-LTB-PAC

Dear Julie,

In his Order dated December 14, 2005, Judge Schlatter cautioned CMA about transferring assets which could be assets of the receivership estate. Effectively, CMA's response was to disregard the Order on the grounds that CMA was not a party and therefore not bound by it. The Court's jurisdiction over property of the receivership is not necessarily based upon *in personam* jurisdiction. I attach an Order from 1995, also in the main Receivership Action, which is further to the point regarding transfers of assets that may be property of the Receivership Estate.

Also, you should be advised that pursuant to prior order of Judge Weinshienk in the Receivership Action, all ancillary matters brought by the receivership (which would include *Sterling, as receiver v. Pahl & Gosselin*, case no 06-cv-00076) are substantively consolidated with the receivership. As Mr. Pitts has accepted service of the Complaint in *Pahl & Gosselin* on behalf of CMA, the Court now has *in personam* jurisdiction over CMA. Although the attached Order was binding on CMA by reason of the *in rem* jurisdiction of the Court, it is also now binding on CMA through *in personam* jurisdiction.

# FAIRFIELD AND WOODS, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

Julie A. Trent, Esq.
February 5, 2006
Page 2

You should further be advised that the Court, in past matters, has had little trouble tracing funds to the recipients of wrongful payments. Should CMA not have sufficient funds to pay any determination that assets it held were property of the Receivership Estate, I have little doubt the Court will require disgorgement from you, your firm, and Mr. Pitts, and his firm. In this regard, also note that a judgment against CMA based on its wrongful transfer of assets would be a post-assignment action, and therefore not subject to cents-on-the-dollar reduction as are pre-assignment claims.

Our recent discovery will expose any payments of funds by CMA to anyone following December 14, 2005. We would strongly urge CMA to refrain using any assets of the Indian Assignment estates at this time. The Amended Complaint in the 05-cv-01573 Action should provide an indicator of how much money CMA should have in reserve, and that should be of record within a week or so.

Very truly yours,

John M. Tanner
of
FAIRFIELD AND WOODS, P.C.

JMT:sc

cc:   Thomas Quinn (via e-mail)
      Richard A. Block (via e-mail)

$10/6$

FILED
UNITED STATES DISTRICT COURT
DENVER, COLO.

OCT 6 1995

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Zita L. Weinshienk

Civil Action No. 95-Z-777

ELLER INDUSTRIES, INC.

                    Plaintiff,

v.

INDIAN MOTORCYCLE MANUFACTURING, INC., a New Mexico corporation

                    Defendant.

---

## ORDER EXPRESSLY PROHIBITING TRANSFER
## OF PROPERTY NOT IN CONTROL OF THE RECEIVER

---

The Court, upon the Motion of the receiver, and being sufficiently advised in the premises, hereby orders that the receiver's Motion for Order Expressly Prohibiting Transfer of Property Not in Control of the Receiver is **GRANTED**. The Court has legal custody of all property of the Defendant in the United States, regardless of where that property is. The Court is authorized to Order that no one, whether party to this action or not, may interfere with the estate. Attempting to sell or buy property of the estate without the Court's permission (whether directly or via the receiver) constitutes interference with the estate. No party, including without limitation Batten Corporation, Triad Suspension, David Noonan, as Trustee, or Indian Motocycle Manufacturing Co., Inc., may buy or sell assets of the estate without this Court's permission, either directly or via the receiver.

Done this 6 day of October, 1995

By: _____
Zita L. Weinshienk, Judge
United States District Court

9-1399

# LAW OFFICE OF
# ROBERT W. PITTS

*660 Newport Center Drive, Suite 400*
*Newport Beach, California 92660*
*T: 949-720-4125*
*F: 949-720-4111*
*E: rpitts@lawrwp.com*

February 6, 2006

**VIA FACSIMILE (303-830-1033**
John M. Tanner, Esq.
Fairfield & Woods P.C.
Suite 2400
1700 Lincoln Street
Denver, CO 80203-4524

RE:   **Continuing Threats**

Dear Mr. Tanner:

I am in receipt of your letter of February 5, 2006 to Julie Trent regarding your continuing threats against the Assignee with respect to its administration of the ABCs of the Indian Entities in conformance with applicable California law.

