UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re:  The Receivership Estate of Indian Motorcycle Manufacturing, Inc., a New
Mexico Corporation

## REPLY TO ASSIGNEE'S RESPONSE TO
## RECEIVER'S MOTION FOR ACCOUNTING

Sterling Consulting Corporation, as receiver, by and through its attorneys,

Fairfield and Woods, P.C., hereby replies to the Assignee's Response to Receiver's

Motion for Accounting (the "Response" to the "Motion"), as follows:[1]

### INTRODUCTION

In its Response, CMA admits it has violated Magistrate Judge Schlatter's Order

of December 14, 2005 (the "Order").  This gives the Court three broad paths forward:

(a) enforce the Order; (b) modify the Order; or (c) allow CMA to continue to violate the

Order with impunity.  The receiver believes path (a) is the best, but if the Court were to

follow path (b) the receiver would instantly look to the modified order as its polestar.

Path (c) will be treated by the receiver as a vacation of that portion of the Order. [2]  That

---

[1]  The true identity and nature of the parties, the entities and individuals related to the
parties, the issues, and the related actions have confused the matters before this Court.
In order to minimize continued confusion, the receiver has attached as Exhibit 1 a
schedule of the foregoing with definitions and comments.  The receiver will endeavor to
maintain and update this schedule as appropriate.

[2]  This action is a receivership action.  As such, the receiver is merely this Court's
caretaker.  The assets are held by the Court *in custodia legis*—the assets are not held by
the receiver nor does the receiver have any possessory interest in the assets.  The
receiver can only make recommendations as to what the Court should and should not do

is because CMA is not in compliance, and has no intention of complying.  In fact, CMA has repeatedly stated that it is not bound by any Orders of this Court (except, presumably, those in its favor), and if the Court is not going to enforce the Order, then it is meaningless.[3]

By way of background, the Order came about at the hearing before Magistrate Judge Schlatter on December 13, 2005, because a claimant subject to disgorgement, Mr. Michael Payne, accused the receiver of intentionally not selling common stock in Indian Motorcycle Company (the "Stock" in "Company") in about 2001 through about July of 2003 and thereby not raising the money needed to pay the taxes.[4]  Another claimant, Mr. Burt Bondy, suggested that if the receiver was blocked from selling Stock (as the receiver has shown it was), Indian should restore these assets to the Receivership Estate

with the assets, but ultimately, it is incumbent upon the Court to make the decisions regarding the assets of the Receivership Estate as it sees fit.  If the Court does not want the receiver to pursue turnover of assets, the Court should promptly advise the receiver of that determination.  Particularly in this case, where the receiver is not likely to be compensated for its effort, actions contrary to this Court's preferences are doubly contraindicated.

[3]  Counsel for CMA captured CMA's and Company's attitude toward the receiver and the Receivership Action in his letter to the counsel for Stellican wherein he wrote: "Since the [Settlement Agreement] was signed, Indian has successfully marginalized Rick Block, but not without substantial effort on the part of Indian."  July 14, 2004 letter from Mr. Robert W. Pitts to Rick J. Gibson.  A copy of this letter is attached as Exhibit 1.

[4]  Although this issue is only tangentially related to the Motion, the Court should notice that Mr. Payne has subsequently appealed the Disgorgement Order to the Tenth Circuit, and the receiver expects this same issue to be raised in the appeal.  Another claimant, Mr. Burt Bondy, claimed that if Indian, in fact, did improperly block the receiver's sale of Stock (which it did), the receiver should look to Indian before looking to the claimants to pay the government.  The receiver disagrees with Mr. Bondy in this regard, but agrees that if Indian is liable, it would go to reduce or even eliminate the tax liability, depending upon how much is collected.  Of course, that would require getting to the substance of the matter, and CMA has avoided that for almost a year.

assets by way of restitution.  This would tend to reduce the collection burden on the claimants of the Receivership Estate.

