# **Exhibit 1**

"Receivership Action" shall mean this receivership action, *In re: The Receivership Estate of Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation,* Civil Action No. 95-cv-00777-REB-CBS, United States District Court, District of Colorado. If this Court removes the Clerk's administrative bar to ancillary actions, the Receivership Action shall include the ancillary actions.

The "1573 Action" or "1573" shall mean *Sterling Consulting Corporation v. Credit Managers Association of California doing business as CMA Business Credit Services, Indian Motorcycle Company IMCOA Licensing America, Inc. IMCOA Holdings America, Inc.,* Case No. 1:05-cv-01573-PSF-CBS, United States District Court, District of Colorado

The "76 Action" or "76" shall mean *Sterling, as receiver v. Pahl & Gosselin* Civil Action No. 06-cv-00076-LTB-PAC, United States District Court, District of Colorado. The 76 Action was dismissed by the receiver when the receiver brought the same action within the First Amended Complaint in the Receivership Action.

"Spokes" shall mean Spokes, Inc., the plaintiff and Judgment Creditor in *Spokes, Inc. v. IMCOA Licensing America, Inc., and Credit Managers Association of California, dba CMA Business Credit Services*, Case No. 97-Z-1694 (OES), United States District Court, District of Colorado (the "Spokes Action"). The Spokes Action was but one of the ancillary actions under the Indemnification Agreement for which indemnification did not terminate on December 31, 2005. Spokes' counsel has been monitoring the Receivership Action and the 1573 Action, and using the same procedure as three years ago, Spokes has asked for a deposition of Mr. Block. Mr. Block will testify as President of Sterling, and Sterling and its counsel must be indemnified as both were before. CMA has denied this possibility as the centerpiece of its defense. CMA has not responded to Sterling's demand for indemnification.

"Sterling" shall mean Sterling Consulting Corporation in its individual corporate capacity. Sterling Consulting Corporation is the receiver in the Receivership Action and the plaintiff in the 1573 Action. The term "Sterling," when used by the receiver and Sterling, shall not include the receiver unless the context requires otherwise. Sterling is not technically a party in the Receivership Action. The decision to not consolidate the cases has embedded this status because, without consolidation, Sterling has no reason and no intention to appear in the Receivership Action.

The "receiver" shall mean Sterling Consulting Corporation, as receiver in the Receivership Action. The receiver is not technically a party to the Receivership Action, but that limitation makes little or no difference. Although this may seem counterintuitive, Sterling is not dissimilar to the Judge, the Judge's law clerk, or the attorneys in this case. Sterling was appointed by the Court, not named as a party, and traditional receivership law holds that the receiver is not a party to is own action. The receiver, however, is a party to ancillary actions. An Order or Judgment directed to the receiver is an Order or Judgment against the Receivership Estate, not against the receiver, or in this case, against Sterling. Outside the Receivership Estate, the receiver has no existence. The receiver is not a party in the 1573 Action because there was no consolidation.

"CMA in its individual corporate capacity" shall mean Credit Managers Association of California, D/B/A CMA Business Credit Services in its individual corporate capacity and not as Assignee. CMA in every capacity insists that there is a legal distinction between CMA in its individual corporate capacity and the Assignee (discussed below). The receiver agrees that there is a distinction. CMA in its individual corporate capacity has never, to the knowledge of the receiver, appeared in the Receivership Action or 1573. In its First Amended Complaint, the receiver served CMA in its individual corporate capacity, but there has never been an answer to that complaint. Similarly, in 1573, Sterling specifically and intentionally named and served CMA in its individual corporate capacity, but CMA in its individual corporate capacity never answered or otherwise appeared in 1573.

The "Assignee" shall mean Credit Managers Association of California, dba Business Credit Services as Assignee, pursuant to a California statutory Assignment for the Benefit of Creditors and General Assignments dated May 12, 2004, by Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. The Assignee answered the Complaint in 1573 using the foregoing identifier. The Assignee has filed pleadings in the Receivership Action and 1573 using minor variants of that identifier (sometimes the word "statutory" is omitted, and sometimes a date is inserted). Although there is no statutory law for assignees under assignments for the benefit of creditors, common law indicates that the assignees are simply trustees with a narrow purpose—marshalling and selling the assets of the assignor for the benefit of the assignor's creditors. The importance in the distinction is that neither Sterling nor the receiver have actually named the Assignee in a pleading in the Receivership Action or 1573. The Assignee has voluntarily appeared in both the Receivership Estate and 1573, but without the benefit of a Motion to Intervene. Technically, the Assignee has no status in the Receivership Action or 1573, but continues to plead as if it did have a status.

