UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re: The Receivership Estate of Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

---

**REPLY TO ASSIGNEE'S RESPONSE TO
RECEIVER'S MOTION FOR ACCOUNTING**

---

Sterling Consulting Corporation, as receiver, by and through its attorneys, Fairfield and Woods, P.C., hereby replies to the Assignee's Response to Receiver's Motion for Accounting (the "Response" to the "Motion"), as follows:[1]

## INTRODUCTION

In its Response, CMA admits it has violated Magistrate Judge Schlatter's Order of December 14, 2005 (the "Order").[2] This gives the Court three broad paths forward: (a) enforce the Order; (b) modify the Order; or (c) allow CMA to continue to violate the Order with impunity. The receiver believes path (a) is the best, but if the Court were to follow path (b) the receiver would instantly look to the modified order as its polestar. Path (c) will be treated by the receiver as a vacation of that portion of the Order.[3]

The Order came about at the hearing before Magistrate Judge Schlatter on December 13,

---

[1] To avoid continued confusion, the receiver has prepared and attached a schedule that discloses the true identity and nature of the parties, the entities and individuals related to the parties, the issues, and the related actions before this Court as Exhibit 1.

[2] Counsel for CMA captured CMA's and Company's attitude toward the Receivership Action in his letter to the counsel for Stellican wherein he wrote: "Since the [Settlement Agreement] was signed, Indian has successfully marginalized Rick Block, but not without substantial effort on the part of Indian." July 14, 2004 letter attached as Exhibit 2.

[3] This action is a receivership action. The receiver is merely this Court's caretaker. The assets are held by the Court *in custodia legis*. The receiver can only make recommendations as to what the Court should and should not do with the assets, but it is incumbent upon the Court to make the decisions regarding the assets.

2005, because a claimant subject to disgorgement, Mr. Michael Payne, accused the receiver of intentionally not selling common stock in Indian Motorcycle Company (the "Stock" in "Company") in about 2001 through about July of 2003 and thereby not raising the money needed to pay the taxes.[4]  Another claimant, Mr. Burt Bondy, suggested that if the receiver was blocked from selling Stock then Indian should make restitution to the Receivership to reduce the burden on the claimants.

Magistrate Judge Schlatter correctly concluded that Company and its subsidiaries might have assets belonging to the Receivership Estate.  Accordingly, he Ordered the receiver to investigate whether Mr. Bondy's assertion was correct and cautioned CMA not to spend money belonging to the Receivership Estate in the meantime.

Magistrate Judge Schlatter's Order was not for CMA to spend what could be the receiver's money wisely (as CMA states in its Response that it is doing), but for CMA not to spend at all.  The receiver provided a copy of the Order to CMA promptly (although the receiver believes that CMA was present in the Courtroom, behind the bar, at the time the Order was entered).  CMA never motioned the Court for reconsideration or vacation of the Order; it just ignored the Order.

## ARGUMENT

**I.    The Court has Jurisdiction.**

There are two completely independent bases for this Court's jurisdiction over CMA.  First, CMA voluntarily accepted the assignment of the Settlement Agreement among Company the receiver and others.  The Settlement Agreement, which was made an Order of this Court

---

[4] Although this issue is only tangentially related to the Motion, the Court should notice that Mr. Payne has subsequently appealed the Disgorgement Order to the Tenth Circuit, and the receiver expects this same issue to be raised in the appeal.

[Magistrate Judge Schlatter's Recommendation is Docket No. 1581 and Judge Weinshienk's affirmance is Docket No. 1615], expressly requires disputes to be heard in this Court and that any assignee of it to assume all of the obligations under it. That would include the consent to jurisdiction in this Court.

Second, CMA has not only appeared, it has asked for affirmative relief from the Receivership Court on numerous occasions, including the following:

06/22/2004 1877 MOTION to unseal indemnification agreement
12/09/2005 1979 MOTION for Leave to Submit Dispute to Magistrate Judge
01/27/2006 2110 STATUS REPORT by Claimant IMCOA.
01/03/2006 2051 RESPONSE to Motion re 2014 MOTION to Consolidate Cases.
06/30/2006 2304 STATUS REPORT Assignee's Supplemental.
07/31/2006 2342 BRIEF re 2307 Status Conference, Supplemental Briefing

The Brief was filed at the specific request of CMA in a hearing before Magistrate Judge Shaffer in this case Receivership Action, notwithstanding the fact that CMA knew that: (a) the issue to be briefed was already pending in 1573, and (b) possibly as a result of CMA's Objection to the receiver's motion to consolidate, Sterling in its individual corporate capacity was not a party to the Receivership Action.

