

**WINTHROP COUCHOT**
*Professional Corporation*

Steven L. Cademartori
Paul J. Couchot
Richard H Golubow
Michael D. Good
Garrick A. Hollander
Peter W. Lianides

Sean A. O'Keefe
Robert E. Opera
Stacey D. Pacelli
Robert W Pitts
William J. Wall
Marc J. Winthrop

660 Newport Center Drive • Fourth Floor • Newport Beach • CA • 92660 • Tel: (949) 720-4100 • Fax: (949) 720-4111 • www.winthropcouchot.com

July 14, 2004

**VIA EMAIL rjgibson@jonesday.com**
Rick J. Gibson, Esq.
Jones Day
41 S. High Street, Suite 1900
Columbus, OH 43215

RE: **Indian Motorcycle Intellectual Property Asset Purchase**

Dear Rick:

In order to ensure that all parties to the above-referenced transaction are all on the same page, CMA, as Assignee for the Benefit of Creditors of Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. (collectively, "Indian"), has requested that I set forth the Assignee's position in writing with respect to the Indemnification Agreement between Indian and Sterling Consulting Corporation ("Sterling"), dated August 31, 2000 ("IA").

CMA's concern is that the Buyer under the Asset Purchase Agreement ("APA") is being rushed unfairly to make a decision regarding whether or not it is in the Buyer's best interest to assume the IA. Given: (i) the fact that the operative IA came to our attention last week and was provided to the Buyer this week, (ii) that representations were made by the Assignee in good faith based on its analysis of the former indemnification agreement, which representations are inapposite with respect to the operative IA; and (iii) given the contextual complexity of the IA, the Assignee felt uncomfortable not providing the Buyer with the Assignee's position on this matter and the operative IA in particular. While it may seem counter-intuitive in an asset purchase to assume any indemnification-type agreements, the IA is, in the Assignee's view, an agreement that contains numerous benefits to the Buyer and that, after a careful contextual analysis, may be an agreement the Buyer may want to assume.

The following is based on the Assignee's understanding of the IA, the relevant related documents and the relevant facts and circumstances after our investigation, including extensive discussions with our IP counsel. Among the benefits the Buyer would have if it assumed the IA are the following:

EXHIBIT 2

#99382 v1 - Ltr to R. Gibson 7/14/04 re Asset Purchase

Rick J. Gibson
July 14, 2004
Page 2

1. Rick Block would be a cooperative witness for the Buyer in the event that Rick Block's testimony was required in any litigation related to the Indian trademarks. Equally important, Rick Block would be an exclusive witness, at least on a voluntary basis, for the Buyer (See, Sections 3.1.f.; 4.3.; 5.1.e.; 5.16; and 5.17 of the IA). Although the importance of Rick Block's knowledge and therefore the likelihood of his being a useful witness diminishes over time, to the extent anyone ever questions the chain of title to the Indian trademarks, the Buyer might be better off having Rick Block as a cooperative, and to a certain extent exclusive, witness for the Buyer rather than as a wild card who could be subpoenaed by the challenger (or could, in fact, solicit or voluntarily cooperate with challengers). Obviously, to the extent there is litigation wherein the Buyer would require testimony from Rick Block, it would need to pay for such testimony in any event.

2. If Rick Block does not file a claim for indemnification prior to December 31, 2005, the Buyer and Rick Block would each receive $25,000 from the escrow account on January 1, 2006 (See, Section 5.14 of the IA), or 50% of the remaining balance after payment of any claims from such escrow account. In the four years that the IA has been in place, Rick Block has not filed a claim for indemnification and Indian has not considered asking Rick Block to testify in any litigation regarding the trademarks. Note that although it is possible that Rick Block has some indemnification claim in mind currently, there is a 90 day limitation on requests for Claims, pursuant to Sections 3.4.b. and 5.5.b. of the IA. Thus, it is unlikely there is any current Claim. As time goes on, it becomes increasingly less likely that Rick Block will file a claim for indemnification and that the Buyer would not receive its 50% share of the escrow account on January 1, 2006.

3. If Rick Block's testimony is required in any litigation related to the trademarks, the first $50,000 of the Buyer's indemnification obligation would already be covered by the amount in the escrow account. As a result, the Buyer could count on Rick Block's cooperation without having to pay anything for it initially. It is doubtful that the Buyer's indemnification obligation would exceed the $50,000 in escrow given that (i) there is no current litigation where Rick Block's testimony would be needed; (ii) Rick Block's rate is capped at $175 per hour (see, Section 1.1.q. of the IA); (iii) there is a $50,000 cap on certain types of actions (see, Section 5.11 of the IA); and (iv) there is only 18 months left for Rick Block to make a claim for indemnification with respect to the "viable" types of indemnification claims as it would need to be made prior to December 31, 2005 (see, Section 2.1 of the IA).

Further, if the Buyer does not assume the IA, Rick Block may feel that he is no longer aligned with the owner of the Indian trademarks and he may attempt somehow to disrupt the future Indian Motorcycle business by filing spurious claims in the future or by supporting third parties who may attempt to question the Buyer's rights to the Indian trademarks. While Indian's IP counsel does not foresee any challenges in the U.S., it would not be unprecedented for Rick Block to attempt to collaborate with third-party

WINTHROP
COUCHOT
*Professional Corporation*

Rick J. Gibson
July 14, 2004
Page 3

claimants in other countries (such as Alan Forbes in the U.K.) to exert pressure on the Buyer in the future. Whether Rick Block would actually undertake or be successful in these endeavors cannot be predicted, but it does cause us to suggest that the Buyer seriously consider assuming the IA rather than risk alienating Rick Block.

On the other hand, the Buyer will also want to consider that if it assumes the IA, Rick Block will view it as an opportunity to continue to be involved in the defense of the Indian trademark. Since the IA was signed, Indian has successfully marginalized Rick Block, but not without substantial effort on the part of Indian. While Rick Block certainly can be an exasperating person to work with, any significant downside relative to spurious indemnification claims (as opposed to Rick Block's cooperation with respect to spurious trademark challenges, as referenced above), is mitigated by Indian's right under the IA to file a Notice of Dispute with respect to any such claims, and resort to the Formal Dispute Resolution Process.

With regard to the possibility of simply negotiating a deal with Rick Block following the Closing of the APA, it is not at all clear that Rick Block wishes to be bound by the terms of the IA. It is unlikely that it will be possible to obtain the beneficial aspects of the IA as discussed above on a consensual basis.

As I stated in my email of July 13, 2004, the Assignee is willing to extend the Closing Date of the APA to accommodate the Buyer's full review of the IA and, more importantly, all of the surrounding facts and circumstances. Further, to the extent the Buyer needs additional documentation relating to the IA, please let me know at your earliest convenience.

Of course, the Buyer ultimately must make up its own mind, but the Assignee felt it would be remiss in not providing the Buyer with this letter and encouraging the Buyer and its IP counsel to speak with Indian's IP counsel directly.

Should you have any questions regarding the foregoing, please give me a call.

Very truly yours,

Robert W. Pitts

cc: (All via email)
Charles G. Klaus
Michael J. Joncich
Sara D. Lipscomb, Esq.
Frank J. O'Connell
David Wright
Stephen Julius

WINTHROP
COUCHOT
*Professional Corporation*