IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In Re: INDIAN MOTORCYCLE MANUFACTURING, INC., a New Mexico corporation.

ORDER RE: CASH FUND DISPUTE

Magistrate Judge Craig B. Shaffer

This civil action came before the court on October 10, 2006 for a hearing regarding, *inter alia*, the dispute between Sterling Consulting Corporation as receiver ("Sterling") and Credit Managers Association of California's ("CMA") over the $50,000.00 Cash Fund that was established by Sterling and Indian Motorcycle Company, IMCOA Licensing America, Inc., and IMCOA Holdings America, Inc. ("Indian Entities"). (*See* Indemnification Agreement (Exhibit 2 to doc. # 2326)). Pursuant to the Order of Reference dated September 13, 1995 (doc. # 56), the memorandum dated December 14, 2005 (doc. # 2012), and the July 10, 2006 Order (*see* docs. # 2307 and # 2308), this matter was referred to the Magistrate Judge for decision. The court has reviewed CMA's "Motion to Submit Dispute to Magistrate Judge, . . ." (filed December 9, 2005) (doc. # 1979), Sterling's "Brief Regarding Breach of Contract by CMA" (filed July 24, 2006) (doc. # 2326), CMA's "Opening Brief Re: Cash Fund Dispute" (filed July 24, 2006) (doc. # 2327), Sterling's "Reply Brief Re: Breach of Contract" (filed July 31, 2006) (doc. # 2341), CMA's "Response Brief Re: Cash Fund Dispute" (filed July 31, 2006) (doc. # 2342), the case file, the arguments presented in open court on October

1

10, 2006, and the applicable law and is sufficiently advised in the premises.

I.      Background

On August 31, 2000, the Indian Entities and Sterling, in its capacity as receiver and in its individual capacity, entered into a Settlement Agreement and an Indemnification Agreement.  (*See* Exhibits 1 and 2 to doc. # 2326).  Sections 5.12, 5.13, and 5.14 of the Indemnification Agreement provide for establishment of the Cash Fund, payment of Claims Losses from the Cash Fund, and disbursement of any "residue" of the Cash Fund.  As of this date, $50,000.00 remains in the Cash Fund and no Claims are pending.  (Exhibit B to doc. # 2342 at ¶ 7).

On or about October 13, 2005, Sterling sent a letter to the Fund Agent demanding that the entire Cash Fund be delivered to Sterling.  (Exhibit 5 to doc. # 2327).  CMA objected to that demand.  (*See* Exhibits 6 and 7 to doc. # 2327).  The dispute over the disposition of the Cash Fund is before the Magistrate Judge for decision.

II.     Analysis

Sections 5.12, 5.13, and 5.14 of the Indemnification Agreement set forth the parameters of the Cash Fund:

> 5.12   Funding Arrangements.  Upon the execution of this Indemnification Agreement, Indian agrees to transfer $50,000 to Fairfield and Woods, P.C. (The "Fund Agent") to ensure the prompt payment of all Claims Losses (the "Cash Fund").

2

> 5.13   Resort to Cash Fund.  If Indian shall be in default of its obligations to Indemnify an Indemnified Person hereunder with respect to Receiver's Fees, Receiver's Expenses, Receiver's Legal Fees, Sterling's Fees, Sterling's Expenses, or Sterling's Legal Fees in respect of any Claim, the Indemnified person may, at its option, give notice in writing to the Fund Agent specifying the amount due and payable and the Fund Agent shall promptly pay said amount demanded from the funds available in the Cash Fund. . . .
>
> 5.14   Residue of Cash Fund.  Any amount not otherwise paid to an Indemnified Party from the Cash Fund, shall be paid by the Fund Agent on January 1, 2006 one half to Indian and one half to Sterling.

"Claim" is defined as:

> (i) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(Indemnification Agreement (Exhibit 2 to doc. # 2326) at § 1.1.b.).  "Claim Loss" is

defined as:

> a Loss without limitation except as set forth in the following five sub-paragraphs:
>
> > 1.1.c.i.   Losses shall be net of any insurance proceeds received by the Indemnified Party with respect to a Loss. Nothing in this subparagraph 1.1.c.ii shall preclude an insurer from subrogation.
> >
> > 1.1.c.ii.   Losses shall be limited to Losses arising from the Subject Matter and shall not include any Losses relating to any action taken by the Receiver or Sterling to pursue claims against First Entertainment or any other action commenced by the Receiver or Sterling as plaintiff relating to the Subject Matter after the date hereof.
> >
> > 1.1.c.iii.   Losses shall not include punitive damages that

>may be imposed on or against an Indemnified Party.
>
>1.1.c.iv.   Losses relating to any Claim by the Internal Revenue Service against any party for unpaid taxes, interest, or penalties.
>
>1.1.c.v.   Losses shall not include anything that would otherwise be a Loss but for a Final Order that the Loss was directly attributable to an act of the Receiver that was fraudulent in bad faith, outside the scope of the Receiver's authority, or not authorized by the District Court.  In this regard, as of the date of this Indemnification Agreement, neither Indian nor the Receiver is aware of any acts of the Receiver that would be subject to the provisions of this exclusion.

(Indemnification Agreement (Exhibit 2 to doc. # 2326) at § 1.1.c.).

