UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

**Civil Action No. 95-cv-00777-REB-CBS**

In re:

Receivership Estate of INDIAN MOTORCYCLE MANUFACTURING, INC.,
a New Mexico Corporation

───────────────────────────────────────────────────────────────

**United States' Response to (DI# 2412) Pugliese's Motion
to Reconsider (DI# 2338) Restitution Order**

───────────────────────────────────────────────────────────────

By Minute Order dated October 31, 2006 (DI# 2439), the Court granted the United States until November 16, 2006, to respond to the motion (DI# 2412) by Anthony V. Pugliese, III, to reconsider the omnibus order of restitution entered on July 28, 2006, as amended (DI# 2338).   In the meantime, Mr. Pugliese filed a reply (DI# 2440) to the Receiver's response (DI# 2430) to his motion to reconsider, addressing some of the Receiver's points.  The Receiver's response agrees that Mr. Pugliese had no notice of the restitution proceedings until the restitution order was entered, and would therefore be entitled to present his arguments against the omnibus restitution order unless the Court concludes that two months is an unreasonable delay after Mr. Pugliese received notice for purposes of moving to reconsider.  Fortunately, that issue of whether Mr. Pugliese waited too long to seek reconsideration appears to be moot because Mr. Pugliese does not appear to be making any argument against the principle of restitution generally, but instead appears to be asserting a defense unique to himself.[1]

Preliminarily, this raises an issue of when is the appropriate time to raise claimant-specific defenses – a problem also indicated by the pending order of the Tenth Circuit that Mr. Payne show

───────────────────────────

[1] To the extent that Mr. Pugliese does endeavor to argue against restitution generally, he offers no reason for the Court to change its conclusion.

2028668.1

cause why his appeal from the omnibus restitution order should not be dismissed as premature. Indeed, the omnibus restitution order itself explicitly contemplates that the Receiver may seek judgments against those who do not comply with the requirement to make restitution, thus implicitly determining that individual claimants may oppose judgments on claimant-specific bases at the time the Receiver seeks a judgment against a particular claimant. The United States submits that the restitution order does not preclude claimant-specific defenses of the sort raised by Mr. Pugliese and that, therefore, there is nothing to "reconsider" as a result of Mr. Pugliese's motion.[2] In general, claimants should wait for the Receiver to seek a judgment against the claimant, by motion or ancillary complaint,[3] in order to assert a unique defense to restitution. In the instant

---

[2] For similar reasons, the United States' forthcoming response to the Tenth Circuit's order will argue that Mr. Payne's appeal is indeed premature, whether he seeks to appeal the general restitution order for reasons not specific to him or whether, as appears to be the case, he would also include some arguments unique to his own situation. Both grounds for appeal should, at a minimum, await a judgment against Mr. Payne, and certainly any defenses that are unique to Mr. Payne's situation should first have to be litigated in this Court before they become grounds for appeal.

[3] The United States continues to believe that an "ancillary complaint" may be the more appropriate form of pleading for the Receiver to seek judgments, notwithstanding this Court's prior indications that such pleadings are not appropriate. A judgment on an ancillary complaint will be clearly final for purposes of appeal. A judgment in response to a "motion" poses the risk that the Tenth Circuit will again question the finality of any such judgment for purposes of appeal, even though it would seem wholly unfair to make litigants like Mr. Payne or Mr. Pugliese wait until the receivership case is totally finished and closed to appeal judgments that may be used to execute on their assets in the meantime. Alternatively, the Court could include Rule 54(b) findings and determinations each time it enters a judgment against any claimant who fails to comply with the omnibus restitution order. But that would appear unnecessary if the Receiver was permitted (or instructed) to file ancillary complaints, understood to be distinct causes of action against specific defendants that are ancillary to the main receivership action and may rest on prior orders entered therein. Rule 66, Fed.R.Civ.P., seems to support the practice in receiverships of using ancillary complaints. *See S.E.C. v. Elliot*, 953 F.2d 1560, 1571-72 (11th Cir. 1992); *In re U.S. Oil and Gas Litigation*, 1998 WL 28544 (S.D.Fla. 1998); *In re Greenman Securities Litigation*, 94 F.R.D. 273, 281 (S.D.Fla., 1982). *See also Taylor v. Producers Pipe & Supply Co.*, 114 F.2d 785 (10th Cir. 1940) (ancillary complaint *against* a receiver in receivership action). The advent of electronic filing does not necessarily preclude ancillary complaints. *See Quilling v. Trade Partners, Inc.*, 2006 WL 897093, *1 (W.D. Mich. 2006) (referring to "ancillary complaint" as electronic pacer docket item 921 in receivership action, and adopting

---

matter, the Receiver did file a motion for judgment against Mr. Pugliese (DI# 2431) at the time the Receiver responded to Mr. Pugliese's motion to reconsider, so the arguments in Mr. Pugliese's motion to reconsider, and renewed in his reply to the Receiver's papers, are ripe.

