IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-000777-REB-CBS

In re: The Receivership of Indian Motorcycle Manufacturing, Inc., a New Mexico
corporation,

_____

## RESPONSE TO RECEIVER'S VERIFIED MOTION FOR JUDGMENT, FEES, AND COSTS AGAINST SCOTT S. KAJIYA AND HAIME RUIZ

_____

Scott S. Kajiya and Jaime P. Ruiz, by and through their attorneys, Peter C.

Freeman and the Law Offices of Peter C. Freeman, hereby oppose the Motion of

Sterling Consulting Corporation, as receiver, for the entry of Judgment against Scott S.

Kajiya and Jaime P. Ruiz, on the following grounds:

1.      While the Receiver's Motion for Judgment purportedly states the pertinent

facts regarding the Receivership's payment of approved claims in the sum of $500,000

to Mr. Kajiya, the Motion is patently misleading as it fails to set forth the mitigating and

uncontroverted facts known to the Receiver from his communications with Mr. Kajiya,

Mr. Ruiz and counsel which do not support or favor the entry of Judgment against these

individuals.  The Motion further fails to present the facts which demonstrate that the

Receiver's request for the award of receiver's fees, attorney's fees and costs

associated therewith is not appropriate or equitable.

2.      It is not disputed that the Receivership Estate paid claims that had  been

submitted by Scott S. Kajiya in a total of $500,000.  The payment was made by two

checks, dated September 30, 1999 and January 17, 2000, payable to "Scott S. Kajiya

and his attorney Peter C. Freeman", or the "Peter C. Freeman Client Trust Account."

3.      The amount paid by the Receivership was based on the compromise of the approved claim of Scott Kajiya against the Receivership Estate and a claim transferred from the Bankruptcy Cases in Massachusetts.  The total of those claims exceeded $1,250,000, a portion of which was for preferred stock purchased by Mr. Kajiya.  Also included in the claims were advances to Indian or paid on behalf of Indian by Mr. Kajiya, Jaime Ruiz and others that were seeking to do business under the Indian name.  Mr. Kajiya, Mr. Ruiz and their group of investors paid Indian for licenses for the use of the Indian name/marks in manufacturing and/or distributing Indian-branded jewelry, denim clothing, eyewear, and shoes and boots.  Mr. Ruiz was never a formal claimant in this matter, although he attended and participated in Settlement Conference(s) on the claims and related matters before Magistrate Judge Schlatter, with Mr. Kajiya, individually and as a spokesman for the other investors.

4.      Mr. Kajiya and Mr. Ruiz participated in the early stages of several actions arising out of the conduct and failure(s) of the Indian companies and the representations and actions of the "swindlers" that were active in the attempts to resurrect the Indian brand and products.  Although California residents, Mssrs. Kajiya and Ruiz became involved in both the Colorado receivership and the Massachusetts bankruptcy matters because of their advances to the Indian companies.  Ultimately, some of the claims presented by Mr. Kajiya were accepted, and a settlement/ compromise on the amount of those claims was reached with the Receiver, resulting in the agreement of the Receivership estate to pay $500,000 on the claim of Kajiya.

5.      Following the payment of the claim by the Receivership and the

2

disbursement of money to the other investors, Mr. Kajiya and Mr. Ruiz discontinued their active participation and monitoring of the Receivership proceedings.  They had lost a significant amount of money in their dealings with the Indian companies and the Receivership, including the attorney's fees paid for their participation, and they were not eager to continue their losses.  As a result, they did not have actual knowledge of the entry of the Order of Restitution by this Court until they were contacted by the Receiver with its "Notice of Restitution" in or about August 2006.

6.     The Receiver, by Richard Block, contacted Scott Kajiya directly by telephone regarding the demand for repayment.  Mr. Kajiya reported to Mr. Block that: i) he had received only $10,000 of the $500,000 payment; and ii) the balance of the money had been paid to Mr. Ruiz and others.

