UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

**Civil Action No. 95-cv-00777-REB-CBS**

In re:

Receivership Estate of INDIAN MOTORCYCLE MANUFACTURING, INC.,
a New Mexico Corporation

_____

**United States' Position on Kajaya/Ruiz Response (DI#2517) to Receiver's Motion for Judgment Against Them (DI# 2503), and on Receiver's Reply Thereto (DI# 2522)**

_____

Before the Court are various motions of the Receiver for judgments against claimants who have failed to comply with the Court order for restitution to enable the Receiver to pay the tax obligations of the receivership estate, entered on July 28, 2006 ("restitution order"). The United States has not commented on most of them, but seeks to be heard in respect to the motion against Scott S. Kajiya and Jaime P. Ruiz (DI# 2503), because their response (DI# 2517) and the Receiver's reply (DI# 2522) raise unique issues and involve a considerable sum.[1] The issues involve the extent of liability of an agent for an undisclosed principal, the concurrent liability of the undisclosed principals, and whether Messrs. Kajiya and Ruiz should be ordered to provide additional information to enable locating and contacting their undisclosed principals. The government has an interest because 63% of any restitution collected by the Receiver is to be distributed to the Internal Revenue Service toward payment of the tax claim. In addition, the Receiver has indicated a desire eventually to wind down the receivership estate. (DI# 2462.) At that time, unless the tax claim has been fully satisfied, any uncollected restitution claims of the

---

[1] The United States has filed this position quickly after receiving the reply of the Receiver. To the extent the United States was required to reply directly to the Kajiya/Ruiz response, this submission would be one day late under Local Rule 7.1(C) and Fed.R.Civ.P. 6(a) and (e). If so, the United States requests a one-day enlargement for the reasons that (1) it wished to see the Receiver's reply first, and (2) the Department of Justice attorney most familiar with this case, Peter Sklarew, was in trial in Delaware May 22 through 25 inclusive.

Receiver will presumably be abandoned to the United States, enabling it to pursue its collection in its own right to the extent that appears warranted. Accordingly, the United States has a particularly keen interest in assuring that adequate information is provided by Messrs. Kajiya and Ruiz regarding their previously undisclosed principals to the extent they are liable.

It appears, from the response, that Kajiya filed a claim that resulted in a $500,000 distribution to him. It further appears, from the response, that Kajiya's own investment was limited to $10,000 and that the rest of his claim represents amounts invested for principals whose identities were disclosed for the first time in the response, except that one of them, Mr. Ruiz, previously participated informally in settlement negotiations at the time the claim was resolved and thus might have been known to the Receiver. Kajiya asserts he filed claims totalling $1,250,000 and then settled for $500,000, which was full paid in the 1999/2000 distributions.[2]

The response attaches documentation of distributions from the attorney trust account of Mr. Kajiya's counsel in 2000, Peter C. Freeman, reflecting that the $500,000 was distributed as follows: $240,500 to Jaime P. Ruiz; $35,000 to Mr. Freeman (presumably for legal fees); $80,000 to Donnienne Ruiz; $75,000 to Claire Hori; $30,000 to Bill Hori; $27,000 to Brian Dietz; and $12,500 to Scott Kajiya. In addition, Mr. Ruiz claims he used his $240,500 in turn to repay loans made "through" him to Mr. Kajiya and Indian Motorcycle Japan by Michael Ruiz ($70,000), David Stevenson ($40,000), Tom Cavallaro ($35,000), Mark Ruiz ($25,000), and Engle & Murphy ($15,000). The relationships among Jaime Ruiz, Donnienne Ruiz, Michael Ruiz, and Mark Ruiz, are not stated. The addresses and phone numbers of the other Ruiz family members, the Horis, and Mr. Dietz, are not provided.

---

[2] To the extent Kajiya and/or Ruiz seek to reopen the settlement in order to reduce the amount they must repay as restitution, their argument is meritless. The settlement is res judicata. If the taxes were paid when they should have been paid, Kajiya's distributions would have been correspondingly less.

The Receiver's reply takes the position that Mr. Kajiya remains liable for the entire restitution amount (24.35% of $500,000) while Mr. Ruiz remains jointly liable for 24.35% of the $240,500 that he admits was received by him initially, and that the undisclosed principals are jointly liable for the amounts they each received. The Receiver also suggests that the Court order the respondents (Kajiya and Ruiz) to make full disclosure of the contact information for the undisclosed principals.

For the most part, the United States maintains that the Receiver is correct. Specifically, the United States concurs that Mr. Kajiya ought to be liable for the entire restitution (24.35% of $500,000) save to the extent amounts are actually paid by his principals, although to the extent he pays, he would have a claim for reimbursement against his principals for corresponding portions of the restitution relative to the amounts allocable to each principal. Similarly, since Mr. Ruiz received $240,500, Mr. Ruiz is liable for 24.35% of that sum save to the extent of restitution payments made by his own undisclosed principals. His principals, in turn, are each liable for 24.35% of the amount that each actually received.

