**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 95-cv-00777-REB-CBS

In Re: THE RECEIVERSHIP OF INDIAN MOTORCYCLE
MANUFACTURING, INC.

_____

**NON-PARTY AUDAX'S OPPOSITION TO (1) RECEIVER'S FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; (2) RECEIVER'S MOTION TO APPROVE  FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; AND (3) RECEIVER'S PROPOSED ORDER APPROVING FORTY-FIRST AND FINAL REPORT, DISCHARGING RECEIVER, AND TERMINATING RECEIVERSHIP ESTATE.
REQUEST FOR HEARING**
_____

Non-Parties Audax Private Equity Fund, L.P., Audax Co-Invest, L.P., Audax Special Purpose Co-Invest, L.P., and Audax Trust Co-Invest, L.P. (collectively "Audax") by and through its counsel Michael Chodos, Esq. and Eugene M. Sprague of Berenbaum, Weinshienk & Eason, P.C., hereby respond to and Oppose (1) the Receiver's Forty-First And Final Report And Request For Discharge; (2) Receiver's Motion To Approve  Forty-First And Final Report And Request For Discharge; and (3) Receiver's Proposed Order Approving Forty-First And Final Report, Discharging Receiver, And Terminating Receivership Estate.  Audax respectfully requests a hearing on the Receiver's Motion and this Opposition.

Audax Opposes the Receiver's Final Report and accompanying Motion and Proposed Order because they seek to take assets out of the Receivership Estate and to give them to the Receiver's own company Sterling Consulting Corp. in its *individual*

1

corporate capacity.  The proposal represents a flagrant conflict of interest and breach of fiduciary duty by the Receiver.  This proposed transfer is contrary to the fundamental legal principles governing Receivers.  Moreover, it is inserted by the Receiver in the Report, Motion and Proposed Order without a scintilla of supporting evidentiary support.  The Receiver cannot himself provide such support in any event because it would represent a direct conflict for the Receiver to opine that a Receivership Estate asset which he wants for himself has "no value" to the Estate and its beneficiaries.

For these and the following reasons, Audax respectfully requests that Section 8 of the Receiver's Proposed Order be stricken in its entirety.

A. <u>The Proposed Order And Audax's Interest In And Basis For Opposing The Receiver's Report and Proposed Order</u>.

Audax is not a claimant or party in the Receivership Estate.  However, Audax is named in the filed but currently stalled "First Amended Complaint" filed by the Receiver on July 10, 2006 [Doc. 2306].  This First Amended Complaint was the subject of an Order To Show Cause why the First Amended Complaint should not be Stricken, issued by this Court on July 13, 2006 [Doc. 2312].  The Receiver filed his Response to the OSC on July 24, 2006  [Doc. 2328].  The Response failed to address this Court's concern that the claims contained in the First Amended Complaint were filed – without seeking leave to amend -- over *ten years* after the original Complaint in the Receivership Action.  (The Receiver instead described in detail the procedural background for filing its complaint as an Amended Complaint rather than as a related Adversary Proceeding.)  This Court has not ruled on the OSC.

Audax files this Opposition because the Receiver has inserted a provision in its Final Report (and in the accompanying Proposed Order) which is clearly for the sole purpose of taking the claims against Audax and the other defendants in the First Amended Complaint and "lateraling" them to Sterling in its individual capacity. It seeks to do this by having this Court Order, in Section 8 of the Proposed Order, that the Receivership Estate's shares in Indian Motorcycle Company (and other stock holdings as well) are to be given to the Receiver Sterling Consulting Corporation along with "any action prosecuted against the successors of the issuers of such stock." Those "successors" are alleged to be Audax and the other defendants in the First Amended Complaint. Section 8 of the Receiver's Proposed Order states:

> "8. The Court further ORDERS that the stock held by the Receivership Estate in Indian Motorcycle Company and the stock held by the Receivership Estate in First Entertainment are hereby assigned to Sterling Consulting Corporation in its corporate capacity subject to the obligation under the prior Settlement Agreement to pay to United States [sic] one half of the proceeds of the sale of said stock should the shares unexpectedly prove to have any value, as well as the obligation under paragraph 5(e) of the Settlement Agreement to divide with the government 50/50 any recovery in any action prosecuted against the successors of the issuer of the stock. (Sterling does not expect there to be any such prosecution and is not obligated to conduct one.)"

Audax respectfully submits that it is an interested party in this "Final Discharge" proceeding since it is a named defendant in the existing and filed but inactive First Amended Complaint herein, and since it is the proposed target of these new "actions" which Sterling proposes to give to himself and presumably to profit from in its individual corporate capacity. Audax believes that Section 8 of the Proposed Order should be stricken on at least the following grounds:

3

B.  The Legal And Factual Reasons Section 8 Should Be Stricken From The Proposed Order Discharging The Receiver.

There are a plethora of reasons why the Receiver should not be permitted to take assets of the Estate for its personal benefit, especially where the Receiver has provided the Court with no basis whatsoever for allowing it to do so.

