UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 95-cv-00777-REB-CBS

In re: Indian Motorcycle Manufacturing, Inc., a New Mexico Corporation

## REPLY IN SUPPORT OF MOTION TO TERMINATE RECEIVERSHIP

Sterling Consulting Corporation, as receiver, by and through it attorneys Fairfield and Woods, hereby replies in support of its Motion to Terminate Receivership as follows:

### I. INTRODUCTION

On November 18, 2008, the receiver filed its Motion to Approve Receiver's Forty-First and Final Report and To Discharge Receiver and the Receiver's Forty-First and Final Report and Request for Discharge (DI# 2674) (the "Motion" covering the "Report"). There were only two objections: On December 3, 2008, Audax filed Non-Party Audax's Opposition (DI# 2702) (the "Audax Objection"). On December 8, 2008, Credit Managers Association of California ("CMA")[1] filed its Credit Managers Association of California's Joinder in Non-Party Audax's Opposition (DI# 2712) (the "CMA Objection"). The Audax Objection and the CMA Objection will collectively be referred to as the "Objections."

---

[1] The entity named in the First Amended Complaint (DI# 2306) ("First Amended Complaint") by the receiver was Credit Managers Association of California, D/B/A CMA Business Credit Services. If the "CMA" that is objecting is, in fact, a different entity, the receiver objects to the CMA Objection due to a lack of standing.

On December 19, 2008, the United States filed the United States' Reply to Objections (DI# 2674) (the "government Reply"). The receiver incorporates the government Reply by reference. The receiver and the government have proposed a reasonable and legally correct method for terminating this very complicated receivership.

In simplest terms, the Objections object to the assignment of four assets to the government and Sterling Consulting Corporation in its ordinary corporate capacity ("Sterling," in this capacity): (i) judgments against claimants; (ii) common stock in Indian Motorcycle Company (now insolvent and dissolved); (iii) claims for relief in the First Amended Complaint against Pahl & Gosselin; and (iv) the assignment of claims for relief against the Objectors as set out in the First Amended Complaint. Instead, the Objectors think the receivership estate should be kept open until all these assets are liquidated and the money distributed.

As noted in the original Motion to Terminate, the government and Sterling are still owed monies in excess of the likely net value of these assets. Further, the first three of these do not involve the Objectors at all. The first two assignments were dealt with in the original Motion to Terminate, but the latter two were raised by the Objectors in the Objections.[2] Under the particular facts of this case, all of these assignments are appropriate.

---

[2] The receiver joins in the apology to the court of the government. The receiver believed it was entitled to file a First Amended Complaint as a matter of right, but the court's Order to Show Cause made it so clear the court was not interested in the receiver proceeding with the case that the receiver did not do so. The receiver had, quite frankly, forgotten all about it.

## II. ASSIGNMENT OF ASSETS TO THE GOVERNMENT AND STERLING IS APPROPRIATE BECAUSE CONFLICT OF INTERESTS ARE NOT PRESENT

The government and Sterling are still owed hundreds of thousands of dollars for administrative claims in this case. It is unlikely that the assets will generate that sum. If they do, then, as noted by the government, there will necessarily be a "regorgement," with the excess money redistributed to claimants who have paid disgorgement.

It is perfectly appropriate to distribute assets in kind and shut down the receivership where the claimants agree to take the assets in-kind. For example, in *In re W.T. Waggoner Estate*, 163 S.W.3d 161, 172 (Tex. Civ. App. 2005), the court appointed a receiver over the dissolution of a company when the partners could not agree on in-kind distribution, and ordered the receiver to liquidate the company so a cash distribution could be made to the partners. One partner appealed. The appellate court confirmed the order, specifically noting that if the partners later agreed on in-kind distribution and reported the same to court, the court would essentially be bound by their agreement and it would overrule the prior order for a liquidation sale followed by a cash distribution.

