**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 95-cv-00777-REB-CBS

In Re: THE RECEIVERSHIP OF INDIAN MOTORCYCLE MANUFACTURING, INC.

___

**NON-PARTY AUDAX'S RESPONSE TO UNITED STATES' PLEADING [DOC. NO. 2724] RE: (1) RECEIVER'S FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; (2) RECEIVER'S MOTION TO APPROVE FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; AND (3) RECEIVER'S PROPOSED ORDER APPROVING FORTY-FIRST AND FINAL REPORT, DISCHARGING RECEIVER, AND TERMINATING RECEIVERSHIP ESTATE.
REQUEST FOR HEARING**

___

Non-Parties Audax Private Equity Fund, L.P., Audax Co-Invest, L.P., Audax Special Purpose Co-Invest, L.P., and Audax Trust Co-Invest, L.P. (collectively "Audax") by and through its counsel Michael Chodos, Esq. and Eugene M. Sprague of Berenbaum, Weinshienk & Eason, P.C., hereby respond to the "Reply to Objections" filed by the United States [as Doc. 2724] re: (1) the Receiver's Forty-First And Final Report And Request For Discharge; (2) Receiver's Motion To Approve  Forty-First And Final Report And Request For Discharge; and (3) Receiver's Proposed Order Approving Forty-First And Final Report, Discharging Receiver, And Terminating Receivership Estate.  Audax respectfully requests a hearing on the Receiver's Motion.

The United States was not a co-moving party in the Receiver's underlying Motion To Approve Forty-First and Final Report, Etc. [Doc. 2674].  However, the United States'

1

recent "Reply" is in essence a Joinder in the Receiver's Motion.  Because the United States' pleading raises new matter and arguments not set forth by the Receiver in its own Motion papers (and which the Receiver has now belatedly "incorporated by reference" into its own Motion), Audax responds to the United States' pleading as follows:

**1.    The United States Has No Apparent Interest In Having These Claims Assigned To Sterling In Its Individual Capacity, And Has Offered No Explanation Of Why It Supports Such An Assignment.**

The United States repeatedly argues that it has a Settlement Agreement with *the Receiver* which gives it a share of any recovery *the Receiver* might obtain by pursuing any of the Estate's alleged claims, including those against CMA and Audax.  [See First Amended Complaint, Doc. No. 2306][1]

According to the United States' own arguments, this "Settlement Agreement" gives the Receiver and the government a right to certain percentages out of any assets or claims successfully pursued by the Receiver, and then provides for the remainder to be returned to the receivership estate claimants from whom the Receiver and the government have been extracting tax "disgorgement" payments over the last couple of years.

What the United States utterly fails to explain, however, is why it is in its interest -- or even more so in the interest of any Receivership Estate claimants -- for any remaining  Receivership claims to be given away for no consideration to Sterling Corporation in its individual capacity and then pursued by Sterling for its own account

---

[1]    No copy of the Settlement Agreement is attached to the United States' pleading and no Document reference is provided to any copy of the Settlement Agreement previously filed by the United States or the Receiver with this Court.  No actual language from or provisions of the Agreement are provided by the United States to this Court.

2

outside the Estate. If the United States has a court-approved, written Settlement Agreement for a share of monies recovered by *the Receiver*, what possible interest would the government have in allowing the Receiver to give away Estate claims to itself in its individual capacity?

The United States does not argue that its "Settlement Agreement" gave it a share of any recoveries obtained by Sterling *in its individual capacity* outside the Receivership Estate – or that it even contemplated assignments of Receivership claims to Sterling individually. The United States, of all parties, should therefore be the main party vigorously objecting to any such assignment. This is because its rights under the Settlement Agreement (along with the rights of the Estate Claimants and all other interested parties) are already under the supervision and protection of this Court. Why would the United States want these claims given away to Sterling individually, where no court supervision or protection for it or any other Receivership claimant would remain?

