**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 95-cv-00777-REB-CBS

In Re: THE RECEIVERSHIP OF INDIAN MOTORCYCLE
MANUFACTURING, INC.

---

**CREDIT MANAGERS ASSOCIATION OF CALIFORNIA'S RESPONSE TO UNITED STATES' PLEADING IN SUPPORT OF (1) RECEIVER'S FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; (2) RECEIVER'S MOTION TO APPROVE FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; AND (3) RECEIVER'S PROPOSED ORDER APPROVING FORTY-FIRST AND FINAL REPORT, DISCHARGING RECEIVER, AND TERMINATING RECEIVERSHIP ESTATE AND REQUEST FOR HEARING**

---

Credit Managers Association of California, dba CMA Business Credit Services ("CMA" or "Assignee") as Assignee, pursuant to a California Assignment for the Benefit of Creditors and General Assignments by Indian Motorcycle Company, IMCOA Licensing America, Inc., IMCOA Holdings America, Inc., Indian Motorcycle Corporation, and Indian Motorcycle Real Estate Services, Inc.[1] (collectively, the "Indian Entities"), hereby files the following response to the United States' pleading in support of the (1) the Receiver's Forty-First And Final Report And Request For Discharge ("Final Report"); (2) Receiver's Motion To Approve Forty-First And Final Report And Request For Discharge ("Motion") [Doc. 2674]; and (3) Receiver's Proposed Order Approving Forty-First And Final Report, Discharging Receiver, And Terminating Receivership Estate ("Proposed Order"), which raises issues not set forth in the Receiver's

---

[1] CMA is a California based third party fiduciary acting as an assignee for the benefit of creditors under California's assignment for benefit of creditors law.  As such, it is appearing in this action in such capacity and no other.  All references to CMA herein are as Assignee of the Indian Entities only.

1

Motion [Doc. 2724]. CMA respectfully requests a hearing on the Receiver's Motion and the issues raised in the United States' supportive pleading.

## ARGUMENT

- **No legal justification has been provided by the United States (or the Receiver) for the Proposed Order**

As set forth in its Opposition, CMA opposes the Receiver's Final Report and accompanying Motion and Proposed Order on the ground that the proposal set forth in the Proposed Order whereby the Receivership Estate would transfer to Sterling Consulting Corporation ("Sterling"), various Receivership Estate assets represents a flagrant conflict of interest and breach of fiduciary duty by the Receiver. This proposed transfer is contrary to the fundamental legal principles governing Receivers. However, nowhere in the United States' pleading (or the Receiver's joinder) does either party provide any legal basis for what is proposed, other than an overused refrain that this case is somehow "unique" and therefore the rules normally applicable to receivers do not apply in this case. As such, there is no legal basis for this Court to approve a blanket assignment of assets to Sterling. Such assignment would appear to be simply one more machination in a long list of illusory assignments and transfers of "claims" between the Receiver and Sterling.

- **The only Receivership Estate assets with any conceivable value are the "claims" alleged by the Receiver in the First Amended Complaint**

The Indian stock referenced in the various pleadings and proposed to be assigned is valueless. The Indian Entities are defunct (and have been since 2003) and the creditor claims against those entities far exceed any asset value, thus leaving nothing to be distributed to shareholders on account of their equity interests, whether those shareholders are entities,

2

individuals or the Receivership Estate. Therefore, the only "asset" at issue here is the alleged litigation claims - asserted or unasserted at this time – by the Receivership Estate.[2]

- **The Receiver has contradicted himself regarding the value of the alleged litigation claims**

Depending on the circumstances, the Receiver alternatively claims that the alleged litigation claims have no value (and thus this Court need not concern itself with the proposed assignment of said claims to Sterling, the Receiver's alter ego, for no consideration), or substantial value (as evidenced by an unidentified third party's "proposal" to capitalize the costs of such litigation and even provide "cash payments to the Receivership Estate in advance.") The Receiver's failure to disclose to this Court even the parameters of an offer (that he claims he received) to purchase the alleged litigation claims smacks of egregious self-dealing that should not be countenanced by this Court.[3] Similarly, the Receiver's explanation for his failure to disclose his plan to assign the alleged litigation claims to himself for no consideration, i.e., that he "had, quite frankly, forgotten all about it," lacks any credibility whatsoever. The self-serving and ambiguous assertions of non-value by the Receiver do not comport with a receiver's well settled duties, particularly when contradicted by the Receiver's own later assertions.

---

[2] CMA does not believe that the Receiver's claims have (or ever had) any merit whatsoever. However, meritorious or not, there is no justification to allow these claims to be removed from the purview of this Court so that the Receiver can pursue them for his own profit without the Court's supervision of the Receiver's compliance with his statutory duties.

[3] The Receiver's allegation that a third party is willing to fund the litigation and make an upfront cash payment belies the Receiver's assertion that the alleged claims are incapable of being liquidated prior to closing the receivership estate.