Your continued mis-characterization of the Assignee's intentions and motivations regarding its decisions regarding the administration of the ABC's has become tiresome. The 1995 Order attached to your recent letter is nothing more than a generic restatement of black letter law. It says nothing about assets that "may" be property of the Receivership Estate. Neither you nor the Receiver has done anything to allege, let alone establish, that the Assignee is in "possession of property of the Receivership Estate" such that it would be implicated by either the 1995 Order or Magistrate Judge Schlatter's Order of December 14, 2005. Further, even if the Assignee were holding property of the Receivership Estate, which it is not, the December 14, 2005 Order doesn't require the Assignee to do anything, nor does it enjoin the Assignee from doing anything. Finally, to the extent you are implying that the 05-01573 action puts the Assignee on notice of anything, please note that the damages claimed in such action are "none."

Your continued threats will be ignored from this point forward until such time as there is something more than a "palpable indication" that the Assignee is in fact holding "property of the Receivership Estate."

Very truly yours,

Robert W. Pitts

Cc:   Michael L. Joncich
      Julie Trent, Esq.

Ltr to J. Tanner 2.6.06 re Receiver Allegations.doc

# FAIRFIELD AND WOODS, P.C.
ATTORNEYS AND COUNSELORS AT LAW

Wells Fargo Center, Suite 2400
1700 Lincoln Street
Denver, Colorado 80203-4524
Telephone: (303) 830-2400
Facsimile: (303) 830-1033
www.fwlaw.com

John M. Tanner
(303)-894-4495
jtanner@fwlaw.com

August 29, 2006

**Via E-mail**
**jtrent@bsblawyers.com**
Julie A. Trent, Esq.
Beiging Shapiro & Burrus LLP
4582 S. Ulster St. #1650
Denver, CO  80237

Re:  *Receivership Estate of Indian Motorcycle Manufacturing, Inc.*
United States District Court, District of Colorado No. 95-cv-00777-REB-CBS

Julie:

This is a Rule 7.1 Conference letter.  It concerns general matters in the Receivership Estate and is not a part of the dispute resolution under the Settlement Agreement dated August 31, 2000.

On December 14, 2005, Magistrate Judge Schlatter entered his Order that reads, in pertinent part:

6.  On this issue, the Court Orders as follows:

a.  First, CMA is cautioned not to release any money from the Assignment for Benefit of Creditors until this issue is resolved.

The receiver believes CMA is prohibited from disbursing any money from the assignment estates that under the quoted section of the Order.  Nevertheless, from time to time, CMA has indicated that it is not obligated to honor the December 14, 2005 Order.

The receiver's position is that paying CMA itself or its attorneys without relief from the December 14, 2005 Order is a clear violation of that Order.  When the Order was issued, CMA had made a theoretical argument that it was not party to the receivership action and therefore the Order was not binding on it.  While the receiver



EXHIBIT
tabbies
C

# FAIRFIELD AND WOODS, P.C.
### ATTORNEYS AND COUNSELORS AT LAW

Julie A. Trent, Esq.
August 29, 2006
Page 2

The receiver believes CMA is prohibited from disbursing any money from the assignment estates that under the quoted section of the Order. Nevertheless, from time to time, CMA has indicated that it is not obligated to honor the December 14, 2005 Order.

The receiver's position is that paying CMA itself or its attorneys without relief from the December 14, 2005 Order is a clear violation of that Order. When the Order was issued, CMA had made a theoretical argument that it was not party to the receivership action and therefore the Order was not binding on it. While the receiver always disagreed with that argument (because CMA had filed a pleading in the Receivership Action), with CMA's full briefing and requests for relief in the Receivership Action all pretense that CMA is not "in" the receivership and bound by that Order has been swept away.

It has not gone unnoticed that CMA appears willing to litigate every issue, big or small, to the end, without any consideration of settlement or compromise. That is a sign of two things: (a) lawyers that remain compensated on a continuing and up-to-date basis, and (b) lawyers defending a client with a critical problem. The latter would also explain why the receiver has never had a conversation with a principal of CMA, even though CMA's principals have been heavily compensated for precisely this type of work.

The receiver has previously cautioned CMA that disbursing money from the assignment estates is a violation of the December 14, 2005 Order, and this includes the payment of fees to CMA, itself, and payment to CMA's attorneys. You may or may not be aware that there is ample authority for compelling CMA and its attorneys to return any fees paid from the assignment estate following the entry of the Order. The government has informed me that it has also cautioned CMA on this subject.

The receiver is requesting that CMA provide the receiver with written assurances that CMA has made no disbursements from the assignment estates for any purpose since December 14, 2005. The receiver requests such written assurance by the end of this week.

Similarly, it did not go unnoticed that CMA's production under the receiver's discovery did not include any information on the revenues of the assignment estates, nor did it include any information on the expenses and claims paid from the assignment estates. This problem is related to the issue discussed above in that the resolution is generally the same. The receiver requests an accounting of all monies paid out by CMA in any of the Indian Estates since the first Assignment for the Benefit of Creditors.