Based upon this three-way exchange, Magistrate Judge Schlatter (the same Judge who entered the Order approving the Settlement Agreement among the Receiver, Sterling, and Indian and making it an Order of the Court) correctly concluded that Company and its subsidiaries might have assets belonging to the Receivership Estate. Accordingly, he Ordered the receiver to investigate whether Mr. Bondy's assertion was correct and cautioned CMA not to spend money belonging to the Receivership Estate in the meantime.

Magistrate Judge Schlatter's Order was not for CMA to spend what could be the receiver's money wisely (as CMA states in its Response that it is doing), but for CMA not to spend at all.[5]

---

[5]  Even though CMA has withheld the most important documents from the receiver, the receiver's investigation has revealed enough documentation to know what the substantive claims are.  They fall into two categories:  (a) the receiver was prohibited from selling Stock while, at the same time, Company was allowing Insiders to sell their stock; and (b) CMA breach its fiduciary duty by commingling the assets of the various Assignment Estates, thereby depriving creditors of certain Assignment Estates from receiving what was due them.  Regardless of what CMA says to avoid liability, the receiver is a creditor under California law:

> Part 2, Special Relations of Debtor and Creditor, Title 1, General Principles Cal Civ Code § 3430, Who is a creditor.  A creditor, within the meaning of this title, is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money.

CMA's assertion that the receiver has not yet filed a claim against the Assignment Estates is correct; CMA's assertion that the receiver is not a creditor of the Indian Entities (as opposed to the Assignment Estates) is wrong, and CMA has no power, authority, or right to attempt to defend the surplus due to the Indian Entities from the Assignment Estates.

The Order was entered and the receiver was careful to provide a copy of the Order to CMA promptly after it was entered (although the receiver believes CMA was present in the Courtroom, behind the bar, at the time the Order was entered).

CMA neither motioned the Court for reconsideration, nor motioned the Court to vacate, nor appealed the Order.  As such, CMA is bound by that Order.

## ARGUMENT

### I.     The Court has Jurisdiction.

There are two completely independent bases for this Court's jurisdiction over CMA.

First, CMA voluntarily accepted the assignment of the Settlement Agreement dated August 31, 2000 between Company and the receiver, among others.  The Settlement Agreement, which was approved and made an Order of this Court [Magistrate Judge Schlatter's Recommendation is Docket No. 1581 and Judge Weinshienk's affirmance is Docket No. 1615], expressly requires disputes to be heard in the Colorado District Court, and requires any assignee of the Settlement Agreement to assume all of the obligations under the Settlement Agreement.  That would include the consent to mandatory venue in the Colorado District Court.

When Indian assigned the Settlement Agreement to CMA, CMA voluntarily adopted the Settlement Agreement.  By voluntarily adopting the Settlement Agreement, CMA consented to the jurisdiction of this Court.

Second, CMA has not only appeared, it has asked for affirmative relief from the Receivership Court on numerous occasions. The following are pleadings with affirmative relief filed by CMA in the Receivership Action:

06/22/2004 1877 Emergency MOTION by California Mgt Assoc for order to unseal indemnification agreement (pap) (Entered: 06/23/2004)

12/09/2005 1979 MOTION for Leave to Submit Dispute to Magistrate Judge, as Required by Settlement Agreement by Claimant IMCOA. (Attachments: # 1 Exhibit C)(Trent, Julie) (Entered: 12/09/2005)

01/27/2006 2110 STATUS REPORT by Claimant IMCOA. (Trent, Julie) (Entered: 01/27/2006)

01/03/2006 2051 RESPONSE to Motion re 2014 MOTION to Consolidate Cases filed by Defendant Indian Motorcycle Company. (Trent, Julie) (Entered: 01/03/2006)

06/30/2006 2304 STATUS REPORT Assignee's Supplemental by Defendants Indian Motorcycle Manufacturing Inc., Indian Motocycle Manufacturing Company, Inc., Indian Motorcycle Company, Indian Motocycle corporation, Plaintiff Indian Motocycle Manufacturing Company, Inc., Claimant IMCOA. (Trent, Julie) (Entered: 06/30/2006)