"Company" shall mean Indian Motorcycle Company, a Delaware corporation. Company was the parent company to all the subsidiaries. Company is a defendant in 1573. Company is a party to the Settlement Agreement and the Indemnification Agreement. Company is a "debtor" or an "Assignor" in the assignment for the benefit of creditors. Regardless of anything CMA or the Assignee state, neither has any authority over Company as the debtor or Company as the Assignor. CMA has limited authority over Company's assets.

IMCOA Licensing America, Inc. a Delaware corporation – "Licensing" is or was a wholly-owned subsidiary of Company. Licensing owned the Indian Trademark and all of the trademarks related to the Indian Trademark. Licensing is a defendant in 1573. Licensing is a party to the Settlement Agreement and the Indemnification Agreement. Licensing is a "debtor" or an "Assignor" in the assignment for the benefit of creditors. Regardless of anything CMA or the Assignee state, neither has any authority over Licensing as the debtor or Licensing as the Assignor. CMA has limited authority over Licensing's assets.

IMCOA Holdings America, Inc., a Delaware corporation – "Holdings" is or was a wholly-owned subsidiary of Company. Holdings owned the Indian Trademark and all of the trademarks related to the Indian Trademark. Holdings is a defendant in 1573. Holdings is a party to the Settlement Agreement and the Indemnification Agreement. Holdings is a "debtor" or an "Assignor" in the assignment for the benefit of creditors. Regardless of anything CMA or the Assignee state,

neither has any authority over Holdings as the debtor or Holdings as the Assignor. CMA has limited authority over Holding's assets.

"Indian Entities" – For convenience, this is the name parties use to refer to Company, Licensing, and Holdings collectively. Sometimes, other Company subsidiaries are included in this name. Indian Motorcycle Corporation was one of the Company subsidiaries that executed an assignment for the benefit of creditors with the Assignee as the assignee.

"Assignment Estates" – The Indian Entities assigned their assets to CMA in contemporaneous assignments for the benefit of creditors. The Assignee insists that neither Sterling nor the receiver have ever filed a claim against the Assignment Estates. Sterling and the receiver agree with this statement. Understanding what this means and does not mean is crucial to the understanding of the issues. Because neither Sterling nor the receiver has filed claims with the Assignment Estates, the Assignee (as opposed to CMA in its individual corporate capacity) has no reason for appearing in the Receivership Action or 1573. This is not a minor procedural matter. Sterling named and served precisely the entities it intended to name and serve. The Assignee has been allowed to confuse matters by insisting that Sterling intended to file a claim, but failed. That is not the case now, and has never been the case.

"Surplus" shall mean the proceeds from the sale of the assets of an Indian Entity in the Assignment Estates after deducting the legitimate debt of that Indian Entity. By law, the Surplus must be returned to the debtor or Assignor. Because assignments for the benefit of creditors do not result in a discharge of the debtor, creditors who have not agreed otherwise may pursue the Surplus in satisfaction of the creditors' claims. In the case of Company, Licensing, and Holdings, the Assignee diverted the Surplus of each Assignment Estate to pay the liabilities of Indian Motorcycle Corporation. This breach of fiduciary duty is what forms the basis for Sterling's and the receiver's claims against the Indian Entities and CMA in its individual corporate capacity. The Surplus is the body of assets that the receiver and Sterling have elected to pursue to satisfy their claims against the Indian Entities.

"Non-Consenting Creditor" shall mean a creditor of the Indian Entities that did not file a claim in the assignment for the benefit of creditors.

Declaratory Relief – For now, the Declaratory Judgment is the only issue at issue in 1573. Sterling has not yet asked for damages, restitution, receiver's fees, attorney's fees, or costs in 1573. CMA has asked only for cross summary judgment. The action is limited to Declaratory Judgment and fees and costs because Sterling assigned its damages and restitution claims to the receiver. This is important because there was no hearing Ordered 777.

Cash Fund Dispute – For reasons unknown to the receiver, the Assignee decided to plead the Cash Fund Dispute in the Receivership Action and not 1573. Following the denial of consolidation, the Assignee convinced the Court to Order Briefs on this dispute in the Receivership Action. The receiver (but not Sterling) and the Assignee (but not CMA in its individual corporate capacity) filed briefs. Because the Assignee elected to bring this dispute in the Receivership Action, it can be heard in the Settlement Conference but not the 1573 hearing. Although not a party to the Receivership Action, Sterling will have its counsel immediately

available for the Settlement Conference should the Court wish to have Sterling participate.  This would raise issues disposed of in the denial of consolidation, but the Court can work around that problem in some way.