## II.     CMA is Bound by the Order

Previously entered orders are binding on later-appearing parties; otherwise, every case would have to be restarted when a new party was added. *Hall County Historical Soc., Inc. v. Georgia Dept. of Transp.*, 447 F.Supp. 741, 724 n. 1 (D.C. Ga. 1978) ("[i]t is also well settled that an intervenor in equitable proceedings is bound by all prior orders and decrees as though he had been a party from the inception of the suit. *See, e. g., Galbreath v. Metropolitan Trust Co. of California*, 134 F.2d 569 (10th Cir. 1943)."). CMA had to file a Motion to Reconsider to avoid the Order, but it did not.

3

If the Court intends that the receiver discontinue the investigation put in motion by Magistrate Judge Schlatter, it should modify the Order.[5] If, on the other hand, the Court intends the receiver to pursue the assets the receiver knows to be property of the Receivership Estate, then the Court should eliminate the administrative and procedural impediments put up by CMA, treat CMA as the party it is in the Receivership Action, and get the merits of the receiver's claims.

### III. CMA's other arguments are both wrong and mere attempts to distract the Court from Its Breach of the Order.

A. <u>The Actions Complained Of Post-Date the Release of Indian</u>.

The Mutual Release does not insulate CMA, as the sale of stock and all of the other actions that the receiver (and Sterling) have complained of occurred after the date of the Mutual Release.

B. <u>CMA is acting without supervision or Court authority</u>.

Perhaps the most important thing in the Response is what it does not contain: any statutory authority for, or court oversight of, CMA. The Court will recall that in the Rule 7.1 conference, CMA tried to avoid the Motion for Accounting by claiming that it was complying with "California Statutory requirements." This was a deliberate deception, because there are no California statutory requirements. As CMA is perfectly aware, all California ABC Statutes have been repealed or held unconstitutional.[6]

This is an issue that has been brewing outside the purview of the Court for nearly a year.

---

[5] In order to insulate the Receivership Estate from the effect of Mr. Payne's appeal as it relates to the sale of Stock issue, the Court should make it clear that the investigation is being discontinued for reasons other than it might disclose something actionable.

[6] The receiver asks that the Court take Judicial Notice of Sterling Consulting Corporation's arguments regarding the legal status of CMA in Sterling's Plaintiff's Motion to Strike and Motion for Default (Document Number 102 in the 1573 Action.

4

In its Response, the receiver finally "threw down the gauntlet" in full view of the Court. CMA ignored it—its Response does not contain a single citation to California statutory authority. The receiver does not dispute that the Assignee has power and authority to marshal and sell the assets of the Indian Entities; beyond that, however, the Assignee has no special powers or immunities.

    C.    <u>CMA's brief is full of other misstatements of fact and law</u>.

The Response is rife with claims that are misleading, incorrect, or unsupportable:

> Page 2. – Although the Assignee was not a party to the Disgorgement Motion which gave rise to the December 14 Order, the Assignee has always exercised due caution in the administration of the Indian Entities' ABC Estates and has continued to administer the ABCs in accordance with all applicable California law.

> Page 5, Footnote 5. – In its discussion of Assignments for Benefit of Creditors generally, the Receiver implies that the applicable California law is either non-existent, repealed, or is somehow unconstitutional. See Motion, pp. 2-3, ¶¶ 7-9. The applicable California law is in full force and effect as to each and every issue related to the Receiver's various allegations.

The Court will note above the omission of the word "statutory" from both quotes. Further, this statement does nothing to show CMA is complying with Magistrate Judge Schlatter's Order in this case, which was the basis of the Motion.

> Page 6. – Because the Receiver is not a claimant in the Indian Entities' ABCs, any marshalling of assets, collection of funds, liquidation of assets, or expenditure/distribution of funds by the Assignee have no effect on the Receiver (or the Receivership Estate) whatsoever.