Sterling contends that it is entitled to the entire amount in the Cash Fund.  In 2003, Indian Motorcycle Company went out of business and Indian and its subsidiaries made successive assignments for the benefit of creditors to CMA.  CMA subsequently made an assignment to a third party.  Sterling believes that the assignments breached paragraph 5.10 of the Settlement Agreement ("Indian may not assign its obligations hereunder without the written consent of the Receiver (unless discharged) and Sterling").  Sterling believes that the assignment by CMA also breached CMA's fiduciary duty to Sterling.  Sterling argues that by breaching its fiduciary duty to Sterling, CMA breached the Settlement Agreement.  Sterling suggests that the entire Cash Fund be paid to Sterling to offset any future determination that CMA breached the Settlement Agreement.  Sterling also suggests that CMA's breach of fiduciary duty entitles Sterling to the entire Cash Fund as restitution.

CMA asserts that the Cash Fund was created as a surety for Claims Losses, not

4

as a fund to compensate for breach of contract or breach of fiduciary duty.  CMA argues that, as no Claims were submitted to CMA or the Indian Entities, CMA was not in default of its obligations under the Indemnification Agreement.  CMA argues that, pursuant to Section 5.14 of the Indemnification Agreement, CMA is entitled to one-half of the $50,000.00 that remains in the Cash Fund.

"An agreement to indemnify another is an agreement by one person to hold another person harmless from such loss or damage as may be specified in the agreement." *Alzado v. Blinder, Robinson & Co., Inc.*, 752 P.2d 544, 553 (Colo. 1988) (citations omitted).  "As with other contracts, indemnity agreements . . . may be construed in view of all the circumstances surrounding the transaction." *Alzado,* 752 P.2d at 553 (citations omitted).  "An indemnity agreement is to be given such a meaning as would be attached to it by a reasonably intelligent person . . . knowing all the circumstances prior to and contemporaneous with the making of the integration." *Alzado,* 752 P.2d at 553 (citations and internal quotation marks omitted).

"The primary goal of contract interpretation is to determine and give effect to the intent of the parties, and that intent is to be determined primarily from the language of the instrument itself." *CMCB Enterprises, Inc. v. Ferguson*, 114 P.3d 90, 94 (Colo. App. 2005) (citation omitted), *cert. denied*, (Colo. June 27, 2005).  "Unless there is an ambiguity in the [contract] language, the [contract] must be enforced as written." *Management Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 35 (Colo. App. 2004) (citations omitted).  "Under well-settled principles of contract interpretation, the words of the contract should be given their plain meaning according to common usage, and

strained constructions should be avoided." *Management Specialists, Inc.*, 117 P.3d at 35 (citation omitted). *See also First Christian Assembly of God, Montbello v. City and County of Denver*, 122 P.3d 1089, 1092 (Colo. App. 2005) ("The meaning and effect of a contract [are] to be determined from a review of the entire instrument, not merely from isolated clauses or phrases") (internal quotation marks and citation omitted). "The overriding rules of contract interpretation require a court to apply the plain meaning of the words used, subject to interpretation from the context and circumstances of the transaction." *First Christian Assembly of God, Montbello*, 122 P.3d at 1092 (citations omitted).

Sterling does not contend that there are any unpaid Claims Losses. No party claims that the Indemnification Agreement is ambiguous. Based upon the express language of the Indemnification Agreement, the intent of the parties was to address Sterling's concern, as receiver,

> regarding its possible continuing participation in certain ongoing litigation involving Indian which the parties hereto expect may continue past the closing of the Receivership and also regarding future claims that may be brought against Indian, the Receiver, related parties, or some or all of them.

(Indemnification Agreement at Recital F).

> "In an effort to resolve these concerns, expedite the dismissal of Indian from the Receivership Action, and expedite the termination of the Receivership Action, the parties hereto enter into this Indemnification Agreement.

(Indemnification Agreement at Recital G). The Indemnification Agreement provided that Sterling would be indemnified with respect to certain specified Claims Losses (*see*

Indemnification Agreement at § 1.1.c.) through the term of the Indemnification Agreement. The parties established the Cash Fund to "ensure the prompt payment of all Claims Losses." (Indemnification Agreement at § 5.12). The Cash Fund was created by the transfer of $50,000.00 from Indian to Fairfield & Woods, P.C. (The "Fund Agent"). (Indemnification Agreement at § 5.12).

The Indemnification Agreement expresses that the Cash Fund was established to provide a surety for Claims Losses. The court does not perceive any provision in the Indemnification Agreement for payment to Sterling from the Cash Fund for an alleged breach of the Settlement Agreement or breach of fiduciary duty.[1] Even if the Cash Fund were not limited to serving as a surety for Claims Losses, there has been no determination that a breach of the Settlement Agreement has occurred. Sterling has not established an amount of damages for any alleged breach of the Settlement Agreement. The court perceives no provision in the Indemnification Agreement for use of the Cash Fund to offset any future determination that CMA breached the Settlement Agreement or a fiduciary duty.

Accordingly, IT IS ORDERED that on or before December 1, 2006, the Fund Agent shall pay one-half of the Cash Fund (including accrued interest) to CMA and one-half of the Cash Fund (including accrued interest) to Sterling, as Receiver.

Dated at Denver, Colorado this 26th day of October, 2006.

                                              BY THE COURT

                                              *s/Craig B. Shaffer*
                                              United States Magistrate Judge

---

1. Sterling suggests that CMA breached it's fiduciary duty to Sterling. In Colorado, the elements of a claim for breach of fiduciary duty are: (1) the defendant was acting as a fiduciary to the plaintiff; (2) the defendant breached a fiduciary duty to the plaintiff; (3) the plaintiff incurred damages or losses; (4) the defendant's breach of fiduciary duty was a cause of the plaintiff's damages or losses. COLJI-Civ. 26:1.

In its First Amended Complaint, Sterling has alleged a claim for breach of fiduciary duty against CMA. However, the First Amended Complaint remains subject to an Order to Show Cause why it should not be stricken.