At the time the government sought the extension of time to respond to Mr. Pugliese's motion to reconsider, it assumed that Mr. Pugliese was originally accorded an option to receive cash for at least part of his claim and elected instead to take stock in the Indian Motorcycle Company.  As the Receiver's response proves, Mr. Pugliese received at least 75,000 shares of stock, and the Receiver maintains that Mr. Pugliese should also have received an additional 80,000 shares, but the Receiver lacks documentation of such receipt by Mr. Pugliese (the stock records apparently now being in the control of CMA, or possibly Audax).  In reply, Mr. Pugliese seems to avoid squarely denying that he received the additional 80,000 shares and instead insists on strict proof by the receiver, even though the Receiver's papers suggest that the Receiver might have abandoned seeking restitution relative to the 80,000 shares if Mr. Pugliese had clearly sworn under oath that he never received the stock.  At least to that extent, the Court should treat Mr. Pugliese's defenses with some skepticism, although it may be premature to conclude that Mr. Pugliese also received the other 80,000 shares and thus appropriate to permit discovery on that issue (subject to appropriate relief against Mr. Pugliese if discovery demonstrates that he should simply be admitting receipt of the stock).[4]

The affidavit supplied with Mr. Pugliese's reply also appears to aver that he was never offered cash but rather was only offered a dealership.  Preliminarily, it is not clear that such an allegation is material.  If Mr. Pugliese was offered a dealership in satisfaction of his claim, and

the magistrate judge's recommendation to dismiss in part the ancillary complaint and deny dismissal in part).

[4] Paragraphs 9 and 10 of Mr. Pugliese's affidavit filed with his reply to the Receiver's papers are conspicuous in avoiding swearing that he did not receive the 80,000 additional shares.

elected instead to take stock, he would be liable for restitution to the extent that the dealership or stock had value at the time he received it.  The United States does not know whether dealerships had value (but understands that dealers may have later been allowed credits toward parts and supplies).  On information and belief, the stock traded on a "gray" market, even though trading was technically restricted, and Mr. Pugliese may thus have been able to sell it.  (The United States does not mean to pretermit any additional legal arguments that the Receiver may advance if the facts ultimately found are consistent with Mr. Pugliese's contentions.  The Receiver is far more conversant than government counsel is with the proceedings that transpired in this case in 1999 and leading up to the distribution orders under which Mr. Pugliese ultimately received at least 75,000 shares and possible 155,000 shares of stock in the Indian Motorcycle Company.)

Notwithstanding Mr. Pugliese's allegations, the Receiver maintains that he could have elected to receive cash.  Certainly if the Receiver's position proves to be correct, then Mr. Pugliese is liable for restitution.  According to the Receiver, Mr. Pugliese was mailed a copy of the Receiver's 28th Report, approved by the Court in July of 1999, which indicated that all claimants, including dealership claimants, could elect to receive cash.  If so, that supports the Receiver's assertion that Mr. Pugliese's determination to convert his dealership claim to stock was with notice that he could have elected to receive cash for his dealership claim.[5]  Also, there appears to be a factual dispute regarding whether Mr. Pugliese may have signed some kind of form generally required by the Indian Motorcycle Company before it would allow the conversion of a claim to stock.

---

[5] Mr. Pugliese's reply affidavit leaves one with the impression that the 75,000 shares of Indian stock that he admits receiving were associated with a dealership claim, whereas the 80,000 additional shares that he neither admits nor denies receiving may not have been associated with a dealership claim.  But there were no direct stock claims.  Thus, if Mr. Pugliese received the other 80,000 shares, their issuance had to reflect conversion from either a cash claim or dealership claim.  (Depositor claims were much smaller and could not account for 80,000 shares.)

In sum, it appears to the United States that a modicum of discovery is required to resolve Mr. Pugliese's specific defenses to the enforcement of the omnibus restitution order against him in the form of an executable judgment, although the Court would certainly be justified in first ordering Mr. Pugliese to be forthcoming and candid about whether he received 80,000 additional shares of stock.  But nothing in Mr. Pugliese's motion requires any "reconsideration" of the omnibus restitution order entered on July 28, 2006 (as amended).

Dated this 16th day of November, 2006.

Respectfully submitted,

WILLIAM J. LEONE
Acting United States Attorney
District of Colorado

*/s/ Adam F. Hulbig*
ADAM F. HULBIG
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
Telephone: (202) 514-6061
Facsimile: (202) 307-0054
Email:  adam.f.hulbig@usdoj.gov
        western.taxcivil@usdoj.gov

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 16th day of November, 2006, I caused the foregoing **United States' Response to (DI# 2412) Pugliese's Motion to Reconsider (DI# 2338) Restitution Order** to be filed electronically using the CM/ECF system, which will serve all counsel registered for service by that means.

In the event that Mr. Pugliese's attorney, Henry Portner, is not revealed to have been electronically served by the ECF confirmation page, the undersigned will immediate cause him to be served by First Class mail.

*/s/ Adam F. Hulbig*
ADAM F. HULBIG
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044