7.     On September 21, 2006, the Receiver, by Mr. Block, wrote to Peter Freeman, counsel for Mr. Kajiya (and Mr. Ruiz), demanding the repayment of $121,750 (24.35% of $500,000) by Mr. Freeman.  (Exhibit "1").   Mr. Freeman timely responded to the Receiver regarding his demand for the repayment, seeking clarification for the basis for the demand for repayment from counsel. (Exhibit "2").

8.     Mr. Freeman and Mr. Block spoke by telephone thereafter regarding Freeman's receipt of the payment as the attorney for the claimants.   On October 25, 2006,  Mr. Freeman provided the Receiver with confirmation of his receipt of the checks from the Receivership as counsel for Mr. Kajiya, the deposit of those funds into a California State Bar mandated Client Trust Account, and an itemization of the disbursement, as authorized by the client, of all funds received from the Receivership. (Exhibit "3")   Based on this showing, the Receiver's apparent claim for restitution

3

against counsel was discontinued.

9.     The records of the disbursements from Mr. Freeman's Client Trust Account showed that nearly $250,000 was paid directly from his Client Trust Account to third-party investors who were not specifically identified in Mr. Kajiya's claim, but had made significant advances.    Another portion of the funds in the Client Trust Account were disbursed to Mr. Ruiz for repayment to individuals that had made smaller advances to the Indian company, and the Receiver was invited to communicate directly with Mr. Ruiz regarding those funds and the itemization of their disbursement by Mr. Ruiz to the parties that advanced the funds to Indian.

10.     At the Receiver's request, Mr. Ruiz provided the Receiver with the information regarding his disbursement of the funds received from Mr. Freeman's Client Trust Account.   Mr. Ruiz reported that he was unable to provide documents to show his disbursements to the other investors because his records of those accounts had been destroyed several years before.  Moreover, Mr. Ruiz reported that because of the age of the information, his banks advised him that no electronic records were still available. (Exhibit "4")

11.     Both Mr. Ruiz and Mr. Kajiya responded and provided information to the Receiver regarding their financial condition and hardship and their inability to pay the Restitution amount, in addition to their claim that they should not be required to repay the full Restitution amount because they did not retain or benefit from the payment from the Receivership, except for a small amount.  Mr. Ruiz proposed a restitution payment based on the funds he retained and his present economic situation.  The Receiver did not respond to this proposal.

12.     After providing information to the Receiver in October and November
2006 regarding the disbursement of the funds, Mr. Kajiya and Mr. Ruiz received no
further word from the Receiver regarding the claim for restitution until their receipt in
April of a mailed copy of the Receiver's Motion, seeking full payment of the restitution
amount.

13.     Although the information provided by Kajiya and Ruiz, and their counsel's
corroborating information demonstrates that they did not receive the funds which are
sought to be recovered, the Motion flatly states that the Receiver "is aware of no
substantive defense to making restitution" and asks for judgment against both Kajiya (a
Claimant) and Ruiz (a non-party).  Despite their claims, and without any contradictory
information, the Receiver inappropriately concludes that "there is no reason to delay the
entry of final judgment" against Kajiya and Ruiz.

Notably, the Receiver's Motion fails to report to this Court the claims by Mr.
Kajiya and Mr. Ruiz that they did not personally receive or benefit from the lions' share
of the payment from the Receivership Estate, that it had been paid in the name of
Kajiya as the lead claimant for their group of investors, and that it had been disbursed
to others who originally provided the funds.  The Receiver is content to suggest to this
Court, even in light of the information he possesses to the contrary, that Kajiya and Ruiz
received and benefitted from the estate's payment, and now "simply" and unjustifiably
refuse to return the money.

14.     Inasmuch as the Receiver seeks judgment not only against Kajiya, a
Claimant, but also Ruiz, a non-party, there is no basis for the Receiver to contend that
he cannot seek restitution from, or a judgment against, the other non-parties who were

5

the actual recipients of the money the Receiver seeks to recover.  The Receiver should pursue those persons who received the funds, not those who were the conduit(s) for such funds.   This is particularly true in light of the Receiver's contention that he is acting in the interests of fairness and justice.   While sufficient information regarding the actual recipients is available to allow the Receiver to pursue them, the Receiver has chosen to ignore such information.  This is hardly fair or just.