"Under traditional agency law, an agent is liable as if it were the principal when the agent acts for an undisclosed principal. This rule applies whether the agent holds itself out as principal or only as agent but does not disclose the identity of its principal." *Powers v. Coffeyville Livestock Sales Co., Inc.*, 665 F.2d 311, 312 (10th Cir. 1981). *Accord*, *Hott v. Tillotson-Lewis Constr. Co.*, 682 P.2d 1220, 1222 (Colo. App. 1983). At the same time, the undisclosed principal may also be held liable, although some jurisdictions suggest that, "[o]n objection by either the principal or the agent the court at some point prior to judgment may require the plaintiff to elect the party he will proceed against." *Conner v. Steel, Inc.*, 28 Colo.App. 1, 5, 470 P.2d 71, 73 (1970). Assuming an election may be required prior to judgment, as opposed to enabling the creditor to attempt collection from both as long as there is no double payment, the United States maintains that the election

- 3 -

cannot be required before the creditor is supplied with sufficient information to make an informed election – *i.e.*, until the whereabouts and assets of the undisclosed principals are disclosed.

Mr. Kajiya does not appear to be claiming that the Receiver knew that $240,500 of the funds distributed were for the benefit of Mr. Ruiz and his own undisclosed principals.  If he does assert such a claim, and proves it, then arguably Mr. Kajiya's liability is limited to 24.35% of $259,500, and Mr. Ruiz (and his undisclosed principal) are liable for restitution of 24.35% of the $240,500 by Mr. Kajiya's counsel to Mr. Ruiz.[3]  But since the other principals were clearly undisclosed, their liability for their respective portions of the restitution does not relieve Mr. Ruiz and/or Mr. Kajiya of liability except to the extent the principals actually make payment.

At all events, Messrs. Kajiya and Ruiz should be ordered by the Court to disclose all information available to them regarding the whereabouts and contact information for their newly disclosed principals.  In this regard, the United States submits that the last sentence in paragraph 11 of the Receiver's reply should be read as seeking such additional contact information since the "identity" of the transferees and the "amount" each received has already been disclosed in the Kajiya/Ruiz response.  Whether the Court may then need to entertain additional proceedings vis-a-vis the principals is presently premature.[4]

---

[3] *See Whitney v. Wyman*, 101 U.S. 392, 396 (1879) (if "the principal is disclosed, and the agent is known to be acting as such, the agent cannot be made personally liable unless he agrees to be so").

[4] Since the Federal Rules of Civil Procedure require that claims be prosecuted in the name of the real party in interest (unless there is an express trust agreement), the United States maintains that, to the extent any of the undisclosed principals was aware that Mr. Kajiya was prosecuting a claim on their behalf in this receivership action, they are subject to this Court's *in personam* jurisdiction for purposes of being required to make restitution.  Any other approach would reward a violation of the Rules.  *See* Fed.R.Civ.P. 17(a).  *See also Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (undisclosed principal's use of agent to enter contract sufficed to established minimum contacts for *in personam* jurisdiction in the event litigation over contract ensued).  In any event, even assuming *arguendo* that the newly disclosed principals are not subject to this Court's jurisdiction, they can be pursued where they are found.

Paragraph 9 of the Receiver's reply inaccurately suggests that the government considers "financial hardship" to be a defense to liability. The government has informed the Receiver that it believes financial hardship may support compromises, assuming that a claimant (1) adequately demonstrates such hardship,[5] and (2) is willing to carry an appropriate additional financial burden in exchange for forgiveness of the balance owed by that claimant. But the United States would oppose any compromise with Mr. Kajiya and/or Mr. Ruiz unless they first disclose the information needed to locate and contact their principals.

Dated this 29th day of May, 2007.  Respectfully submitted,

TROY A. EID
United States Attorney
District of Colorado

*/s/ Adam F. Hulbig*
ADAM F. HULBIG
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
Telephone: (202) 514-6061
Facsimile: (202) 307-0054
Email:  adam.f.hulbig@usdoj.gov
              western.taxcivil@usdoj.gov

---

[5] We do not oppose the Receiver's suggestion that claimants complete and verify the kind of financial statement form used by the IRS. We do not believe that the Receiver meant to suggest utilizing the "offer in compromise" procedures used by the IRS, as those involve special administrative proceedings that are not appropriate in the instant circumstances.

- 5 -

## CERTIFICATE OF SERVICE

  IT IS HEREBY CERTIFIED that on this 30th day of May, 2006, I caused the foregoing **United States' Position on Kajaya/Ruiz Response (DI#2517) to Receiver's Motion for Judgment Against Them (DI# 2503), and on Receiver's Reply Thereto (DI# 2522)** to be filed electronically using the CM/ECF system, which will serve all counsel registered for service by that means.

  In addition, a copy of this is being served, by U.S. First Class Mail, as follows:


Lawrence Morrison, Esq.
220 East 72nd Street
New York, NY 10021


               */s/ Adam F. Hulbig*
               ADAM F. HULBIG
               Trial Attorney, Tax Division
               U.S. Department of Justice
               P.O. Box 683
               Washington, D.C.  20044