1.  *It Is a Breach of Fiduciary Duty and A Conflict of Interest For A Receiver to Take Receivership Assets For His Personal Benefit*:  First and foremost, a Receiver is an officer of the appointing court who occupies a fiduciary relationship toward the beneficiaries and creditors of the Estate.  In that respect, a Receiver "is not permitted to deal with the trust estate for his or her own benefit and advantage."  Fletcher, *Cyclopedia of the Law of Corporations*, Receivers, Chap. 64, §7811 (2008).  A fundamental feature of this fiduciary relationship is that the Receiver "must avoid all conflicts of interest," and "cannot accept shares of stock in exchange for advances to the corporation." *Id*.  Audax has been unable to locate a single case or statutory authority authorizing a Receiver to give himself assets of a receivership estate as part of his own final Discharge.

2.  *There Is A Complete Lack of Evidentiary Support For Giving Estate Assets To The Receiver Personally*:  The Receiver provides not one scintilla of evidence which would allow the Court to determine the value of the shares the Receiver would like to take from the Estate and to transfer to itself individually.  Nor is any evidence provided to the Court as to the costs, benefits or net value of any "claims" which Sterling now proposes personally to pursue against the "successors of the issuer of the stock."

These "claims" were previously embodied by the Receiver in the First Amended Complaint and, at that time, were alleged by it to be "significant assets" of the Estate.

4

[See Receiver's Response to OSC, Doc. 2328, at pg. 13]  Clearly, the Receiver thinks these assets still have value or he would not want them.  But in his "Final Report" the Receiver repeatedly represents to the Court, without any evidence whatsoever, that he now "believes" these shares have "no value."  [See Final Report, paras. 24, 28]  And yet, the Receiver now proposes to transfer the shares to itself "for the benefit of itself and Fairfield & Woods."  But what "benefit" is being referred to, if the shares and related claims have "no value?"

Of course, the Receiver is now in no position to offer any evidence or opinion about the "value" of these assets or of the costs versus the benefits of pursuing them, since Sterling has placed itself in the insuperably conflicted position of wanting to have them for its own account.  Any claim by the Receiver that these assets are now "not worth pursuing" by the Estate would therefore be self-serving and suspect.  Similarly suspect is the Receiver's parenthetical assertion in Section 8 of the Proposed Order regarding the lack of expectation of any prosecution of the transferred claims.  If there will be no prosecution, there is no need for the transfer of said claims.

3. *The Receiver Proposes To Assume The Benefit Of Estate Assets With No Accountability Or Court Supervision.*  Certainly, Audax does not agree that the Receiver's claims against it have (or ever had) any merit whatsoever.  But it is one thing for meritless claims to be pursued in a Receivership action – where they are subject to the Court's review and scrutiny in order to avoid the frivolous waste of Estate assets.  It is another thing entirely to allow the Receiver to take such assets and claims out the back door of the Receivership Estate and to pursue them for its own profit without the Court's supervision of the Receiver's compliance with his statutory and fiduciary duties.

Similarly, if these assets and claims have any value, what is the theory that the Receiver has the unlimited right to retain all such value? Would not the Estate's claimants – who have just been required to disgorge funds because the Receiver failed to withhold from the original distribution the sums necessary to pay the Receivership Estate's taxes -- have an interest in such value? If these assets and claims are to be pursued, they should be pursued in the Receivership Estate, under the Court's supervision for the benefit of the entire Estate.

4.   *Pursuit Of These Claims May Well Lead To Cross-Claims Or Cross-Claims By Audax Against The Receiver And/Or The Receivership Estate, So Transferring These Shares And Claims To Sterling Requires That This Estate Be Left Open For That Purpose.* The Proposed Order contains the sweeping and unqualified exoneration of the Receiver from any debts, obligations, liabilities or duties whatsoever. [See Proposed Orders, Sections 4, 5] But how can this Court release, discharge and exonerate the Receiver and close the Receivership Estate if at the same time the Receiver's Proposed Order gives Estate Assets to Sterling? This appears simply to be an effort by Sterling to seek the opportunity to pursue for his own account Estate claims and causes of action assertedly free of potential counterclaims or cross-claims from Audax by virtue of the Proposed Order.

If Audax is sued by Sterling, Audax will have the right to assert back against the Receiver and the Receivership Estate (in whose shoes Sterling will be standing) any claims it may have (including claims by way of reduction and set-off) which arise out of the alleged transactions. See F.R.C.P. 13,14 18 and 19. It is not possible at this time for Audax to know what form such counterclaims or cross-claims might take, until it sees

6

whatever "actions" Sterling hereafter files against it.  But depending upon the claims made and the facts thereafter developed, such claims could in theory include counterclaims or cross-claims for fraud, misrepresentation or other wrongdoing by the Receiver and the Receivership Estate in the original series of transactions in which the trademark assets of Indian were sold by the Receivership Estate to the new Indian Motorcycle Company in return for shares in that company.