The same is true here. The only two administrative claimants left in the estate are the government and the Receiver. They agree to in-kind distribution of the remaining assets. No other party really even has grounds to object, and certainly CMA and Audax do not have grounds to object. It is an unusual receivership where standing to object is truly in issue. It is even more unusual where a party will actually file an

objection where the party has no stake in the outcome. That, however, is precisely the case with CMA "as assignee."[3]

The proposed assignment of the restitution claims and Judgments to Sterling was contemplated in substance by the Settlement Agreement between the government and the receiver which was approved, made an Order of the Court, and the Orders were certified final under Fed.R.Civ.P 54(b) [The orders approving the settlement agreement and certifying the approving orders as final are Mass. DI ## 248, 249, and 250]. Further, what is proposed is technically not an assignment by the receiver to Sterling at all; rather it is an assignment by the government to Sterling as the claim for restitution belongs entirely to the government. Any payment to the receiver (or ultimately to Sterling) was made and will continue to be made out of the government's rights, not the receivership's rights.

---

[3] The words "as assignee" are in quotes for four basic reasons: First, unlike a bankruptcy trustee or a receiver, the assignee under an assignment for the benefit of creditors has no separate identity as a matter of law. Second, the receiver filed the First Amended Complaint naming CMA in its ordinary corporate capacity, not "as assignee." Third, the receiver was careful to serve CMA in its ordinary corporate capacity, and not "as assignee." Fourth, the receiver has intentionally not made a claim against the assignment estate; accordingly, even if CMA "as assignee" existed (and it does not), it would have no stake in the outcome of the receivership. Nevertheless, CMA has been permitted to use this clever mechanism for three years in another case (*Sterling v. Credit Managers of California*, United States District Court for the District of Colorado No. 05-1573-PSF-CBS (the "1573 Action")). If CMA in its ordinary corporate capacity believed it was the wrong party and had no liability, it should have objected on some basis and filed a motion to dismiss. The notion that a party may be sued and served in its own name, then appear as a completely different party, thereby defeating the intention of the Plaintiff, is completely unknown to the Federal Rules of Civil Procedure. The receiver will allow a reasonable time from the date of this Reply for CMA to withdraw all of its pleadings "as assignee" in this case and answer as CMA in its ordinary corporate capacity. The receiver notes that such reasonable time will be short because Sterling was criticized by Magistrate Judge Shaffer for giving too much time for this purpose in the 1573 Action.

There is no longer any need to keep the receivership open, and terminating it while the receiver collects on its last few assets is proper. Using an analogy to bankruptcy law, it is common for a bankruptcy case with a confirmed plan to be closed once the plan has been "substantially consummated." *See, e.g.*, Fed.R.Bank.P. 3022 (noting court should not keep a case with a confirmed plan open if all that is necessary is awaiting payments under confirmed play to be received); 3 Lawrence P. King *Collier on Bankruptcy*, ¶ 350.02[2] (same). As suggested by the government, should Sterling collect enough from CMA and Audax to compensate for the unpaid fees following the execution of the Settlement Agreement with the government, Sterling will be delighted to find it appropriate to move to reopen the Receivership Estate and re-pay the Claimants the money paid in restitution. So far, the receiver has not had much success overcoming the massive procedural battle waged by CMA and Audax to get to square one. What to do with money collected because it is owed is a high-quality issue that has eluded the receiver.

With respect to Mr. Cordes' affidavit, the Court might note that Mr. Cordes did not communicate with the receiver in any way, and this may explain why the factual, procedural, and substantive aspects of this case were not contemplated by his affidavit. His affidavit can simply be read as a general proposition of law, and might have some application under completely different circumstances not present here.

In particular, it does not discuss that the government and the Receiver (administrative creditors who should be paid first and in full before any other creditors are paid a cent), are still owed hundreds of thousands of dollars, that the court has already approved (and certified as final under Rule 54(b)) the arrangement that the

estate disgorge $1,000,000 to pay taxes determined to be owed, that the government has agreed to "carve out" 37% the monies collected to partially compensate the receiver for its collection activities (and that the court has also ordered this and certified it as final), that they have agreed to accept in kind the remaining assets, that neither of the Objectors are owed anything or ever were, and that the estate has far outlived its usefulness.