**2.      The United States Fails To Explain Why These Assets Cannot Be Pursued By The Receiver Within The Estate, If Indeed They Have Any Value At All.**

First of all, the United States (and the Receiver itself) fail to explain to this Court how it is that the Estate's purported claims against Audax and CMA have any actual merit or value, if both the Receiver and the United States completely forgot about them for the last two years. Instead of any such explanation, the United States goes into a lengthy recitation of the allegations in the First Amended Complaint – all of which relate

3

to events which allegedly took place six to thirteen years ago and most of which are alleged solely on information and belief.

The United States then goes on to describe a conversation which apparently recently took place between the attorney for the United States and the Receiver [see the United States' Reply, at pg. 3-5]. In this conversation, the Receiver apparently told the United States' counsel that he (the Receiver) "seems to believe" that CMA and Audax acted wrongfully, and that the Receiver "seems to suspect" that they continue to have an "indirect" interest in the entity which now owns the Indian Motorcycle intellectual property and brands.

Receivership decisions are not supposed to depend upon the Receiver's whims or suspicions. A receiver is a fiduciary. As such, he is supposed to engage in diligent investigation and to pursue assets which are meritorious and have value and to reject those which have no value. Here, these "claims" arise from events which are in some instances over a decade in the past. What has *not* been provided to this Court is any explanation for why these purportedly "meritorious" claims were not previously investigated or pursued by the Receiver, or why, if they are still meritorious, they cannot simply be pursued by the Receiver within the Estate rather than given away to Sterling for free and pursued by it outside the purview of this Court and outside the reach of the Receivership Claimants.

**3.     The United States Does Not Explain Why This Court Should Countenance Repeated, Unexplained, Back-And-Forth Assignments Between Sterling In Its Individual Capacity And In Its Capacity As Receiver.**

4

The claims asserted against Audax and CMA by the Receiver in its purported First Amended Complaint in 2006 [Doc. 2306] are a hodge-podge of facts alleged on information and belief and claims alleged by the Receiver based in part on "assigned claims" from Sterling in its individual capacity to itself as Receiver.

No explanation whatsoever is provided by the United States (or by the Receiver itself) as to how a Receiver can receive and pursue "assigned" claims actually owned by an entity outside the Estate.

But in any event, neither the United States nor the Receiver makes any effort, in their recent pleadings before this Court on the within Motion, to explain what claims the Estate *itself* ever had against CMA or Audax, and why those claims should now be assigned *back* to Sterling given Sterling's prior alleged assignment of its claims to the Receiver. These cross-assignments between Sterling as Receiver and Sterling individually are utterly unexplained and on their face appear to be manipulative and self-serving. Neither the United States nor the Receiver provides any basis for this Court to know whether these repeated back-and-forth assignments are in the Receivership Estate's interest or not. Since it was certainly within the Receiver's power to explain all this, and since it did not do so, the requested assignment of these claims to the Receiver should be denied.

**4.     The Proposed "Amendments" To The Requested Assignment Are Non-Sensical And A Clear Breach Of The Receiver's Fiduciary Duty.**

After apologizing profusely, the United States (and the Receiver) assert that this Court should approve the no-consideration assignment of these claims to Sterling in its

5

individual capacity, but amend the Order to provide that if any money is left over after Sterling and the government pay themselves, it can go back to the Receivership Claimants.

But according to the governments' own account, this is already the *existing* arrangement for any claims pursued within the Receivership Estate. So what is the difference with the proposed assignment? The difference is that instead of pursuing these claims against Audax and CMA as a fiduciary under this Court's supervision, Sterling (and the government) now propose to pursue them for Sterling's own account as a non-fiduciary, with nothing but a bare promise to return any extra to the claimants should any money be left over.