3

- **The United States' assertion that, if CMA has claims against the Receivership Estate, it should assert them now, is nonsensical**

In its Opposition (and to a greater extent, in Audax's Opposition), CMA argued against terminating the Receivership Estate and exonerating the Receiver prior to the Receiver filing whatever claims he believes exist because it is possible that CMA would have counter-claims or cross-claims against the Receiver and/or the Receivership Estate, depending on what claims the Receiver (or his assignee) ultimately brought.  The United States argues that any such counter-claims or cross-claims should be brought now, or forever waived.  However, such argument ignores reality, which is that *CMA has no idea what claims the Receiver intends on pursuing against it*, and thus has no way of determining what its counter-claims or cross-claims may be.  This is particularly true given that the Receiver asserts that the First Amended Complaint [Doc. No. 2306] represents "just a fraction of the true issues" that may be asserted.[4]  *See* Receiver's Response, Section V, pp. 8-9.  It is absurd to suggest that a party is required to assert all of its counter-claims or cross-claims in response to undisclosed claims that have not yet been asserted by way of any sort of operative pleading.  Thus, to the extent any claims that belong to the Receivership Estate are to be pursued, they must be pursued within the Receivership Estate under the supervision of this Court so that all appropriate counter-claims or cross-claim may be preserved.

CMA agrees with the Receiver that this Receivership Estate has long since run its course.  The question now is how should the Receivership Estate be terminated:  fully and completely, as

---

[4]  The Receiver's assertions in this regard are disturbing:  The Receiver claims to have resisted the efforts of third parties to bring this alleged plethora of "true issues" before this Court, but now seeks to pursue these same undisclosed claims for his own account?  Again, the Receiver's position smacks of self-dealing.

4

proposed by Audax and CMA, or in some partial way that allows the Receiver's alter ego to carry on with litigation for his own personal benefit without any supervision by the Court that appointed him, as proposed by the Receiver and the United States? CMA contends that, based on the record in this case, the better approach is to terminate this Receivership Estate fully and completely by entering the Proposed Order without the provisions of Section 8. This is the only way in which this 13-year odyssey will end. The complaint of the United States and the Receiver that the final termination of this Receivership Estate will somehow prejudice them by precluding their opportunity to recover their administrative claims is disingenuous. The existence of these claims has been known to both the Receiver and the United States since at least 2005, when they entered into an agreement relating thereto. Their failure to timely pursue claims that may have generated funds to pay such administrative claims is no justification now to "remove" the claims from the Receivership Estate and pursue them on their own account.

## CONCLUSION

WHEREFORE, for the foregoing reasons and each of the reasons set forth in the previously filed Oppositions, CMA respectfully submits that the Receiver's Forty-First And Final Report should be disapproved to the extent it seeks approval for transfer of Estate Assets to the Receiver in his personal capacity; and that Section 8 of the Proposed Order Approving the Receiver's Forty-First Report, Etc. be stricken from said Order before it is signed by the Court. In addition, CMA respectfully submits that all proposed Findings and Orders included in the Proposed Order, which do not relate to the Final Accounting and for which no evidentiary support is provided, be stricken as well.

5

Respectfully submitted this 5th day of January, 2009.

By: *s/ Julie Trent*
Julie Trent, Esq.
Bieging Shapiro & Burrus LLP
4582 S. Ulster Street Parkway, Suite 1650
Denver, CO 80237
Phone:720-488-5435
Fax: 720-488-7711
Email:  jtrent@bsblawyers.com

Robert W. Pitts, Esq.
Law Office of Robert W. Pitts
9160 Irvine Center Drive, Suite 200
Irvine, California 92618
Phone:  949-720-4125
Fax:  949-720-4121
Email: rpitts@lawrwp.com

*Attorneys for Credit Managers Association of California, dba CMA Business Credit Services as Assignee, pursuant to a California Assignment for the Benefit of Creditors and General Assignments by Indian Motorcycle Company, IMCOA Licensing America, Inc., IMCOA Holdings America, Inc., Indian Motorcycle Corporation, and Indian Motorcycle Real Estate Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2009, I electronically served the foregoing **CREDIT MANAGERS ASSOCIATION OF CALIFORNIA'S RESPONSE TO UNITED STATES GOVERNMENT'S PLEADING IN SUPPORT OF (1) RECEIVER'S FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; (2) RECEIVER'S MOTION TO APPROVE FORTY-FIRST AND FINAL REPORT AND REQUEST FOR DISCHARGE; AND (3) RECEIVER'S PROPOSED ORDER APPROVING FORTY-FIRST AND FINAL REPORT, DISCHARGING RECEIVER, AND TERMINATING RECEIVERSHIP ESTATE** on the following parties at the email addresses below. I electronically filed said document with the Clerk of the Court using the CM/ECF system on January 5, 2009, which will send notification of such filing to all persons registered with said system, including the following email addresses:

jtanner@fwlaw.com
ahale@haldfriesen.com
eramey@ir-law.com
spack@ir-law.com
jcage@cagewilliams.com
glen.keller@dgslaw.com
jelliff@mofo.com
adam.f.hulbig@usdoj.gov
gmoschetti@hatchlawyers.com
csasso@bakerlaw.com
mpankow@bhf-law.com
dgarfield@bhf-law.com

Additional copy via email to:

John Tanner, Esq.
Fairfield and Woods, P.C.
1700 Lincoln St., #2400
Denver. CO 80203
Email: jtanner@fwlaw.com

Michael Chodos, Esq.
56 Malaga Cove Plaza
Palos Verdes Estates, CA  90274-1306
Email: michael@chodos.com

                                                                    */s Pamela Lambert*
                                                                    Pamela Lambert