# FAIRFIELD AND WOODS, P.C.
## ATTORNEYS AND COUNSELORS AT LAW

Julie A. Trent, Esq.
August 29, 2006
Page 3

     If CMA fails or refuses to provide the receiver with the assurances letter and an accounting for all of the revenues and expenses of the assignment estates prior to the close of business Friday, September 1, 2006, the receiver intends to file a Motion for Accounting.

     The receiver assumes that CMA has properly accounted for all of the money collected and expended by the assignment estates. For that reason, the receiver also assumes that providing an accounting is a simple job that does not require substantial additional work by CMA. CMA should let the receiver know if its accounting for the assignment estates is not current, and the receiver will take that into consideration when filing its Motion for Accounting. In addition, if the accounting information requested by the receiver is available anywhere on the public record, the receiver will reserve filing the Motion for Accounting pending a review of the publicly available information.

     I look forward to your answer by Friday.

          Very truly yours,

          John M. Tanner
            of
       FAIRFIELD AND WOODS, P.C.

JMT:sc

cc:    Richard A. Block (via e-mail)

# LAW OFFICE OF
# ROBERT W. PITTS

*660 Newport Center Drive, Suite 400*
*Newport Beach, California 92660*
*T:  949-720-4125*
*F:  949-720-4111*
*E:  rpitts@lawrwp.com*

September 1, 2006

**VIA EMAIL:  jtanner@fwlaw.com**
John M. Tanner, Esq.
Fairfield & Woods P.C.
Suite 2400
1700 Lincoln Street
Denver, CO 80203-4524

### RE:    **Letter Request**

Dear Mr. Tanner:

Your letter of August 29, 2006 has been referred to me for a response.

With respect to your assertion regarding Magistrate Judge Schlatter's Order of December 14, 2005, I would refer you to my numerous communications of the past nine months, in the form of emails, letters, and pleadings, on that issue and in particular, my letter to you dated February 6, 2006. Specifically, please be advised that the Assignee has abided, and will abide, by all applicable laws, duties, and obligations under California's Assignment for Benefit of Creditors statute. Thus, the "letter of assurance" requested in your letter will not be forthcoming.

To the extent your letter is intended to be a "Rule 7.1 Conference" letter in this regard, it is unclear what such conference relates to. Your letter does not indicate any pending motion or proposed motion relating to the requested "letter of assurance." If your letter was intended to set forth certain issues that you would like to discuss, in accordance with the procedure suggested by Magistrate Judge Shaffer, please advise me what issues you would propose we discuss and the dates you are available to discuss them.

With respect to the Receiver's request for an "accounting", such request is viewed as nothing more than a transparent attempt to circumvent Magistrate Judge Schaffer's ruling on your Motion to Compel and the Assignee's Motion to Strike same. Moreover, the Receiver has not produced a single shred of support for its oft-repeated, yet conclusory and unsupported, assertion that it is a "creditor" of the Indian Assignment Estates. It is not a creditor, it did not file a

Ltr to J. Tanner 9.1.06 re Request for Accounting

**EXHIBIT**

D

John M. Tanner
Page 2

proof of claim in the Assignment cases, and thus it is not entitled to any
"accounting" from the Assignee.

If you feel the Assignee failed to produce all relevant documents in its
recent Rule 45 production, please feel free to bring a Motion to Compel in the
appropriate District Court in California, in accordance with Magistrate Judge
Shaffer's ruling on July 10, 2006. To that end, should you ignore Magistrate
Judge Shaffer's July 10, 2006, ruling and bring the patently unwarranted Motion
for Accounting in the Colorado District Court in an attempt to circumvent the
adverse ruling on your previous Motion to Compel, please be advised that we will
seek Rule 11 sanctions pursuant to F.R.Civ.P. Rule 11(b). In the alternative,
please provide me with any authority you may have that would entitle a receiver
in Colorado to insert itself into a California Assignment for the Benefit of
Creditors proceeding in the absence of even a credible assertion of a claim in
such proceeding.

If you feel there would be anything to be accomplished by a Rule 7.1
Conference with respect to your proposed/threatened Motion for an Accounting,
in accordance with the procedure suggested by Magistrate Judge Shaffer,
please provide me with a letter outlining the issues to be discussed and the
dates you are available to discuss same.

Should you have any questions regarding the foregoing, please do not
hesitate to contact me at 949-720-4125 or via email at rpitts@lawrwp.com.

Very truly yours,

Robert W. Pitts

Cc:    Michael L. Joncich
       Julie Trent, Esq.