07/31/2006 2342 BRIEF re 2307 Status Conference, Supplemental Briefing to Minute Order of 7/10/06 doc #2307 by Defendants Indian Motorcycle Manufacturing Inc., Indian Motocycle Manufacturing Company, Inc., Indian Motorcycle Company, Indian Motocycle corporation, Plaintiff Indian Motocycle Manufacturing Company, Inc., Interested Parties Indian Motorcycle Company, Indian Motorcycle Corporation. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Trent, Julie) (Entered: 07/31/2006)

The Brief (Document 2342) described above was filed at the specific request of CMA in a hearing before Magistrate Judge Shaffer in the Receivership Action, notwithstanding the fact that CMA knew that: (a) the matter was already pending in 1573, and (b) possibly as a result of CMA's Objection to the receiver's motion to consolidate, Sterling in its individual corporate capacity was not a party to the Receivership Action.

**II.    CMA is Bound by the Order**

In paragraph 7(1) of its Response, CMA states "First and foremost, the actions (or inactions) of the Assignee relative to the December 14 Order cannot form the basis of a contempt order because the December 14 Order does not, and cannot, apply to an entity who was not part of the proceeding giving rise to the order at issue or even a party in the case."  This is simply an incorrect statement of the law—of course previously entered orders are binding on later-appearing parties.  Otherwise, every case would have to be restarted when a new party was added.  Absent a Motion for Reconsideration, the Order is binding on later-appearing parties.   *Hall County Historical Soc., Inc. v. Georgia Dept. of Transp.*, 447 F.Supp. 741, 724 n. 1 (D.C. Ga. 1978) ("Although an intervenor as of right is entitled to fully litigate the merits by pleading and setting forth additional claims and defenses where they arise from the same transaction(s) as the main claim(s) or are ancillary thereto, it is also well settled that an intervenor in equitable proceedings is bound by all prior orders and decrees as though he had been a party from the inception of the suit. *See, e. g., Galbreath v. Metropolitan Trust Co. of California*, 134 F.2d 569 (10th Cir. 1943).").

Whether in the Receivership Action or in 1573, CMA's vexatious strategy of postponing the day this Court hears the ultimate substantive issues has worked for too long.  If the receiver believes that CMA has assets that rightly belong to the Receivership Estate, the receiver should be empowered to pursue those assets from within the Receivership Action.  If the Court intends to disregard the recommendation of the receiver and not allow the receiver to pursue assets of the Receivership Estate,

the Court should make that determination and discontinue the investigation put in motion by Magistrate Judge Schlatter.[6]

If, on the other hand, the Court intends to empower the receiver to pursue the assets the receiver knows to be property of the Receivership Estate, then the Court should eliminate the administrative and procedural impediments, treat CMA as the party it is in the Receivership Action, enter an Order to Show Cause why CMA should not be held in contempt for violating the Order, accept the First Amended Complaint as an ancillary action by the receiver or reconsider the Order preventing the receiver from re-filing a more traditional ancillary action against CMA in order to get this matter properly at issue.

**III.     CMA's other arguments are both wrong and mere attempts to distract the Court from Its Breach of the Order.**

    A.     <u>The Actions Complained Of Post-Date the Release of Indian by the Receiver.</u>

The mutual releases contained in the Mutual Release do not insulate CMA, as all of the actions that the receiver (and Sterling, for that matter) have complained of occurred after the date of the Mutual Release.  The receiver's efforts to sell Stock all occurred after the date of the Mutual Release and are not blocked by the terms of the Mutual Release.

    B.     <u>CMA is acting without supervision or Court authority</u>.

---

[6] In order to insulate the Receivership Estate from the effect of Mr. Payne's appeal as it relates to the sale of Stock issue, the Court should make it clear that the investigation is being discontinued for reasons other than it might disclose something actionable.