This statement is driven by CMA's continual attempts to substitute an insolvent and legally-fictional "assignee" as a party for CMA itself. Further, the statement is false. The receiver and Sterling both look to the Surplus (as defined on Exhibit 1 hereto), which is not property of the Assignment Estates, but rather property of the Assignors. Moreover, the Assignee's unilateral bar date for claims against the Assignment Estates has no basis in law whatsoever. When the receiver and Sterling obtain a Judgment against the Assignor, they are free to file a claim.

Page 6. – "Consent" is not a recognizable concept in Assignment for Benefit of Creditors law, as ABCs do not contemplate creditor consent.

To the contrary, "consent" is an absolute requirement of an Assignment for Benefit of Creditors ("ABC"). First, a state-law ABC <u>cannot discharge debt</u>; that is the exclusive province of Bankruptcy. *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F.3d 1198 (9th Cir. 2005) ("We know, because the Supreme Court has repeatedly told us, that state statutes that purport to perform the first of these functions, by giving debtors a discharge of their debts, are preempted. *See Int'l Shoe Co.* v. *Pinkus*, 278 U.S. 261, 265-66, 73 L. Ed. 318, 49 S. Ct. 108 (1929); *see also Pobreslo* v. *Joseph M. Boyd Co.*, 287 U.S. 518, 525, 77 L. Ed. 469, 52 S. Ct. 262, 53 S. Ct. 262 (1933); *Stellwagen*, 245 U.S. at 615-16."); *see also Carlson's v. Gould,* 176 Colo. 172, 489 P.2d 1038 (1971) (Colorado ABC law unconstitutional to the extent it purported to discharge debt).

Second, <u>any Surplus after all debts are paid must be returned to the assignor</u>. *Brecht v. Law Union & Crown Ins. Co.*, 153 F. 452 (9th Cir. 1907):

> An assignment for the benefit of creditors is well defined to be 'a transfer by a debtor of some or all of his property to an assignee in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and to return the surplus, if any, to the debtor.' *Burrill on Assignment*, § 2. . . . When the debts were paid, the debtor had a right to the surplus, but until that was done she had no legal or equitable interest in the property, or its proceeds, that could be sold or encumbered or seized on attachment or execution by her creditors."

*Jarvis v. Webber*, 196 Cal. 86, 236 P.138 (1925), held as follows:

> The provision that a surplus of proceeds remaining after satisfaction of the claims of the creditors named should be returned to the grantors does not, as supposed by appellants, distinguish the contract as one of security only. The reservation of an interest in the possible surplus—not in the property itself— marks the transaction more clearly as an assignment for the benefit of creditors. [Citations omitted.]

With those two pieces in place—that an ABC cannot discharge a debt and that surplus has to be returned to the assignor—the requirement of consent becomes obvious. If the party can be forced to participate in the ABC, get paid cents on the dollar, and not purse the assignor for

6

any surplus returned to it, then the ABC has effectively discharged the debt.

This point is so well established that it is often simply included in the non-disputed aspects of Court's rulings. The United States Supreme Court, in *Robinson & Co. v. Belt*, 187 U.S. 41, 69 (1902), held:

> In *McReynolds v. Dedman*, 47 Arkansas, 347, it was held that, although an assignor might make preferences and exact releases from creditors who assented to the assignment, if he reserved to himself, to the exclusion of <u>non-assenting creditors</u>, the surplus that remained, the deed was fraudulent upon its face. The difficulty with that assignment was that, in case the creditors refused to execute the releases, the residue, instead of being devoted to the payment of the assignor's creditors, was to revert to the assignor himself. (Emphasis added.)

*Carlson's, Carlson's v. Gould,* 176 Colo. 172, 489 P.2d 1038 (1971) held:

> The provisions regulating the administration of trusts created by voluntary assignments for the benefit of creditors apply whether the assignor is solvent or insolvent. They do not prevent creditors from bringing action against the debtor or require those seeking to participate in the distribution of the estate to stipulate for his discharge.

In a bankruptcy, a non-consenting creditor (*i.e.*, a creditor that does not file a claim) may have its claim discharged by the bankruptcy, the same is not true in an ABC. In ABCs, a creditor is perfectly at liberty to not file a claim against the ABC, and instead resort to the Surplus, if any, for satisfaction. *See Carlson's, supra.*

The reason ABCs usually work is that there is not a Surplus, so every creditor has strong incentive to "consent" by filing a claim. If it does not so consent, it will likely get nothing. In this case, however, the Indian entities of which Sterling and the receiver are creditors (Licensing, Holdings, and Company) had a Surplus—at least a $2,500,000 Surplus, and probably more. CMA wrongfully used the Surplus to pay the debts of another Indian entity (Indian Motorcycle Corporation) rather than returning it to the Assignors, as ABC law requires. Had it done so, the Surplus would be available to satisfy the claims of Sterling and the Receiver. Neither the receiver nor Sterling have consented and they are not looking to the Assignment Estates; rather,

they looking to the Surplus or their pre-Assignment claim against CMA.