15.    The Receiver's Motion further contends that Mr. Kajiya and Mr. Ruiz have forced the Receiver to incur fees and costs because they "simply have not paid the money which was mistakenly paid nearly eight years ago."   This contention is largely based on the Receiver's unsupported conclusion that there is no reason these claimants should not repay the money.  That conclusion conveniently ignores the showing that Kajiya and Ruiz did not receive the benefit of the paid claim, rather that it was repaid to those persons that originally provided the money.  The Receiver also ignores the receipt of information identifying the parties that were paid the money received from the Receivership estate.

His claim for fees also patently ignores the cooperation of Kajiya and Ruiz with the Receiver and responses to his inquiries (as opposed to other recipients who have ignored the Receiver's demands, etc.).  The Receiver's position implies that Kajiya and Ruiz rebuffed the Receiver's contacts and inquiries and refused to respond,  thereby requiring this Motion.

16.    Moreover, although provided with identifying information as to the parties who actually received significant portions of the Receivership's payment and who, in fairness and equity, should be required to repay their portions, to the best of the

6

knowledge of these parties the Receiver has done nothing with that information, much

less seeking the return of that money from the actual recipients.   If the Receiver is truly

seeking fairness and equity, those persons to whom the money that was mistakenly

"overpaid" nearly 8 years ago should be required to return the overpayment, any

judgment therefor should be directed at such persons.  Instead, the Receiver seeks full

payment, and a penalty in the form of attorney's fees and Receiver's fees, from these

parties.

17.    The Receiver's Motion, claiming a just and fair result, seeks a manifestly

unjust judgment which would impose a double penalty upon Mr. Kajiya and Mr. Ruiz, to

wit: first, for (the "return" of) nearly $125,000 which they did not retain; and second, for

the payment of attorney's fees and receiver's fees because of their alleged failure to

respond and comply, when they have done so, and because the Receiver has elected

to pursue them and not the true recipients of the money.

WHEREFORE, Scott Kajiya and Jaime Ruiz respectfully request and pray that

this honorable Court deny the Receiver's Motion for Judgment, Fees and Costs against

them.

Respectfully submitted this 2nd day of May, 2007

Dated: May 2, 2007

s/ *Peter C. Freeman*_____
Peter C. Freeman, SBN 100744
Law Offices of Peter C. Freeman
16485 Laguna Canyon Road Suite 230
Irvine, CA 92618
Telephone: (949) 341-0500
Facsimile: (949) 341-0505
email: peter@peterfreemanlaw.com

Attorneys for Scott S. Kajiya and Jaime Ruiz

7

## VERIFICATION

STATE OF CALIFORNIA     )
                                           )        ss.
COUNTY OF ORANGE    )

I, Jaime P. Ruiz, being duly sworn upon oath, solemnly affirm as follows: 1) I am a party to this proceeding by reason of the Receiver's Motion for Entry of Judgment against me based on this Court's Restitution Order; 2) I have reviewed the foregoing Verified Response to Motion for Judgment, Fees and Costs against Scott S. Kajiya and Haime Ruiz; and 3) the information contained therein is true to the best of my knowledge and belief.

_____
Jaime P. Ruiz

STATE OF CALIFORNIA     )
                                           )        ss.
COUNTY OF ORANGE    )

Subscribed and sworn to before me by Jaime P. Ruiz, on the 2nd day of May, 2007.

Witness my hand and official Seal.

CARMEN M. RHOADS
Commission # 1632529
Notary Public - California
Orange County
My Comm. Expires Dec 22, 2009

_____
Carmen Rhoads
Notary Public for the State of California

8



STERLING CONSULTING CORPORATION

4101 East Louisiana Avenue
Suite 300
Denver, Colorado  80246
Office:  303-388-1300
Fax:  303-781-4311
Email:  rblock@sterlingcorp.com

### Certified Mail—Return Receipt Request

September 21, 2006

Mr. Peter C Freeman, Esq
Law Offices of Peter C. Freeman
C/O Scott Kajiya
16485 Laguna Canyon Road, Suit 230
Irvine, CA  92618-3846

Re:     *In re: The Receivership Estate of Indian Motorcycle Manufacturing,
        Inc.,* Civil Action No. 95-cv-00777-REB-CBS, United States District
        Court, District of Colorado.