Audax respectfully submits that this Court cannot now exonerate the Receiver and the Receivership Estate from such potential counterclaims or cross-claims (in para. 4 and 5 of the Proposed Order) while also giving Sterling Consulting Corp. the Estate's Indian Motorcycle Company stock and the power to pursue claims associated with such stock.

If claims are to be pursued based upon such stock, they are Estate Claims; and the decision whether or not to pursue such claims should be made under this Court's supervision in the context of the potential counterclaims and cross-claims which could be pursued by Audax against the Receiver and the Receivership Estate in the event these claims are pursued against it.

C. <u>The Receiver Provides No Authority Or Support For The Supposedly "Traditional" Findings And Orders Included In Its Proposed Order</u>.

So far as Audax can detect, no authority or basis is provided by the Receiver for the blanket, unqualified "Findings" and "Orders" he seeks in the Proposed Order. Ordinarily, a Receiver (or a Trustee or Executor) seeks approval of a final Accounting and an associated Discharge.  The Receiver has provided no support for its "recommendation" that the Court provide the Receiver with an unqualified "approval,"

7

"ratification" and exoneration of all acts by the Receiver over a fifteen-year period – apparently including all acts whether disclosed to the Court or not.

Fiduciaries ordinarily do not request, or need, blanket exoneration from anything. Their duties are prescribed by law, and whether or not they have fully and fairly complied with and discharged those duties should be determined by the facts of their conduct and behavior, not by reference to a blanket exoneration obtained from the Court with no supporting evidentiary or factual showing whatsoever.

WHEREFORE, for each of the foregoing reasons, Audax respectfully submits that the Receiver's Forty-First And Final Report should be disapproved to the extent it seeks approval for transfer of Estate Assets to the Receiver in his personal capacity; and that Section 8 of the Proposed Order Approving the Receiver's Forty-First Report, Etc. be stricken from said Order before it is signed by the Court.

In addition, Audax respectfully submits that all proposed Findings and Orders included in the Proposed Order, which do not relate to the Final Accounting and for which no evidentiary support is provided, be stricken as well.

Respectfully Submitted.

DATED:  December 3, 2008

By:     s/ Michael Chodos
        Michael Chodos, Esq.

Michael Chodos, Esq.
56 Malaga Cove Plaza
Palos Verdes Estates, CA  90274-1306
Ph: (310) 791-1928
Fax: (310) 791-1958
Email: michael@chodos.com

8

Eugene M. Sprague, Esq.
Berenbaum, Weinshienk & Eason, PC
370 Seventeenth Street, Republic Plaza, 48th Floor
Denver, CO  80202-5698
Phone:  303-592-8327
Fax:  303-629-7610
Email: esprague@bw-legal.com

Attorneys for Non-Parties Audax Private Equity Fund, L.P., Audax Co-Invest, L.P., Audax Special Purpose Co-Invest, L.P., and Audax Trust Co-Invest, L.P.

CERTIFICATE OF SERVICE

      I hereby certify that on this 3rd day of December, 2008, I electronically served the foregoing **NON-PARTY AUDAX'S OPPOSITION TO (1) RECEIVER'S FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; (2) RECEIVER'S MOTION TO APPROVE  FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; AND (3) RECEIVER'S PROPOSED ORDER APPROVING FORTY-FIRST AND FINAL REPORT, DISCHARGING RECEIVER, AND TERMINATING RECEIVERSHIP ESTATE. REQUEST FOR HEARING** on the following parties at the email addresses below.  I electronically filed said document with the Clerk of the Court using the CM/ECF system on December 3, 2008, which will send notification of such filing to all persons registered with said system, including the following email addresses:

jtanner@fwlaw.com
ahale@haldfriesen.com
eramey@ir-law.com
spack@ir-law.com
jcage@cagewilliams.com
glen.keller@dgslaw.com
jelliff@mofo.com
adam.f.hulbig@usdoj.gov
gmoschetti@hatchlawyers.com
csasso@bakerlaw.com
mpankow@bhf-law.com
dgarfield@bhf-law.com

Additional copy via email to:

John Tanner, Esq.
Fairfield and Woods, P.C.
1700 Lincoln St., #2400
Denver. CO 80203
Phone: (303)830-2400
Fax: (303)830-1033
Email: jtanner@fwlaw.com

/ / /

/ / /

10

Julie Trent, Esq.
Bieging, Shapiro & Burrus, LLP
4582 S. Ulster Street Pkwy., Suite 1650
Denver, CO  80237
Ph: (720) 488-0220
Fax: (720) 488-7711
Email: jt@bsblawyers.com

By:     s/ Michael Chodos
        Michael Chodos, Esq.

Michael Chodos, Esq.
56 Malaga Cove Plaza
Palos Verdes Estates, CA  90274-1306
Ph: (310) 791-1928
Fax: (310) 791-1958
Email: michael@chodos.com

Eugene M. Sprague, Esq.
Berenbaum, Weinshienk & Eason, PC
370 Seventeenth Street
Republic Plaza, 48th Floor
Denver, CO  80202-5698
Phone:  303-592-8327
Fax:  303-629-7610
Email: esprague@bw-legal.com

11