### III. THE PROPOSED FINDINGS AND ORDERS NOT EXCEPTIONAL

No claimant or party to this action objected to the proposed Findings and Orders proposed by the receiver were not objections by any Claimants in, or parties to, the Receivership Action. In fact, the United States, which has consistently objected to the proposed Findings and Orders requested by the receiver in prior motions, and has expressed no objection to the Findings and Order requested here. There is nothing exceptional about the proposed Findings or Orders, and they should be issued by this Court upon termination of the receivership.

Contrary to the assertions by CMA and Audax that there is "no evidence" to support the proposed Findings and Orders, every Report filed by the receiver since the inception of this case has been accompanied by a Verification signed by the receiver under oath, and every Report filed by the receiver has had a request that the Court approve the Report. The Forty-First Report is no exception. Much has gone unapproved since then District Judge Weinshienk wrote "The receiver was diligent in the performance of its duties, and performed at all times in an ethical manner." Order of Transfer to the District Of Massachusetts (DI# 1873) dated July 19, 2002.

Everything that has gone without approval is contained in one of the Reports filed by the receiver and there is nothing to controvert the sworn statement of the receiver.

It is noted that the Objectors have not identified any issue that would gravitate against the requested Findings, and nothing would be found even if there were an attempt to do so. The Objectors have not identified any specific proposed Findings to which they object.

Further, as a matter of good public polity, receivers should get the Findings and Orders requested by this receiver. The receiver is protected by a receiver's bond that must be released at the end of the receivership (a bond that Sterling has paid the premium on for the past seven years even though the receiver asked the Massachusetts District Court to relieve it of this obligation six years ago). The insurance company requires a discharge of liability, an action for which this Court must make certain Findings. In fact, at the request of the government, the receiver diluted the Findings in order to avoid just this type of issue. A form of Order prepared by Professor Clark in his seminal work *Clark on Receivers* more than forty five-years ago (when things were simpler) is attached as Exhibit 1 showing that the most important of the proposed Findings are customary.

### IV. THE FIRST AMENDED COMPLAINT

As noted above, the receiver and the government both forgot the First Amended Complaint was still pending.[4] If it does generate funds however, those funds will first

---

[4] Similarly, the receiver completely forgot that the First Amended Complaint was still pending against the law firm Pahl & Gosselin. As the government has stated in its Reply and on numerous other occasions, Pahl & Gosselin should be held accountable for converting funds held in trust for the Receivership Estate and certain Claimants. In

7

go to the unpaid administrative creditors (the government and Sterling). If any is generated after that, it will go to the "regorgement."

Because of the Court's Order to Show Cause, briefing on the propriety of the First Amended Complaint was never completed. The receiver had ample reason for its actions, and has ample law that its actions were proper. If for some reason in this context this Court wants those issues briefed, the receiver can do so.

But such is not necessary. As the government argues, the claims in the First Amended Complaint should be assigned and the case given a new case number. After that, the case can proceed, or not, as law and the Rules provide. There is no reason that should interfere terminating the receivership.

## V.   VALUE OF THE CLAIMS AGAINST CMA AND AUDAX

The receiver has based its claims in the First Amended Complaint against CMA and Audax on a narrow fact pattern. As stated in multiple pleadings, however, both the receiver and Sterling believe that the narrow fact pattern reflects just a fraction of the true issues. After years of litigation in this case and in the 1573 Action, neither CMA, Audax, nor Stellican have ever been compelled to present the facts under oath or in the context of discovery.

The receiver has been contacted by many third parties who have complained of their treatment by CMA, Audax, and Stellican, but the receiver has resisted their efforts to participate in the Receivership Action in order to remedy the wrongs. This is so even

---

taking any action regarding the First Amended Complaint, this Court should consider that action and its effect on the receiver's claim against Pahl & Gosselin.

though the allegations against CMA, Audax, and Stellican are compelling and, if true, include outrageous behavior.

Shortly after the Objections were filed in this case, one of those third parties has approached the receiver with a request to participate in the receiver's actions against CMA and Audax, expand the action to include Stellican, expand the action to include the claims not yet articulated by the receiver (but within the knowledge of the third party and believed by the receiver), to capitalize the costs of the litigation, and to share in the proceeds received from CMA, Audax, and Stellican. This offer, which is preliminary and tentative as presented to the receiver, includes cash payments to the Receivership Estate in advance.