But of course, a Receiver who legitimately pursues a claim for the sole benefit of a receivership estate cannot – by definition – be relied upon to protect the estate's interest when he chooses to pursue such claims for his *own* benefit. Little analysis is required to demonstrate that Sterling will have no incentive whatsoever to protect the Estate's "residual" interest if Sterling is empowered to pursue these claims for its own account. Indeed, where Sterling has already engaged in repeated, back-and-forth assignments of parts of these claims to itself, there is nothing in the proposed Order which would prevent Sterling from hereafter "assigning" parts of these claims to itself (again) to avoid any recoupment rights for the Estate's beleaguered claimants.

The rules prohibiting a Receiver from having a conflict of interest with the Estate are directed precisely at this situation. And yet both the United States and the Receiver pretend that there is "nothing wrong" with an arrangement which places the Receiver

squarely in a conflict of interest with the Estate with respect to the further pursuit of these claims by Sterling individually.

**5.     It Is Preposterous To Suggest That Audax and CMA Be Required To Plead Their Cross-Claims Against The Receiver Now "Or Be Held To Have Waived Them," Especially Where The Receiver Seeks A Blanket "Exoneration."**

The United States apparently agrees that Audax and CMA may well have cross-claims against the Receiver depending upon what claims are asserted against them. However, rather than admitting that this consideration undermines the proposed assignment of these claims to Sterling and termination of the Estate, the United States argues that Audax and CMA should be required to plead their cross-claims against the Receiver now "or have them treated as waived."  [United States' Reply, at pg. 13]

It would be quite an understatement to say that this would turn the rules of procedure upside down.  The Receiver has never actually served any claims on Audax or CMA, either in the form asserted in the First Amended Complaint or otherwise.  In addition, the Receiver makes vague assertions about having "other" claims against Audax and CMA.  The Federal Rules of Civil Procedure define what is to be done with such claims; what jurisdictional and other challenges Audax and CMA may then assert if served with such claims; and when cross-claims and counterclaims must be asserted by Audax and CMA.  There is no basis whatsoever for requiring Audax and CMA (or any other litigant) to assert cross-claims before it is even sued and before it knows what actual claims are asserted against it.

7

The United States' argument that Audax and CMA should be prematurely forced to assert cross-claims against the Receiver simply underscores the evident problems with the proposed assignment of these claims. If the Receiver intends to pursue these claims, it should do so within the confines of the Estate so that Audax and CMA will have the right to assert their objections, defenses and cross-claims against the Receiver and the Estate as and when the Federal Rules require them to do so.

The issue of closing the Estate before Audax and CMA are served with the Receiver's claims and have their opportunity to assert their objections, defenses and cross-claims is only exacerbated by the Receiver's request for "Findings" which exonerate him, as part of the Estate's Termination, from any liabilities or obligations whatsoever. The United States fails entirely to address this issue, or to explain how Sterling can pursue assigned claims against Audax or CMA when the assignor – the Receiver – has received a blanket exoneration of "any liabilities or obligations" in connection with terminating the Receivership Estate. The Receiver cannot have it both ways: If it wishes to pursue these claims, it must keep the Estate open and eschew any blanket "exoneration" so that Audax's and CMA's rights to assert any cross-claims against the Receiver are preserved.

**6.     The United States And The Receiver Still Fail To Provide This Court With Any Valuation Of These Claims Or Any Cost Benefit Analysis If The Estate Were To Pursue Them.**

In spite of the length of its brief, the United States fails to provide any valuation of the claims against Audax and CMA which the Receiver wishes to give away to itself.

8

Nor is any evidence provided to the Court about the cost of pursuing the claims.  Finally, no evidence is provided about the amount for which the claims could be liquidated if sold off now to a third party.  This Court is given no assistance whatsoever in determining whether or not it is fair or appropriate to give these claims away to the Receiver; it is simply asked to accept the Receiver's inconsistent and frankly illogical assertions that these claims "have great value" but that at the same time they should be given away for free to Sterling in its individual capacity.