Perhaps the most important thing in the Response is what it does not contain: any statutory authority for, or statutory oversight of, CMA.  The Court will recall that in the Rule 7.1 conference, CMA tried to avoid the Motion for Accounting by claiming that it was complying with "California Statutory requirements."  This was a deliberate deception, because there are no statutory requirements.  All have recently been repealed or held unconstitutional.[7]

This is an issue that has been brewing outside the purview of the Court for nearly a year, and in the Response the receiver finally "threw down the gauntlet" in full view of the Court.  But CMA ignored it—its Response does not contain a single citation to California Statutory authority.  That is not to say that the Assignee has no authority to marshal and sell the assets of the Indian Entities.  To the contrary, the Assignee has full power and authority to marshal and sell the assets of the Indian Entities.  Beyond that, however, the Assignee has no special powers or immunities—it is bound by the law governing common law trustees.

C.    CMA's brief is full of misstatements of fact and law.

Further, the Response is rife with claims that are misleading, incorrect, or unsupportable:

> Page 2. – Although the Assignee was not a party to the Disgorgement Motion which gave rise to the December 14 Order, the Assignee has always exercised due caution in the administration of the Indian Entities' ABC Estates and has continued to administer the ABCs in accordance with all applicable California law.

---

[7] The receiver asks that the Court take Judicial Notice of Sterling Consulting Corporation's arguments regarding the legal status of CMA in Sterling's Plaintiff's Motion to Strike and Motion for Default (Document Number 102 in the 1573 Action.

The Court will note above the omission of the word "statutory," which was contained in CMA's Rule 7.1 conference materials.  Further, this statement does nothing to show CMA is complying with Magistrate Judge Schlatter's Order in this case, which was the basis of the Motion.

> Page 5, Footnote 5. – In its discussion of Assignments for Benefit of Creditors generally, the Receiver implies that the applicable California law is either non-existent, repealed, or is somehow unconstitutional.  See Motion, pp. 2-3, ¶¶ 7-9. The applicable California law is in full force and effect as to each and every issue related to the Receiver's various allegations.

The same comment applies here—first, CMA has always claimed reliance on statutory law previously, but that word is missing from the quote.  Second, it does nothing to address CMA's violation of Magistrate Judge Schlatter's Order, which is the issue.

> Page 6. – Because the Receiver is not a claimant in the Indian Entities' ABCs, any marshalling of assets, collection of funds, liquidation of assets, or expenditure/distribution of funds by the Assignee have no effect on the Receiver (or the Receivership Estate) whatsoever.

This statement is driven by CMA's continued attempts to substitute a marginally insolvent and fictional "assignee" as a party for the named party—CMA itself.  The Court Order is binding on CMA and it is for this Court, not CMA, to decide what CMA owes to the receiver.

In any event, the statement is false and misleading.  The receiver and Sterling both look to the Surplus (as defined on Exhibit 1 hereto), which is not property of the Assignment Estates, but rather property of the Assignors.  The Surplus has an effect on the Receivership Estate and Sterling.  Moreover, the Assignee's unilateral bar date for claims against the Assignment Estates has no basis in law whatsoever.  When the

receiver and Sterling obtain a Judgment against the Assignor, they are free to file a claim.  This would be true even if the now-repealed laws regulating Assignments for the Benefit of Creditors were still in effect.

>  Page 6. – "Consent" is not a recognizable concept in Assignment for Benefit of Creditors law, as ABCs do not contemplate creditor consent.

To the contrary, "consent" is an absolute requirement of an Assignment for Benefit of Creditors.  Even if this concept were not already well established, it is very easy to show.