> Page 6. – [N]either the Receiver nor Sterling is a "creditor" of any of the Indian Entities and both have failed to establish otherwise.

California law is to the contrary. Cal Civ Code, Division 4, General Provisions, Part 2., Special Relations of Debtor and Creditor, Title 1. General Principles, § 3430, "Who is a creditor," reads in its entirety: "A creditor, within the meaning of this title, is one in whose favor an obligation exists, by reason of which he is, or may become, entitled to the payment of money." Regardless of which claim of the receiver or Sterling the Court considers, both are "creditors" under California law.

> Page 8. - Even if the Receiver was a claimant or creditor of the Indian Entities, this Court is not the appropriate court to bring a motion for an accounting in the California ABCs. The Indian Entities' ABCs are proceeding in the State of California under applicable California state law and are subject to the jurisdiction of the California courts. The Receiver has not offered, and the Assignee cannot find after extensive review, any basis for a federal district court overseeing a receivership in one state to compel an "accounting" of an Assignment for Benefit of Creditors estate that is proceeding under the applicable laws of another state where the party against whom the accounting is sought is neither a party to nor a claimant of the receivership estate.

First, the Court should note again the omission of the word "statutory." Second, this Court has jurisdiction as shown above. Third, the receiver has no intention of going to California to pursue this claim. This Court is perfectly competent to hear the case, and CMA's repeated requests for affirmative relief show that it thinks so, too. Indeed, any claims regarding any receivership assets should always be heard by the receivership court.

> Page 9. Footnote 9. – [T]he December 14 Order, specifically, is not effective to enjoin or preclude the Assignee from fulfilling its lawful duties and obligations under applicable California law because the manner in which it was obtained violates even the bare essentials of due process.

If CMA disagreed with the Order, it should have moved to reconsider it or appealed it. It did neither. It just ignored the Order, as if it sat in review of this Court.

D.  <u>The Order was not an injunction, it was merely a case management order</u>.

In *FTC v. Overseas Unlimited Agency, Inc.*, 873 F.2d 1233 (9th Cir. 1989), the Ninth Circuit determined it lacked jurisdiction to review a turnover order entered in a receivership case exactly for this reason:

> Since the June 16 Order did nothing more than direct that funds be turned over to a receiver, we lack jurisdiction. A simple "turnover" order made pursuant to a previously unappealed order appointing a receiver does not constitute an "injunction" within the meaning of 28 U.S.C. § 1292(a)(1). *Waylyn v. Casalduc*, 219 F.2d 888, 890 (1st Cir. 1955). In *Waylyn*, the United States moved to foreclose a mortgage and to have a receiver appointed for rental properties held by the Waylyn Corporation. Waylyn did not appeal from the appointment of the receiver. Thereafter, the district court ordered Waylyn to turn over $9,900 in security deposits to the receiver. Waylyn appealed on the ground that the order constituted a mandatory injunction. The First Circuit disagreed, labeling the order "a mere administrative turnover direction." *Id.*
>
> A turnover order likewise does not fall within section 1292(a)(2), since it is not (1) an order appointing a receiver, (2) an order refusing to wind up a receivership, or (3) an order refusing to accomplish the purposes of a receivership. *See American Principals*, 817 F.2d at 1350 ("The circuits have held that orders requiring that funds be turned over to a receiver are unappealable."); *United States v. Beasley*, 558 F.2d 1200, 1201 (5th Cir. 1977); *United States v. Chelsea Towers, Inc.*, 404 F.2d 329 (3rd Cir. 1968); *Wark v. Spinuzzi*, 376 F.2d 827 (5th Cir. 1967). These cases "illustrate a policy of strict construction that has confined appeals to the three categories clearly specified in the statute." C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3925, at 92 (1977). See also 9 Moore's Federal Practice para. 110.19[2], at 208 (1986) (similar). The June 16 Order does not fall within any of the three categories listed in 28 U.S.C. § 1292(a)(2).