On July 28, 2006, the United States District Court for the District of Colorado,
the Honorable Robert E. Blackburn, Chief District Judge presiding, entered its
Amended Order Approving and Adopting Magistrate Judge's Recommendation.  By this
Order, you have been Ordered to make restitution to the Receivership Estate of an
amount equal to 24.35% of the payment that the receiver made to you.  The amount you
owe is $121,750.00.

Our records show that you received a Notice and a copy of the Order by mail.
Our records also show that you have not paid the money you are obligated to pay.  This
letter is being sent to inform you that if the money you owe is not received on or before
September 28, 2006, the receiver will motion the District Court for a Judgment against
you.  A Judgment is likely to appear as a mark against your credit report, and expose
your assets to lien or seizure.

If you believe there is an error or that you do not owe the money, you
must contact the undersigned immediately.  If you do not have the ability to pay
the full amount, the receiver can make arrangements for you to pay over time,
but you must contact the receiver for this purpose.  It is no defense to that you
elected to take a dealership or stock in Indian Motorcycle Company rather than
(or in addition to) cash.

Very truly yours,

Richard A. Block

EXHIBIT "1"

LAW OFFICES OF
# PETER C. FREEMAN

PETER C. FREEMAN
BAHAR K. ABBASI

16485 LAGUNA CANYON ROAD, SUITE 230
IRVINE, CALIFORNIA 92618-3846
TELEPHONE (949) 341-0500  FACSIMILE (949) 341-0505

E. ROBB LIVINGSTON, A P C.
OF COUNSEL.

September 25, 2006

VIA E-MAIL (rblock@sterlingcorp.com) AND FAX (303)-781-4311

Mr. Richard Block, President
Sterling Consulting Corporation
4101 East Louisiana Avenue Suite 300
Denver, CO 80246

> Re:   In re: The Receivership Estate of Indian Motorcycle Manufacturing Inc.
>        USDC Case No. 95-cv-00777-REB-CBS   USDC-Colorado

Dear Mr. Block:

I have received your letter dated September 21, 2006 regarding the July 28 Order entered by the Hon. Robert E. Blackburn, requiring restitution to the Receivership Estate of a portion of the payment the receiver made to various parties in the action, including my client, Scott Kajiya.

While I remain as counsel of record for Mr. Kajiya, I have not been in contact with him for quite some time, and do not have a valid current address.   I will address those issues for my office separately and attempt to insure that Mr. Kajiya has actual notice of the court's Order.

However, in an abundance of caution, your letter regarding the restitution is addressed to me personally, and is "C/O Scott Kajiya", which is clearly either a typographical error or a complete mistake with respect to the responsible party. I have assumed, to this point, that your contacts with and through this office have been intended to be directed to Mr. Kajiya through me as his counsel of record.   However, the language in your most recent letter, coupled with the address error, suggests that you believe my office is responsible for the repayment.

Please confirm with me, in writing, that your communications with my office have been intended for Mr. Kajiya and do not constitute any attempt to recover money on behalf of the Receivership from me, personally or through my office.   I will appreciate your soonest possible response to this letter, and prior to the September 28 deadline you have established for payment and the request for an entry of judgment. I trust no further or formal action will be required by my office to insure that the record is correct.