Even if it is technically possible to collaborate with this third party (and the receiver has insufficient information to make a determination in this regard), the receiver is not inclined to pursue the offer until the Court has indicated its preferences. What is obvious from the offer is that the receiver's claims against CMA and Audax, and possibly Stellican, have substantial present value. This should be taken into account by this Court if it intends to extinguish the receiver's claims so that Sterling cannot be held accountable for failing to pursue those claims. As the government owns a half interest in the receiver's claims against CMA and Audax, its position should also be thoroughly considered, as should the applicability of the Final Orders entered by the Massachusetts District Court.

The issue of the receiver's claims against CMA and Audax frames the more important issue to the receiver of this Court making the Findings that the receiver has

performed its duties, and the reason that all receivers who have done so are given the appropriate Findings upon discharge.

## VI. CONCLUSION

The objections of CMA and Audax are without merit and should not preclude the court from entering in this relief. As explained by the government, essentially CMA and Audax are only worried that perhaps Sterling and the government will pursue their claims against CMA and Audax, whereas the receiver will not because the court has indicated it would prefer that the receiver not do so.

The termination of the receivership at this point—when the remaining administrative creditors have agreed to accept the remaining unliquidated assets in kind—is perfectly appropriate. Indeed, to not do so now might leave the case open for years. The government and the receiver have made their recommendations to this Court and believe this Court should follow those recommendations.

If this Court elects to pursue another course of action, the receiver strongly urges the Court to announce its intentions in advance of entering any Orders so that the receiver and the government may analyze that course of action through to its logical conclusion, and its effect on all concerned.

Respectfully submitted this 22nd day of December, 2008

**FAIRFIELD AND WOODS, P.C**

By: *s/John M. Tanner*
John M. Tanner
Fairfield and Woods, P.C.
1700 Lincoln Street, Suite 2400
Denver, CO  80203-4524
Phone:  (303) 830-2400
Fax:  (303) 830-1033
Email:  jtanner@fwlaw.com

Attorney for Sterling Consulting Corporation, as receiver

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses or as indicated below or by United States Mail, postage prepaid:

**VIA CM/ECF TO:**

Alan Lemont Hale Esq.
Hale Friesen, LLP
1430 Wynkoop St., Ste. 300
Denver, CO 80202
**Attorney for Richard Basciani, N. Rooke Everill, Pres./Everill Bros., Inc., John H. Nicholson or Virginia A. Nicholson**
ahale@haldfriesen.com

Edward T. Ramey, Esq.
Stuart H. Pack, Esq.
Isaacson Rosenbaum
  Woods and Levy
633 17th St., Ste. 2200
Denver, CO 80202
**Attorneys for William R. Childs, Scott McCormick, Jr., Douglas Walliser, Ronald Schiff, Edward Pacelli, Morty Lempel, A.B. Goldberg, First Entertainment, Harvey Rosenberg**
eramey@ir-law.com
spack@ir-law.com

James R. Cage, Esq.
Cage Williams Abelman
  & Layden, P.C.
St. Elmo Bldg.
1433 17th St.
Denver, CO 80202-1273
**Attorney for Carl D. Lucci/Albert R. Lucci**
jcage@cagewilliams.com

Julie Trent
jtrent@bsblawyers.com

J. Eric Ellliff, Esq.
Kristen Taylor-Randall, Esq.
Morrison & Foerster, LLP
370 17th St., Ste. 3550
Denver, CO 80203
**Attorney for IMCOA**
jelliff@mofo.com

Adam F. Hulbig
Trial Attorney, Tax Division
US Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, DC 20044
**Attorney for United States of America**
adam.f.hulbig@usdoj.gov

Gary C. Moschetti, Esq.
Hatch & Moschetti, LLP
1800 Glenarm Pl., 9th Floor
Denver, CO 80202
**Attorney for Edward Leal**
gmoschetti@hatchlawyers.com