The United States and the Receiver brush off any issue about conflict of interest by claiming that these claims are "almost certainly" worth less than the Receiver's outstanding administrative claims.  But the United States and the Receiver provide no evidence on which the Court can determine whether or not this is true.  Also, since the Receiver has not made any application to have its fees approved or paid in this matter, there has been no occasion for claimants or others to argue to the Court that these claims should be liquidated in some manner so that the claimants receive some benefit from them before the Receiver's claimed fees are paid in full.

## CONCLUSION

For each of the foregoing reasons, Audax respectfully submits that the Receiver's Forty-First And Final Report should be disapproved to the extent it seeks approval for transfer of Estate Assets to the Receiver in his personal capacity; and that Section 8 of the Proposed Order Approving the Receiver's Forty-First Report, Etc. be stricken from said Order before it is signed by the Court.

In addition, Audax respectfully submits that all proposed Findings and Orders included in the Proposed Order, which do not relate to the Final Accounting and for which no evidentiary support is provided, be stricken as well.

Respectfully Submitted.

DATED:  January 5, 2009

By:     s/ Michael Chodos
        Michael Chodos, Esq.

Michael Chodos, Esq.
56 Malaga Cove Plaza
Palos Verdes Estates, CA  90274-1306
Ph: (310) 791-1928
Fax: (310) 791-1958
Email: michael@chodos.com


Eugene M. Sprague, Esq.
Berenbaum, Weinshienk & Eason, PC
370 Seventeenth Street, Republic Plaza, 48th Floor
Denver, CO  80202-5698
Phone:  303-592-8327
Fax:  303-629-7610
Email: esprague@bw-legal.com

Attorneys for Non-Parties Audax Private Equity Fund, L.P., Audax Co-Invest, L.P., Audax Special Purpose Co-Invest, L.P., and Audax Trust Co-Invest, L.P.

CERTIFICATE OF SERVICE

      I hereby certify that on this 5th day of January, 2009, I electronically served the foregoing **NON-PARTY AUDAX'S RESPONSE TO UNITED STATES' REPLY RE: (1) RECEIVER'S FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; (2) RECEIVER'S MOTION TO APPROVE FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; AND (3) RECEIVER'S PROPOSED ORDER APPROVING FORTY-FIRST AND FINAL REPORT, DISCHARGING RECEIVER, AND TERMINATING RECEIVERSHIP ESTATE. REQUEST FOR HEARING** on the following parties at the email addresses below.  I electronically filed said document with the Clerk of the Court using the CM/ECF system on January 5, 2009 which will send notification of such filing to all persons registered with said system, including the following email addresses:

jtanner@fwlaw.com
ahale@haldfriesen.com
eramey@ir-law.com
spack@ir-law.com
jcage@cagewilliams.com
glen.keller@dgslaw.com
jelliff@mofo.com
adam.f.hulbig@usdoj.gov
gmoschetti@hatchlawyers.com
csasso@bakerlaw.com
mpankow@bhf-law.com
dgarfield@bhf-law.com

Additional copy via email to:

John Tanner, Esq.
Fairfield and Woods, P.C.
1700 Lincoln St., #2400
Denver. CO 80203
Phone: (303)830-2400
Fax: (303)830-1033
Email: jtanner@fwlaw.com

/ / /

/ / /

11

Julie Trent, Esq.
Bieging, Shapiro & Burrus, LLP
4582 S. Ulster Street Pkwy., Suite 1650
Denver, CO  80237
Ph: (720) 488-0220
Fax: (720) 488-7711
Email: jt@bsblawyers.com

By:   s/ Michael Chodos
      Michael Chodos, Esq.

Michael Chodos, Esq.
56 Malaga Cove Plaza
Palos Verdes Estates, CA  90274-1306
Ph: (310) 791-1928
Fax: (310) 791-1958
Email: michael@chodos.com

Eugene M. Sprague, Esq.
Berenbaum, Weinshienk & Eason, PC
370 Seventeenth Street
Republic Plaza, 48th Floor
Denver, CO  80202-5698
Phone:  303-592-8327
Fax:  303-629-7610
Email: esprague@bw-legal.com