First, a state-law Assignment for Benefit of Creditors cannot discharge debt; that is the exclusive province of Bankruptcy.  *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir. 2005) ("We know, because the Supreme Court has repeatedly told us, that state statutes that purport to perform the first of these functions, by giving debtors a discharge of their debts, are preempted. *See Int'l Shoe Co.* v. *Pinkus*, 278 U.S. 261, 265-66, 73 L. Ed. 318, 49 S. Ct. 108 (1929); *see also Pobreslo* v. *Joseph M. Boyd Co.*, 287 U.S. 518, 525, 77 L. Ed. 469, 52 S. Ct. 262, 53 S. Ct. 262 (1933); *Stellwagen*, 245 U.S. at 615-16."); *Carlson's v. Gould,* 176 Colo. 172, 489 P.2d 1038 (1971) ("Therefore we must conclude that the provisions in the Colorado statute providing for discharge of the assignor (Sections 11-1-27 and 11-1-34 to 50 inclusive) have been suspended by the Federal Bankruptcy Act.  *Johnson v. Star* [287 U.S. 527 (1933)]*; Pobreslo v. Joseph M. Boyd Co.* [287 U.S. 518 (1933)], both *supra*.").

Second, in the event that there is a Surplus after all debts are paid, that is returned to the assignor.  *Brecht v. Law Union & Crown Ins. Co.*, 153 F. 452 (9th Cir. 1907):

An assignment for the benefit of creditors is well defined to be 'a transfer by a debtor of some or all of his property to an assignee in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, <u>and to return the surplus, if any, to the debtor.</u>'  <i>Burrill on Assignment</i>, § 2.  The terms of the instrument in this case bring it exactly within this definition, and stamp it as an assignment for the benefit of creditors, and not a mortgage, or deed of trust in the nature of a mortgage.  Unlike a mortgage or deed of trust, it was not given by way of security.  There is no defeasance clause giving the grantor the right of redemption.  It does not create a lien on the property, but conveys it absolutely for the purpose of raising a fund to pay debts; and, if valid, it passed the absolute title, legal and equitable, to the grantors in the deed, subject to the trust, and placed the same beyond the reach of the debtor, as well as her creditors, until the purposes of the trust were satisfied.  <u>When the debts were paid, the debtor had a right to the surplus, but until that was done she had no legal or equitable interest in the property, or its proceeds, that could be sold or encumbered or seized on attachment or execution by her creditors.</u>"

The California Supreme Court, in <i>Jarvis v. Webber</i>, 196 Cal. 86, 236 P.138

(1925), held as follows:

It has been several times assumed in this court that such a trust indicates an assignment of that nature.  (<i>Dana v. Stanford</i>, 10 Cal. 269; <i>Wellington v. Sedgwick</i>, 12 Cal. 469; <i>Saunderson v. Broadwell</i>, 82 Cal. 132, 133 [23 Pac. 36].)  <u>The provision that a surplus of proceeds remaining after satisfaction of the claims of the creditors named should be returned to the grantors does not, as supposed by appellants, distinguish the contract as one of security only.</u> (<i>Hall v. Denison</i>, 17 Vt. 318; <i>Lochte v. Blum</i>, 10 Tex. Civ. App. 385 [30 S. W. 925].)  The reservation of an interest in the possible surplus—not in the property itself—marks the transaction more clearly as an assignment for the benefit of creditors.  (<i>Kenefick v. Perry</i>, 61 N. H. 364.)"  (<i>See, also</i>, 3 Cal. Jur., pp. 313, 314.)

With those two pieces in place—that an Assignment for the Benefit of Creditors cannot discharge a debt and that surplus has to be returned to the assignor—the requirement of consent becomes obvious. If the party can be forced to participate in the Assignment for the Benefit of Creditors, get paid cents on the dollar, but surplus is returned to the assignor, then the Assignment for the Benefit of Creditors has effectively discharged the debt.