If a requirement that money be turned over to a receivership court is not an injunction, then an Order that a party not spend that same money cannot be rise to the level of one.

E.  <u>CMA has not shown any immunity from Orders of this Court</u>.

It is not for the receiver to argue why CMA's purported immunity is not effective, it is CMA's burden to show that it has any immunity in the first place. It has not done so because there is none.

9

    F. <u>The Motion is a request to assure compliance with prior Orders</u>.

The Motion for Accounting was not an attempt to end run this Court's prior Order that the receiver go to California to obtain discovery. First, that discovery was very broad; the Motion here only sought confirmation that CMA was following a particular Order or explain why it was not. Second, as a procedural matter, the case posture has changed a good bit since then the Court's Order in January. CMA has asked for substantial affirmative relief in the Receivership Action and the filing of the First Amended Complaint, making a Rule 45 subpoena no longer proper.

    G. <u>The "Motion for Sanctions" is procedurally improper</u>.

The receiver will not dignify the "Motion for Sanctions" with a substantive response. The receiver will simply observe that under Rule 11 and Local Rule 7.1 a Response to another Motion cannot contain request for sanctions. A separate Motion must be filed; if one ever is, the receiver will respond at that time.

## CONCLUSION

This Court has jurisdiction, CMA is bound by the Order, and CMA violated the Order. The Court should require the requested accounting so it can determine an appropriate sanction.

Respectfully submitted this 9th day of October, 2005.

            By: *s/ John M. Tanner*
            Fairfield and Woods, P.C.
            1700 Lincoln Street, Suite 2400
            Denver, CO 80203-4524
            Phone: (303) 830-2400
            Fax: (303) 830-1033
            Email: jtanner@fwlaw.com

            Attorney for Plaintiff Sterling Consulting
            Corporation, as receiver

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO  80202
**Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
  Woods and Levy
633 17th St., Ste. 2200
Denver, CO  80202
**Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
  & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO  80202-1273
**Attorney for Carl D. Lucci/Albert R. Lucci**
jcage@cagewilliams.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO  80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, DC  20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO  80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO  80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO  80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA 91910-5803

Mark S. Schmidt, Esq.
Miller Simon & Maier, S.C.
788 North Jefferson Street
Milwaukee, WI 53202
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA 92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL 34982

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C. 20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA 01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C. 20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA 70506

Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ 08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM 87111

Albert R. Gazza
589 Manchester
E. Glastonbury, CT 06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL 60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN 55311

Steve Halprin
1316 Penningtow Place
Concord, N.C. 28207

Alf Iseback
Gamla Tuvevagen 4
41705 Goteborg
**SWEDEN**

Kathryn L. Troccoli
1911 Champlain St.
Ottawa, IL 61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA 91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM 87501

John Petitto
Town & Country Sports Center, Inc.
U.S. 12 & U.S. 127
Cement City, MI  49233

Marcia Taylor
Bennett Motor Group Express
1001 Industrial Parkway
McDonough, GA  30253

Richard Basciani
Basciani Foods
8876 GapNewport Pike
Avondale, PA  19311

Rooke Everill
Derek John Everill
Ken Everill
1204 Lake Point Circle
McKinne, TX  75070

Michael D. Fowler
Martha Dickson (Deceased)
1680 S.W. St. Lucie West Blvd.
Port St. Lucie, FL  34986

John Inelli
17 Old Farmstead Rd.
Chester, NJ  07930

Eller Industries
c/o Leonard S. ("Lonnie") Labraiola
6035 N. 115th Street
Longmont, CO  80504-8434

**Registered Agent:**
Randal L. Hittle
1630 Main Street, Suite 202
Longmont, CO  80501

John Nicholson
22 Thoreau Ct.
Beverly, MA  01915

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO  80246
**Receiver**
rblock@xpn.com

**Courtesy Copies to:**
Julie Trent
jt@bsblawyers.com

Eugene Sprague
esprague@bw-legal.com

Michael Chodos
michael@chodos.com

Robert Pitts
rpitts@lawrwp.com


By:   *s/ John M. Tanner*
        Fairfield and Woods, P.C.
        1700 Lincoln St., #2400
        Denver, CO  80203
        Phone:  (303) 830-2400
        Fax:  (303) 830-1033
        Email:  jtanner@fwlaw.com