Very truly yours,

LAW OFFICES OF PETER C. FREEMAN

Peter C. Freeman

# EXHIBIT "2"

PCF:fp
cc:   Jack Tanner, Esq.
      Scott S. Kajiya

LAW OFFICES OF

# PETER C. FREEMAN

16485 LAGUNA CANYON ROAD, SUITE 230

PETER C. FREEMAN

IRVINE, CALIFORNIA 92618-3846
TELEPHONE: (949) 341-0500 • FACSIMILE: (949) 341-0505
peter@peterfreemanlaw.com

F. ROBB LIVINGSTON
OF COUNSEL

October 25, 2006

VIA TELECOPIER (303) 830-1033
and U.S. MAIL

VIA EMAIL  rblock@xpn.com  AND  U.S.
MAIL

John M. Tanner, Esq.
FAIRFIELD & WOODS, P.C.
2400 One Norwest Center
1700 Lincoln Street
Denver, Colorado  80203-4524

Mr. Richard A. Block, President
Sterling Consulting Corporation
4101 E. Louisiana Avenue Suite 300
Denver, Colorado 80246

Re:    In re: The Receivership of Indian Motorcycle Manufacturing, Inc.

Dear Mr. Tanner and Mr. Block:

This letter follows the email exchanges I have had with Mr. Block commencing on October 20
regarding the Order of Restitution and the Receiver's claim to 24.35% of the $500,000
disbursement made to Mr. Kajiya through this office.  In the initial communication, Mr. Block
advised me that based upon his conversation(s) with Scott Kajiya, Jaime Ruiz and I were the
recipients of $490,000 of the total settlement amount disbursed by the Receiver in October 1999
and January 2000 which resolved the claims of Scott and Jan Kajiya.

It is the purpose of this letter to set forth the actual facts with respect to the disbursement of the
settlement money received and deposited into my client trust account for the benefit of Mr.
Kajiya.   I am presently attempting to locate and assemble all of the hard-copy records of these
transactions, as the following information has been obtained from my electronic files and records.

The settlement was received in two installments, the first for $350,000 on or about October 12,
1999, and the second for $150,000, on or about January 25, 2000.   Those checks, which were to
be payable to "Scott Kajiya and his attorney, Peter C. Freeman" or to the "Peter C. Freeman
Client Trust Account" per my letter to Mr. Tanner dated August 13, 1999, were directly
deposited in the Client Trust Account of the Law Offices of Peter C. Freeman.   Copies of those
checks were not retained, but I am informed by Mr. Block that you have obtained them, and they
should clearly show endorsement to that account, maintained at Wells Fargo Bank.

By the written authorization of Mr. Kajiya and Mr. Ruiz, the following checks for disbursements
were written from my Client Trust Account from those settlement funds:

EXHIBIT "3"

Mr. Richard Block
John Tanner, Esq.
October 25, 2006
Page Two

| Check | Date | Payee | Amount |
|---|---|---|---|
| 1210 | 10/26/99 | Jaime P. Ruiz | $128,000.00 |
| 1211 | 10/26/99 | Donnienne Ruiz | $ 80,000.00 |
| 1213 | 10/26/99 | Brian Dietz | $ 27,000.00 |
| 1214 | 10/26/99 | Peter C. Freeman/Wells Fargo | $ 12,000.00 |
| 1215 | 10/26/99 | Peter C. Freeman | $ 12,000.00 |
| 1216 | 10/26/99 | Peter C. Freeman | $ 11,000.00 |
| 1217 | 10/26/99 | Claire Hori | $ 75,000.00 |
| 1219 | 10/29/00 | Scott Kajiya | $  5,000.00 |
| 1233 | 02/03/00 | Scott Kajiya | $  7,500.00 |
| 1234 | 02/10/00 | Jaime P. Ruiz | $100,000.00 |
| 1236 | 03/02/00 | Bill Hori | $ 30,000.00 |
| 1241 | 03/17/00 | Jaime P. Ruiz | $ 12,500.00 |
| TOTAL | | | $500,000.00 |

Copies of checks 1210-1211, 1214-1217 and 1219 are enclosed. Checks 1213, 1233, 1234 1236 and 1241 were negotiated after December 1999, and I am attempting to locate the statements and cancelled checks for my Trust Account for the year 2000.

Checks 1214-1216, totaling $35,000.000 were payable to me or my designee (in the case of Wells' Fargo) and received on October 26, 1999 in payment against the balance of hourly fees and the reimbursable costs incurred in my representation of the interests of Mr. Kajiya and Mr. Ruiz. There were no contingency fee arrangements and I was paid on an hourly basis for my work. I have requested my billing statements from closed storage and will provide those when they are received.