Cassandra Sasso, Esq.
Baker & Hostetler
303 E. 17th Ave., Ste. 1100
Denver, CO 80203-1264
**Attorney for Michelle Lean**
csasso@bakerlaw.com

Michael J. Pankow
Daniel J. Garfield
Brownstein Hyatt & Farber PC
410 17th Street, Suite 2200
Denver, CO 80202
**Attorneys for Michael Payne**
mpankow@bhf-law.com
dgarfield@bhf-law.com

**VIA UNITED STATES MAIL:**
James Duberg, Esq.
727 Third Ave.
Chula Vista, CA 91910-5803

Mark S. Schmittt, Esq.
Maier, Mcilnay Schmitt & Button
1150 Washington St.
Grafton, WI 53024-1916
**Attorney for Miller Simon & Maier**

Peter C. Freeman, Esq.
Law Offices of Peter C. Freeman
16485 Laguna Canyon Rd., Ste. 230
Irvine, CA 92618-3846
**Attorney for Scott Kajiya**

Mr. Albert Lucci
1930 Wyoming Ave.
Fort Pierce, FL 34982

Peter Sklarew, Esq.
Assistant Chief
Civil Trial Section, Northern Region
United States Dept. of Justice
Tax Division
PO Box 55
Washington, D.C. 20044
**Attorney for IRS**

Robert J. Danie, Eq.
9 Wagon Wheel Drive
Feeding Hills, MA 01030

Noreene C. Stehlik, Esq.
U.S. Dept. of Justice
PO Box 683
Ben Franklin Station
Washington, D.C. 20044
**Attorney for IRS**

Robert L. Morrow, Jr., MD
501 W. Saint Mary Blvd., Ste. 404
Lafayette, LA 70506-4699

Nicholas A. Russo, Sr.
310 Extonville Road
Allentown, NJ 08501
**[Return to Sender—Unable to Forward]**

Richard J. Cortesi
5316 Camino Montano, N.E.
Albuquerque, NM 87111

Ronald Fulfer
15315 S. Francis Dr.
Plainfield, IL 60544

Richard Dale Wood
13997 80th Ave. North
Maple Grove, MN 55311

Steve Halprin
1316 Penningtow Place
Concord, N.C. 28207

Kathryn L. Troccoli
1911 Champlain St.
Ottawa, IL 61350

Ed Pink
Ed Pink Racing Engines, Inc.
14612 Raymer Street
Van Nuys, CA 91405

Montgomery & Andrews, P.A.
325 Paseo De Peralta
Santa Fe, NM 87501
Attn: Kathy Lopez

John Petitto
Town & Country Sports Center, Inc.
U.S. 12 & U.S. 127
Cement City, MI 49233

Marcia Taylor
Bennett Motor Group Express
1001 Industrial Parkway
McDonough, GA 30253

Richard Basciani
Basciani Foods
8876 GapNewport Pike
Avondale, PA 19311

Rooke Everill
Derek John Everill
Ken Everill
1204 Lake Point Circle
McKinne, TX 75070

John Inelli
17 Old Farmstead Rd.
Chester, NJ 07930

Eller Industries
623 W. Lilac Ct.
Louisville, CO 80027

**Registered Agent:**
Randal L. Hittle
[moved, left no forwarding address]

John Nicholson
9 Jamaica Lane
Haverhill, MA 01830-2419

Peter D. Bilowz
Goulston & Storrs, P.C.
400 Atlantic Ave.
Boston, MA 02110-3333

**VIA E-MAIL:**
Richard A. Block
President
Sterling Consulting Corporation
4101 E. Louisiana Ave., Ste. 300
Denver, CO 80246
**Receiver**
rblock@xpn.com

**Courtesy Copies to:**
Eugene Sprague
esprague@bw-legal.com

Robert Pitts
rpitts@lawrwp.com

Thomas F. Quinn
tquinn@tfqlaw.com

Henry N. Portner, Esq.
Pineapple Grove Corporate Center
101 Pineapple Grove Way
Delray Beach, FL 33444-3703


By: *s/Sharon A. Chiecuto*