This point is so well established that it is often simply included in the non-disputed aspects of Court's rulings.  The United States Supreme Court, in *Robinson & Co. v. Belt*, 187 U.S. 41, 69 (1902), held:

> In *McReynolds v. Dedman*, 47 Arkansas, 347, it was held that, although an assignor might make preferences and exact releases from creditors who assented to the assignment, if he reserved to himself, to the exclusion of <u>non-assenting creditors</u>, the surplus that remained, the deed was fraudulent upon its face.  The difficulty with that assignment was that, in case the creditors refused to execute the releases, the residue, instead of being devoted to the payment of the assignor's creditors, was to revert to the assignor himself.  (Emphasis added.)

Once it is understood that any Surplus that remains after paying the claims in the assignment for the benefit of creditors must be returned to the Assignor, when taken in conjunction with the absolute rule that an assignment for the benefit of creditors cannot operate to discharge the debt of the assignor (absent an agreement by claimants against the assignment estates), generates the only conclusion available:  The Surplus, once returned to the assignor, is available to satisfy the debts of non-consenting creditors.

In analyzing Colorado's statutes regarding assignments for the benefit of creditors, the Colorado Supreme Court, in *Carlson's*, *Carlson's v. Gould,* 176 Colo. 172, 489 P.2d 1038 (1971) held:

> The provisions regulating the administration of trusts created by voluntary assignments for the benefit of creditors apply whether the assignor is solvent or insolvent.  <u>They do not prevent creditors from bringing action against the debtor or require those seeking to participate in the distribution of the estate to stipulate for his discharge</u>.  (Emphasis added.)

Whereas in a bankruptcy, a non-consenting creditor (*i.e.*, a creditor that does not file a claim) may have its debt discharged by the bankruptcy if it does not file a claim, the same is not true in assignments for the benefit of creditors.  In assignments for the

benefit of creditors, a credit is perfectly at liberty to not file a claim against the assignment estate, and instead resort to the Surplus, if any, for satisfaction.

The reason Assignments for the Benefit of Creditors usually function is because there is not a Surplus, thus every creditor has strong incentive to "consent" by filing a claim.  If it does not so consent, it will likely get nothing.

In this case, however, the Indian entities of which Sterling and the receiver are creditors (Licensing, Holdings, and Company) had a Surplus—at least a $2,500,000 Surplus, and probably more.  CMA wrongfully used the Surplus to pay the debts of another Indian entity (Indian Motorcycle Corporation) rather than returning it to the Assignors, as Assignment for the Benefit of Creditors law requires.  Had it done so, the Surplus would be available to satisfy the claims of Sterling and the Receiver.  Neither the receiver nor Sterling have consented and they are not looking to the Assignment Estates; rather, they looking to the Surplus or their claim against CMA breach of fiduciary duty for payment.  Whether Sterling and the receiver ever elect to take their Judgments to the Assignment Estates is not known, but given the dreadful results in those estates, the question may be moot.

Page 6. – [N]either the Receiver nor Sterling is a "creditor" of any of the Indian Entities and both have failed to establish otherwise.

The Assignee makes this statement with the objective of excluding the receiver and Sterling from claiming against the Assignment Estates, and with an apparent misunderstanding as to what a creditor is in the jurisdiction that regulates the Assignee. Cal Civ Code, Division 4, General Provisions, Part 2., Special Relations of Debtor and Creditor, Title 1.  General Principles, § 3430, "Who is a creditor," reads in its entirety:

"A creditor, within the meaning of this title, is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money." Regardless of which claim of the receiver or Sterling the Court considers, both are "creditors" under California law on the subject.

In addition, CMA does not sit in review of Magistrate Judge Schlatter. If it believes that the Order (which was premised on the notion that the receiver has a claim against CMA) was wrong, it should file an appropriate motion.

> Page 8. - Even if the Receiver was a claimant or creditor of the Indian Entities, this Court is not the appropriate court to bring a motion for an accounting in the California ABCs. The Indian Entities' ABCs are proceeding in the State of California under applicable California state law and are subject to the jurisdiction of the California courts. The Receiver has not offered, and the Assignee cannot find after extensive review, any basis for a federal district court overseeing a receivership in one state to compel an "accounting" of an Assignment for Benefit of Creditors estate that is proceeding under the applicable laws of another state where the party against whom the accounting is sought is neither a party to nor a claimant of the receivership estate.