I understand that the disbursements to Mr. Ruiz were subsequently disbursed by him to others who advanced money to participate in the enterprises formed by Mr. Kajiya and Mr. Ruiz to utilize the licenses for the Indian name and marks in footwear and clothing. I believe Mr. Ruiz will be able to provide the names of all recipients of those funds.

Very truly yours,

LAW OFFICES OF PETER C. FREEMAN

Peter C. Freeman

PCF:fp
cc:   Scott Kajiya
      Jaime Ruiz

November 16, 2006

Mr. Block:

I am writing in response to your demand for the return of approximately 25% of the funds I received from the distribution by the receivership on the claim filed by Scott Kajiya on our behalf. I understand the District Court has ordered the return of this money and that you are actively seeking to recover these funds.

As background, approximately 16 years ago, I lent $300,000.00 to Scott Kajiya. In addition to this money, I was provided with approximately $ 200,000 more by other investors, which was either given to Mr. Kajiya or was paid to creditors of his company, Indian Motocycle Company Japan (IMCJ) or Indian Eyewear (IE). All of This money was a loan and was to be paid back within the year. For the loan, all the investors were to receive a modest return in interest, and a 10 % interest in his company Indian Motocycle Japan, a California corporation. I worked with Mr. Kajiya to Investigate and develop products which the company intended to sell or distribute, including denim jeans, eyewear, leather jackets and boots.  However, as I am sure you are aware, shortly thereafter things hit a slippery slope with the owners of the Indian name and marks, there was apparently fraud by many involved in the Indian companies, with resulting lawsuits and ultimately the receivership. Although we had no funds to do so, we attempted to stay active in the receivership action as a creditor, as it was seen as the only means to recover our investments. After 7years of constant battles, the receivership agreed to pay a portion of our claim, in the amount of $500,000, which was well below what we had ultimately invested in the development of products as well as the licensing fees, etc paid to Indian companies. The payment from the R Receivership was made to Scott and was received by our attorney, Peter Freeman. Scott directed him to pay to me what was a portion of what I originally lent to Scott, and most of the money that had been provided by others through me.

Now 16 years after this all started the nightmare called Indian Motorcycle comes back to haunt me again. Almost all of the money I received was paid out to the others that had invested through me in Scott's company, as I will show below.

I received $240,500.00 in three payments, the first was in October of 1999, for $128,000.00. Then in January of 2000 I received 2 checks, one for $100,000.00 and a second for $12,500.00.

From these disbursements, I paid the following people for the money they had loaned

**EXHIBIT "4"**

to Scott and Indian Motocycle Japan through me: After paying these people, and creditors of Indian Motocycle Japan, I was left with approximately $50,000 against my total investment of well more than $300,000.

Michael Ruiz $70,000.00  (LOANED TO PAY PRIOR IMCJ debt)
David Stevenson $40,000.00 (LOANED TO IMCJ & IE)
Tom Cavallaro    $35,000.00 (LOANED TO IMCJ & IE)
Engle & Murphy  $ 15,000.00  (FOR MARKETING & ADVERTISING FEES)
Mark Ruiz       $ 25,000.00  (LOANED TO IE)

After paying these people, and other creditors of Indian Motocycle Japan, I was left with $50,000 to repay my investment of well more than $300,000 (after the initial loan, I continued to advance money to keep the company moving, based on the licenses we had obtained and our belief that the Indian name and products would be successful).

Unfortunately, due to the passage of time, the records to demonstrate these payments by me are no longer available from my banks, and because of my extreme frustration with the circumstances and my losses in this investment, I burned all of my records on these transactions shortly after the money was paid out.

As to my personal situation, I am 52 years old, with two young daughters (13 & 14). I am self-employed as a mortgage loan officer. As I am sure you are aware, the mortgage market has taken a significant downturn recently, and my income is extremely limited based on our living expenses. Based on my situation, and the fact that I received only about $50,000 of the disbursement from the receiver, I am able to offer to repay $5,000 for the tax liability which is being claimed by the IRS. I hope that this will be favorably considered, as it poses a hardship for me and any additional amount would be devastating.