First, the Court should note again the glaring omission of the word "statutory" from this paragraph. Second, the receiver has shown two completely independent bases for jurisdiction in this case—CMA accepted a contract which required disputes to be resolved here and CMA came into this Court seeking affirmative relief.

Third, the receiver has no intention of going to California to pursue this claim. This Court is perfectly competent to hear the case, and CMA's repeated requests for affirmative relief show that it thinks so, too. Indeed, any claims regarding any receivership assets should always be heard by the receivership court.

> Page 9. Footnote 9. – [T]he December 14 Order, specifically, is not effective to enjoin or preclude the Assignee from fulfilling its lawful duties and obligations

under applicable California law because the manner in which it was obtained violates even the bare essentials of due process.

If CMA disagreed with the Order, it should have moved to reconsider it or appealed it. It did neither. It just ignored the Order, as if it sat in review of this Court.

The above quotes demonstrate CMA's arguments are primarily obfuscations. CMA is a party to the Receivership Action, CMA is a party to 1573, and CMA is subject to the jurisdiction of this Court. CMA cannot discharge either its or Indian's obligations.

> D.  <u>The Order was not an injunction, it was merely a case management order</u>.

Magistrate Judge Schlatter believed that Mr. Bondy and the receiver demonstrated that it is likely that CMA has assets that belong to the Receivership Estate, and the Order is nothing more nor less than a Case Management Order directing an investigation. If the investigation demonstrates that CMA is in possession of assets of the Receivership Estate, the receiver will ask the Court for a Turnover Order, which is also a Case Management Order and not an Injunction. In *FTC v. Overseas Unlimited Agency, Inc*., 873 F.2d 1233 (9th Cir. 1989), the Ninth Circuit determined it lacked jurisdiction to review a turnover order entered in a receivership case exactly for this reason:

> Since the June 16 Order did nothing more than direct that funds be turned over to a receiver, we lack jurisdiction. A simple "turnover" order made pursuant to a previously unappealed order appointing a receiver does not constitute an "injunction" within the meaning of 28 U.S.C. § 1292(a)(1). *Waylyn v. Casalduc*, 219 F.2d 888, 890 (1st Cir. 1955). In *Waylyn*, the United States moved to foreclose a mortgage and to have a receiver appointed for rental properties held by the Waylyn Corporation. Waylyn did not appeal from the appointment of the receiver. Thereafter, the district court ordered Waylyn to turn over $9,900 in

security deposits to the receiver.  Waylyn appealed on the ground that the order constituted a mandatory injunction.  The First Circuit disagreed, labeling the order "a mere administrative turnover direction." *Id.*

A turnover order likewise does not fall within section 1292(a)(2), since it is not (1) an order appointing a receiver, (2) an order refusing to wind up a receivership, or (3) an order refusing to accomplish the purposes of a receivership.  *See American Principals*, 817 F.2d at 1350 ("The circuits have held that orders requiring that funds be turned over to a receiver are unappealable."); *United States v. Beasley*, 558 F.2d 1200, 1201 (5th Cir. 1977); *United States v. Chelsea Towers, Inc.,* 404 F.2d 329 (3rd Cir. 1968); *Wark v. Spinuzzi*, 376 F.2d 827 (5th Cir. 1967).  These cases "illustrate a policy of strict construction that has confined appeals to the three categories clearly specified in the statute." C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3925, at 92 (1977). See also 9 Moore's Federal Practice para. 110.19[2], at 208 (1986) (similar). The June 16 Order does not fall within any of the three categories listed in 28 U.S.C. § 1292(a)(2).

If a requirement that money be turned over to a receivership court is not an injunction, then an Order that a party not spend that same money cannot rise to the level of an injunction.