Sincerely,

Jaime Ruiz.

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

John M. Tanner, Esq.
Fairfield and Woods, P.C.
1700 Lincoln St., Suite 2400
Denver, CO  80203-4524
**Attorney for Plaintiff Sterling
Consulting Corporation, as receiver**
jtanner@fwlaw.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
        Woods and Levy
633 17th St., Suite 2200
Denver, CO  80202
**Attorneys for William R. Childs, Scott
McCormick, Jr., Douglas Walliser,
Ronald Schiff, Edward Pacelli, Morty
Lempel, A.B. Goldberg, First
Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
 & Lyden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO  80202-1273
**Attorney for Carl D. Lucci/Albert R.
Lucci**
jcage@cagewilliams.com

J. Eric Elliff, Esq.
Kristen Taylor-Randall, Esq.
        Morrison & Foerster, LLP
370 17th St., Suite 3550
Denver, CO  80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
U.S. Dept. of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044
**Attorney for Unites States of America**
adam.f.hulbig@usdoj.gov

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO 80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Suite 1100
Denver, CO  80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th St., Suite 2200
Denver, CO  80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**

James Duberg, Esq.
727 Third Ave.
Chula Vista, CA  91910-5803

Mark S. Schmitt, Esq.
Maier, Mcilnay Schmitt & Button
1150 Washington St.
Grafton, WI  53024-1916
**Attorney for Miller Simon & Maier**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL  34982

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
P.O. Box 55
Washington, D.C.  20044
**Attorney for IRS**

Robert J. Danie, Esq.
9 Wagon Wheel Drive
Feeding Hills, MA  01030

Noreene C. Stehlik,, Esq.
U.S. Dept. of Justice
P.O. Box 683
Ben Franklin Station
Washington, D.C.  20044

Robert L. Morrow, Jr., MD
401 N. College Rd., #5
Lafayette, LA 70506

Nicholas A. Russo, Sr.
310 Extonville Rd.
Allentown, NY  08501

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM  87111

Albert R. Garza
589 Manchester
E. Glastonbury, CT 06025-0085

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL  60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN 55311

Steve Halprin
1316 Penningtow Place
Concord, NC 28207

Alf Iseback
Sweden
[mail returned, no forwarding address]

Kathryn L. Troccoli
1911 Champlain St.
Ottawa, IL  61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA  91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM  87501
Attn: Kathy Lopez

John Petitto
Town & Country Sports Center, Inc.
U.S. 12 & U.S. 127
Cement City, MI  49233

Marcia Taylor
Bennett Motor Group Express
1001 Industrial Parkway
McDonough, GA 30253

Richard Basciani
Basciani Foods
8876 GapNewport Pike
Avondale, PA 19311

Rooke Everill
Derek John Everill
Ken Everill
1204 Lake Point Circle
McKinne, TX 75050

Michael D. Fowler
Martha Dickson (Deceased)
1680 S.W. St. Lucie West Blvd.
Port St. Lucie, FL 34986

John Inelli
17 Old Farmstead Rd.
Chester, NJ 07930

Eller Industries
623 W. Lilac Ct.
Louisville, CO 80027

**Registered Agent:**
Randal L. Hittle
[moved, left no forwarding address]

John Nicholson
9 Jamaica Lane
Haverhill, MA 01830-2419

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Suite 300
Denver, CO 80246
**Receiver**
rblock@xpn.com

**Courtesy Copies to:**
Julie Trent
jt@bsblawyers.com

Eugene Sprague
esprague@bw-legal.com

Robert Pitts
rpitts@lawrwp.com

Thomas F. Quinn
tquinn@tfqlaw.com

Henry N. Portner, Esq.
Pineapple Grove Corporate Center
101 Pineapple Grove Way
Delray Beach, FL 33444-3703

**CLAIMANT:**
Scott S. Kajiya
1644 22nd Street
Manhattan Beach, CA 90266

Jaime Ruiz
c/o Peter C. Freeman
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Suite 230
Irvine, CA 92618

By:_____
          Peter C. Freeman