      E.    <u>CMA has not shown any immunity from Orders of this Court</u>.

It is not for the receiver to argue why CMA's purported immunity is not effective, it is CMA's burden to show that it has any immunity in the first place.  It has not done so because there is none.  There is no injunction in the Order, the receiver has not asked this Court to enforce an Injunction, and all of CMA's arguments in this regard are meaningless.  The receiver simply asked CMA to verify that it was complying with Magistrate Judge Schlatter's Order and provide an accounting.  It did neither.

      F.    <u>The Motion is a simple request to assure compliance with prior Orders.</u>

Finally, the Motion for Accounting is not an attempt to end run this Court's prior Order that the receiver go to California to obtain discovery.  First, that discovery was very broad; the Motion here only sought confirmation that CMA was following a particular Court Order or explain why it was not.  Second, as a procedural matter, the case posture has changed a good bit since then the Court's Order in January.  CMA has asked for substantial affirmative relief in the Receivership Action and the filing of the First Amended Complaint, making a Rule 45 subpoena no longer proper),

        G.    The "Motion for Sanctions" is procedurally improper.

The receiver will not dignify the "Motion for Sanctions" with a substantive response.  It will simply point out that under Rule 11 and Local Rule 7.1, a response to another motion cannot contain request for sanctions.  A separate Motion must be filed. If and when CMA ever files one, the receiver will respond.

Respectfully submitted this 6th day of October, 2005.

By:  *s/ John M. Tanner*
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO  80203-4524
Phone:  (303) 830-2400
Fax:  (303) 830-1033
Email:  jtanner@fwlaw.com

Attorney for Plaintiff Sterling
Consulting Corporation, as receiver

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO  80202
**Attorney for Richard Basciani, N.
Rooke Everill, Pres./Everill Bros.,
Inc., John H. Nicholson or Virginia A.
Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
   Woods and Levy
633 17th St., Ste. 2200
Denver, CO  80202
**Attorneys for William R. Childs, Scott
McCormick, Jr., Douglas Walliser,
Ronald Schiff, Edward Pacelli, Morty
Lempel, A.B. Goldberg, First
Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
   & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO  80202-1273
**Attorney for Carl D. Lucci/Albert R.
Lucci**
jcage@cagewilliams.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO  80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of  Justice
PO Box 683
Ben Franklin Station
Washington, DC  20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO  80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO  80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO 80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA 91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI 53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA 92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL 34982

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C. 20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA 01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C. 20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA 70506

Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ 08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM 87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT 06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL 60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN 55311

Steve Halprin
1316 Penningtow Place
Concord, N.C. 28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa, IL 61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA  91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM  87501


John Petitto
Town & Country Sports Center, Inc.
U.S. 12 & U.S. 127
Cement City, MI  49233

Marcia Taylor
Bennett Motor Group Express
1001 Industrial Parkway
McDonough, GA  30253

Richard Basciani
Basciani Foods
8876 GapNewport Pike
Avondale, PA  19311

Rooke Everill
Derek John Everill
Ken Everill
1204 Lake Point Circle
McKinne, TX  75070

Michael D. Fowler
Martha Dickson (Deceased)
1680 S.W. St. Lucie West Blvd.
Port St. Lucie, FL  34986

John Inelli
17 Old Farmstead Rd.
Chester, NJ  07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO  80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO  80501

John Nicholson
22 Thoreau Ct.
Beverly, MA  01915


**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO  80246
**Receiver**
rblock@xpn.com

**Courtesy Copies to:**
Julie Trent
jt@bsblawyers.com

Eugene Sprague
esprague@bw-legal.com

Michael Chodos
michael@chodos.com

Robert Pitts
rpitts@lawrwp.com


By:   *s/ John M. Tanner*
        Fairfield and Woods, P.C.
        1700 Lincoln St., #2400
        Denver, CO  80203
        Phone:  (303) 830-2400
        Fax:  (303) 830-1033
        Email:  jtanner@fwlaw.com